M618HWAC

```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x

 3   UNITED STATES OF AMERICA,

 4              v.                        22 Cr. 240 (AKH)

 5   SUNG KOOK (BILL) HWANG and
     PATRICK HALLIGAN,
 6
                Defendants.
 7
     ------------------------------x
 8                                        New York, N.Y.
                                          June 1, 2022
 9                                        10:00 a.m.

10   Before:

11              HON. ALVIN K. HELLERSTEIN,

12                                        District Judge

13                     APPEARANCES

14   DAMIAN WILLIAMS
          United States Attorney for the
15        Southern District of New York
     BY:  MATTHEW D. PODOLSKY
16        ANDREW M. THOMAS
          ALEXANDER ROSSMILLER
17        Assistant United States Attorneys

18   GIBBONS P.C.
          Attorneys for Defendant Halligan
19   BY:  LAWRENCE S. LUSTBERG
          THOMAS R. VALEN
20        JEFFREY L. NAGEL

21   FRIEDMAN KAPLAN SEILER & ADELMAN LLP
          Attorneys for Defendant Hwang
22   BY:  MARY E. MULLIGAN
          TIMOTHY M. HAGGERTY
23

24

25
```

M618HWAC

1            (In open court; case called)

2            THE DEPUTY CLERK:  Counsel, please state your

3    appearances for the record.

4            MR. PODOLSKY:  Good morning, your Honor.  Matthew

5    Podolsky, Andrew Thomas, and Alex Rossmiller for the

6    government.

7            MR. LUSTBERG:  Good morning, Judge.  Lawrence

8    Lustberg, from Gibbons P.C., on behalf of defendant Bill Hwang.

9    It's really nice to be back before the Court again.  It's good

10   to see you.  With me are my colleagues Thomas R. Valen and

11   Jeffrey Nagel, who are here behind me, and Mr. Hwang is present

12   as well.

13           MS. MULLIGAN:  Good morning.

14           THE COURT:  Where is Mr. Hwang?

15           MR. LUSTBERG:  Mr. Hwang is right here.

16           THE COURT:  Hello, Ms. Mulligan.

17           MS. MULLIGAN:  Good morning, your Honor.  It's very

18   nice to see you and be back in your courtroom.  Mary Mulligan,

19   from the law firm of Friedman Kaplan Seiler & Adelman.  With me

20   is my client Patrick Halligan and my colleague Tim Haggerty.

21           THE COURT:  Give me a moment.

22           Mr. Podolsky, tell me what we will be doing today.

23           MR. PODOLSKY:  Thank you, your Honor.

24           We have conferred with defense counsel and what we

25   would propose to do today, given that we expect this to be a

M618HWAC

1    lengthy trial, would be to set a trial date for some time next

2    year, depending on the Court's availability.

3            THE COURT:  Before we talk about a trial date, what

4    has been happening so far in the case?

5            MR. PODOLSKY:  Yes, your Honor.

6            The defendants were both arrested, presented, and

7    arraigned on April 27 in magistrate court.

8            On May 19, an initial --

9            THE COURT:  April 27th of this year?

10           MR. PODOLSKY:  That's right, your Honor.

11           On May 19th of this year, we participated in an

12   initial pretrial conference before Judge Carter.  At that time,

13   Judge Carter stated on the record that he would be recusing

14   himself, after which the case was reassigned to your Honor.

15           THE COURT:  So nothing really has been done.

16           MR. PODOLSKY:  Correct, your Honor.  Although the

17   government has begun production of discovery in this case.

18   There is rather substantial discovery in this case and

19   production is ongoing.

20           THE COURT:  When will you complete discovery?

21           MR. PODOLSKY:  Your Honor, a substantial amount of

22   discovery has already been produced.  What remains are really

23   two items.  One is the production of additional records that

24   the government has obtained in the last couple of weeks since

25   the initial discovery was made, and the production of certain

M618HWAC

1    search warrant returns, the responsiveness review of which is

2    ongoing.

3              We would expect that the first category, we are

4    prepared to produce it as soon as defense counsel provides hard

5    drives, and we expect that to be done in the next couple of

6    weeks.

7              We expect that the search warrant review and

8    production, much of which is duplicative of what has already

9    been produced to the defendants, would be completed perhaps in

10   the next six to eight weeks, although we are working with --

11             THE COURT:  Why so long?

12             MR. PODOLSKY:  It's a substantial amount of

13   information, your Honor.  At current, because we can only

14   produce the responsive sets to each defendant, we have to

15   isolate the responsive materials, get those on hard drives,

16   which need to be processed, which itself takes quite a bit of

17   time given the volume of data.

18             THE COURT:  Are you saying that some documents will be

19   given to Lustberg and some documents to Mulligan?

20             MR. PODOLSKY:  That's the current plan, your Honor.

21             THE COURT:  Why is that?  They are going to be both

22   tried together.  They both need to know what is going on.

23             MR. PODOLSKY:  Let me be clear.  They will have the

24   same sets, each of them, in terms of the material that is

25   responsive to the search warrants.  There is additional

M618HWAC

1    material that belongs to each defendant that we will produce

2    separately.  We are, however, working with third parties who

3    have rights to that material, specifically the fund Archegos,

4    in an effort to avoid that process and hopefully produce the

5    full set of all materials.

6              THE COURT:  Are you saying that materials that are not

7    private to a particular defendant does not have relevance to

8    the other defendant?

9              MR. PODOLSKY:  Correct, your Honor.  Let me try to

10   make sure I am being precise.  We obtained search warrants on

11   certain electronic accounts held by the fund Archegos.  We are

12   in the process of conducting a review for responsiveness.  The

13   entirety of those responsive sets will be produced to each

14   defendant.  There are additional materials that were returned

15   from the providers that would not necessarily be responsive to

16   the search warrant.  What we are hoping to do is get consent to

17   provide the entire set, not just the responsive set, to the

18   defendants.

19             THE COURT:  My question is, what is the justification

20   of giving some documents to one defendant and not the other?

21             MR. PODOLSKY:  The entire responsive set would be

22   provided to each defendant; they will have the same set.

23             THE COURT:  Everyone will be on the same footing.

24             MR. PODOLSKY:  Correct, your Honor.

25             THE COURT:  OK.  Tell me about the case.

M618HWAC

1    MR. PODOLSKY:  This case is about how the defendants

2  used Mr. Hwang's private fund Archegos Management to perpetrate

3  a very significant fraud on Wall Street.  There are really two

4  aspects to this fraud.  The first and more direct fraud on the

5  financial institutions on Wall Street consisted of a scheme to

6  misrepresent the nature and the risks associated with

7  Archegos's investments.  The purpose of this fraud was to

8  essentially convince or defraud these banks into doing business

9  with Archegos, and also, into, in practice, extending credit to

10  Archegos for their trades.

11    THE COURT:  In what institution was the representation

12  embodied, a private placement memorandum or conversations or

13  what?

14    MR. PODOLSKY:  Yes, your Honor.  They were largely in

15  oral and written, but predominantly oral conversations.  Many

16  of those conversations were recorded on recorded lines by the

17  financial institutions.  Those recordings are being produced to

18  the defendants.  Many other conversations are reflected in

19  handwritten notes and other memoranda taken by the financial

20  institutions.  And others are reflected in, for example,

21  Bloomberg and other forms of instant messages.

22    THE COURT:  What instrument is being sold, a security?

23    MR. PODOLSKY:  In substance, yes, but let me see if I

24  can lay out the facts here.

25    The defendants engaged in trading through a device

M618HWAC

```
1    called a swap, essentially a contract with each financial
2    institution where they bet on an underlying security.  The
3    banks -- I will call them banks, but the counterparties are
4    financial institutions -- had certain risk tolerances or rules
5    about the extent to which they would engage in a swap with any
6    particular party, but in this case the defendants.  And in
7    order, essentially, to get around some of those rules, or to
8    convince those banks to trade when they might not otherwise,
9    the defendants misrepresented the nature of Archegos's
10   portfolio in a way that caused the banks to misapprehend or
11   misunderstand the risks associated with the trades.
12           At bottom, that's the nature of the trading
13   relationship between Archegos and the financial institutions.
14           THE COURT:  What was the role of each defendant?
15           MR. PODOLSKY:  Yes, your Honor.  Mr. Hwang, it was his
16   money, it was -- although Archegos acted as a hedge fund, it
17   was a private fund.  It was his money and he directed all
18   trades.  Mr. Halligan was the chief financial officer.  He,
19   along with two others who have pleaded guilty separately
20   pursuant to cooperation agreements with the government before
21   Judge Swain, had direct communications with the banks and
22   delivered the misrepresentations alleged in the indictment.
23           THE COURT:  You say that Mr. Halligan pleaded guilty?
24           MR. PODOLSKY:  Sorry, your Honor?
25           THE COURT:  Did you say that Mr. Halligan pleaded
```

M618HWAC

1    guilty?

2                MR. PODOLSKY:  No, two others have pleaded guilty.

3                THE COURT:  What is the connection between Mr. Hwang

4    and Mr. Halligan?

5                MR. PODOLSKY:  Mr. Hwang essentially was Mr.

6    Halligan's boss.

7                THE COURT:  He provided the money, but was he involved

8    in some way in the misrepresentations?

9                MR. PODOLSKY:  Yes, your Honor.  We allege that he was

10   aware of and in certain instances directed them.

11               But there is a second aspect to the scheme at large

12   which Mr. Hwang participated in directly, which is a scheme to

13   manipulate and control the prices of the stocks underlying the

14   swap transactions.  We allege, the grand jury alleged that

15   Mr. Hwang and others engaged in a pattern of trading

16   specifically designed to control and artificially --

17               THE COURT:  To raise or lower the price according to

18   the position that Archegos had.

19               MR. PODOLSKY:  Correct.

20               THE COURT:  I don't know whether to call on Mr.

21   Lustberg or Ms. Mulligan, so I will just say defense counsel.

22   What is your take on the case?  What do you want?  What do you

23   need?

24               MR. LUSTBERG:  Thank you, your Honor.

25               This is an extraordinary set of allegations.  I think

M618HWAC

1    I will just take it in the opposite order from that which Mr.

2    Podolsky just explained to your Honor.

3              The first set of allegations is that Mr. Hwang

4    participated in stock manipulation.  Judge, this would be an

5    unprecedented, extraordinary, never-before-seen theory of stock

6    manipulation, whereby Mr. Hwang, who traded openly, albeit

7    through swaps, which are lawful devices on the open market, is

8    nonetheless accused of manipulation.

9              As this Court well knows --

10             THE COURT:  Manipulation --

11             MR. LUSTBERG:  Price manipulation.

12             THE COURT:  -- of some instrument which would be the

13   subject of the swap.

14             MR. LUSTBERG:  Correct.

15             THE COURT:  Why is it so unique to manipulate some

16   other item that has a fluctuating price and will be susceptible

17   to bets?

18             MR. LUSTBERG:  Judge --

19             THE COURT:  It's like fixing a basketball game.  It

20   wouldn't be a securities fraud.

21             MR. LUSTBERG:  So this Court will be directed to a

22   good amount of case law and scholarship on this issue.  The

23   government's theory here is something called open market

24   manipulation.  It is a theory which we respectfully submit, and

25   will argue to this Court in pretrial motions, was rejected by

M618HWAC

1      the Second Circuit in the *Muheren* case in the 1990s.

2              The fundamental basis of any stock manipulation case

3      always is that there are false signals to the marketplace that

4      result in artificial prices.  So the typical manipulation case,

5      as this Court well knows, is one in which, for example, there

6      will be bids that are phony, we call that spoofing, and then

7      cancellation of trades.  So the market is affected by the false

8      signals so that the pricing is artificial.

9              It is not unlawful to trade with a price in mind.

10     Everybody knows when they trade it's going to affect the price.

11             THE COURT:  Apparently what is going on is that

12     Mr. Hwang's company bought or sold in volume with an intent and

13     purpose of pushing the stock down or up and accommodating the

14     swap bet.  And your position is that there is nothing illegal

15     in that.

16             MR. LUSTBERG:  That is absolutely our position.

17     Respectfully, Judge, that will be the subject, should be the

18     subject of robust pretrial motion practice.

19             THE COURT:  You're always robust, Mr. Lustberg.

20             MR. LUSTBERG:  I thought you might say that.

21             THE COURT:  Let me stop you.

22             Mr. Podolsky, is Mr. Lustberg's summation of the

23     defense an accurate one?  I am not saying it's valid, an

24     accurate one.

25             MR. PODOLSKY:  I think his description of the motion

M618HWAC

1    they intend to make is accurate.  I will say that I think, in

2    addition to being wrong on the law, it ignores a number of the

3    facts that are alleged in the indictment.

4              THE COURT:  We are not going to argue this now.

5              MR. PODOLSKY:  Absolutely, your Honor.

6              THE COURT:  Sorry?

7              MS. MULLIGAN:  Your Honor, if I may, I would like to

8    tell you a little bit about Mr. Halligan.

9              THE COURT:  I will get to you, Ms. Mulligan.

10             From your point of view, Mr. Lustberg, you would like

11   to have a motion schedule.

12             MR. LUSTBERG:  Absolutely, Judge, we would like a

13   motion schedule.  And let me just say --

14             THE COURT:  Is that ripe now?

15             MR. LUSTBERG:  Pardon me?

16             THE COURT:  Is scheduling ripe now?

17             MR. LUSTBERG:  I think, your Honor, that the right way

18   to do this is for that motion schedule to follow upon the

19   completion of discovery.  We heard today that it will be six to

20   eight weeks before it's completed.

21             There are other motions, I should tell the Court,

22   besides the one that I have described.  You probably noticed

23   that this is a RICO case.  We think there is a very strong

24   argument that the pattern that purports to be alleged does not

25   exist.

M618HWAC

1          THE COURT:  You are going to make omnibus motions, and

2     they will follow on the completion of discovery.

3          MR. LUSTBERG:  That's right, your Honor.

4          THE COURT:  Now I want to hear from Ms. Mulligan.

5          MS. MULLIGAN:  Your Honor, good morning.  This is a

6     very complex case.  Archegos was a family office and Mr.

7     Halligan had no control over the trading.

8          As your Honor understands, these are OTC derivatives,

9     and you used a basketball metaphor, and this would exactly be

10    Shaq versus LeBron.  There is Archegos and there are the

11    counterparties which are the banks.  These were the NBA all

12    stars, your Honor, in an arm's-length transaction.  The banks

13    were sophisticated.  The banks had their own outside counsel.

14    And these banks --

15         THE COURT:  So there were no misrepresentations.

16         MS. MULLIGAN:  Your Honor, it's the NBA.  It's sharp

17    elbows left and right.

18         THE COURT:  So there are two points you brought up

19    now, Ms. Mulligan.  One is that there were no

20    misrepresentations; and secondly, there was no adequate

21    relationship between Mr. Halligan and Mr. Hwang.

22         MS. MULLIGAN:  Your Honor, with respect to the

23    trading, Mr. Halligan did not control the trading.

24         With respect to the alleged misrepresentation, just

25    like the NBA, everybody knows the rules of the game.  Everybody

M618HWAC

1    is on the court.  They're playing to win.  No one is anyone's

2    fiduciary.  The elbows fly.  It's a rough-and-tumble game.

3           THE COURT:  Is there any space between your motion and

4    Mr. Lustberg's motion?

5           MS. MULLIGAN:  I believe we will be making omnibus

6    motions.  We need to look at the discovery.  We will need some

7    additional time.

8           THE COURT:  You will be making the same kinds of

9    motions?

10          MS. MULLIGAN:  I believe so, your Honor.  Certainly

11    with respect to the RICO.

12          THE COURT:  You could join in his brief.

13          MS. MULLIGAN:  Your Honor, I think we will need to

14    consider that, but I believe there will be some substantial

15    overlap, particularly with respect to the RICO pattern of

16    racketeering.

17          THE COURT:  Another question.  I took from Mr.

18    Podolsky's description that you need to do something to

19    accommodate early discovery, that is, provide some drives.

20          MR. LUSTBERG:  So we previously provided two terabyte

21    hard drives, which, as you probably know, is a ton of data.

22          THE COURT:  Don't assume much.

23          MR. LUSTBERG:  The government completed filling up

24    those hard drives and sent them back to us.  So we now have the

25    first tranche of millions of documents.

M618HWAC

1          Today, this morning, for the first time in court, Mr.

2   Podolsky asked for us to send over new hard drives.  We will do

3   it forthwith.  We have not delayed in any regard.  So they are

4   really not waiting on us.

5          THE COURT:  Is six to eight weeks a reasonable time?

6          MR. LUSTBERG:  Pardon me?

7          THE COURT:  Is six to eight weeks a reasonable period

8   to allow the government to complete discovery?

9          MR. LUSTBERG:  I think it is, Judge.  I don't think

10   the government is delaying the production of discovery.  I do

11   think that however long it takes, we will, as Ms. Mulligan

12   said, need some time to review it.

13          THE COURT:  So we need to schedule another session

14   like this ten weeks from today, approximately, where you will

15   declare all your motions, give me a briefing schedule, and we

16   will be able to chart the case from there.

17          MR. LUSTBERG:  I think that makes sense, your Honor.

18          Let me also assure the Court that Ms. Mulligan and I

19   work well together.  We will do the best we can to consolidate

20   our submissions so that your Honor doesn't have redundancy.

21          THE COURT:  I am going to order consolidation, to the

22   greatest extent possible, of the motion so that I will have one

23   set of papers.  Of course, each of you is free to set out any

24   special aspects of your respective cases, but, basically, I

25   want one brief.

M618HWAC

1            MR. LUSTBERG:  That makes sense.  I can assure you

2      that if the Court adheres to the schedule it just proposed,

3      that in that ten-week period we will be prepared to come back

4      before the Court to outline for your Honor what our motions

5      will be and to agree upon a briefing schedule.  That sounds

6      great to us.

7            THE COURT:  And you will confer with Mr. Podolsky for

8      precise dates.  But the dates you give me I want to be fixed

9      dates, not subject to adjournment.

10            August 9 at 11.

11            MS. MULLIGAN:  Thank you, your Honor.

12            MR. LUSTBERG:  Great.

13            THE COURT:  How much time has been excluded, Mr.

14      Podolsky?

15            MR. PODOLSKY:  I believe time has been completely

16      excluded between the indictment and today.  So we would

17      certainly, at the conclusion of today's proceedings, move to

18      exclude time until August 9 at 11 a.m.

19            MR. LUSTBERG:  No objection.

20            MS. MULLIGAN:  No objection, your Honor.

21            THE COURT:  One thing that comes to mind is whether or

22      not we need a definition of the alleged misrepresentations.

23      Not a definition, identification.  Has the grand jury

24      indictment done that?

25            MR. PODOLSKY:  Excuse me, your Honor.  Set forth

M618HWAC

1    specifics about the nature of the misrepresentations?

2              THE COURT:  Just like you would have in a civil case.

3    In a civil case, based on securities fraud, it would be

4    expected to identify each and all the misrepresentations that

5    will be actionable.

6              MR. PODOLSKY:  Yes, your Honor.  What the indictment

7    has done is describe by category the nature of each type of

8    misrepresentation; it gives examples.  And the discovery

9    additionally explains, sets forth --

10             THE COURT:  Is it complete?  Will you be wanting to

11   try misrepresentations not alleged in the indictment?

12             MR. PODOLSKY:  The way the indictment is drafted, it

13   gives examples; it doesn't set forth a list, a complete list.

14   I am confident that the defendants, based on my discussion with

15   them, are likely to seek a bill of particulars.

16             THE COURT:  I am anticipating that.  I am wondering if

17   you can read my mind whether it would be a good thing to

18   prepare one.

19             MR. PODOLSKY:  I think, your Honor, we believe that

20   the indictment is far more than sufficiently particular.  So

21   our view is that a bill of particulars is not necessary, but

22   certainly if the Court orders one --

23             THE COURT:  I will study that, but you can anticipate

24   my ruling by making sure that there is identification of each

25   and all the alleged misrepresentations, by persons who made it,

M618HWAC

1    by their nature, persons who received it, date, time, place.

2            MR. PODOLSKY:  Understood, your Honor.

3            THE COURT:  Like a Rule 9 allegation in a civil

4    action.

5            MR. PODOLSKY:  Understood.  I should just preview for

6    the Court that there are, I believe, dozens, many

7    misrepresentations in this case.  But with that, I understand

8    the Court's indication.

9            THE COURT:  It would be a good thing to have it done

10   by the next status conference, or even before.  And once you

11   have it, put it on ECF and serve it on the defendants.

12           What else can I do for you?

13           It's my practice not to set a trial date until

14   discovery is complete.  Up till recently I have had an open

15   trial calendar.  Now it's filled.  I am not sure I know what to

16   do, but I think today is not the day to fix a trial date.  It

17   can be fixed perhaps on August 9.

18           MR. PODOLSKY:  We are happy to proceed however the

19   Court wishes on this.  I will just note, at this early stage,

20   we anticipate a trial that will last perhaps one to two months.

21           THE COURT:  I am very well aware of the nature of

22   securities fraud cases, coupled with a RICO case.

23           We will try to fix a date on August 9.  Or better

24   still, when I rule on the motions that come up before me.

25           Is there anything else I can do for you, Mr. Podolsky?

M618HWAC

1          MR. PODOLSKY:  Other than the exclusion of time from

2     speedy trial clock calculation, no, your Honor.

3          THE COURT:  Mr. Lustberg.

4          MR. LUSTBERG:  Just one point.  Your Honor anticipated

5     the last thing I was going to say, which had to do with a bill

6     of particulars.  When you study the indictment, as you said you

7     would, you will notice a lot of terms like "usually,"

8     "typically," "in general."  So the specification of not only

9     the misrepresentations but other acts that fall within those

10    categories is going to be important.

11         THE COURT:  I think you should look at the rules

12    covering representations in civil cases and follow them.

13         MR. LUSTBERG:  Thank you, Judge.

14         Under the Federal Rules of Criminal Procedure,

15    technically, applications for bill of particulars are due

16    within 14 days of arraignment.  We have discussed this with the

17    government, and we just want to make sure we are all on the

18    same page, that we can --

19         THE COURT:  What else do you need specifications of?

20         MR. LUSTBERG:  We are happy to lay that out.  But you

21    will see when you read the indictment that it alleges that

22    Mr. Hwang generally did this, or as Mr. Podolsky himself said,

23    at times he directed certain --

24         THE COURT:  That was not my question, Mr. Lustberg.

25    When will you be in a position to state the specifications that

M618HWAC

1    you want?

2              MR. LUSTBERG:  Pardon me?

3              THE COURT:  When will you be in a position to state

4    the specifications you want?

5              MR. LUSTBERG:  We can do that very quickly.

6              THE COURT:  Do you want to delay it until you get the

7    misrepresentations that Mr. Podolsky will give you?

8              MR. LUSTBERG:  So, your Honor, let me just say, and

9    Mr. Podolsky said this as well.  I actually read some Second

10   Circuit cases and cases from this court regarding bills of

11   particulars, and very often the government says in those cases

12   what Mr. Podolsky said today, which is that no bill of

13   particular is required because it's set forth in the discovery.

14             THE COURT:  Mr. Lustberg, I am well aware.  I am well

15   aware of my discretion.  And you already heard my exercise of

16   discretion with regard to misrepresentations.  Are there any

17   other subjects that you think need particulars?

18             MR. LUSTBERG:  I am happy to --

19             THE COURT:  I will tell you this.  Within a week after

20   receiving Mr. Podolsky's statement of misrepresentations, you

21   will file a motion, if you want a motion, for a bill of

22   particulars.

23             MR. LUSTBERG:  OK.  That sounds fine, your Honor.

24             MS. MULLIGAN:  Thank you, your Honor.

25             Just with respect, for example, with the RICO

M618HWAC

1    enterprise --

2              THE COURT:  Better still, that will be one of the

3    motions that you will tell me about and schedule on August 9.

4              Don't ask me for particulars that I am not going to

5    give you.  And I am not sure there will be anything else that I

6    will be giving you on this.

7              Ms. Mulligan.

8              MS. MULLIGAN:  Thank you very much.  We look forward

9    to receiving the alleged misrepresentations from the

10   government.  Thank you.

11             THE COURT:  That's all the business that I foresee.

12   Both defendants are on bail, right?

13             MR. LUSTBERG:  Yes, your Honor.

14             MS. MULLIGAN:  Yes, your Honor.

15             THE COURT:  Motion.

16             MR. PODOLSKY:  Yes, your Honor.  We do move at this

17   time to exclude time from Speedy Trial Act calculation until

18   August 9 to permit the parties to continue to -- the government

19   to continue to produce discovery, for the defendants to review

20   discovery and prepare any motions, or prepare to discuss

21   motions at the next conference.

22             MR. LUSTBERG:  No objection, your Honor.

23             MS. MULLIGAN:  No objection, your Honor.

24             THE COURT:  Without objection, so ordered.  Time is

25   excluded until August 9 when we have our next status

M618HWAC

1   conference.

2            Thank you, all.

3            MS. MULLIGAN:   Thank you.

4            MR. LUSTBERG:   Thank you very much, Judge.

5            (Adjourned)