


**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

August 18, 2022

**VIA ECF**

The Honorable Alvin K. Hellerstein
United States District Court
Southern District of New York
United States Courthouse
500 Pearl Street
New York, New York 10007

Lawrence S. Lustberg, Esq.
Thomas R. Valen, Esq.
Gibbons, P.C.
One Gateway Center
Newark, New Jersey 07102

Mary E. Mulligan, Esq.
Timothy Haggerty, Esq.
Friedman Kaplan Seiler & Adelman LLP
7 Times Square
New York, New York 10036

  Re: *United States v. Sung Kook (Bill) Hwang, et al.*,
     **22 Cr. 240 (AKH)**

Dear Judge Hellerstein and Counsel:

  The Government writes in advance of the September 8, 2022, conference in this matter to respectfully supply the Court and counsel with additional information regarding certain of the misrepresentations made by Bill Hwang, Patrick Halligan, and their co-conspirators (collectively, the "Archegos Conspirators") during the course of their schemes at Archegos Capital Management and its related corporate entities (the "Archegos Enterprise" or "Archegos").

  The Government provides this supplemental information voluntarily in light of the Court's encouragement during the conference on June 1, 2022, to provide additional identification of alleged misrepresentations (*see* Jun. 01, 2022, Tr. at 15-17), and in the hope that doing so will avoid unnecessary motion practice. To be clear, however, Indictment 22 Cr. 240 (AKH) (the "Indictment") provides far more notice than is required by Rule 7 of the Federal Rules of Criminal Procedure. *See* Fed. R. Crim. P. 7(c) ("The indictment . . . must be a plain, concise, and definite written statement of the essential facts constituting the offense charged."). The Indictment is a fifty-eight-page narrative charging document that describes the alleged conspiracies and schemes in significant detail. Moreover, the Indictment provides examples of the means by which

the Archegos Conspirators committed their crimes, including both categorial summaries and specific examples of manipulative trading and misrepresentations. The Indictment's allegations are further particularized by the Government's production of discovery in a searchable, electronic format, which includes, among other things, various recordings, notes, memos, and other communications and records reflecting statements made by the Archegos Conspirators to representatives of counterparty banks and brokerages (the "Counterparties"). The law requires no more from the Government and, in fact, would accept much less. *See, e.g.*, *United States v. Love*, 859 F. Supp. 725, 738 (S.D.N.Y. 1994) ("The crucial question is whether the information sought is *necessary*, not whether it is *helpful*." (emphasis in original)).

**Background**

On April 25, 2022, a grand jury returned the Indictment, charging Bill Hwang and Patrick Halligan in eleven counts, in connection with their corruption of the Archegos Enterprise and with various schemes to manipulate stock prices and to defraud banks, brokerages, and other market participants. Specifically:

Count One charges Hwang and Halligan with conspiring to conduct the affairs of the Archegos Enterprise through a pattern of racketeering activity, in violation of Title 18, United States Code, Section 1962(d). (*See* Indictment ¶¶ 68-74). Among other allegations, Count One describes that the racketeering conspiracy's unlawful means and methods included "trading techniques intended to increase the prevailing prices of [certain] securities" and the use of "false and misleading statements to banks and brokerages" to obtain "trading capacity, brokerage relationship, and specific margin rates . . . ." (Indictment ¶ 74(a) & (b)).

Count Two charges Hwang with securities fraud, in violation of Title 15, United States Code, Section 78j(b) & 78ff, and Title 18, United States Code, Section 2. As summarized by the 'to wit' clause of this count, this charge alleges that "HWANG engaged in a scheme to secretly amass market power in numerous securities traded on United States securities exchanges and use that market power through manipulative and abusive trading techniques for the purpose of fraudulently altering the prices of those securities." (Indictment ¶¶ 75-76).

Counts Three through Nine charge Hwang with market manipulation, in violation of Title 15, United States Code, Section 78(i)(a)(2), and Title 18, United States Code, Section 2. As summarized by the 'to wit' clause of these counts, these charges allege that "Hwang engaged in a series of transactions in securities and securities-based swaps relating to [certain securities] in order to raise or depress the price of and induce others to purchase those securities." Each of the six counts relate to a specifically identified ticker: VIAC (Count Three); DISCA (Count Four); DISCK (Count Five); GSX (Count Six); IQ (Count Seven); TME (Count Eight); and Vipshop Holdings Ltd. (VIPS)." (Indictment ¶¶ 77-78).

Count Ten charges Hwang and Halligan with securities fraud, in violation of Title 15, United States Code, Sections 78j(b) & 78ff, and Title 18, United States Code, Section 2. As summarized by the 'to wit' clause, this count alleges that "HWANG and HALLIGAN engaged in

a scheme to defraud Archegos's counterparties through false and misleading statements regarding Archegos's business, portfolio, and assets." (Indictment ¶¶ 79-80).

Count Eleven charges Hwang and Halligan with wire fraud, in violation of Title 18, United States Code, Sections 1343 and 2. As summarized by the 'to wit' clause, this count alleges that "HWANG, HALLIGAN, and others at Archegos engaged in a scheme to defraud Archegos's trading counterparties of their rights to control their assets, and thereby exposed Archegos's counterparties to risk of economic harm, by false and misleading statements regarding Archegos's business, portfolio, and assets, including through interstate wires." (Indictment ¶¶ 81-82).

### Misrepresentations to Counterparties

The Indictment alleges that, with Hwang's knowledge and approval, Halligan, William Tomita, and Scott Becker repeatedly made materially false and misleading statements about Archegos's portfolio of securities to numerous leading global investment banks and brokerages. These false and misleading statements were designed to advance and conceal their schemes by fraudulently inducing the Counterparties into trading with and extending credit to Archegos, enabling and facilitating Hwang's market manipulation scheme, and hiding the true risk of doing business with Archegos. (*See* Indictment ¶ 2).

The Archegos Conspirators' misrepresentations were systematic and pervasive. They also tracked a predictable pattern: misrepresentations occurred typically, though not always, during interactions between Counterparties and those at Archegos with responsibility for ensuring Hwang preserved and increased his access to trading capacity at Archegos's Counterparties, namely Scott Becker and William Tomita. (*See* Indictment ¶¶ 41-46). As described in the Indictment, the Conspirators' misrepresentations group loosely into three categories: "(i) misrepresentations regarding the concentration of Archegos's positions; (ii) misrepresentations regarding the liquidity of Archegos's positions; and (iii) misrepresentations regarding the composition of Archegos's portfolio." (Indictment ¶ 48). In short, the Archegos Conspirators lied, repeatedly, to counterparties about key metrics that the counterparties used to assess risk, including measures of whether Archegos's portfolio maintained sufficient diversification to mitigate risk; whether Archegos could, in order to meet its obligations to its counterparties, sell its positions in the market without impairing its ability to pay its debts or its counterparties' ability to protect themselves from loss; and whether Archegos was using multiple counterparties to disguise the riskiness of its portfolio from each. (*See* Indictment ¶ 49). The Conspirators also conveyed a variety of lies, deceptive omissions, and intentional misstatements on other topics, such as Archegos's reasons for seeking new counterparty arrangements, its compliance program, and its handling of excess cash.

These categories of misstatements are set forth in detail in the Indictment. Nevertheless, in order to further assist the defense in its review of discovery and preparation for trial, the Government provides the following information relating to these categories.

### 1. Misrepresentations Regarding Concentration

The Indictment alleges that as part of their risk management and business decision-making, Archegos's counterparties "asked Archegos to provide information regarding the concentration of its overall portfolio." (Indictment ¶ 52). Paragraphs 52(a) through 52(c) detail specific examples of these sorts of misrepresentations. To assist the defendants, the Government notes the following exemplary evidence of false and misleading statements intentionally understating the concentration of Archegos's portfolio:

- Paragraph 52(a) alleges that "In or about January 2021, at the direction of HALLIGAN, Becker claimed to representatives of Credit Suisse, in substance, that as of November 30, 2020, the largest gross position in Archegos's portfolio—including money loaned from its Counterparties for leveraged positions—totaled 35% of Archegos's capital." The Government's discovery production includes document SDNY_P001_0004795408,[1] which further reflects information regarding the date, time, participants, and substance of this conversation.

- Paragraph 52(b) alleges that "In or about February 2021, Becker misrepresented Archegos's position concentrations to UBS" in that he "falsely claimed to representatives of UBS, in substance, that the ten largest investments in Archegos's overall portfolio were generally evenly weighted at approximately 30-35% of capital each, with Archegos's largest single position representing approximately 35% of capital." The Government's discovery production includes an audio recording of the referenced conversation, marked as SDNY_P001_0006750503.

- Paragraph 52(c) alleges that "In or about March 2021, at the direction of HWANG, Archegos sought an additional increase in the UBS gross trading limit. In furtherance of that request, during a call in or about March 2021, Becker again assured representatives of UBS that the [top] ten positions in Archegos's overall portfolio each represented approximately 35% of capital, ranging between 25% of capital and 35% of capital." The Government's discovery production includes an audio recording of the referenced conversation, marked as SDNY_P001_0006730684.

Paragraph 52(d) alleges multiple other instances of similar misstatements, with reference to the counterparty that received the misrepresentation and the approximate timing of the misrepresentation: "The Archegos Conspirators made similar deceptive, false, and misleading statements regarding the size of Archegos's largest positions on additional occasions and to additional Counterparties, including in or about October 2020 and January 2021 to representatives of Mitsubishi UFJ Financial Group; in or about December 2020, January 2021, and February 2021 to representatives of Goldman Sachs; in or about December 2020 and March 2021 to representatives of Credit Suisse; in or about January 2021 and March 2021 to representatives of

---

[1] The document identification numbers use herein correspond to those applied by the Government in its outgoing discovery productions to the defendants.

Nomura; in or about January 2021 and February 2021 to representatives of Deutsche Bank; and in or about February 2021 and March 2021 to representatives of Macquarie." To assist the defendants, the Government offers the following additional examples reflecting false and misleading statements intentionally understating the concentration of Archegos's portfolio:

- On or about October 21, 2020, Becker and Jesse Martz spoke to MUFG employees about Archegos. The substance of the conversation is summarized in the document marked SDNY_P001_0000523363, including, among other things, that MUFG was told that Archegos's largest position was around 35% of capital and the remaining top ten positions were around 30% of capital.

- On or about December 8, 2020, Becker spoke to a Credit Suisse employee about Archegos. The substance of the conversation is summarized in a document marked as SDNY_P001_0004795402, including, among other things, that Credit Suisse was told Archegos's largest long position represented approximately 35% of Archegos's net asset value.

- On or about January 25, 2021, Becker spoke to MUFG employees about Archegos. The substance of the conversation is reflected in the document marked SDNY_P001_0005233629, including, among other things, that MUFG was told that Archegos's largest position was around 35% of capital and the remaining top ten positions were around 30% of capital.

- On or about January 28, 2021, Becker spoke to a Nomura employee about Archegos. The substance of the conversation is reflected in the document marked SDNY_P001_0006184315, which notes, among other things, that Nomura was told that each of Archegos's top 10 long positions represented approximately 35% of net asset value.

- On or about January 29, 2021, Becker spoke to a representative of Deutsche Bank. The substance of the conversation is reflected in the document marked SDNY_P002_0000087974, including, among other things, that Deutsche Bank was provided false and misleading information about the relative size of Archegos's largest position.

- On or about February 28, 2021, Becker spoke to a representative of Deutsche Bank. The substance of the conversation is reflected in the document marked SDNY_P001_0004890076, including, among other things, that Deutsche Bank was told that Archegos's top position comprised 35% of fund net asset value and Archegos's top 10 positions represented approximately 300% of net asset value.

- On or about March 1, 2021, Becker spoke to a representative of Nomura. The substance of the call is reflected in the document marked SDNY_P001_0005270315, including, among other things, that Archegos's top position represented 35% of capital and the next seven or eight positions each represented approximately 30% of capital.

- On or about March 4, 2021, a representative of Archegos spoke to employees of Nomura. The substance of the call is reflected in the document marked SDNY_P001_0005277938,

including that Nomura was told the fund's top position represented 35% of net asset value and the remainder of the top ten positions each represented approximately 30% of net asset value.

- On or about March 8, 2021, Becker conveyed false and misleading information about Archegos's largest positions to representatives of Deutsche Bank, as reflected in the audio recording marked SDNY_P001_0004911425.

- On or about March 25, 2021, Becker spoke to a Credit Suisse employee about Archegos. The substance of the conversation is summarized in the document marked SDNY_P001_0004795405, including, among other things, that Credit Suisse was told that Archegos's largest single name position represented 35% of NAV and its top 10 long positions represented 300% of NAV.

- On or about December 16, 2020, Becker made false and misleading statements to representatives of Goldman Sachs regarding the concentration of Archegos's long positions, including regarding the relative size of Archegos's largest positions, as reflected in the document beginning SDNY_P001_0004976609.

- On or about February 2, 2021, Becker made false and misleading statements to representatives of Goldman Sachs regarding the concentration of Archegos's long positions, including regarding the relative size of Archegos's largest positions, as reflected in SDNY_P001_0004976609 and SDNY_P001_0004976612.

- On or about February 25, 2021, Becker made false and misleading statements to representatives of Macquarie regarding the concentration of Archegos's long positions, including regarding the relative size of Archegos's largest positions, as reflected in SDNY_P001_0005120370.

- On or about March 23, 2021, representatives of Archegos made false and misleading statements to representatives of Macquarie regarding the concentration of Archegos's long positions, including regarding the relative size of Archegos's largest positions, as reflected in SDNY_P001_0005115188.

Finally, the Government further notes that Archegos personnel made additional misrepresentations about Archegos's portfolio concentration on other occasions. For example:

- On or about March 15, 2021, Scott Becker spoke to a representative of BMO. The substance of that conversation is reflected in a document marked SDNY_P002_0000058893, including that BMO was told, among other things, that Archegos's largest position equaled 35% of capital and the top ten positions each were sized approximately 20% to 35% of capital.

- On or about October 13, 2020, Becker made false and misleading statements to representatives of Mizuho regarding the concentration of Archegos's long positions, including regarding the relative size of Archegos's largest positions, as reflected in SDNY_P001_0005144197, SDNY_P001_0005167993, and SDNY_P001_0005168011.

### 2. Misrepresentations Regarding Liquidity

The Indictment alleges that as part of their risk management and business decision-making, Archegos's counterparties "sought to understand the liquidity of Archegos's overall portfolio, meaning how quickly the positions in Archegos's portfolio could be sold in the market." (Indictment ¶ 53). That information also implicitly informed counterparties about the purported sizes and types of Archegos's investments. Paragraphs 54(a) and 54(b) detail specific examples of occasions where the Archegos Conspirators "fraudulently overstated the liquidity of Archegos's positions." (Indictment ¶ 54). To assist the defendants, the Government further notes the following examples:

- Paragraph 54(a) alleges that "In or about February 2021" Becker "told UBS, in substance, that Archegos could liquidate its entire portfolio in approximately two weeks, or ten trading days, selling at approximately 15% of average daily trading volume." The Government's discovery production includes an audio recording of the referenced conversation, marked as SDNY_P001_0006750503.

- Paragraph 54(b) alleges that "In or about March 2021" Halligan, Tomita, and Becker "again misled UBS regarding Archegos's liquidity profile," and then provides two additional subparagraphs of description, including that "Becker told UBS, in substance, that the portion of Archegos's portfolio at UBS was not representative of its portfolio with other counterparties, and that Archegos's largest positions overall were in large, liquid technology stocks, such as Amazon, Google, Microsoft, and Apple" and that Becker told UBS "Archegos could unwind half its overall portfolio in 10 trading days, 75% in 20 days, and the entire portfolio in approximately one month, all at between 10% to 15% of daily traded volume." The Government's discovery production includes audio recordings of relevant conversations between Becker and UBS representatives, marked as SDNY_P001_0006730684 and SDNY_P001_0006730691.

Paragraph 54(c) identifies other examples of this category of misrepresentations, including by reference to approximate time frames and by identifying the counterparties that received them. Specifically, Paragraph 54(c) alleges: "The Archegos Conspirators made similar deceptive, false, and misleading statements regarding the liquidity of Archegos's positions in or about December 2020 and March 2021 to representatives of Credit Suisse; in or about January 2021 and February 2021 to representatives of Goldman Sachs; in or about March 2021 to representatives of Jefferies; in or about March 2021 to representatives of Deutsche Bank; and in or about March 2021 to representatives of Macquarie." To assist the defendants, the Government offers the following additional examples reflecting false and misleading statements intentionally overstating the liquidity of Archegos's portfolio:

- On or about December 8, 2020, Becker spoke to a Credit Suisse employee about Archegos. The substance of the conversation is summarized in a document marked SDNY_P001_0004795402, including, among other things, that Credit Suisse was told that it would take two weeks to orderly liquidate the book under normal market conditions.

- On or about February 2, 2021, Becker made false and misleading statements to representatives of Goldman Sachs regarding the liquidity of its top positions, as reflected in SDNY_P001_0004976609.

- On or about February 25, 2021, Becker made false and misleading statements to representatives of Macquarie regarding the time it would take to liquidate Archegos's positions, as reflected in SDNY_P001_0005120370.

- On or about March 8, 2021, Becker conveyed false and misleading information to representatives of Deutsche Bank about how quickly Archegos's book could be liquidated, as reflected in the audio recording marked SDNY_P001_0004911425.

- On or about March 19, 2021, Becker spoke to a Jefferies employee about Archegos. The substance of the conversation is summarized in a document marked SDNY_P001_0005067786, including, among other things, that Jefferies was told that, under normal market conditions, 50% Archegos portfolio could be liquidated within 10 days and the entire book could be liquidated within one month.

- On or about March 25, 2021, Becker spoke to a Credit Suisse employee about Archegos. The substance of the conversation is summarized in the document marked SDNY_P001_0004795405, including, among other things, that Credit Suisse was told that 50% of the portfolio could be liquidated under within 10 days under normal market conditions and the remainder could be liquidated within four to five weeks under normal market conditions.

The Government further notes that Archegos personnel made additional misrepresentations about Archegos's ability to liquidate its portfolio on other occasions. For example:

- On or about October 13, 2020, Becker spoke with a representative of Mizuho about Archegos. Mizuho incorporated the substance of that call into the document marked SDNY_P001_0005168012, including the fact that Mizuho had been told that Archegos could liquidate its portfolio in two weeks at 10% volume.

- On or about October 28, 2020, Becker conveyed false information to a representative of BMO regarding how long it would take to close out Archegos's book, as reflected in the document beginning SDNY_P002_0000058891.

- On or about January 28, 2021, Becker provided false and misleading information to a representative of Deutsche Bank regarding, among other things, the amount of time it would take to liquidate the majority of Archegos's portfolio under normal market conditions, as reflected in a document beginning SDNY_P001_0004869160.

**3. Misrepresentations Regarding Archegos's Portfolio**

The Indictment alleges that the Archegos Conspirators made false and misleading statements in response to questions "relating to the contents of Archegos's portfolio." (Indictment ¶ 55). Paragraphs 55 through 59 of the Indictment contain detailed allegations about the Conspirators' efforts to mislead Counterparties about Archegos's portfolio and, relatedly, its

reasons for seeking to expand that portfolio to include new counterparty relationships. To assist the defendants, the Government further notes the following examples:

- Paragraph 56 alleges, among other things, that "Tomita provided 'dummy' or 'decoy' names when discussing Archegos's portfolio and investment interests with Goldman Sachs to camouflage Archegos's primary interest in GSX." The Government's discovery production includes the document marked SDNY_P001_0002582206, which reflects correspondence between Hwang and Tomita regarding a plan to "use a BUNCH of dummy/decoy names and portfolios . . . so they really don't know the strategy and important names" in initial conversations with Goldman Sachs.

- Paragraph 56 also alleges that, "[o]nce Archegos began investing with Goldman Sachs," Tomita falsely and misleadingly suggested to representatives of Goldman Sachs "that Archegos was trying to pursue new investment opportunities through Goldman Sachs." Conversations in which these misleading statements were made, including statements misleadingly suggesting that Archegos did not have a position in GSX at other counterparties, occurred from in or about November 2020 through in or about March 2021. Certain of these communications are reflected at SDNY_P001_0004981617 and SDNY_P001_0004972589.

The Government further notes that Archegos Conspirators made similar additional misrepresentations about the nature of Archegos's portfolio on other occasions. For example:

- On or about October 28, 2020, Becker falsely characterized the significance of technology stock to Archegos's portfolio to a representative of BMO, as reflected in the document beginning SDNY_P002_0000058891.

- On or about January 25, 2021, Becker conveyed false and misleading information to representatives of MUFG about the nature of Archegos's strategy and sector concentrations, as reflected in a document beginning SDNY_P001_0005233629.

- On or about February 18, 2021, Tomita made false and misleading statements to representatives of Macquarie, suggesting that Archegos's GSX exposure was smaller than it was, as reflected in SDNY_P001_0005122051.

The Indictment alleges that in addition to descriptive statements to Archegos's counterparties about the contents of its portfolio, Hwang and Halligan each signed documents certifying that "its exposure to individual positions was below particular thresholds," when the truth was otherwise. (*See* Indictment ¶ 59). To assist the defendants, the Government further notes the following:

- Paragraph 59(a) alleges that "On or about December 15, 2020, HWANG signed an ISDA agreement with Credit Suisse" that "contained a provision representing that Archegos beneficially owned less than 20% of the outstanding shares of any issuer's stock, including

both cash and swap positions." An example of that document begins at SDNY_P001_0004791589.

- Paragraph 59(b) alleges that "HALLIGAN signed swap transaction confirmations with [MUFG], representing that Archegos's stock and derivative positions together represented less than 5% of the outstanding shares of the issuers stock." Examples of these confirmations, which further reflect date, time, and relevant security, can be found at the documents beginning SDNY_P001_0005234115, SDNY_P001_0005234217, SDNY_P001_0005234231, and SDNY_P001_0005234245.

### 4. Additional Misrepresentations

Archegos personnel developed and conveyed other standardized misrepresentations about the fund and its operations. For example:

- At times, Archegos personnel misdescribed the firm's compliance function to falsely suggest that compliance had a meaningful role in reviewing the firm's trading activity. For example, on or about November 2, 2020, Austin Scholl, an Archegos trader, sent an employee of BMO a copy of a letter signed by Andy Mills, beginning SDNY_P001_0003408652, describing Archegos's compliance structures and policies. The letter included a number of inaccurate and misleading statements about Archegos's compliance programs, including the assertion that "All trades are reviewed daily" and that "Compliance has primary responsibility for reviewing and approving all trades."

- On March 24, 2021, in advance of anticipated telephone calls with various counterparties beginning the evening of March 24, 2021, senior leaders of Archegos—including Hwang and Halligan—convened to discuss what to tell counterparties about why Archegos would not be making its margin calls and, as alleged in the Indictment, to stall the Counterparties' efforts to force Archegos to sell its positions to generate cash. (*See* Indictment ¶ 65). As reflected in the document marked SDNY_P001_0006117829, the planned statements to brokers included the false and misleading assertion that Archegos faced a liquidity issue, not a solvency issue. Throughout the night of March 24, 2021 and in the morning of March 25, 2021, various combinations of Archegos's senior leadership conveyed the planned remarks to representatives of many of Archegos's counterparties, including Morgan Stanley, Nomura, Goldman Sachs, Credit Suisse, Deutsche Bank, and UBS. The substance of those conversations is reflected, among other places, in the document beginning SDNY_P001_0004945874.

- On or about March 25, 2021, Becker updated Halligan regarding what Becker had been telling Archegos's counterparties. Becker's statements, in substance, were collected in a call script, produced as SDNY_P001_0006145753. The script reflected that Becker had falsely informed counterparties that, among other things, he did not have access to the trade blotter, did not have visibility into Archegos's "exact excess cash situation," did not have access to the live portfolio, and did not have access to information about margin calls from

other counterparties, and that excess cash balances had been normal at the beginning of the week.

Halligan, Becker, and Tomita also made certain false and misleading statements regarding Archegos's available cash and how the cash was managed, both before and during Archegos's collapse. For example:

- In or about March 2021, an Archegos representative told employees of Deutsche Bank, in substance, that Archegos's cash was mostly held away from other prime brokers in cash accounts. A reference to this conversation can be found at SDNY_P001_0004863120.

- On or about March 24, 2021, Becker made false statements to an employee of Jefferies about Archegos's excess cash levels and the location of its cash reserves, and falsely denied that Archegos was facing a liquidity issue, in a conversation reflected at SDNY_P001_0005066458.

- On or about March 24, 2021, Becker conveyed misleading information to a representative of Nomura about why Archegos had not provided more information about its plans with respect to a margin call, as reflected in the document beginning SDNY_P001_0005302349.

- On or about March 25, 2021, Tomita conveyed misleading information to a representative of Nomura regarding the reasons why Archegos had run out of cash so quickly, as reflected in the document SDNY_P001_0005314713.

- On or about March 25, 2021, Becker had a conversation with a Deutsche Bank employee about Archegos's cash position in which he falsely reported Archegos's current assets under management, as referenced by SDNY_P001_0004842376.

- On or about March 25, 2021, at approximately 7:40 a.m., Patrick Halligan, Scott Becker, Andy Mills, David Eun, and Tomita participated in a call with Deutsche Bank. The substance of that call is reflected in SDNY_P001_0004861431, including the fact that Archegos affirmed that, at the start of the week, it held 30% of its assets under management in cash in an unencumbered bank account and only another 5% as excess at prime brokers.

## Conclusion

The Government respectfully submits that this letter, in addition to the detailed Indictment and comprehensive discovery, provides well more than sufficient notice to the defendants of the offenses with which they are charged. These details far exceed what the Federal Rules of Criminal Procedure require, and they enable the defendants to prepare for trial with awareness of the types— and often the very words—the Government will use as examples of the deceptive means by which the defendants pursued the charged schemes. Indeed, in many instances, the defendants now possess direct citations to likely trial exhibits.

The Government notes that in advance of receiving this letter, Halligan, through counsel, has already sent the Government a demand for further particulars. Halligan's demand represents

an effort to do precisely what the law forbids: use a bill of particulars as "a general investigative tool, discovery device or means to compel the government to disclose evidence or witnesses to be offered at trial," *United States v. Gibson*, 175 F. Supp. 2d 532, 537 (S.D.N.Y. 2001), and seeks what courts routinely hold defendants are not entitled to obtain, especially when they are charged in a speaking Indictment and have access to further detail through discovery and other means. *See*, *e.g.*, *United States v. Cordones*, No. 11 Cr. 205 (AKH), 2022 WL 815229, at *8-9 (S.D.N.Y. Mar. 17, 2022) (collecting cases). In any event, if the defendants intend to seek still more additional detail, the Government will be prepared to respond to such a motion in writing.

Finally, the Government's investigation is ongoing and, with no trial date set, the Government's preparations for the presentation of its evidence to a jury remain ongoing. Accordingly, the Government may seek the introduction of additional instances where the defendants and their co-conspirators conveyed false and misleading information to Counterparties, both as direct evidence of the charged crimes and as "other act" evidence under Rule 404(b), and to support its proof through documents other than those cited in this letter. While the defendants will gain still further detail about the Government's trial proof through motion practice, Jencks Act disclosures, and pretrial filings, all of that proof will be offered in service of the same conspiracies and schemes alleged in the Indictment. The defense is not entitled to confine the Government to a specific set of evidence to prove the elements of charged offenses this far in advance of trial in this matter.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

By: _____
Alex Rossmiller
Matthew Podolsky
Andrew Thomas
Assistant United States Attorneys
Tel.: (212) 637-2415/-1947/-2106