# EXHIBIT P

GIBBONS

# Sung Kook "Bill" Hwang

Presentation to
U.S. Attorney's Office, S.D.N.Y.
April 19, 2022

Subject to FRE 408 and 410

# Introduction

Thank you for meeting with us again.  Our intention today is to address, in advance of our scheduled April 25 meeting with Margaret Garnett, certain legal and practical issues that we have organized under four broad topics.

- <u>Topic 1</u>: The Government's Concerns Regarding Mr. Hwang's Actions: "Open-Market Manipulation."

- <u>Topic 2</u>: How A Case Brought Under Such A Theory Would Be Unprecedented And Would Not Satisfy The Required Elements For A Criminal Manipulation Case.

- <u>Topic 3</u>: The Criminal Prosecution Of An Open-Market Manipulation Case Would Be Unwise And Unnecessary.

- <u>Topic 4</u>: This Is The Wrong Case To Try To Make New Law Or Test An Open-Market Manipulation Theory Through Criminal Prosecution.

2

GIBBONS

# Topics For Discussion

- The Government's Concerns Regarding Mr. Hwang's Actions: "Open-Market Manipulation"

- How A Case Brought Under Such A Theory Would Be Unprecedented And Would Not Satisfy The Required Elements For A Criminal Manipulation Case

- The Criminal Prosecution Of An Open-Market Manipulation Case Would Be Unwise And Unnecessary

- This Is The Wrong Case To Try To Make New Law Or Test An Open-Market Manipulation Theory Through Criminal Prosecution

3

GIBBONS

## TOPIC 1:
## The Government's Concern Regarding Mr. Hwang's Actions: "Open-Market Manipulation"

- We understand the Government's concerns to be focused on trading directed by Mr. Hwang in the Archegos fund from early 2020 through late March 2021.

- We understand that the Government is concerned that Mr. Hwang directed his traders to increase the size of Archegos' swaps positions by buying swaps with counterparty banks in approximately 10 different referenced stocks (with particular emphasis on Viacom and GSX), as well as some short selling ("boxed" trades).

4

GIBBONS

# The Government's Concern Regarding Mr. Hwang's Actions: "Open-Market Manipulation"

- You showed Mr. Hwang Bloomberg chats and some text messages that you have suggested indicate that Mr. Hwang made trades for the purpose of affecting stock prices.

- Additionally, as you have explained to us, you believe that the trades with which you are concerned may have been made with the goal of preventing margin calls or creating additional capacity.

- You have also expressed concern that Mr. Hwang's trading pattern may have been inconsistent with his long-term investment approach, suggesting that those trades therefore lacked investment purpose.

- Finally, you have openly questioned why Mr. Hwang often disregarded his analysts' target prices, apparently suggesting this shows that Mr. Hwang did not take research seriously. That suggestion is wrong, but the topic will be more fully addressed next week.

- We do not believe that these facts, even if they are accurate – which we do not believe they are (as we will show on April 25) – set forth a viable legal theory.

5



# Topics For Discussion

- The Government's Concerns Regarding Mr. Hwang's Actions: "Open-Market Manipulation"

- How A Case Brought Under Such A Theory Would Be Unprecedented And Would Not Satisfy The Required Elements For A Criminal Manipulation Case

- The Criminal Prosecution Of An Open-Market Manipulation Case Would Be Unwise And Unnecessary

- This Is The Wrong Case To Try To Make New Law Or Test An Open-Market Manipulation Theory Through Criminal Prosecution

6

GIBBONS

## TOPIC 2:
## How A Case Brought Under Such A Theory Would Be Unprecedented And Would Not Satisfy The Required Elements For A Criminal Manipulation Case

- We believe that a federal criminal securities market manipulation case cannot be based upon these facts for legal reasons:

  – *First*, proof of criminal market "manipulation" requires deceitful conduct. Open-market trading, without more, does not involve deceit or thereby create an "artificial" market price.

  – *Second*, to our knowledge a criminal open-market manipulation case has never been successfully prosecuted.

  – *Third*, even the civil cases involving open-market manipulation claims, which have created a circuit split, do not support a criminal charge in a case like this one.

  – *Fourth*, establishing a claim for criminal, in contrast to civil, market "manipulation" requires proving beyond a reasonable doubt the additional element of willfulness. Open-market trading alone does not involve the type of nefarious conduct traditionally associated with proof of willfulness.

7



# 1. Proof of criminal market "manipulation" requires deceitful conduct and artificial prices.

- The Supreme Court has recognized that the word "manipulation" is a "**term of art**" when used in connection with securities cases. *Santa Fe Indus., Inc. v. Green*, 430 U.S. 462, 476 (1977).

- We have focused on the Securities Exchange Act of 1934, and in particular on Sections 10(b) (15 U.S.C. § 78j(b)), 9(a)(2) (15 U.S.C. § 78i(a)(2)) and 32(a) of the Act (15 U.S.C. § 78ff(a)), 18 U.S.C. § 1348, as well as Rule 10b-5 (17 C.F.R. § 240.10b-5), since these provisions all have been used to bring "market manipulation" claims. Because the Commodity Exchange Act (7 U.S.C. §§ 9, 13(a)(2)) prohibits market manipulation too, we have also looked to CEA cases as instructive on the elements of a manipulation claim.

8

GIBBONS

# Proof of criminal market "manipulation" requires deceitful conduct and artificial prices.

- As the Supreme Court has made clear, a securities law violation for "market manipulation" requires a showing of "intentional or willful **conduct designed to deceive or defraud** investors by **controlling or artificially affecting** the price of securities." *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 199 (1976).

- Because deception is the gravamen of a claim for market manipulation, the Supreme Court has held that the term "manipulative" under the Exchange Act requires a deceptive element. *Schreiber v. Burlington Northern, Inc.*, 472 U.S. 1, 7-8 (1985).

- The Court has elaborated on what this means: "Manipulative" practices are those "such as wash sales, matched orders, or rigged prices" because they give only the illusion of free-market buying and selling. *Santa Fe Indus.*, 430 U.S. at 476.

9

GIBBONS

# Proof of criminal market "manipulation" requires deceitful conduct and artificial prices.

- For there to be a criminal (or even civil) case under Section 10(b), deceptive conduct must be present and must lead to an **"artificial price"** through a **"false signal"** to the market.

- This requirement is met only when the deceptive activity gives "**a false impression of how market participants value a security**" and thereby disrupts "the natural interplay of supply and demand." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 100-02 (2d Cir. 2007) (allegations centering on "(1) high-volume selling of ATSI's stock with coinciding drops in the stock price, (2) trading patterns around conversion time, (3) the stock's negative reaction to positive news, and (4) the volume of trades in excess of settlement during a 10–day period in 2003" held insufficient to allege market manipulation); *see also Levy v. United States*, 626 F. App'x 319, 322 (2d Cir. 2015) ("The gravamen of manipulation **is deception of investors** into believing that prices … [are] not rigged….").

10

GIBBONS

# Proof of criminal market "manipulation" requires deceitful conduct and artificial prices.

- Proof of deception is also required for a market manipulation claim under Section 9(a), since the "central purpose" of 9(a) "is not to prohibit market transactions which may raise or lower the price of securities, but to keep an open and free market where the natural forces of supply and demand determine a security's price." *SEC v. Malenfant*, 784 F. Supp. 141, 144 (S.D.N.Y. 1992).

- Similarly, deception is required to prove any "scheme or artifice to defraud" as required under 18 U.S.C. § 1348 (penalizing securities and commodities fraud), such as "spoofing" conduct that creates artificial supply and demand. *See United States v. Coscia*, 866 F.3d 782, 796 (7th Cir. 2017).

- Deception is also required to prove market manipulation in CEA cases. Thus in *CFTC v. Wilson*, No. 13 Civ. 7884, 2018 WL 6322024, at *15 (S.D.N.Y. Nov. 30, 2018), Judge Sullivan held that "**mere intent to affect prices is not enough**" for manipulation. In that case, the CFTC acknowledged that if the defendants made actual bids with an honest desire to transact at those posted prices, "there could be no liability." *Id.*

11

# Proof of criminal market "manipulation" requires deceitful conduct and artificial prices.

- We are aware of **no successful criminal prosecution** of a market manipulation charge **that has not involved some act of deception leading to an artificial market price**.

- In this Circuit, for example, every manipulation case we have located has involved deceitful conduct.  *See, e.g., United States v. Goodrich*, 12 F.4th 219, 224 (2d Cir. 2021) (defendants manipulated share price by engaging in wash trades); *Levy v. United States*, 626 F. App'x 319, 322 (2d Cir. 2015) (defendant created artificial market activity by causing third parties to "pre-buy" stock thus enticing others to buy); *United States v. Russo*, 74 F.3d 1383, 1387 (2d Cir. 1996) (defendants "parked" stock in others' accounts to create a false impression of the stock's vitality); *United States v. Regan,* 937 F.2d 823, 829 (2d Cir. 1991) (defendants used "devious means" to conceal identity of the seller); *United States v. Blitz*, 533 F.2d 1329, 1333 (2d Cir. 1976) (defendant was bribed to purchase illiquid stock at artificially high price); *United States v. Wey*, No. 15-cr-611, 2017 WL 237651, at *2 (S.D.N.Y. Jan. 18, 2017) (defendants caused retail brokers to falsely promote stock and engaged in matched trades to inflate share price).

12

GIBBONS

# Proof of criminal market "manipulation" requires deceitful conduct and artificial prices.

- We do not understand the Government's "open-market" manipulation theory to be predicated on any **deceitful conduct** by Mr. Hwang.

- Nor have we seen proof of any such conduct.

- We do not see how the Government's theory leads to any conclusion that there was an **"artificial"** market price.

- Because Mr. Hwang did not engage in any deceptive conduct, there cannot be a criminal prosecution for market manipulation.

13

GIBBONS

# 2. To our knowledge a criminal open-market manipulation case has never been successfully prosecuted

- We are not aware of any successful criminal prosecution for "open-market" manipulation in any jurisdiction.

- The only Second Circuit case to confront and address such a theory of criminal prosecution is *United States v. Mulheren*, 938 F.2d 364 (2d Cir. 1991).  There, the Court reversed a conviction for alleged open-market manipulation brought under Rule 10b-5 and was openly skeptical of the Government's legal theory, stating: "[W]e **harbor doubt about the government's theory** of prosecution," *id.* at 366, and "**we have misgivings about the government's view of the law**."  *Id.* at 368.

- Critically, the Second Circuit has never held that an open-market criminal manipulation case could be brought based purely on a trader's intent to manipulate the market absent the requisite deception and creation of artificial prices.

14



# To our knowledge a criminal open-market manipulation case has never been successfully prosecuted.

- Even assuming such a case could ever be viable in the criminal context, *Mulheren* is clear that the Government would need to prove that "the **purpose** of [the] transaction [was] **solely to affect the price** of [the] security." *Mulheren*, 938 F.2d at 368.

- Any criminal prosecution for alleged open-market manipulation would therefore require that element, among others, to be proven beyond a reasonable doubt.  *Id.* at 368-69 ("The government was obligated to prove beyond a reasonable doubt that [the trades were done] with the intent to raise its price, rather than with the intent to invest.").

- *See also SEC v. Masri*, 523 F. Supp. 2d 361, 373 (S.D.N.Y. 2007) ("[I]f a transaction would have been conducted for investment purposes or other economic reasons, **and regardless of the manipulative purpose**, then it can no longer be said that it is 'artificially' affecting the price of the security or injecting inaccurate information into the market.").

15



# To our knowledge a criminal open-market manipulation case has never been successfully prosecuted

- Where, as the Court instructed in *Mulheren*, the trading evidence is "at least as consistent with innocence as with guilt," there can be no conviction. *United States v. Pauling*, 924 F.3d 649, 656 (2d Cir. 2019).

- As we will address in detail on April 25 when we meet with Ms. Garnett, we have not seen anything like the requisite proof beyond a reasonable doubt that Mr. Hwang's purpose for trading was solely to affect price. Indeed, we believe there is strong evidence that there were *bona fide* reasons for the trades; at the very least, the evidence is as consistent with innocence as with guilt, within the meaning of *Mulheren*. 938 F.2d at 372.

16

GIBBONS

# 3. Even the civil cases involving open-market manipulation claims, which have created a circuit split, do not support a criminal charge here

- Commentators and courts have recognized a "sharp circuit split" over whether actual trading in the open market could ever be considered "manipulation" in violation of the securities laws.  *See, e.g.*, Fox, *et al.*, *Stock Market Manipulation and Its Regulation,* 35 YALE J. ON REG. 67, 119 (2018).

- Most Courts of Appeals – including the Third, Seventh, Eighth, and Eleventh Circuits – reject a legal theory of open-market manipulation based on trading alone, without independent evidence of deception, even in civil suits*.*

17

GIBBONS

# Even the civil cases involving open-market manipulation claims, which have created a circuit split, do not support a criminal charge here

– **Third Circuit**: *GFL Advantage Fund, Ltd. v. Colkitt*, 272 F.3d 189, 205 (3d Cir. 2001) (holding that a manipulator must be shown to have **"injected 'inaccurate information' into the market or created a false impression of market activity"** so as to "distinguish between legitimate trading strategies").

– **Eighth Circuit**: *United States v. Gilbertson*, 970 F.3d 939, 949 (8th Cir. 2020) (adopting *GFL*'s standard when evaluating a manipulation claim).

– **Eleventh Circuit**: *In re Galectin Therapeutics, Inc. Sec. Litig.,* 843 F.3d 1257, 1273 (11th Cir. 2016) (holding that manipulation requires "engag[ing] in any kind of simulated market activity or transactions designed to create an unnatural and unwarranted appearance of market activity").

18

GIBBONS

# Even the civil cases involving open-market manipulation claims, which have created a circuit split, do not support a criminal charge here

– **Seventh Circuit:** *Sullivan & Long Inc. v. Scattered Corp.*, 47 F.3d 857, 859, 864 (7th Cir. 1995) (Posner, J.) (upholding dismissal of §§ 9(a)(2) and 10(b) claims alleging a massive short selling scheme that "jeopardized the solvency of the Chicago (formerly Midwest) Stock Exchange" where there was no "false impression of supply or demand….**On the other side of all of the [defendant's short sale] transactions were real buyers**, betting … however foolishly, that the price of LTV stock would rise.").

– Judge Posner analyzed the manipulation claim in *Sullivan* as follows: "[Plaintiffs] say that [defendant] **prevented the price from rising** (and thereby discouraged buy-ins by making them unprofitable) **by selling** short more and more stock.  That is just to say that [defendant], like a bluffer in a poker game, kept redoubling its bet until the other players lost heart.  But so what?"  *Id.* at 861.

19

GIBBONS

# Even the civil cases involving open-market manipulation claims, which have created a circuit split, do not support a criminal charge here

- Even in the civil context, there has been **only one** Court of Appeals decision allowing an open-market manipulation theory to proceed based on allegations of a trader's "intent" alone*: Markowski v. SEC*, 274 F.3d 525 (D.C. Cir. 2001).

  But even in that case:

  – The Court acknowledged that "[i]t may be hard to separate a 'manipulative' investor from **one who is simply over-enthusiastic, a true believer in the object of investment**."  *Id.* at 528.

  – The allegation in *Markowski* – obviously absent here – was that the purpose of the trading was not to buy stocks based on genuine investment interest in the stocks themselves, but rather to promote the underwriting and brokerage business of the defendants by making it appear the stocks underwritten by the firm were good investments.

20

GIBBONS

# Even the civil cases involving open-market manipulation claims, which have created a circuit split, do not support a criminal charge here

## Second Circuit cases that have cited *Markowski* have not endorsed an open-market manipulation claim based on a trader's intent alone.

- In the recent case of *Set Capital LLC v. Credit Suisse Group*, 996 F.3d 64, 77 (2d Cir. 2021), the Court allowed a civil "open-market manipulation" theory to proceed to discovery but stated that "[w]hile a defendant may manipulate the market through open-market transactions, **some misrepresentation or nondisclosure is required**."  Subsequent language in the opinion suggesting that "[o]pen-market transactions that are not inherently manipulative may constitute manipulative activity when accompanied by manipulative intent" is *dictum,* even for civil litigation purposes.  *Id.* at 77 & n.50.

21

GIBBONS

# Even the civil cases involving open-market manipulation claims, which have created a circuit split, do not support a criminal charge here

- *Set Capital* did not (and could not) overrule prior Second Circuit precedent requiring deceptive conduct to prove market manipulation.  *See ATSI*, 493 F.3d at 101 ("To be actionable as a manipulative act, short selling must be willfully combined with **something more to create a false impression** of how market participants value a security."); *see also Wilson v. Merrill Lynch & Co.,* 671 F.3d 120, 130 (2d Cir. 2011) ("In order for market activity to be manipulative, that conduct must involve **misrepresentation or nondisclosure**.").

- Indeed, the facts alleged in *Set Capital* **involved allegedly deceptive conduct** by Credit Suisse in failing to make adequate disclosures in certain offering documents about their planned hedging activity while issuing additional notes that created market illiquidity and thus caused the price of the notes at issue to fall.  The Court did not endorse a market manipulation theory based only on a trader's alleged "intent" to affect the price of a security bought on the open market.

22

GIBBONS

# Even the civil cases involving open-market manipulation claims, which have created a circuit split, do not support a criminal charge here

- Other courts in the Second Circuit have recognized that *Set Capital* involved alleged deceptive conduct and false statements:

  - *In re Pareteum Sec. Litig.*, No. 19 Civ. 9767, 2021 WL 3540779, at *16 (S.D.N.Y. Aug. 11, 2021) (*Set Capital* was a case in which defendants **failed to adequately disclose** the potential spike in the price for VIX futures contracts in certain offering documents).

  - *In re Allianz Global Investors U.S. LLC Alpha Series Litig.*, 2021 WL 4481215, at *31 (S.D.N.Y. Sept. 30, 2021) (describing *Set Capital* as a case in which a CEO made "potentially **false or misleading statement[s]**").

- And, it bears repeating, this theory has **never** been the basis for a successful criminal prosecution.

23



# 4. Proof of Criminal market "manipulation" requires proving the additional element of willfulness.

- Unlike civil allegations, criminal charges under Section 32(a) of the 1934 Exchange Act also require proof beyond a reasonable doubt that the defendant *"willfully violate[d]"* the statute.  *See* 15 U.S.C. § 78ff(a); *United States v. Cassese*, 428 F.3d 92, 98 (2d Cir. 2005) ("[I]n order to establish a criminal violation of the securities laws, the Government must show that the defendant acted willfully.").

- Proof of willfulness is also required for any criminal charges under Sections 9(a)(2) or 10(b) of the Exchange Act.  *See, e.g.*, *United States v. Vilar*, 729 F.3d 62, 75 (2d Cir. 2013) ("As for the element of willfulness in criminal cases, it comes directly from Section 32 of the Securities Exchange Act of 1934, which permits criminal liability to attach to a violation of Section 10(b), only when the violation is willful.").

24

GIBBONS

# 4. Proof of criminal market "manipulation" requires proving the additional element of willfulness.

- The "willfulness" standard for criminal securities violations at a minimum requires proving beyond a reasonable doubt that the defendant had "knowledge that his conduct was unlawful."  *United States v. Kosinski*, 976 F.3d 135, 154 (2d Cir. 2020).  *See also Cassese,* 428 F.3d at 98 (in securities cases, Government must show, beyond a reasonable doubt, a "realization on the defendant's part that he was doing a wrongful act under the securities laws" (and reversing conviction)); *United States v. Mahaffy*, 693 F.3d 113, 125 (2d Cir. 2012) (a conviction under 18 U.S.C. § 1348 requires proof beyond a reasonable doubt that defendant acted with "fraudulent intent").

- That is an element that, as we will discuss on April 25, the Government cannot satisfy: Mr. Hwang did not and could not know that his trading amounted to conduct that broke the law.

25

GIBBONS

# Topics For Discussion

- The Government's Concerns Regarding Mr. Hwang's Actions: "Open-Market Manipulation"

- How A Case Brought Under Such A Theory Would Be Unprecedented And Would Not Satisfy The Required Elements For A Criminal Manipulation Case

- The Criminal Prosecution Of An Open-Market Manipulation Case Would Be Unwise And Unnecessary

- This Is The Wrong Case To Try To Make New Law Or Test An Open-Market Manipulation Theory Through Criminal Prosecution

26

GIBBONS

## TOPIC 3:
## The Criminal Prosecution Of An Open-Market Manipulation Case Would Be Unwise And Unnecessary

- We believe that the criminal prosecution of this type of open-market manipulation case at this time is both unwise and unnecessary for several reasons:

  – **First**, open-market manipulation defies economic sense.

  – **Second**, open-market manipulation is completely self-deterring and therefore does not require prosecution.

  – **Third**, prosecuting open-market manipulation punishes thought as opposed to action.

27

GIBBONS

# 1. Open-Market Manipulation Defies Economic Sense

- The *Markowski* court, which allowed an open-market manipulation theory to proceed in the civil arena, recognized that such schemes defy economic sense:

  – "Purely 'trade-based' manipulation schemes, in which the manipulator simply buys a security in order to induce higher prices and then sells to take advantage of the price change, are **likely to fail**" because it is "**difficult to sell subsequently at a price high enough to cover both purchase costs and transaction costs**. . . . [I]f an actor's purchases are such as to give the market a material upward thrust, his later sales may equivalently drive it down." *Markowski*, 274 F.3d at 528.

28

GIBBONS

# Open-Market Manipulation
# Defies Economic Sense

- Commentators have agreed with *Markowski* that open-market manipulation schemes defy economic sense:

  - "Naked manipulation is difficult because as the trader tries to buy low, her purchases will, in theory, increase the price of the asset. Likewise, as she tries to sell at the increased price, her sales will decrease the price.  To be successful in a naked manipulation scheme, the trader must have **some way of preventing the price from increasing as she purchases, decreasing as she sells, or both**." Gina-Gail S. Fletcher, *Legitimate Yet Manipulative: The Conundrum of Open-Market Manipulation*, 68 DUKE L.J. 479, 503 (2018).

29

GIBBONS

# 2. Open-Market Manipulation Is Self-Deterring And Therefore Does Not Require Prosecution

- Commentators also have noted that open-market manipulation schemes are self-deterring:

  - "Price pressure effects are symmetrical.  If purchases increase the demand and thus the price, sales will have the opposite effect. Again, the scheme is **completely self-deterring**." Daniel R. Fischel & David J. Ross, *Should the Law Prohibit "Manipulation" in Financial Markets?*, 105 HARV. L. REV. 503, 518-19 (1991).

  - Self-deterring conduct does not, of course, require criminal prosecution.

30

GIBBONS

# 3. Prosecuting Open-Market Manipulation Punishes Thought As Opposed To Action

- Apart from the economically irrational and self-deterring aspect of an open-market manipulation scheme, commentators also have observed that the theory creates the specter of criminalizing thought instead of manipulative conduct:

  – "[M]anipulative trades are extremely difficult, perhaps impossible, to identify.  This difficulty stems from one simple fact — **it is hard to read people's minds**.  For this reason, the law typically requires an objectively harmful act before sanctions are levied.  Bad intent by itself is not sufficient.  Even when intent is an issue, it is typically determined by reference to objective evidence."  Fischel & Ross, *Should the Law Prohibit "Manipulation" in Financial Markets?*, 105 HARV. L. REV. at 518-19.

31

GIBBONS

# Prosecuting Open-Market Manipulation Punishes Thought As Opposed To Action

– In a prosecution for open-market manipulation, "intent plays an outsized role in determining liability; this enforcement approach neither makes the markets safer nor adequately proscribes open-market manipulation.  The exclusive reliance on intent short-circuits lawmakers' attempts to curb, and plaintiffs' attempts to successfully prosecute, open-market manipulation because (1) intent is both **over- and under-inclusive** and (2) intent **does not explain how or why legitimate transactions distort the markets**." Fletcher, *Legitimate Yet Manipulative: The Conundrum of Open-Market Manipulation*, 68 DUKE L.J. at 515.

32

GIBBONS

# Prosecuting Open-Market Manipulation Punishes Thought As Opposed To Action

– "Congress did not mandate the regulators to be Thought Police. According to the plain language of the statutes and Supreme Court precedent, each regulator's mandate is limited to policing deceptive or manipulative **conduct**. . . . Requiring proof of deceptive or manipulative **conduct** is important because **open market bids and offers do not by themselves communicate false information** to the market. In addition, they typically do not create an artificial price.  They simply announce that a market participant is willing to buy or sell a specified quantity of a product at a specified price – full stop."  Thomas R. Millar & Paul J. Pantano, Jr., *Open-Market Manipulation: The Dangers of Policing Thought*, 39 No. 10 FUTURES & DERIVATIVES L. REP. NL 2 (Nov. 2019).

33

GIBBONS

# Prosecuting Open-Market Manipulation Punishes Thought As Opposed To Action

- Criminally prosecuting open-market trading activity can also have perverse consequences for markets by actually chilling conduct and thus reducing market liquidity and fair price discovery:

    - "Grounding claims of manipulation solely on intent, particularly when the proof is circumstantial, may deter traders from engaging in beneficial market activity out of a fear of liability.  Traders may exit the markets to avoid penalization for their legitimate transactions that, *ex post*, may be construed as manipulative – a net negative result for the markets." Fletcher, *Legitimate Yet Manipulative: The Conundrum of Open-Market Manipulation*, 68 DUKE L.J. at 517.

34

GIBBONS

# Topics For Discussion

- The Government's Concerns Regarding Mr. Hwang's Actions: "Open-Market Manipulation"

- How A Case Brought Under Such A Theory Would Be Unprecedented And Would Not Satisfy The Required Elements For A Criminal Manipulation Case

- The Criminal Prosecution Of An Open-Market Manipulation Case Would Be Unwise And Unnecessary

- This Is The Wrong Case To Try To Make New Law Or Test An Open-Market Manipulation Theory Through Criminal Prosecution

35

GIBBONS

## TOPIC 4:
## This Is The Wrong Case To Try To Make New Law Or Test An Open-Market Manipulation Theory Through Criminal Prosecution

- There are several reasons why this case should not be the first to test such a theory and would, respectfully, constitute an imprudent exercise of prosecutorial discretion.

- First, this is a case in which, far from profiting, Mr. Hwang – trading his own money through his family office and not that of others – lost money as a result of the actions at issue here.

  – "One of the hallmarks of manipulation is some profit or personal gain inuring to the alleged manipulator."  *Mulheren*, 938 F.2d at 370.  Mr. Hwang gained nothing but instead **lost** billions of dollars of **his own** money through his family office.

36

GIBBONS

## TOPIC 4:
## This Is The Wrong Case To Try To Make New Law Or Test An Open-Market Manipulation Theory Through Criminal Prosecution

– Nor was Mr. Hwang's purpose in trading based on personal profit or greed– that is, you would be bringing the first open-market manipulation case against a person whose long- and short-term plans were charitable.

- Mr. Hwang took no salary, and he withdrew no money from the Fund in 2021, and a mere $500,000 in 2020.

- Over the life of Archegos, Mr. Hwang withdrew for personal use less than the amount of his and his wife's money with which Archegos was formed.  Over that same period, Mr. Hwang caused Archegos to give more than $500 million to charity.

- Pursuant to Mr. Hwang's estate plan, prepared in 2015, upon the death of him and his wife more than 99% of the value of the Archegos fund (as measured in March 2021 just prior to the fund's collapse) would have passed to charity.

37

GIBBONS

# This Is The Wrong Case To Try To Make New Law Or Test An Open-Market Manipulation Theory Through Criminal Prosecution

- Second, Mr. Hwang's actions should not be viewed with 20/20 hindsight.

  – We appreciate that what happened in March 2021 placed a significant strain on the financial system.  But even as late as March 23, 2021, the fund had significant assets, much more than in December 2020, and it was not a foregone conclusion that the fund would collapse.   As we will discuss more on April 25, Mr. Hwang was confident that his investment strategy would succeed.

  – This would not be the first time where, after a significant market event, consensus was reached that new trading or disclosure requirements are necessary to strengthen the functioning of the securities markets.  But those, not a criminal prosecution, are what is necessary if there is to be reform.

38

GIBBONS

## This Is The Wrong Case To Try To Make New Law Or Test An Open-Market Manipulation Theory Through Criminal Prosecution

- Third, this case is also unwise to bring because most of the purchases and sales of securities were done by swaps through counterparties.

  – Mr. Hwang had no control over whether the swap counterparty would buy the underlying securities as a hedge, how much it would buy on the open market, or how long it would actually hold those securities once bought. This creates a further attenuation between any open-market "manipulation" and actual effect on price.

  – And to the extent swap trading kept Mr. Hwang's purchases from being known to the public, that reduces rather than increases the likelihood of false signals to the market.

  – Moreover, even if disclosure was required (which it was not), such disclosure would not have affected the market price at the time of the buying or selling because there is always a time-lapse between such purchase or sale and the filing of any disclosure statement.

39



## This Is The Wrong Case To Try To Make New Law Or Test An Open-Market Manipulation Theory Through Criminal Prosecution

- Finally, prosecuting an open-market manipulation theory implicates serious vagueness and due process concerns.

  – Prohibitions in criminal statutes must be defined "with sufficient definiteness that ordinary people can understand **what conduct is prohibited**" or "in a manner that **does not encourage arbitrary or discriminatory enforcement**." *Skilling v. United States*, 561 U.S. 358, 402-03 (2010) (quoting *Kolender v. Lawson*, 461 U.S. 352, 357 (1983)).

  – "In recent years, the Supreme Court has decided a handful of cases in which it has said that a federal statute violates the Due Process Clause because of excessive vagueness…. The argument is sometimes framed as a concern that the vague law delegates this power to the courts. But, as Justice Gorsuch recently explained, the worry is not 'only that vague laws risk allowing judges to assume legislative power. Vague laws also threaten to transfer legislative power to police and prosecutors, leaving to them the job of shaping a vague statute's contours through their enforcement decisions.'" F. Andrew Hessick & Carissa Byrne Hessick, *Nondelegation and Criminal Law*, 107 VA. L. REV. 281, 334–35 (2021).

40

GIBBONS

# This Is The Wrong Case To Try To Make New Law Or Test An Open-Market Manipulation Theory Through Criminal Prosecution

– Prosecuting an open-market manipulation theory using a purely intent-based standard to criminalize market actions as "manipulation" – without more statutory guidance from Congress – also raises serious concerns that the relevant statutory provisions "do[] not comport with the Constitution's guarantee of due process" inasmuch as the defendant **lacks fair notice of precisely what conduct is criminal**.  *Johnson v. United States*, 576 U.S. 591, 602 (2015).

– As commentators have pointed out, "the law governing manipulations has become an embarrassment—confusing, contradictory, complex, and unsophisticated." Fischel & Ross, *Should the Law Prohibit "Manipulation" in Financial Markets?*, 105 HARV. L. REV. at 506 (citing Edward T. McDermott, *Defining Manipulation in Commodities Futures Trading: The Futures "Squeeze,"* 74 N.W.U. L. REV. 202, 205 (1979)).

41

GIBBONS

# This Is The Wrong Case To Try To Make New Law Or Test An Open-Market Manipulation Theory Through Criminal Prosecution

– Applying such vague law to conduct that is not clearly prohibited by Congress violates the Constitution.

– As the Supreme Court recently summarized it:  The "doctrine prohibiting the enforcement of vague laws rests on the twin constitutional pillars of due process and separation of powers.…Vague laws contravene [due process because] statutes must give people 'of common intelligence' fair notice of what the law demands of them….Vague laws also undermine the Constitution's separation of powers and the democratic self-governance it aims to protect. Only the people's elected representatives in the legislature are authorized to 'make an act a crime'…. Vague statutes threaten to hand responsibility for defining crimes to relatively unaccountable police, prosecutors, and judges, eroding the people's ability to oversee the creation of the laws they are expected to abide." *United States v. Davis*, 139 S.Ct. 2319, 2325 (2019) (collecting and citing cases).

42

GIBBONS

## This Is The Wrong Case To Try To Make New Law Or Test An Open-Market Manipulation Theory Through Criminal Prosecution

– In short, given the novelty of this manipulation theory, its apparent rejection by the Second Circuit, its distinction from other manipulation cases involving deceptive conduct, the split in the circuits even in the civil arena, and its lack of grounding in economics, it would be unfair – and unconstitutional – to spring it on a defendant who could not possibly have known that his actions could be deemed criminal.

– We believe that courts, including the U.S. Supreme Court, would agree with us on this issue, rendering a criminal prosecution and all that it would entail a true waste of prosecutorial (as well as judicial) resources.

43

GIBBONS

# Conclusion

Thank you for your time.

We look forward to our next meeting on April 25.

44

GIBBONS