# EXHIBIT T



LAWRENCE S. LUSTBERG
Director

Gibbons P.C.
One Gateway Center
Newark, New Jersey 07102-5310
Direct: (973) 596-4731 Fax: (973) 639-6285
llustberg@gibbonslaw.com

July 19, 2022

**VIA E-MAIL**

Matthew Podolsky, Assistant U.S. Attorney
Alex Rossmiller, Assistant U.S. Attorney
Andrew Thomas, Assistant U.S. Attorney
1 Saint Andrews Plaza
New York, New York  10007

   Re: United States of America v. Hwang, *et al.*,
      No. 22-cr-240-AKH

Counsel:

  We write on behalf of Mr. Hwang to express our concern that the Government is not fulfilling its responsibility to promptly produce *Brady* material, as is required by Magistrate Judge Willis's directive at the arraignment on April 27, 2022, and the Order entered by the Court on that same date (ECF No. 4).  That Order requires the production of "all information 'favorable to an accused' that is 'material either to guilt or punishment' and that is known to the Government." *Id.* at 1 (citing *Brady v. Maryland*, 373 U.S. 83, 87 (1963)).  The Order makes clear that it extends to "all information subject to disclosure . . . from all current or former federal, state, and local prosecutors, law enforcement officers, and other officers who have participated in the prosecution, or investigation that led to the prosecution, of the offense or offenses with which [Mr. Hwang] is charged." *Id.* at 2.  Moreover, disclosure must be made "promptly after its existence becomes known to the Government," *id.* at 1, and "regardless of whether the Government credits" the information, *id.* at 2.

  Although Judge Willis's Order makes clear that the Government's "obligation applies regardless of whether the defendant requests this information," *id.* at 1, and although we have no doubt, given the presentations that we made on behalf of Mr. Hwang, that the Government has a thorough understanding of Mr. Hwang's defense, in an understandable abundance of caution, we here seek to describe at least some of the categories of *Brady* material that we believe exists and is subject to disclosure under the Court's Order, but which has not yet been provided in full or, in some cases, at all.  For some of these categories, our ongoing review of the nearly seven-million-page production that you made on May 23 has uncovered some exculpatory evidence.  But, as indicated below, other information, including documents for counterparties that we would expect to see, appears not to have been disclosed.  It is, of course, possible that we have not yet found them, especially if they are part of the recently received production that we only just accessed, but also if they simply do not exist.  But to the extent they comprise part of the investigation that gave rise to this prosecution and have not been disclosed to us, or are otherwise known to the Government, we here request that you promptly produce them in accordance with the Court's Order.

GIBBONS P.C.

AUSAs Podolsky, Rossmiller, and Thomas
July 19, 2022
Page 2

For your convenience, we have grouped these requests into categories, as follows:

**Presentations by counterparties to you, the SEC, the CFTC and/or to other regulators or government entities**.  We have located in the production presentations that Goldman Sachs, Jefferies, Morgan Stanley, and Nomura apparently made to the CFTC in May/June 2021, which present a chronology of events, from the banks' perspectives, leading up to Archegos's demise and describe their relationships and course of dealing with Archegos. Some of these descriptions run counter to the course of dealings alleged in the Indictment and thus can certainly be viewed as exculpatory.  Please produce, insofar as you have not done so already, similar presentations made by the other counterparties (or potential counterparties) with which Archegos did (or proposed to do) business, whether to the Department of Justice, the SEC, the CFTC, or other U.S. and non-U.S. Government or regulatory agencies or entities, including Congressional committees, that are within your possession, custody or control.

**Logs / call summaries between the counterparties and Archegos**.  Similarly, we have found logs and notes of calls that certain counterparties – Credit Suisse, Goldman Sachs, and Nomura – had with Archegos dating back as far as March 2020.  These documents bear directly on, and in some instances undermine, the Indictment's allegations and we certainly view them as exculpatory.  Therefore, to the extent that similar logs and call summaries were produced by other counterparties or potential counterparties, we ask that they also be produced.

**Internal reports prepared by/for counterparties following Archegos's demise**.  In addition to the report that Paul Weiss prepared for Credit Suisse (the "Credit Suisse Report") – aspects of which are clearly exculpatory – we came across in the production an internal assessment conducted by UBS.  Any reports that other counterparties, or potential counterparties, prepared or commissioned regarding this matter that are in the possession, custody or control of the Government should likewise be produced.

**Market Data Concerning Archegos's Top Positions**.  We have identified data apparently produced by the NYSE and NASDAQ concerning certain of Archegos's top trading positions (including DISCA, DISCK, IQ, and VIAC), but not others such as BIDU, SHOP, FTCH, GSX, TME, and VIPS.  Market data concerning these positions bear directly on, and in some instances undermine, the Indictment's allegations and we view them as exculpatory. Therefore, to the extent market trading data has been produced to you by third parties concerning any of these additional Archegos positions, we ask that this data be produced to us.

**Documents showing how counterparties hedged their swaps with Archegos**.  Certain documents we have identified to date suggest that counterparties hedged their positions in ways other than buying shares of underlying stock, thereby confirming findings contained in the Credit Suisse Report (at pp. 38, 43 (hedging using off-setting swaps)) and casting doubt on a central tenet of the theory of manipulation asserted in the Indictment.  Please produce any documents in the possession, custody or control of the Government that describe or reflect any counterparty's hedging strategy (or hedge trades or positions themselves) vis-à-vis their total return swaps with

GIBBONS P.C.

AUSAs Podolsky, Rossmiller, and Thomas
July 19, 2022
Page 3

Archegos; this would include any information obtained from representatives of counterparties during the course of interviews or otherwise during the Government's investigation that would show or tend to show how any given counterparty hedged its positions with Archegos, including in ways other than buying shares of underlying stock, as described above.

**Fees the counterparties earned from Archegos**. Some documents we have seen to date indicate that counterparties generated multi-million dollar fees from Archegos. Those lucrative sums can explain why they continued to do business with Archegos, as the Credit Suisse Report (at pp. 23-24) concluded: "[T]he business was focused on increasing Archegos's revenues with CS, even at the expense of increasing the risk to CS far in excess of applicable limits." Because this Archegos-related fee information is obviously exculpatory, whether it is in underlying documents or was obtained from interviews of counterparty representatives or others, it should – if within the possession, custody or control of the Government – be immediately produced, for all counterparties.

**Waivers or offers of waiver by counterparties or potential counterparties of Archegos's margin, capacity, or other restrictions**. Although we have not seen them in discovery, any voluntary waivers by counterparties of Archegos's margin, capacity, or other restrictions clearly undermine the notion that they were misled into extending credit to Archegos, as alleged in the Indictment. Accordingly, communications regarding or reflecting such waivers, or any documentary evidence, or summaries of statements discussing this issue, should be promptly produced.

**Documents evidencing improper conduct by counterparties**. To the extent your investigation has revealed evidence, whether in documents the counterparties produced or during interviews of their representatives, that any of the counterparties engaged in improper conduct regarding stocks in which they knew Archegos was invested, we ask that it be produced to us. This improper conduct would include, but not be limited to, front-running – *i.e.*, trading Archegos's names on inside knowledge in advance of the block trading during the week of March 22, 2021, in connection with Archegos's attempt to exit its short position in FUTU, or otherwise. Such activity is obviously favorable to the defendants inasmuch as it furnishes an alternative explanation for stock price changes that is unrelated to Archegos's own trading; it also provides an entirely legitimate explanation for Archegos's lawful and indeed prudent practice of not disclosing that which it was not legally obligated to disclose, including with counterparties.

**Archegos communications with counterparties that make no mention of Mr. Hwang**. As you know from our repeated presentations to your office, including those that occurred after the Government had, quite clearly, already determined to charge this case and taken steps to do so but did not disclose this to the defense, our position is that Mr. Hwang delegated to others, and thus was not involved with, communications that Archegos may have had with counterparties or potential counterparties. It follows that any such communications, whether via

GIBBONS P.C.

AUSAs Podolsky, Rossmiller, and Thomas
July 19, 2022
Page 4

email or recorded phone calls, that concern the status of its portfolio (*i.e.*, composition, concentration, liquidity) and do not involve or refer to Mr. Hwang are exculpatory and must be "promptly" produced pursuant to the Court's Order. Indeed, this is so obvious to us that any failure to have provided us with a complete set of these communications by now would, if that is the case, violate the Court's Order.

**Witness statements from Archegos employees**. We understand that you interviewed multiple individuals who worked at Archegos, including from Research, Trading, Compliance, and other functional groups. Although we are not aware of the full substance of information those witnesses conveyed to the Government during these interviews, it is our understanding that many, if not all, of them were largely, if not entirely, exculpatory of Mr. Hwang with regard to both theories of the indictment – the manipulation claim and the misrepresentation claim. Although, again, given our presentations, we are certain you know which statements you received are consistent with Mr. Hwang's defense and thus exculpatory (*e.g.*, statements concerning target prices and trade execution), if you have any questions in that regard, we would be willing to meet and confer with you to further explain our view of how we define – and we think a Court would define – exculpatory information. In any event, obviously, no records or summaries of those statements have been provided to us, which we believe to be a clear violation of the Court's Order. They should be promptly provided.

**Statements obtained from third parties other than the counterparties**. Any statements you obtained from third parties, including but not limited to Teng Yue Partners and Tao Li, that contain information that would tend to exculpate Mr. Hwang with regard to any charges in the Indictment should be promptly provided. Again, if you have any questions as to what we would consider exculpatory notwithstanding that, in response to your requests for specific information, we have already laid out our defense in the course of attorney and client proffers and other presentations to you and your colleagues, we would be happy to meet and confer to clarify.

**Exculpatory statements made by William Tomita or Scott Becker**. In particular, although their counsel have not been willing to share information with us or to make the Government's cooperating witnesses, Messrs. Tomita and Becker, available to us since they began cooperating with the Government, we are certainly entitled to any information obtained from them that is favorable to Mr. Hwang, which information should be promptly provided in appropriate form, as well as any other impeachment material. Again, although we doubt you will, if you have any questions as to what we regard to be exculpatory, we are willing to meet and confer to discuss such questions. Please advise whether you wish to do so.

GIBBONS P.C.

AUSAs Podolsky, Rossmiller, and Thomas
July 19, 2022
Page 5

      Please let us know whether you will be providing this information and when so that, if we cannot agree on what will be turned over and on what timetable, we can raise these issues in a timely fashion with the Court.  Thank you for your attention to this matter.

                            Respectfully yours,

                            *s/ Lawrence S. Lustberg*

                            Lawrence S. Lustberg

cc:    Mary E. Mulligan, Esq.