# EXHIBIT W



MARY E. MULLIGAN<br>
mmulligan@fklaw.com<br>
212.833.1123

August 29, 2022

BY E-MAIL

AUSA Matthew D. Podolsky
AUSA Andrew M. Thomas
AUSA Alexander Rossmiller
U.S. Attorney's Office for the SDNY
One St. Andrews Plaza
New York, NY 10007

Re:   *United States v. Hwang et ano.*, No. 22-cr-240 (AKH)

Dear Counsel:

On behalf of our client Patrick Halligan, we write to request that the Government furnish discovery materials required to be produced under *Brady v. Maryland*, 373 U.S. 83 (1963) and its progeny, but not yet produced, so that Mr. Halligan may adequately prepare for trial and the defense can make the necessary pretrial motions pursuant to the schedule currently under discussion among the parties.

The timely production of these materials is required under *Brady*, as well as the Order entered by Magistrate Judge Willis on April 27, 2022 [Dkt. No. 4].[1] These materials are necessary so that the defense has sufficient time to conduct any necessary factual investigation, may determine and make appropriate pretrial motions, and may prepare for trial (including through the issuance of subpoenas *duces tecum*, if necessary). We are prepared to meet and confer with the Government regarding the timing of its response to the requests set forth in this letter. We would like to conduct that meet and confer before next week's conference before Judge Hellerstein, and kindly ask that the Government provide some times that it would be available for that discussion.

The Government's obligations under *Brady* apply with full force "regardless of whether the defendant has expressly requested [particular exculpatory] evidence and encompass[] both exculpatory and impeachment evidence." *Montgomery v. Bobby*, 654 F.3d 668, 678 (6th Cir. 2011); *Kyles v. Whitley*, 514 U.S. 419, 432-33 (1995). Defendants bear no burden to ensure that the Government fulfills its disclosure obligations. Nonetheless, in order to assist the Government, and to avoid any ambiguity as to our views as to what evidence is

---

[1] *See also United States v. Mitchell*, 372 F. Supp. 1239, 1257 (S.D.N.Y.) ("[T]he due process implications of Brady [obligate] the Government to disclose exculpatory information as soon as the character of such information is recognized.") (subsequent history omitted); *United States v. Goldman*, 439 F. Supp. 337, 349 (S.D.N.Y. 1977) (directing "that all *Brady* material be immediately provided to the defendant").

AUSA Matthew D. Podolsky *et al.*     - 2 -     August 29, 2022

exculpatory in this case, we set forth below a list of examples of categories of documents or information that we demand that the Government produce pursuant to *Brady*. These categories of documents and information are subject to production because they tend to exculpate Mr. Halligan, may be favorable to the defense, may tend to affect the weight or credibility of evidence to be presented by the Government at trial, or would tend to reduce the punishment imposed if the Government were to obtain a conviction.

These demands encompass all documents and information in the possession, custody, or control of the Government, including the U.S. Attorney's Office for the Southern District of New York, the Department of Justice ("DOJ"), and the Federal Bureau of Investigation ("FBI"). Similarly, they encompass all documents and information in the possession, custody, or control of any federal, state, or local agency that has provided assistance to the Government or concurrently investigated the facts underlying the Indictment. This includes, without limitation, the Securities and Exchange Commission ("SEC") and the Commodities Futures Trading Commission ("CFTC").[2]

Reserving our right to supplement this list with additional examples, and without limiting Mr. Halligan's rights under *Brady* and its progeny to these examples, we seek the following:

1. Any and all statements made by any person (including without limitation any witness or counsel to any witness; any employee of any of Archegos's counterparties or counsel to any such employee; or counsel or any other representative of any of Archegos's counterparties) to the U.S. Attorney's Office, the FBI, the SEC, or the CFTC as to the following matters:

    a) reflecting doubt or uncertainty that Mr. Halligan participated in any conduct alleged in the Indictment (including the alleged making of false statements or participating in an alleged scheme to defraud certain of Archegos's counterparties).

---

[2] *See* DOJ Office of Public Affairs Release: "Four Charged in Connection with Multibillion-Dollar Collapse of Archegos Capital Management," April 27, 2022, *available at* https://bit.ly/3dRCFjF ("This case was investigated by the U.S. Attorney's Office for the Southern District of New York and the FBI. The Justice Department's Organized Crime and Gang Section provided valuable assistance. The U.S. Securities and Exchange Commission and the U.S. Commodity Futures Trading Commission, each of which today filed a parallel civil action, assisted and cooperated in this investigation.").

Given the joint nature of this investigation, we request that the Government ensure that all investigating offices (including without limitation the SDNY, the DOJ, the FBI, the SEC, and the CFTC) preserve all of their notes and reports (including drafts) of all persons interviewed during the investigation. We further request that the Government confirm that, insofar as it makes representations that it has searched for and produced documents responsive to these requests or otherwise disclosable (under *Brady* or otherwise), that its searches and productions have included documents held by all of the foregoing investigating offices.

AUSA Matthew D. Podolsky *et al.*      - 3 -      August 29, 2022

      b)      reflecting doubt or uncertainty that the conduct alleged in the Indictment (including the alleged making of false statements or participating in an alleged scheme to defraud certain of Archegos's counterparties) actually occurred.

      c)      reflecting that Mr. Halligan is a truthful person and/or a person of good character.

      d)      reflecting that Mr. Halligan never misled him, her, or it by statement or omission or expressing doubt or uncertainty that Mr. Halligan misled him, her, or it by statement or omission.

      e)      reflecting the accuracy of any of Mr. Halligan's statements to any of Archegos's trading counterparties regarding the concentration of the largest positions in Archegos's portfolio, the liquidity of Archegos's portfolio, or the composition of Archegos's portfolio; or reflecting that any such statements made by Mr. Halligan were believed by him to be accurate at the time they were made.

2.      Any and all documents or information reflecting, relating to, or evidencing that Mr. Halligan was unaware of false or misleading statements made by any individual (including without limitation Scott Becker or William Tomita) to any of Archegos's counterparties regarding the concentration of the largest positions in Archegos's portfolio, the liquidity of Archegos's portfolio, or the composition of Archegos's portfolio. This includes, without limitation, any statement made by Mr. Becker or Mr. Tomita indicating that they did not tell or that they concealed from Mr. Halligan that they made or were making false or misleading statements regarding the foregoing subjects.

3.      Any and all documents or information (including statements made by any person) reflecting, relating to, or evidencing that Mr. Halligan instructed employees of Archegos's Operations department,[3] including Mr. Becker, to be truthful and accurate in their interactions with Archegos's counterparties.

4.      Any and all documents or information reflecting, relating to, or evidencing that Mr. Becker acted independently of Mr. Halligan, and did not take direction from Mr. Halligan, with respect to his communications with Archegos's counterparties. This includes, without limitation, any and all documents or information reflecting that Mr. Halligan did not direct or control statements (including the content of the statements and whether and how to communicate the statements) that Mr. Becker made to Archegos's counterparties regarding the concentration of the largest positions in Archegos's portfolio, the liquidity of Archegos's portfolio, or the composition

---

[3] This includes, but is not limited to, Scott Becker, David Hohlman, Jesse Martz, and Barima Osei.

AUSA Matthew D. Podolsky *et al.*      - 4 -      August 29, 2022

        of Archegos's portfolio. It also includes, without limitation, any and all documents or information reflecting that Mr. Becker took direction from person(s) other than Mr. Halligan regarding his communications with Archegos's counterparties concerning the foregoing subjects.

5. Any and all documents or information reflecting, relating to, or evidencing that Mr. Tomita acted independently of Mr. Halligan, and did not take direction from Mr. Halligan, with respect to his communications with Archegos's counterparties. This includes, without limitation, any and all documents or information reflecting that Mr. Halligan did not direct or control statements (including the content of the statements and whether and how to communicate the statements) that Mr. Tomita made to Archegos's counterparties regarding the concentration of the largest positions in Archegos's portfolio, the liquidity of Archegos's portfolio, or the composition of Archegos's portfolio. It also includes, without limitation, any and all documents or information reflecting that Mr. Tomita took direction or control from person(s) other than Mr. Halligan regarding his communications with Archegos's counterparties concerning the foregoing subjects.

6. Any and all documents or information reflecting, relating to, or evidencing that Mr. Halligan did not direct or control the making of the statements (including the content of the statements and whether and how to communicate the statements) that are alleged in the Indictment or that the Government otherwise contends to have been false or misleading.

7. Any and all documents or information reflecting, relating to, or evidencing that Mr. Halligan did not have authority over trading strategy, the implementation of trading strategy, or the execution of particular trades at Archegos.

8. Any and all documents or information reflecting, relating to, or evidencing that statements allegedly made to Archegos's counterparties by any person regarding the concentration of the largest positions in Archegos's portfolio, the liquidity of Archegos's portfolio, or the composition of Archegos's portfolio were not considered by those counterparties to be material, did not affect those counterparties' decisions regarding their business dealings with Archegos, or were not believed to be truthful or accurate by the counterparties.

9. Any and all documents or information reflecting, relating to, or evidencing the fees and compensation that Archegos's counterparties received from Archegos during the period from 2016 through 2021. This includes, without limitation, any bonuses, raises, or any other compensation that any employee of any counterparty received based on the fees or commissions that his or her employer received from Archegos.

AUSA Matthew D. Podolsky *et al.*　　　- 5 -　　　　　　　　　　　　August 29, 2022

10. Any and all documents or information reflecting, relating to, or evidencing that any employee of any of Archegos's counterparties was aware or believed at any time that:

    a) Archegos's portfolio included positions with a concentration greater than 35% of Archegos's net asset value; or

    b) Archegos's portfolio would take more than two weeks to fully liquidate at 15% average daily trading volume; or

    c) Archegos's portfolio positions were generally similar across its counterparties (i.e., the positions that Archegos held at one counterparty were similar to the positions that Archegos held at other counterparties).

11. Any and all documents or information reflecting, relating to, or evidencing that any counterparty or any employee of any of Archegos's counterparties was not competent to assess the information that Archegos provided to that counterparty regarding the concentration of the largest positions in Archegos's portfolio, the liquidity of Archegos's portfolio, or the composition of Archegos's portfolio.[4]

12. Any and all documents or information reflecting, relating to, or evidencing the failure of U.S. regulators (including the SEC and the CFTC) to implement rules or regulations concerning security-based swaps or any other financial instruments or contracts that are the subject of trades or transactions described in the Indictment (or any trades or transactions that the Government otherwise contends were unlawful or related to unlawful conduct).

13. Any and all documents or information reflecting, relating to, or evidencing that any counterparty did not devote sufficient resources to assess, evaluate, or act upon information that Archegos provided to that counterparty regarding the concentration of the largest positions in Archegos's portfolio, the liquidity of Archegos's portfolio, or the composition of Archegos's portfolio.[5]

---

[4] At least one counterparty appears to have reached this conclusion. *See* Credit Suisse Group Special Committee of the Board of Directors Report on Archegos Capital Management, dated July 29, 2021 ("CS Report") at 2 ("The Archegos matter directly calls into question the competence of the business and risk personnel who had all the information necessary to appreciate the magnitude and urgency of the Archegos risks, but failed at multiple junctures to take decisive and urgent action to address them."). This request includes all documents (including statements) underyling this conclusion.

[5] *See* CS Report at 53 ("U.S. CRM Hedge Fund group was often "playing catch up" on its tasks—including annual counterparty credit reviews and the investigation of limit breaches—not because CRM personnel were shirking their responsibilities, but because they did not

AUSA Matthew D. Podolsky *et al.*   - 6 -   August 29, 2022

14. Any and all documents or information reflecting, relating to, or evidencing the identification of any deficiencies, lapses, weaknesses, or needs for improvements at any counterparty with respect to that counterparty's ability to assess potential risks associated with its business relationships with entities including Archegos.[6]

15. Any and all documents or information reflecting, relating to, or evidencing that any losses that counterparties claimed to have experienced as the result of their trading with Archegos (as alleged at Paragraph 67 of the Indictment) were caused in whole or in part by market forces or other circumstances that were independent of Archegos (such as extrinsic developments adversely affecting the price of some of Archegos's largest positions).

16. Any and all documents or information reflecting, relating to, or evidencing conduct or actions by any of Archegos's counterparties or any third parties (or their respective executives, employees, or agents) that may have impacted the decline of the price of the positions in Archegos's portfolio.

17. Any and all documents or information reflecting, relating to, or evidencing any agreement by Archegos's counterparties (or some of them) regarding actions to be taken or not to be taken in response to the decline in the value of Archegos's portfolio and Archegos's inability to make certain margin calls beginning the week of March 22, 2021. This includes, without limitation, any and all documents or information relating to agreements regarding the unwinding of Archegos-related positions.

18. Any and all documents or information reflecting, relating to, or evidencing that any losses that counterparties claimed to have experienced as the result of their trading with Archegos (as alleged at Paragraph 67 of the Indictment) were caused in whole or in part by the counterparties' own malfeasance, negligence, recklessness, incompetence, mismanagement, or inaction (whether through the intentional decision not to act or the failure to act). This includes, without limitation, any and all statements by any counterparty acknowledging such matters, and all documents underlying such statements.

19. Any and all documents or information relating to the termination, demotion, negative performance evaluation, or compensation reduction of any counterparty's employee resulting from or relating to that employee's dealings

---

have the resources to complete their work in a timely manner."). This request includes all documents (including statements) underlying this conclusion.

[6] For example, an internal audit at Nomura in February 2021 appears to have identified the need for improvements in the EMEA Prime Finance division, including related to the resources being devoted to risk management and the oversight of the risk control functions. *See* SDNY_P001_0005249203. This request includes all documents (including statements) underlying these findings.

AUSA Matthew D. Podolsky *et al.*         - 7 -                            August 29, 2022

         with Archegos.[7] This includes, without limitation, all documents and information reflecting the reason for such termination, demotion, negative performance evaluation, or compensation reduction.

20. Any and all documents or information relating to any potential violation of law, regulation, or internal bank policy with respect to any counterparty's unwinding or liquidation of Archegos-related positions (including hedges). This includes, without limitation, all documents and information relating to any investigation of wrongful conduct (including conduct that may be unlawful or violative of bank policy) in connection with the "block sales" of certain Archegos-related positions in or around the week of March 22, 2021.[8]

21. Any and all documents or information reflecting, relating to, or evidencing unlawful conduct or actions by any of Archegos's counterparties (including their respective executives, employees, or agents) during the period from 2016 to present.

22. Any and all documents or information reflecting any counterparty's failure to enforce its rights (whether contractual or otherwise) upon Archegos's breach of any terms of agreement between Archegos and the counterparty (such as in the event of Archegos's failure to deliver audited financials by a specified date, or a decline in Archegos's net asset value over a specified period).

23. Any and all documents or information reflecting that any employee of Archegos (including but not limited to Mr. Halligan) believed that during the week of March 22, 2021, Archegos was confronting a liquidity issue, not a solvency issue.

24. Any and all documents or information concerning proffers made to the U.S. Attorney's Office, the FBI, the SEC, or the CFTC by any person (including any counterparty or counsel for any counterparty) containing statements that may tend to exculpate Mr. Halligan.

25. Any documents or information not otherwise listed that reflect or evidence (i) the motivation of any Government witness or the witness's employer (including any of Archegos's counterparties) to cooperate with the

---

[7] *See, e.g.*, CS Report at 164-65 ("CS has taken actions against 23 individuals who failed to discharge their responsibilities to protect CS from Archegos's excessive risk-taking, including those most directly involved in Archegos, as well as several members of CPOC. These actions include termination of employment (nine individuals) and monetary penalties totaling approximately $70 million in the aggregate."). Other banks have also disclosed job actions as the result of their review of their employees' performance related to Archegos.

[8] *See, e.g.*, Sridhar Natarajan et ano., "Morgan Stanley Banker Put on Leave as Block-Trade Probe Heats Up," BLOOMBERG, August 27, 2022.

AUSA Matthew D. Podolsky *et al.* - 8 - August 29, 2022

Government; (ii) the competency or credibility of the witness; or (iii) the witness' bias or hostility against Mr. Halligan.

We request that you provide all *Brady* material promptly and that you index and clearly label any *Brady* material as such. We further request that you specifically draw our attention to all such material contained within your prior or future productions. *See United States v. Gil*, 297 F.3d 93, 106 (2d Cir. 2002) (finding insufficient disclosure where the Government included a two-page memorandum containing *Brady* material "among five reams of paper labeled '3500 material'").

**Defendants' Statements**

Additionally to the disclosures requested above pursuant to *Brady*, so that we may make any appropriate motion pursuant to *Bruton v. United States*, 391 U.S. 123 (1968), or any severance motion, please confirm that the Government has provided all of defendants' statements that the Government may offer at trial, either in its case-in-chief or otherwise.

\* \* \*

We reserve all of Mr. Halligan's rights in connection with these requests, including the right to supplement them, to file appropriate motions and to present any defenses.

We look forward to the Government's response. If you would like to discuss these matters, please let us know.

Sincerely,

*Mary Mulligan*

Mary E. Mulligan

*Timothy M Haggerty*

Timothy M. Haggerty

cc: Lawrence S. Lustberg, Esq.
Thomas R. Valen, Esq.