# EXHIBIT E-1

**ATTACHMENT TO SUBPOENA ISSUED TO**

~~SCHEDULE A~~Jefferies

## DEFINITIONS

A. "Archegos" refers to Archegos Capital, LLC, Archegos Capital Management, LP, Archegos Fund LP, and Archegos Capital Partners LLC and any other subsidiaries, parent companies, affiliates, officials, officers, employees, volunteers, or agents of Archegos.

B. "At-Issue Security" or "At-Issue Securities" refers to the following securities:
   a) ViacomCBS (Ticker: VIAC)
   b) Discovery Communications, Inc. (Tickers: DISCK and DISCA)
   c) GSX Techedu Inc. (Ticker: GSX)
   d) iQIYI, Inc. (Ticker: IQ)
   e) Tencent Music Group (Ticker: TME)
   f) Vipshop Holdings Ltd (Ticker: VIPS)
   g) Baidu (Ticker: BIDU)
   h) Farfetch (Ticker: FTCH)
   i) Texas Capital Bancshares Inc. (Ticker: TCBI)
   j) Futu Holdings (Ticker: FUTU)
   k) Rocket Companies, Inc. (Ticker: RKT)

C. "Jefferies" refers to Jefferies LLC and any other subsidiaries, parent companies, affiliates, officials, officers, employees, volunteers, or agents of Jefferies, including but not limited to Jefferies Financial Products, LLC.

D. "ISDA Agreement" refers collectively to any ISDA Master Agreement, Credit Support Annex, Portfolio Swaps Annex, and any other schedules, annexes, exhibits, and subsequent amendments thereto, between Jefferies and Archegos or Tiger Asia Management, that was operative at any point between January 1, 2020 and March 31, 2021. All definitions contained within the ISDA Agreement are incorporated herein by reference.

E. "Issuer" refers to any person who issued any security with respect to which Archegos purchased or for which Archegos entered into a Swap Transaction that referenced such security.

F. "Swap Transaction" refers to any Share Swap Transaction, Share Basket Swap Transaction, Index Swap Transaction or Index Basket Swap Transaction entered into pursuant to the ISDA Agreement.

## INSTRUCTIONS

A. Unless otherwise specified, for each Request you must produce ~~all~~ documents created during, or concerning, the period January 1, 2020 through March 31, 2021.

## REQUESTS

To the extent such documents have not been produced by Jefferies to the United States Attorney's Office for the Southern District of New York:

1. ~~An electronic blotter reflecting all of Jefferies's transactions with respect to the At-Issue Securities, in both swaps and equities. Among other things, the blotter should reflect the parent order and time, any changes to the order, such as increases to the limit price, and the time of the changes, and the child orders and times that were used in the execution of the transaction. The blotter should also reflect the algorithmic trading strategy used in execution of the trade.~~
1. With respect to Swap Transactions between Jefferies and Archegos involving the At-Issue Securities, including the Swap Transactions listed in Exhibit 1, documents reflecting:

2. ~~For any Swap Transaction with Jefferies, documents and communications, including but not limited to trade blotters, data dictionaries or other non-aggregated transaction level data, position reports, chats, emails, and text messages, reflecting:~~
    - ~~a) The part, department, desk, or other subgroup of Jefferies that hedged Swap Transactions;~~
    - ~~b) The types of instruments used by Jefferies to hedge its exposure to Swap Transactions;~~
    - ~~c) How the initial prices on the Swap Transactions were determined;~~
    - a) ~~d)~~ The order entry, route, and execution time stamps ~~(including date)~~, limit price, price, currency, price denomination ~~(e.g., dollars, $100s of dollars, etc.)~~, number of lots, shares or contracts transacted of any instrument used to hedge or to determine the price of the Swap Transaction, including information for both the initial order and any modifications from the initial order;
    - b) ~~e)~~ The transaction history of any position acquired or maintained as a hedge to a Swap Transaction, including when the position was closed, sold, modified or re-entered; and
    - c) ~~f) Any~~ The algorithmic trading methodologies Jefferies used in connection with hedging Swap Transactions and/or used to order, route, or execute hedges for Swap Transactions~~;~~.
2. Documents reflecting Jefferies's lending of any shares of the At-Issue Securities purchased in connection with hedging a Swap Transaction with Archegos.
    - ~~g) How Jefferies unwound hedges; and~~
    - ~~h) How and when Jefferies marked each hedge position on its books each day.~~

3. ~~Documents and communications, including but not limited to chats, emails, and text messages, reflecting Jefferies's lending of any securities purchased in connection with hedging a Swap Transaction (including the timing of the loan and the number of shares loaned, and fees received).~~
4. ~~Documents and communications, including but not limited to chats, emails, and text messages, concerning any of Jefferies's loans of the underlying securities that correspond to the Swap Transactions.~~
5. ~~Documents reflecting policies that governed how Jefferies hedged Swap Transactions, including but not limited to:~~
    - ~~a) The types of hedges that were permitted by Jefferies;~~
    - ~~b) How often Jefferies evaluated the effectiveness of its hedges with Archegos;~~

2

~~c) Whether Jefferies required hedges to be put on simultaneously with the Swap Transaction and, if not, what the requirements were; and~~

~~d) The circumstances under which customers, clients or proprietary positions in the opposite direction can be considered hedges for each other.~~

3. ~~6.~~ Documents ~~reflecting~~ sufficient to show how margin requirements were calculated for Swap Transactions involving the At-Issue Securities with Archegos, including:

    a) Documents ~~reflecting~~ sufficient to show Jefferies's margin requirements for Archegos for each Swap Transaction, including how often, whether and how those requirements changed for each At-Issue Security and for different types of swaps;
    b) Information on whether Jefferies used a dynamic and/or static margin framework (or some other framework) for Swap Transactions;
    c) Documents ~~reflecting~~ sufficient to show any changes in how margin was calculated for Swap Transactions during Jefferies's relationship with Archegos; and
    d) Documents ~~reflecting~~ sufficient to show how Jefferies calculated the amount of variation margin and/or excess cash Archegos was allowed to withdraw.

4. ~~7.~~ Documents ~~and data related to~~ sufficient to show Archegos's available capacity at the Counterparty, including the algorithms and formulas used to determine same.

~~8. All documents concerning the diligence, monitoring, surveillance, or investigative efforts used by Jefferies for Archegos.~~

5. ~~9.~~ Documents sufficient to show how Jefferies managed its risk exposure to Archegos's trading activity with Jefferies ~~including, but not limited to, any data used by Jefferies in connection with stress tests or similar risk management assessments done by Jefferies to assess the risk of doing business with Archegos~~.

~~10. Documents concerning any limitations placed by Jefferies on Archegos's trading with Jefferies.~~

6. ~~11.~~ Documents and communications~~, including but not limited to chats, emails, and text messages,~~ reflecting what Jefferies knew about Archegos's positions with any other institutional holder, prime broker or bank.

~~12. Documents, including any written policies, reflecting how any information provided by Archegos was verified during onboarding and on an ongoing basis.~~

~~13. All communications, including but not limited to chats, emails, and text messages, between Jefferies and other Archegos counterparties in March 2021 relating to Archegos.~~

~~14. Documents concerning any research-side files maintained by Jefferies as it related to each Issuer, including but not limited to research on each stock, price targets, and recommendations, for any Issuer in which Archegos held a corresponding swap position with Jefferies.~~

7. ~~15.~~ Documents reflecting the payments charged and received by Jefferies from Archegos in connection with any transaction between Jefferies and Archegos, including but not limited to fees charged and collected in connection with:

    a) Archegos's purchases and sales of securities;
    ~~b) Clearing and custodian services;~~

3

    b) ~~c)~~ Swap interest payments received from Archegos;
    <u>c)</u> ~~d)~~ Lending services including fees for any margin loans to Archegos; and
    <u>d)</u> ~~e)~~ Prime brokerage fees.

~~16.~~ Documents reflecting the payments<u>, including fees,</u> received by Jefferies in connection with ~~any activity related to hedging Swap Transactions, including but not limited to payments and fees charged and collected in connection with:~~

~~a)~~ <u>the</u> ~~The~~ sale or lending of ~~securities, including securities~~<u>any shares of the At-Issue Securities</u> originally purchased to hedge <u>a</u> Swap ~~Transactions;~~<u>Transaction with Archegos.</u>

    ~~b) Clearing and custodian services;~~
    ~~c) Swap interest payments received from Archegos;~~
    ~~d) Lending services including fees for any margin loans; and~~
    ~~e) Prime brokerage fees.~~

~~17. Documents sufficient to show the identity and relative placement of Jefferies's top ten clients for the purchase and sale of total return swaps each month between January 1, 2020 and March 31, 2021, and the fees that Jefferies earned from each of those clients in connection with total return swaps.~~

~~18. Documents sufficient to show the total number of clients who purchased total return swaps from Jefferies, and the total notional value of total return swaps purchased from Jefferies each month between January 1, 2020 and March 31, 2021.~~

~~19. Documents sufficient to show all uncollected fees billed to Archegos but not received as of March 31, 3021.~~

~~20. Documents and communications, including but not limited to chats, emails, and text messages, showing any analyses or discussion of the profitability of Archegos's trading/relationship to Jefferies or the potential profits from expanding its trading with Archegos.~~

4