



*U.S. Department of Justice*

*United States Attorney*
*Southern District of New York*

The Jacob K. Javits Building
26 Federal Plaza, 37th Floor
New York, New York 10278

May 27, 2024

**VIA ECF**

The Honorable Alvin K. Hellerstein
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

      Re:    *United States v. Hwang and Halligan*,
             S1 22 Cr. 240 (AKH)

Dear Judge Hellerstein:

      The Government respectfully writes in opposition to defendant Patrick Halligan's May 27, 2024 motion to reopen his cross-examination of Scott Becker. (Dkt. 201). As discussed below, the motion is meritless and should be denied.

      As an initial matter, Halligan's claim that he was precluded from cross-examination as to bias, motivation, or credibility, or as to the particular communications that he identifies in his letter is simply wrong. Halligan cross-examined Becker on these points for the better part of Thursday and repeatedly questioned Becker as to his bias, motivation, credibility, and so-called "loyalty." (Tr. 1365-1484). As Halligan implicitly acknowledges in his letter, inquiry on these points was repeated and cumulative, and ultimately, consistent with the Court's discretion and Rule 403, the Court instructed counsel to move on. Halligan made strategic decisions as to how to prioritize his cross-examination and to elicit testimony purportedly going to Becker's bias, motivation, and credibility. Indeed, at no time did Halligan raise the specific points he now makes in his motion. (Tr. 1365-1484). There was both a luncheon recess and an afternoon break during his cross-examination, and during neither break did Halligan alert the Court to these issues or contend that he was precluded from cross-examination as to a particular issue. Halligan also voluntarily ended his cross-examination before the end of the trial day; at no point did the Court prematurely terminate the cross-examination. (Tr. 1484).

      In his motion, Halligan offers no explanation for his failure to timely raise the points he makes in his motion. Halligan claims the Government "did not object to our questions" (Dkt. 201 at 1), but that is incorrect. The Government repeatedly objected to Halligan's improper questions, and the Court correctly moved along the examination. Halligan now, having concluded his cross-examination, simply seeks an opportunity to try again and instead to focus on other communications. That should not be permitted. Becker has now been on the witness stand for an entire trial week. The Government intends to conduct a targeted redirect examination to keep the trial moving. Granting Halligan's motion would encourage further attempts to reopen witness

examinations, which is at counter-purposes to the Court's and the jury's interests in an efficient presentation of evidence in this complex, multiweek trial. In fact, if the Court were to grant Halligan's motion to reopen his cross-examination of Becker, the Government would be entitled to re-redirect examination to respond, including by offering multiple contemporaneous records that corroborate Becker and demonstrate that, whatever Becker's views of Halligan, they did not lead Becker to embellish his testimony.

Further, as to each topic for which Halligan seeks to reopen his cross-examination, he was already permitted a full and fair opportunity to cross-examine, and the additional inquiry should be precluded under Rule 403 in any case. *First*, notwithstanding the claims in Halligan's motion (Dkt. 201 at 4-5), Halligan had a full and fair opportunity to cross-examine Becker about his purported bias against Halligan (Tr. 1388-90, 1407-26). Halligan elicited on cross-examination, among other things, that Becker created a note in which Becker listed "being yelled at by Pat [Halligan]" as one of the negatives of Becker's job (Tr. 1389), and that Becker and the Operations team exchanged complaints about Halligan behind Halligan's back (Tr. 1407). Supreme Court precedent requires no more than that. *See, e.g.*, *Michigan v. Lucas*, 500 U.S. 145, 149 (1991) ("[T]rial judges retain wide latitude to limit reasonably a criminal defendant's right to cross-examine a witness based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." (internal quotation marks omitted)).

The case on which Halligan principally relies, *Davis v. Alaska*, 415 U.S. 308 (1974), is nothing like this one. There, the defense was precluded from cross-examining a percipient prosecution witness about the fact that the witness was on probation both at the time that he witnessed the events in question and at the time that he testified. *Id.* at 311. The Court concluded:

> While [defense] counsel was permitted to ask [the witness on cross-examination] whether he was biased, counsel was unable to make a record from which to argue *why* [the witness] might have been biased . . . . On the basis of the limited cross-examination that was permitted, the jury might well have thought that defense counsel was engaged in a speculative and baseless line of attack on the credibility of an apparently blameless witness . . . .

*Id.* at 318 (emphasis added). Here, by contrast, as discussed above, Halligan has made a record from which to argue why Becker might have been biased against Halligan, and there is no risk that the jury thought that Halligan was engaged in a speculative or baseless line of attack on Becker's credibility.

Moreover, the so-called "bias evidence" that Halligan belatedly seeks to offer is inadmissible under Rule 403 of the Federal Rules of Evidence. The probative value of this evidence is marginal at best, and in many cases completely nonexistent. For example, certain of the messages have nothing to do with Becker at all. DX 6854, for instance, is an exchange among members of the Operations team in which David Hohlman (another Operations member)—not

Becker—writes that he put certain sheets in a certain folder so "[P]at [Halligan] doesn't see anything." Halligan attempts to justify the admission of these documents on the basis that they somehow show "disloyalty" toward Halligan. But the Government—contrary to Halligan's unsupported claims—has never argued that Becker was bound by some form of loyalty to Halligan. Even if the Government had made such an argument, messages suggesting that Becker was happy not to have contact with Halligan shed no light on loyalty or disloyalty.

Further, any probative value of the messages that Halligan quotes (Dkt. 201 at 2-4) is substantially outweighed by the dangers of unfair prejudice, undue delay, and wasting time. As discussed above, Halligan has already put before the jury evidence from which Halligan can argue that Becker was biased against Halligan because Becker did not enjoy working under Halligan. To permit further inquiry at this point into every message in which Becker expressed that sentiment in colorful language would do nothing more than invite the jury to render a verdict based on an improper consideration (whether they like Becker).

*Second*, notwithstanding the claims in Halligan's motion (Dkt. 201 at 6-7), Halligan had a full and fair opportunity to cross-examine Becker about his motivation for cooperating and his credibility (Tr. 1472-80). Halligan elicited on cross-examination, among other things, that Becker understood that the Government had evidence of the crimes Becker had committed (Tr. 1473), that Becker understood that the purpose of meeting with the Government was for the Government to assess how helpful Becker could be (Tr. 1474), that Becker understood that the Government was asking Becker questions about Bill Hwang and Halligan (Tr. 1475), that Becker met with the Government on numerous occasions (Tr. 1476), and that Becker hopes not to go to jail for a single day (Tr. 1477).

Again, Supreme Court precedent requires no more than that, *see, e.g.*, *Lucas*, 500 U.S. at 149, and, again, the case on which Halligan principally relies, *Delaware v. Van Arsdall*, 475 U.S. 673 (1986), is nothing like this one. There, the defense was precluded from cross-examining a prosecution witness about the fact that a criminal charge against the witness "had been dropped in exchange for [the witness's] promise to speak with the prosecutor." *Id.* at 676. The Supreme Court concluded that, "[b]y . . . cutting off *all* questioning about an event that the [prosecution] conceded had taken place and that a jury might reasonably have found furnished the witness a motive for favoring the prosecution in his testimony, the [trial] court's ruling violated [the defendant]'s rights secured by the Confrontation Clause." *Id.* at 679 (emphasis added). Here, by contrast, as discussed above, the Court has not cut off *all* questioning about Becker's motivation and credibility. Far from it. To permit further inquiry on those topics at this point would be piling on, and the Court is well within its broad discretion to deny the belated request to reopen cross-examination on those topics.

*Third*, notwithstanding the claims in Halligan's motion (Dkt. 201 at 7), the Court committed no error by sustaining the Government's objection to Halligan's objectionable question regarding the absence of lies told to Archegos's auditors (Tr. 1438-39). The Government moved *in limine* to keep out this type of "good acts" evidence (Dkt. 164 at 26-28), and the Court agreed with the Government that evidence of similar good acts was inadmissible (Apr. 12, 2024 Tr. 85-

86). Whether Archegos lied to its auditors has no tendency to make it more or less probable that Archegos lied to other third parties, and thus the question was objectionable under Rules 401 and 402. The question was independently objectionable under Rules 403 and 404(a)(1) because it invited the jury to draw the inference that, because no one at Archegos lied to the auditors, those at Archegos have a propensity for truthfulness that they acted in accordance with more generally. To be sure, Becker testified on direct examination about the provision of annual audited financial statements to counterparties, but the relevance of that testimony had to do with the timing of their provision, not with the accuracy either of their contents or of any statements made by Archegos to its auditors. Nor does it matter that the Government included in a disclosure letter Becker's statement that he was not aware of any instances where Archegos lied to its auditors. The defense cites no authority, and the Government is aware of none, for the proposition that a statement's inclusion in a disclosure letter guarantees that statement's relevance at trial. As discussed above, the testimony sought to be elicited by the question would not have been relevant.

      For the foregoing reasons, the Court should deny Halligan's motion to reopen the cross-examination of Becker.

      Respectfully submitted,

      DAMIAN WILLIAMS
      United States Attorney

By:  s/_____
    Matthew Podolsky
    Alexandra Rothman
    Samuel P. Rothschild
    Andrew Thomas
    Assistant United States Attorneys
    Tel.: (212) 637-1947/-2580/-2504/-2106

Cc: Counsel of Record (via ECF)