

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Jacob K. Javits Building*
*26 Federal Plaza, 37th Floor*
*New York, New York 10278*

June 2, 2024

**VIA ECF**

The Honorable Alvin K. Hellerstein
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

> Re:   *United States v. Hwang and Halligan*,
>        S1 22 Cr. 240 (AKH)

Dear Judge Hellerstein:

The Government respectfully writes to preview for the Court that William Tomita, a cooperating witness, will testify regarding certain actions and statements of defendant Bill Hwang during the time Archegos did business as Tiger Asia. Mr. Tomita will explain how he understood Mr. Hwang's trading instructions in 2020 and 2021, in part, because of how Mr. Hwang had trained and directed him at Tiger Asia. This limited testimony will provide irreplaceable evidence of the central issue in the case—whether Mr. Hwang intended to manipulate the securities markets in 2020 and 2021—and it will also rebut arguments that have been advanced by defense counsel about Mr. Hwang's supposedly ordinary trading behavior. Because Mr. Tomita's testimony on this subject will explain what happened at Archegos, demonstrate the conspirators' knowledge, intent, and criminal plan, show why Mr. Tomita understood the trading was wrongful, and because it will not overshadow the Government's case-in-chief, this testimony will be consistent with the Court's rulings during the May 6, 2024 conference. The Government expects to call Mr. Tomita as a witness after Dr. Carmen Taveras finishes her testimony.

### I.     Background

On March 21, 2024, defendant Bill Hwang moved *in limine* to preclude admission of evidence regarding Tiger Asia, which later became Archegos. On April 4, 2024, the Government opposed that motion and on May 1, 2024, the Government submitted a supplemental letter to provide the Court with additional details regarding the specific evidence that the Government intended to offer at trial regarding Tiger Asia (Dkt. 185). On May 6, 2024, the defendants submitted responsive letters (Dkt. 186, 187), and the Court held a conference the same day (the "May 6 Conference").

During the May 6 Conference, the Court ruled, among other things, that showing "a common course of conduct" was appropriate, "[p]rovided that the [Tiger Asia material] doesn't overshadow what is going on [at] Archegos." (May 6, 2024 Tr. 13-14; *see also id.* at 17-18 ("[I]n

terms of the intrinsic admissibility of statements like this, I think they're admissible to the extent that they don't overshadow what we're really concerned about.")). The Court went on to rule:

> And so, what's the purpose of doing this [*i.e.*, permitting evidence concerning Tiger Asia]? The purpose is to figure out a way to hike the price of a security in a manipulative way. That's what the government wants to prove. They want to prove that it was a motive and opportunity, an intention to do that, a preparation, a plan, knowledge, identity. All this stuff that is [permissible under Rule] 404. That's what the government wants. My job is to make sure that it doesn't waste time, it doesn't swallow up what's really relevant. This is only by way of explanation. And to be fair to you [*i.e.*, the defense].

(May 6, 2024 Tr. 18; *see also id.* at 18-19 ("My ruling is that this is potentially admissible. Now we're talking about particular instructions or transactions that artificially inflate the price of a security. And we're talking about it as explaining what happened during Archegos. But if this threatens to overshadow what happens in Archegos, I'll put a stop to it.")).

Consistent with the Court's rulings, the Government anticipates that Mr. Tomita will testify about Tiger Asia in two limited respects. *First*, the Government anticipates that Mr. Tomita will testify that he understood the substance behind Mr. Hwang's trading instructions during the charged conspiracy because Mr. Hwang had given substantially similar instructions while at Tiger Asia, which were explicitly directed in an effort to "mark the close," that is, to manipulate stock prices. *Second*, the Government anticipates that Mr. Tomita will testify that he came to understand that certain trading activity, including marking the close, was wrongful and unlawful because of the investigation into Tiger Asia that caused Mr. Hwang to return outside investors' money and to operate going forward as a family office.

## II. Mr. Tomita's Understanding of Mr. Hwang's Instructions During the Charged Period

The Government anticipates that Mr. Tomita will testify that certain instructions that Mr. Hwang gave Mr. Tomita at Archegos during the time period of the charged conduct conveyed particular meaning to Mr. Tomita in light of instructions that Mr. Hwang had given him at Tiger Asia. Two examples are instructions about "marking the close," a manipulative trading practice that involves trading at the end of the day to influence the closing price, and instructions about getting trading capacity.

As for marking the close, during the time period of the charged conduct, when Mr. Hwang instructed Mr. Tomita to trade aggressively toward the end of the trading day, Mr. Tomita understood that Mr. Hwang was directing Mr. Tomita to "mark the close." Mr. Tomita understood Mr. Hwang's instructions during the Archegos period to refer to marking the close because

Mr. Hwang had explicitly discussed the practice with Mr. Tomita and directed Mr. Tomita to mark the close at Tiger Asia.

For instance, at the end of November 2008, Mr. Hwang directed that his traders mark the close in Hong Kong, among other jurisdictions. In Hong Kong, the final trades at the end of each trading day are referred to as the "auction," at which time parties can put in orders and a computer program matches buyers and sellers for final trades that are all executed at the same time at the close of the trading day. On November 27, 2008, before the final trading day of the month in Hong Kong, Mr. Hwang, Mr. Tomita, and Mr. Hwang's then-head trader, Raymond Park, spoke by phone. During that phone call, Mr. Hwang, asked Mr. Park to gather information regarding how to mark the close. Mr. Park followed up in writing to Mr. Hwang and Mr. Tomita, explaining to Mr. Hwang (and to Mr. Tomita) that Mr. Park had learned that "there is NO transparency in the auction market," that "[g]uys are marking the close all the time," and that the "[b]est way" to mark the close is to place "a size MARKET order," *i.e.*, to place a large order for the auction with no limit price. (GX 2765). Mr. Hwang then directed these trades for marking the close: He directed substantial trading at the end of the trading day in Japan and Korea, and, in Hong Kong, Mr. Hwang directed his traders to make large trades at the end of the regular session followed by large trades in the auction with no limit price.

At the end of December 2008, January 2009, and February 2009, Mr. Hwang directed these manipulative trades again, focusing on trades in the auction with no limit price. For example, on January 29, 2009, when directing those trades, Mr. Hwang stated in writing that the purpose of large sales in the auction in stocks in which Tiger Asia had large short positions was "to prevent any pushing up at the end"—that is, that the sales were intended to counteract purchases that might have increased the prices of those stocks, and thereby to maintain a depressed price.

It was in light of Mr. Hwang's statements and conduct while at Tiger Asia that Mr. Tomita understood what Mr. Hwang wanted Mr. Tomita to do when, during the charged time period, Mr. Hwang instructed Mr. Tomita to trade aggressively toward the end of the trading day and to trade in a way that would maintain favorable prices in the market.

Mr. Tomita similarly understood the meaning behind Mr. Hwang's instructions about getting capacity during the time period of the charged conspiracy in light of instructions that Mr. Hwang gave at Tiger Asia. For example, when Mr. Hwang instructed Mr. Tomita to find, or to get, or to generate capacity during the Archegos period, these instructions repeated Mr Hwang's prior directions to take a position early in the trading day directionally opposite the position that Mr. Hwang would want to take at the end of the trading day. Mr. Tomita understood those instructions, at least in part, because, while at Tiger Asia, to accomplish the "marking the close" trades discussed above, Mr. Hwang directed his traders to generate capacity to make large trades at the end of the session by making opposite trades earlier in the day or in the preceding day. For instance, to be able to make large sales in the end-of-day auction for certain stocks in which Tiger Asia had short positions, Mr. Hwang directed Mr. Park and Mr. Tomita to purchase shares earlier in the day in the same amount that Mr. Hwang wanted to sell at the end of the day.

Consistent with the Court's May 6 rulings, Mr. Tomita's anticipated testimony about the bases for his understanding of instructions that Mr. Hwang gave during the period of the charged conduct is admissible both as direct evidence and pursuant to Rule 404(b) of the Federal Rules of Evidence. Such evidence will "inform the jury of the background of the conspiracy charged, in order to help explain how the illegal relationship between participants in the crime developed, [and will] explain the mutual trust that existed between coconspirators." *United States v. Diaz*, 176 F.3d 52, 79 (2d Cir. 1999); *see also United States v. Guang*, 511 F.3d 110, 121 (2d Cir. 2007) (affirming admission of evidence "not offered to show [the defendant]'s criminal propensity, but to show the existence of the illegal relationship between [co-conspirators] and how it developed"); *United States v. Pipola*, 83 F.3d 556, 566 (2d Cir. 1996) (discussing "background information to make the story of the crimes charged complete and to enable the jury to understand how the illegal relationship between the co-conspirators developed"). Mr. Tomita's anticipated testimony is particularly relevant and probative because it explains how Mr. Tomita came to understand from Mr. Hwang how to execute the type of market-moving trades at issue in this trial and how Mr. Hwang came to trust that Mr. Tomita would recognize Mr. Hwang's intentions and execute those trades at Mr. Hwang's direction. "Were evidence of [Mr. Tomita's] longstanding criminal relationship [with Mr. Hwang and others] stripped away, it might well seem improbable to a reasonable juror that [Mr. Hwang] would trust [Mr. Tomita] with such combustible information and/or such sensitive tasks." *United States v. Rivera*, 791 F. App'x 200, 206 (2d Cir. 2019) (citation and internal quotation marks omitted).

Further, this testimony regarding Mr. Hwang's conduct at Tiger Asia—and Mr. Hwang's specific inquiry into how to mark the close—is highly probative of Mr. Hwang's preparation, plan, knowledge, and intent to mark the close in the course of his manipulative scheme in 2020 and 2021. As Mr. Tomita will explain, Mr. Hwang's trading instructions in 2020 and 2021 were consistent with his directions during his avowed attempts to mark the close in 2008 and 2009, and inconsistent with trading instructions in other time periods. Whether Mr. Hwang's trading instructions in 2020 and 2021 were intended to manipulate the price of securities, including by marking the close, as opposed to being meant simply to build positions in a non-manipulative manner, is the central issue in this case. Mr. Tomita's focused testimony on Mr. Hwang's statements, directions, and conduct in 2008 and 2009 sheds necessary light on Mr. Hwang's preparation, plan, knowledge, and intent in 2020 and 2021.

In fact, Mr. Hwang has argued repeatedly that, "[h]e believed in these companies, he believed in these investments; and this is how he always invested long before this." (Trial Tr. 49; *see also id.* at 50 ("Mr. Hwang always invested in a concentrated small number of companies; he took a lot of risk in his money when he was at Archegos; and he could, and he did that again and again."); *id*. at 51 ("And that's how he always invested."); *id*. at 68 ("He held his position for a long time and had a lot of conviction and didn't believe it if he had a different valuation of the company than was shown in the market. That's how he always traded."); *id.* at 80 ("[Mr. Tomita] knew Mr. Hwang believed in these stocks; he knew that he was holding his positions; he knew he was doing exactly what he always did, and did it successfully.")). The defense should not be permitted to claim to the jury that Mr. Hwang always traded in a non-manipulative manner and

that his trades in 2020 and 2021 were consistent with his prior trading, and yet preclude evidence that, in fact, Mr. Hwang explicitly directed manipulative trades in the past and it is those trades that show Mr. Hwang's intent here.

The Government seeks to offer a single document to corroborate this anticipated testimony and to prove the relevant conduct, plan, knowledge, and intent of Mr. Hwang. Government Exhibit 2765, which is attached hereto as Exhibit A, is a November 27, 2008 email from Mr. Park to Mr. Hwang, copying Mr. Tomita, in which Mr. Park wrote (as quoted above) that he had learned that "there is NO transparency in the [Hong Kong] auction market," that "[g]uys are marking the close all the time" in the Hong Kong auction, and that the "[b]est way" to mark the close was to place "a size MARKET order." The Government appreciates the Court's preference for testimonial evidence and expects that Mr. Tomita's testimony on Tiger Asia will be short and targeted. However, this document is relevant and admissible to demonstrate Mr. Hwang's state-of-mind and the common understanding between Mr. Hwang and Mr. Tomita. Moreover, during opening statements, the defense attacked Mr. Tomita's credibility (*see, e.g.*, Tr. 80 ("And you'll see that Mr. Tomita, what he is saying now, is not true")), and the Government should be permitted a fair opportunity to prove up the relevant facts by offering a single document, which bears directly on Mr. Hwang's knowledge.

### III.   Mr. Tomita's Understanding of Misconduct During the Charged Period

The Government also anticipates that Mr. Tomita will testify that he understood the unlawful nature of certain of the trading practices that Mr. Hwang directed him to undertake between 2020 and 2021, such as marking the close, because Tiger Asia had come under investigation for those same trading practices and had been forced to return outside capital.

Consistent with the Court's May 6 rulings, Mr. Tomita's anticipated testimony about the basis for his understanding of the wrongfulness of the conduct that Mr. Hwang directed in 2020 and 2021 is admissible both as direct evidence and pursuant to Rule 404(b). Such testimony will help explain the nature and contours of the conspiracy that the Government alleges Mr. Hwang and Mr. Tomita participated in during the charged time period. *See, e.g.*, *Guang*, 511 F.3d at 121; *Diaz*, 176 F.3d at 79; *Pipola*, 83 F.3d at 566. Additionally, such testimony is highly probative of Mr. Hwang's intent during the relevant time period. *See, e.g.*, *United States v. Zackson*, 12 F.3d 1178, 1182-83 (2d Cir. 1993) (affirming admission of other-act evidence demonstrating defendant's intent).

Separately, Mr. Hwang opened the door to this testimony by arguing in opening statements that Mr. Tomita did not believe what he was doing was wrong. Specifically, counsel said:

> But you will see from the evidence that there could be no question that at the time we're talking about, this COVID period, March '20 through March 2021, Mr. Tomita did not believe he was doing anything improper in his trading, did not believe he was manipulating the market, his own words and actions at the time.

(Tr. 80). Given that counsel for Mr. Hwang told the jury that they would see that Mr. Tomita did not believe that his trading during the charged period was improper, the Government should be permitted to question Mr. Tomita about the provenance of his understanding about the wrongful nature of his trading during that period. Nor should the Government be required to wait until redirect examination to do so: The defense has made these arguments to the jury from the beginning of the case, and the Government should be entitled to put on evidence establishing the *mens rea* of both Mr. Hwang and his co-conspirator, Mr. Tomita. *Cf.*, *United States v. Williams*, 787 F. App'x 8, 10 (2d Cir. 2019) (where the defense has opened the door to arguments during opening statements, the Government may elicit relevant testimony on direct examination).

\* \* \*

The Government respectfully notifies the Court that, consistent with the Court's May 6, rulings, the Government intends to elicit from Mr. Tomita the limited testimony regarding Tiger Asia described above.

        Respectfully submitted,

        DAMIAN WILLIAMS
        United States Attorney


By: s/_____
    Matthew Podolsky
    Alexandra Rothman
    Samuel P. Rothschild
    Andrew Thomas
    Assistant United States Attorneys
    Tel.: (212) 637-1947/-2580/-2504/-2106

Cc: Counsel of Record (via ECF)