# Kramer Levin



**Barry H. Berke**
Partner
T  212.715.7560
F  212.715.7660
bberke@KRAMERLEVIN.com

1177 Avenue of the Americas
New York, NY 10036
T  212.715.9100
F  212.715.8000

June 6, 2024

**BY ECF**

Hon. Alvin K. Hellerstein
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

Re: _United States v. Sung Kook (Bill) Hwang, et al._, No. 22 Cr. 240 (AKH)

Dear Judge Hellerstein:

On behalf of defendant Bill Hwang, we respectfully write regarding an urgent matter that requires the Court to preclude the prosecution from introducing newly proposed GX 9065 through Professor Battalio, which was produced for the first time late last night.  The prosecution's maneuver in seeking to present brand new analysis and theories near the end of its case flies in the face of their Rule 16 obligations regarding expert disclosure.  In addition, while we are still trying to make heads or tails out of their newly formulated "analysis" and theories, the charts in GX 9065 also appear to be deeply  misleading and prejudicial, which would render them inadmissible under _Daubert_.

Before last night, the prosecution had already marked 72 charts as exhibits for Professor Battalio, and the defense had prepared for cross-examination on those charts, which appeared to be based on analyses described in Professor Battalio's expert disclosures.  At 10:45 p.m. last night, the Government marked, as GX 9065, 47 charts regarding a price change analysis that was not included in Professor Battalio's initial or supplemental expert disclosure.  Of the 47 new charts, the prosecution produced 11 for the first time on Sunday, June 2 as part of Professor Battalio's 3500 material.  The remaining 36 charts had never been previously produced.  The code for all 47 charts, which is necessary to analyze the charts, was produced last night, only after the defense requested it.

Rule 16(d)(2)(C) authorizes the Court to "prohibit that party from introducing the undisclosed evidence."  The Court should exercise its discretion to do so here.  The prosecution has repeatedly failed in its discovery obligations in the case.  As the Court knows, the prosecution failed to produce critical trading data in the case that it had for over a year until weeks before the initial trial date in February.  More recently, Dr. Taveras disclosed on the stand

that she had created trading charts for every security, for every day, that had not been disclosed to the defense.  May 30, 2024 Trial Tr. 2136:10-17 (Taveras) ("THE WITNESS: We did these charts for every day for every security in the time period."); *see also id.* 2137:19-24 (Dr. Taveras confirming she had provided "not all" of the slides).  And now, on the eve of Professor Battalio's testimony, the prosecution has disclosed new charts, based on entirely new analyses, after the defense has already opened and cross-examined most of the prosecution's fact witnesses and their other expert witness.  In addition, the late production, long after the disclosure deadline and near the end of the prosecution's case, leaves the defense with no time to analyze the charts or prepare for cross-examination on them.

Allowing the prosecution to admit charts and analysis disclosed on the eve of their experts' testimony in violation of their discovery obligations would be extremely unfair and prejudicial to the defense in this case.  That prejudice is especially acute because these new expert theories and quantitative analysis were disclosed well after openings and substantial fact and expert witness testimony.  *See United States v. Ulbricht*, 858 F.3d 71, 115-116 (2d Cir. 2017) (affirming preclusion of defense experts where disclosure was mid-trial, right before the prosecution rested, leaving it with "no time to prepare to respond to the experts").

The charts also appear misleading and prejudicial.  Although the prosecution has not disclosed any methodology for the charts—also in violation of their Rule 16 disclosure obligations—the charts appear to add up short term price impact, which would be expected of nearly every trade, over the course of certain days.  They also misleadingly compare one trader, Archegos, to either everyone else in the market, or to a) the set of traders Dr. Battalio considers "inferred retail" and b) all other traders.  All of these comparisons are apples to oranges because they are comparing one large buyer, Archegos, to traders in the market who are both buying and selling, and thus whose actions are likely to largely cancel each other out.  Moreover, there has been no disclosure of how Professor Battalio cherry-picked the days for some of these charts, and there has been no disclosure of analyses on other days not depicted in Professor Battalio's charts.

Last night's disclosure of cumulative price impact analysis based on TAQ is brand new and reflects a substantial change of course in the prosecution's theory.  Worse yet, it appears to be scientifically questionable.  To be sure, the defense would have challenged this new analysis under *Daubert*, accounted for it in our opening statement, and cross-examined counterparty witnesses and Dr. Taveras differently if it had been disclosed as required under Rule 16.  In short, it would have impacted the defense strategy.  This Court should not permit the prosecution's last-minute pivot to avoid deficiencies in its case midtrial and deprive the defense of Rule 16's protections.

Moreover, admitting these cherry-picked charts would once again require the defense to conduct a lengthy cross-examination to highlight the selective nature of the days chosen by Professor Battalio, and the defense would be forced to do it without adequate time to prepare in light of the prosecution's discovery violation.

For all these reasons, the Court should exclude the newly produced charts.

Respectfully submitted,

_/s/ Barry H. Berke_

Barry H. Berke
Dani R. James
Jordan Estes
Michael Martinez

cc:     Counsel of record