


*U.S. Department of Justice*

*United States Attorney*
*Southern District of New York*

The Jacob K. Javits Building
26 Federal Plaza, 37th Floor
New York, New York 10278

June 16, 2024

**VIA ECF**

The Honorable Alvin K. Hellerstein
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

      Re:    *United States v. Hwang and Halligan*,
              S1 22 Cr. 240 (AKH)

Dear Judge Hellerstein:

      The Government respectfully writes to request that the Court permit the Government to elicit testimony from William Tomita (a) that defendant Bill Hwang trained Mr. Tomita to lie to and mislead counterparties regarding Archegos's portfolio, and (b) that Mr. Hwang and Mr. Tomita created evidence of false justifications for Mr. Hwang's manipulative trading. The Court sustained objections when the Government sought to elicit this testimony. As discussed further below, testimony on each of these topics constitutes evidence directly relevant to key issues in dispute and to the elements of the charged offenses. The Government therefore respectfully seeks permission to elicit this testimony from Mr. Tomita.

**I.**      **Testimony Regarding Training by Bill Hwang to Lie to and Mislead Counterparties**

      The Government anticipates that Mr. Tomita would testify, in substance, that, during the twelve years in which he worked for Mr. Hwang, he was trained by Mr. Hwang to mislead counterparties as to the contents and nature of the portfolio. For example, the Government expects that Mr. Tomita would testify that, early in his time working for Mr. Hwang, Mr. Hwang criticized Mr. Tomita for providing truthful information to a counterparty; that, in other instances, Mr. Hwang directed Mr. Tomita or another trader in Mr. Tomita's presence to provide misleading information regarding Mr. Hwang's investments; and that, in still other instances, Mr. Tomita observed Mr. Hwang himself mislead counterparties regarding the positions in his portfolio. For avoidance of doubt, none of this testimony will touch on the subject of the regulatory issues that Mr. Hwang faced at Tiger Asia.

      This testimony is directly relevant to the charges at issue here because the testimony establishes that Mr. Hwang and Mr. Tomita had developed an understanding and agreement that, when asked by counterparties about the nature and contents of Archegos's portfolio, Mr. Tomita should not provide truthful information if doing so would hinder Mr. Hwang's objectives. This

testimony also establishes Mr. Hwang's *mens rea* with respect to the scheme to defraud Archegos's counterparties. That is, these facts make it more likely that Mr. Hwang understood that, when counterparties sought information from Mr. Tomita in order to provide the capacity that Mr. Hwang requested (*see* Tr. 3342-44), Mr. Tomita would provide misleading responses when necessary.

The fact that these events happened prior to January 1, 2020, does not diminish their relevance or admissibility. The Second Circuit has long held that "[t]here is no requirement that all the Government's evidence fall within the time period of the indictment, providing it is relevant to the charges." *United States v. Bagaric*, 706 F.2d 42, 65 (2d Cir. 1983); *see also, e.g.*, *United States v. Chin*, 2 F. App'x 75, 77 (2d Cir. 2000) (same). Thus, "the trial court may admit evidence that does not directly establish an element of the offense charged, in order to provide background for the events alleged in the indictment. Background evidence may be admitted to show, for example, the circumstances surrounding the events or to furnish an explanation of the understanding or intent with which certain acts were performed." *United States v. Daly*, 842 F.2d 1380, 1388 (2d Cir. 1988).

Accordingly, the Second Circuit has specifically approved of the admission in a securities fraud case of testimony by a testifying coconspirator that "the measures he took to disguise the real amount of [certain] income during the [indictment] period . . . were methods devised by [the defendant] before [the indictment period]." *United States v. Kaiser*, 609 F.3d 556, 570-71 (2d Cir. 2010). In other words, testimony regarding discussions between the defendant and his coconspirator prior to the time period of the charged conspiracy about methods used to mislead victims was admissible as proof of the charged conspiracy. *Id.* Similarly, in *United States v. Rigas*, the Second Circuit affirmed the admissibility of evidence of the use of false and misleading invoices prior to the time period of the charged securities fraud conspiracy as direct evidence of that conspiracy where the prior acts "were either repeated during the period of the charged conspiracy or were recorded in Adelphia's ledgers in a way that affected Adelphia's financial statements into the period of the conspiracy." 490 F.3d 208, 238-39 & n.43 (2d Cir. 2007). In such circumstances, the uncharged conduct evidence is appropriately treated as "part of the very act charged," or, at least, proof of that act. *United States v. Concepcion*, 983 F.2d 369, 392 (2d Cir. 1992).

"[E]vidence of prior acts" is also admissible "to inform the jury of the background of the conspiracy charged, in order to help explain how the illegal relationship between participants in the crime developed, or to explain the mutual trust that existed between coconspirators." *United States v. Diaz*, 176 F.3d 52, 79 (2d Cir. 1999). Thus, evidence of prior acts of coconspirators is admissible to "provide[ ] background related to [a cooperator's] relationship with [the defendant] [as] evidence that a conspiracy existed," *United States v. Tartir*, 347 F. App'x 655, 657 (2d Cir. 2009), as well as "to explain the respective roles undertaken by the various players in the conspiracy," *United States v. Bryce*, 59 F. App'x 398, 400 (2d Cir. 2003); *see also, e.g.*, *United States v. Sanpedro*, 352 F. App'x 482, 485 (2d Cir. 2009). Indeed, the Second Circuit has noted that evidence of prior acts showing a racketeering enterprise member's earlier and later roles is

particularly probative of a racketeering charge, such as the racketeering conspiracy charged here. *United States v. Canada*, 858 F. App'x 436, 441 (2d Cir. 2021); *see also, e.g.*, *United States v. Petrucelli*, 97 F. App'x 355, 358 (2d Cir. 2004); *United States v. Rivera*, No. 13 Cr. 149 (KAM), 2015 WL 1875658, at *19 (E.D.N.Y. Apr. 22, 2015).

The evidence that Mr. Hwang trained Mr. Tomita to mislead counterparties regarding the portfolio, which the Government seeks to introduce through the testimony of Mr. Tomita, serves all of these relevant and admissible purposes. The evidence demonstrates the existence of the conspiracy between Mr. Hwang and Mr. Tomita; it demonstrates Mr. Hwang's understanding and intent that Mr. Tomita would and did mislead counterparties in order to get capacity and favorable margin rates during the charged time period; it demonstrates the respective roles of Mr. Hwang and Mr. Tomita in the conspiracy and racketeering enterprise; and it demonstrates how the relationship of trust between Mr. Hwang and Mr. Tomita developed over time. Without this evidence, the jury would be left without key facts establishing and explaining how the racketeering conspiracy came to be and how Mr. Tomita knew that Mr. Hwang expected and intended for Mr. Tomita to mislead and counterparties.

Accordingly, the Government respectfully submits that testimony regarding Mr. Tomita's training by Mr. Hwang to mislead counterparties—even prior to 2020—should be admitted.

## II.  Testimony Regarding False Justifications for Manipulative Trading

On Friday, June 14, 2024, Mr. Tomita testified briefly regarding comments that Mr. Hwang made, in writing, during the time period in which he was directing market-affecting trades. Specifically, Mr. Hwang wrote on numerous occasions, regardless of the trading prices of stocks, in substance, that stocks were trading at good prices. The Court sustained objections to questions seeking to elicit whether Mr. Hwang made similar comments in any prior time period during which Mr. Tomita traded for Mr. Hwang. The Court also directed the Government to move to another topic before the Government could elicit from Mr. Tomita whether *Mr. Tomita* wrote similar comments in the period from the fall of 2020 through March 2021, and the purposes for which Mr. Tomita wrote such comments.

The Government expects that if Mr. Tomita were permitted to testify on this topic, he would state, in substance, that, prior to the fall of 2020, Mr. Hwang very rarely commented on the prices and reasons for his purchases (or sales) of stock; that Mr. Tomita understood that such comments in the period from the fall of 2020 through March 2021 did not reflect the true reasons for Mr. Hwang's purchasing or selling the stocks in questions; and that Mr. Tomita understood that he should echo Mr. Hwang's comments about the prices of securities as a form of cover story or paper trail. This testimony constitutes relevant and probative consciousness-of-guilt proof and therefore should be admitted to prove the existence of a conspiracy and scheme to manipulate market prices, and the intent of the coconspirators, including Mr. Hwang.

As an initial matter, evidence that the defendant made conspicuous and unnecessary statements regarding the purposes for purchasing or selling stock that were inconsistent with the

defendant's actual conduct provides powerful proof of intent. Much like a false alibi, the conscious decision to make misleading statements regarding the purposes for stock purchases constitutes evidence from which a reasonable juror could infer that the defendant was conscious of his guilt and involvement in deliberately affecting market prices. *See, e.g.*, *United States v. Rosario*, No. 09 Cr. 415 (VEC), 2014 WL 5870708, at *2 (S.D.N.Y. Nov. 13, 2014) (discussing probative value of false statements regarding conduct); *United States v. Baldeo*, No. 13 Cr. 125 (PAC), 2014 WL 351638, at *1 (S.D.N.Y. Jan. 31, 2014) (evidence of consciousness of guilt is admissible).

The nature of these comments by Mr. Hwang and what they reflect with regard to his *mens rea* is central to this case. In fact, Mr. Hwang's counsel described these messages in his opening statement, telling the jury: "[Y]ou will see by the evidence that all of those trades, as he said it, were trades that he believed in. He said in his words, he talked about how they were cheap, he talked about why he thought the market had it wrong or overreacting, underreacting." (Tr. 74). Of course, if the defense seeks to use Mr. Hwang's contemporaneous messages as evidence of his mental state at the time, the Government must be able to offer evidence that these messages did not reflect Mr. Hwang's true mental state and were instead intended to provide a cover for unlawful trading.

Moreover, as Mr. Hwang's coconspirator, Mr. Tomita's understandings of Mr. Hwang's statements and Mr. Tomita's own intentions when making similar statements are also relevant and probative. Indeed, courts routinely permit coconspirators to testify not only about the specific statements or acts of a defendant, but also about the coconspirator's interpretation of those statements and acts. *See, e.g., United States v. Rowland*, 826 F.3d 100, 115 (2d Cir. 2016) (affirming admission of coconspirator testimony about the meaning of defendant's use of expressions like "I get it," "this arrangement," and "cover," because those expressions were "ambiguous without the context that [the coconspirator witness] supplied"); *United States v. Borrero*, 630 F. App'x 20, 23 (2d Cir. 2015) (affirming admission of cooperating witness's testimony "regarding his interpretation of [the defendant's] statements" because the witness was a coconspirator and his testimony "was rationally based on his experience with [the defendant], and the testimony assisted the jury in understanding ambiguous or slang terms" used by the defendant); *United States v. Yannotti*, 541 F.3d 112, 126 (2d Cir. 2008) ("[I]ndividuals engaging in illicit activities rarely describe their transactions in an open or transparent manner and the government may call witnesses to provide insight into coded language through lay opinion testimony.").

Further, Mr. Tomita's own thought processes and intentions when undertaking actions in furtherance of the conspiracy are highly relevant. First, the Government must prove that Mr. Tomita and Mr. Hwang (and others) agreed to and did enter into the charged conspiracy, and Mr. Tomita's intent is central to that issue. Second, the Government must be able to offer evidence to prove to the jury the intent behind certain acts, since it is the criminal intent that makes the actions unlawful. For example, to the extent that Mr. Tomita engaged in conduct that he intended to further the aims of the conspiracy through providing cover for lawful market manipulation, evidence of those acts and the underlying intent would relevant to and probative of the existence of the conspiracy. Third, the defendant himself has placed Mr. Tomita's *mens rea* with respect to the

market manipulation scheme in dispute in this trial. Specifically, counsel for Mr. Hwang said in his opening statement:

> But you will see from the evidence that there could be no question that at the time we're talking about, this COVID period, March '20 through March 2021, Mr. Tomita did not believe he was doing anything improper in his trading, did not believe he was manipulating the market, his own words and actions at the time.

(Tr. 80). Given that counsel for Mr. Hwang told the jury that they would see that Mr. Tomita did not believe that his trading during the charged period was improper, the Government should be permitted to question Mr. Tomita about his intent at the time he was engaged in trading that affected market prices—including his intent to forestall investigation into such conduct. Nor should the Government be required to wait until redirect examination to do so: The defense has made these arguments to the jury from the beginning of the case, and the Government should be entitled to put on evidence establishing the *mens rea* of both Mr. Hwang and his coconspirator, Mr. Tomita. *Cf.*, *United States v. Williams*, 787 F. App'x 8, 10 (2d Cir. 2019) (where the defense has opened the door to arguments during opening statements, the Government may elicit relevant testimony on direct examination).

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

By: _s/_____
    Matthew Podolsky
    Alexandra Rothman
    Samuel P. Rothschild
    Andrew Thomas
    Assistant United States Attorneys
    Tel.: (212) 637-1947/-2580/-2504/-2106

Cc: Counsel of Record (via ECF)