

*U.S. Department of Justice*

*United States Attorney
Southern District of New York*

*The Jacob K. Javits Building
26 Federal Plaza, 37th Floor
New York, New York 10278*

June 17, 2024

**VIA ECF**

The Honorable Alvin K. Hellerstein
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

      Re:    *United States v. Hwang and Halligan*,
             S1 22 Cr. 240 (AKH)

Dear Judge Hellerstein:

      The Government respectfully writes in opposition to defendant Patrick Halligan's June 16, 2024 letter renewing his motion to preclude evidence of a misrepresentation to Bank of America. Halligan now argues that admitting proof that he and Scott Becker knowingly misled Bank of America in March 2021 would constructively amend the Indictment (Dkt. 227). Halligan is wrong. The Indictment charges Halligan with participating in a conspiracy with Becker to operate Archegos through a pattern of fraud. The March 2021 episode is a direct example of Halligan's participation in the offenses charged in the Indictment. The defendant's motion therefore should be denied.

      I.      Applicable Law

      "A constructive amendment occurs when the charge upon which the defendant is tried differs significantly from the charge upon which the grand jury voted." *United States v. Dove*, 884 F.3d 138, 146 (2d Cir. 2018). To show constructive amendment, a defendant "must demonstrate that either the proof at trial or the trial court's jury instructions so altered an essential element of the charge that, upon review, it is uncertain whether the defendant was convicted of conduct that was the subject of the grand jury's indictment." *United States v. Khalupsky*, 5 F.4th 279, 293 (2d Cir. 2021).

      Because "proof at trial need not, indeed cannot, be a precise replica of the charges contained in an indictment," *United States v. Heimann*, 705 F.2d 662, 666 (2d Cir. 1983), it is well established that "not all modifications constitute constructive amendments," *United States v. Salmonese*, 352 F.3d 608, 621 (2d Cir. 2003). Rather, the Second Circuit has "consistently permitted significant flexibility in proof, provided that the defendant was given *notice* of the *core of criminality* to be proven at trial." *United States v. R*igas, 490 F.3d 208, 228 (2d Cir. 2007). The "core of criminality" is "the essence of the crime, not the particulars of how a defendant effected the crime." *United States v. Vilar*, 729 F.3d 62, 91 (2d Cir. 2013). Thus, "there is no constructive

amendment when the proof at trial does no more than supply the particulars." *United States v. Daugerdas*, 837 F.3d 212, 225 (2d Cir. 2016).

No constructive amendment occurs where an indictment's allegations and the proof at trial relate to a "single set of discrete facts," or form "part of a single course of conduct" with the same "ultimate purpose." *United States v. D'Amelio*, 683 F.3d 412, 419-21 (2d Cir. 2012). By contrast, an indictment may be found to have been constructively amended when there is a "substantial likelihood" that "the jury convicted based on a complex of facts distinctly different from that which the grand jury set forth in the indictment." *Id.* at 416, 419.

II. Discussion

Here, evidence of the March 16, 2021 misrepresentation to Bank of America is direct evidence of the conduct charged in the Indictment. The March 16, 2021 episode occurred within the period of the schemes charged in the Indictment, involved conspirators named in the Indictment (Halligan and Becker), concerned Archegos (the Enterprise charged in the Indictment), and took the form of a "false and misleading statement[] . . . designed to fraudulently induce" a counterparty to do business with Archegos, the core racketeering conduct described in the Indictment. *See, e.g.*, Superseding Indictment ¶ 2 ("[W]ith HWANG's knowledge and approval, HALLIGAN, Tomita, Becker, and others repeatedly made materially false and misleading statements about Archegos's portfolio of securities to numerous leading global investment banks and brokerages (collectively, the 'Counterparties'). These false and misleading statements were designed *to fraudulently induce* the Counterparties into trading with and extending credit to Archegos, enabling and facilitating the market manipulation scheme, and to hide the true risk of doing business with Archegos." (emphasis added)); *id.* ¶ 38 ("[T]he Archegos Conspirators pursued relationships with additional counterparties. By in or about January 2021, Archegos had established swap counterparty or brokerage relationships with at least nine financial institutions, and it was exploring the possibility of opening up accounts with at least three more."); *id.* ¶ 41 ("Specifically, HALLIGAN, William Tomita, and Scott Becker, with the implicit and at times explicit permission and direction of HWANG, provided false and misleading information to Counterparties *in an effort* to conduct swap transactions and obtain margin lending, all to facilitate the manipulative trading scheme." (emphasis added)); *id.* ¶ 71 ("A further purpose of the racketeering conspiracy was to obtain trading capacity, *brokerage relationships*, and specific margin rates through false and misleading statements to banks and brokerages." (emphasis added)); *id.* ¶ 74(b) ("The defendants obtained trading capacity, brokerage relationships, and specific margin rates through false and misleading statements to banks and brokerages."); *id.* ¶ 80 ("HWANG and HALLIGAN engaged in a scheme to defraud Archegos's counterparties through false and misleading statements regarding Archegos's business, portfolio, and assets."); *id.* ¶ 81 ("HWANG, HALLIGAN, and others at Archegos engaged in a scheme to defraud Archegos's trading counterparties by means of false and misleading statements regarding Archegos's business, portfolio, and assets, including through interstate wires."). The Government's trial evidence of the March 16, 2021 episode is proof of the charged scheme and Halligan's participation in it.

Halligan similarly fails when he argues that the Indictment charged schemes related only to specific counterparties and therefore excluded conduct related to others. To the contrary, Count One, the racketeering conspiracy count, alleges that Halligan and others participated in a pattern of fraud for the purpose of obtaining "trading capacity, brokerage relationship, and specific margin rates through false and misleading statements to banks and brokerages." Superseding Indictment ¶ 71. That language did not limit the reach of the Count to a particular counterparty or exclude any particular counterparty. Indeed, evidence of the misrepresentation to Bank of America and evidence of the misrepresentations made to Archegos's other counterparties form "part of a single course of conduct" with the same "ultimate purpose." *D'Amelio*, 683 F.3d at 419-21. By contrast, it cannot be said that evidence of the misrepresentation to Bank of America sets forth "a complex of facts distinctly different from" the complex of facts underlying Archegos's misrepresentations to its other counterparties during the period charged in the Indictment. *Id.* at 416, 419. Across all cases, Halligan, or Becker at Halligan's direction, made misstatements to Archegos's trading partners or potential trading partners in an effort to get those third parties to trade (or to trade more) with Archegos. Accordingly, evidence of the misrepresentation to Bank of America would not constitute a constructive amendment. That conclusion is not changed just because Archegos's misrepresentation to Bank of America did not ultimately lead to an active trading relationship: the scheme, its participants, and its purpose are as alleged in the Indictment.

Moreover, even if the Indictment did charge a scheme to mislead a particular counterparty, evidence of the misrepresentation to Bank of America *still* would not constitute a constructive amendment because such evidence *still* would be direct evidence of the scheme. As the Government explained in its June 13, 2024 letter seeking permission to supplement its prior notices (Dkt. 223), and in its June 14, 2024 letter opposing Mr. Halligan's prior attempt to prevent the jury from learning of the misrepresentation to Bank of America (Dkt. 226), the evidence of that misrepresentation responds directly to the argument advanced by Halligan during this trial that he was unaware of Mr. Becker's lies to Archegos's counterparties.[1] Halligan's personal participation in the March 16, 2021 Bank of America call, during which either Halligan or Becker materially misstated the concentration of Archegos's portfolio, tends to make it more probable that Halligan was aware that Becker made similar material misstatements to Archegos's counterparties. *See* Fed. R. Evid. 401(a). And Halligan's awareness of, and participation in, those similar material misstatements that Becker made to Archegos's counterparties is a basis of the Indictment's charges against Halligan.

---

[1] As the Government also explained in its prior letters, the Government notified Halligan and the Court of the Government's plan to offer evidence of the misrepresentation to Bank of America within hours of having identified the significance of that evidence. Accordingly, and contrary to the Halligan's repeated and unfounded claim, he was not "misled here." (Dkt. 227 at 4 n.3). Through the production of Rule 16 discovery, Halligan has had access to relevant information from Bank of America since 2022 and was well aware that Archegos reached out to Bank of America during the charged scheme. Indeed, it was precisely because the parties expected that Bank of America evidence may arise that the jury was asked questions designed to ferret out any relationship with Bank of America during *voir dire*. (Tr. 253-55).

In short, contrary to Halligan's arguments, by offering evidence of the March 16, 2021 misrepresentation to Bank of America, the Government does not seek to expand the meaning of the word "Counterparties" in the Indictment. (*Contra* Dkt. 227 at 2-3). The misrepresentation to Bank of America changes nothing, either about the content or the contours of the charges in Counts Ten and Eleven, or about the appropriateness of the Government's proposed jury instructions for those Counts. With or without the evidence of the misrepresentation to Bank of America, Halligan remains charged in those Counts of the same thing—namely, participating in and directing Becker's misrepresentations to Archegos's counterparties about various aspects of Archegos's business, portfolio, and assets in 2020 and 2021 (much as Halligan had personally made misrepresentations to Archegos's counterparties in earlier years, before he passed Becker responsibility for liaising with the counterparties). Evidence of Halligan's personal participation in the March 16, 2021 call in which Bank of America was misled about the concentration of Archegos's portfolio amends nothing. It simply offers the jury persuasive reason to credit Becker's testimony that Halligan was aware of, and, in fact, directed, Becker's practice of misleading Archegos's counterparties about exactly that topic. And it gives the jury reason to discredit Halligan's contrary suggestion that he had no idea what Becker was up to.

\* \* \*

For the foregoing reasons, the Government respectfully requests that the Court deny Halligan's motion to preclude evidence of the misrepresentation to Bank of America on the ground that such evidence would constructively amend the Indictment.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

By: s/_____
Matthew Podolsky
Alexandra Rothman
Samuel P. Rothschild
Andrew Thomas
Assistant United States Attorneys
Tel.: (212) 637-1947/-2580/-2504/-2106

Cc: Counsel of Record (via ECF)