# Kramer Levin



**Barry H. Berke**
Partner
T  212.715.7560
F  212.715.7660
bberke@KRAMERLEVIN.com

1177 Avenue of the Americas
New York, NY 10036
T  212.715.9100
F  212.715.8000

**June 23, 2024**

<u>**BY ECF**</u>

Hon. Alvin K. Hellerstein
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

      Re: <u>United States v. Sung Kook (Bill) Hwang, et al.</u>, No. 22 Cr. 240 (AKH)

Dear Judge Hellerstein:

      On behalf of defendant Bill Hwang, we respectfully write to request that the Court permit the defense to cross-examine cooperating witness William Tomita concerning (1) certain instances in 2020 and 2021 in which, following his consultation with Archegos's compliance department, he also sought advice from outside counsel; and (2) his conduct in the months prior to the FBI executing a search warrant on his home in September 2021. Cross-examination concerning Mr. Tomita's interactions with counsel is necessary to rebut the account presented by the prosecution during direct examination that Mr. Hwang discouraged or prohibited Mr. Tomita from consulting with compliance, when in fact he not only consulted with compliance, but also with outside counsel. And cross-examination concerning Mr. Tomita's behavior in the summer of 2021 is necessary to rebut his testimony on direct that he had been "in so much pain" during that time because of his alleged criminal conduct. The defense must be permitted to impeach this testimony because the prosecution has opened the door and introduced a misleading, one-sided narrative.

**I.    The Defense Must Be Permitted to Cross-Examine Mr. Tomita on his Interactions with Outside Counsel**

      During Mr. Tomita's direct examination on June 14, the prosecution elicited testimony from Mr. Tomita about Archegos's compliance function, including compliance trainings that Mr. Tomita attended, and an anecdote of a discussion about compliance with Mr. Hwang in June 2020. *See* Trial Tr. 3303-3316 (June 14, 2024). Specifically, Mr. Tomita testified that when Mr. Hwang and the Archegos trading team were developing certain guidelines for managing the fund's short positions, Mr. Tomita "emailed these rules to [Archegos Co-CEO] Andy [Mills] and compliance explaining what they were, and asking if [the fund] need[ed] any kind of legal

disclaimer to these rules." *Id.* at 3312:19-3313:3.  According to Mr. Tomita, when he informed Mr. Hwang of this by email, *see* GX-104, Mr. Hwang "started yelling at me and making me feel like I had done something really, really wrong," and Mr. Hwang instructed Mr. Tomita that he "should never be approaching compliance for anything without checking with [Mr. Hwang] first" and should not "approach Andy Mills with anything compliance related without speaking to [Mr. Hwang] first."  Trial Tr. 3313-3316 (June 14, 2020).

This testimony paints a false and misleading picture that Mr. Hwang prohibited—or, at the very least, strongly discouraged—Mr. Tomita from consulting with compliance or Mr. Mills when he had questions or concerns about Archegos's trading practices.  In fact, Mr. Tomita regularly consulted with compliance, at times at the direction of Mr. Hwang and at times on his own.  In addition to cross-examining Mr. Tomita about his consultations with compliance, the defense should also be permitted to cross-examine Mr. Tomita about times that he consulted with outside legal counsel when he had questions or concerns about Archegos's trading practices.  If the defense is not permitted to cross-examine Mr. Tomita on these interactions with outside counsel, it will leave the jury with the false impression that Mr. Hwang prevented Mr. Tomita from seeking outside guidance, when in fact Mr. Tomita regularly consulted not only with compliance, but also with outside counsel.

To be clear, to the extent the defense cross-examines Mr. Tomita on his consultations with outside counsel—in addition to his consultations with Archegos's in-house compliance team, who were not lawyers and did not provide legal advice—the defense *will not* ask the witness to describe the advice sought from or provided by counsel, or otherwise suggest that Archegos adopted (or chose not to adopt) certain practices or procedures based on the advice of counsel.  Rather, the defense will seek to elicit testimony regarding the involvement of counsel only for the limited permissible purpose of rebutting the prosecution's narrative on direct and demonstrating Archegos's good faith in executing its trades—something the prosecution has put directly at issue in this trial.  *See SEC v. Tourre*, 950 F. Supp. 2d 666, 684-85 (S.D.N.Y. 2013) (involvement of counsel in a transaction was "relevant to the context in which the[] transactions occurred"); *United States v. Bankman-Fried*, No. S5 22 Cr. 673 (LAK), 2024 WL 477043, at *3 (S.D.N.Y. Feb. 7, 2024) ("[E]vidence of the presence of attorneys can be probative of a defendant's state of mind."); *Howard v. SEC*, 376 F.3d 1136, 1147 (D.C. Cir. 2004) ("[R]eliance on the advice of counsel need not be a formal defense; it is simply evidence of good faith, a relevant consideration in evaluating a defendant's scienter.").

**II.     The Defense Must Be Permitted to Cross-Examine Mr. Tomita on his Conduct in the Months Prior to September 2021**

During Mr. Tomita's direct examination on June 18, he testified that he spoke with "representatives of the government" "a couple days after" "members of the FBI came to [his] home to exercise a search warrant."  Trial Tr. at 3582:23-3583:6 (June 18, 2024).  Asked why he decided to speak to the government, Mr. Tomita testified:

> I had been in so much pain the months prior because of my behavior and what I had done, that I just -- like, I couldn't do that anymore.  I just needed to acknowledge it, and just be open and embrace that behavior.  And that's largely why when the government showed up to my door, it just felt very natural and

- 2 -

  cathartic to be able to go in and just admit and talk about all the behavior and the things I had done.

*Id.* at 3584:5-12.

  The notion that Mr. Tomita was "in so much pain" and struggling with the weight of his alleged criminal behavior at Archegos for "the months prior" to the FBI's search on September 29, 2021 is belied by Mr. Tomita's conduct during that time. In actuality, Mr. Tomita spent large portions of that summer vacationing and partying with friends. For example, Mr. Tomita messaged one friend that he had been "in St Tropez for almost three weeks for a polo tournament," DX-4577 at 1, and told another friend that he had "so much fu[n]" on vacation, "[p]artying every day and lots of polo and boats and stuff[.]" DX-4084. And Mr. Tomita excitedly exclaimed, "I'm glad I'm not actively managing money in Chinese equities right now!!" and said that settling vacation expenses was "less depressing than looking at the stock market[.]" DX-4083.

  The defense should be permitted to cross-examine Mr. Tomita about his conduct and statements in the months preceding the FBI's arrival at his home because such an inquiry will reveal a state of mind inconsistent with his being in "so much pain" because of his alleged criminal conduct. It is critical for the defense to be able to impeach Mr. Tomita's claim that he began cooperating with the prosecution because of the pain he was suffering during the prior months, rather than to avoid the lengthy jail sentence he learned he would otherwise face. That is true regardless of Mr. Tomita's wealth. The defense agrees with the Court that "[w]hether Mr. Tomita is rich or poor . . . is not relevant to this case." Trial Tr. at 4034:5-8 (June 21, 2024). But Mr. Tomita's contemporaneous statements about his conduct and mental state *are* relevant impeachment evidence because they cast doubt on his direct testimony. *See United States v. Barrow*, 400 F.3d 109, 118 n.8 (2d Cir. 2005) (statements are inconsistent if there is "any variance between the statement and the testimony that has a reasonable bearing on credibility … or if the jury could reasonably find that a witness who believed the truth of the facts testified to would have been unlikely to make a statement of this tenor") (internal quotations, alterations, and citations omitted). The defense should not be precluded from impeaching a cooperating witness's credibility just because the impeachment involves some aspects of the witness's lifestyle.

* * *

For the foregoing reasons, Mr. Hwang respectfully requests that the Court permit the defense to cross-examine Mr. Tomita about (1) his consultations with outside counsel, and (2) his conduct in the months prior to the FBI executing a search warrant on his home in September 2021.

Respectfully submitted,

*/s/ Barry H. Berke*

Barry H. Berke
Dani R. James
Jordan Estes
Michael Martinez

cc: Counsel of record