

MARY E. MULLIGAN
mmulligan@fklaw.com
212.833.1123

TIMOTHY M. HAGGERTY
thaggerty@fklaw.com
212.833.1251

June 24, 2024

BY ECF

Honorable Alvin K. Hellerstein
United States District Judge
Southern District of New York
United States Courthouse
500 Pearl Street, Room 1050
New York, New York 10007

    Re:    *United States v. Hwang et ano.*, No. 22-cr-240 (AKH)

Dear Judge Hellerstein:

    On behalf of defendant Patrick Halligan, we write in opposition to the prosecution's June 21, 2024 letter seeking to introduce summary charts and documentary evidence during the testimony of Special Agent DeLeassa Penland [ECF No. 230, "Gov't Ltr."]. These materials are inadmissible and should be excluded.

## The Prosecution's Proposed Summary Charts Should Not Be Admitted

    Special Agent Penland's charts are unhelpful to the jury, misleading, and should be excluded under Rule 1006. Once the evidence underlying the summary charts is admitted – and, as further discussed below, Mr. Halligan has no objection to its admission – the summary charts are unnecessary and unhelpful because the jury can ably and readily review the underlying evidence and draw whatever inferences they believe the evidence supports. Moreover, the prosecution's summary charts distort the underlying data and its significance in ways that will mislead the jury.

    **GX-9067** – The government argues that its depiction of "Archegos's cash over time" is relevant to its claim that the alleged market manipulation scheme had the effect of "increas[ing] Archegos's cash," and that additional securities purchases were made in late March 2021 "even as Archegos was running out of cash." Gov't Ltr. at 1-2. GX-9067, of course, shows neither of these things. It simply shows that Archegos's excess cash grew over time, and then very rapidly declined, all of which the jury can readily assess based on the underlying records, which are already in evidence.

    GX-9067 is misleading and prejudicial in at least four ways.

Hon. Alvin K. Hellerstein - 2 - June 24, 2024

First, this chart misleadingly reflects increasing (and, later, rapidly declining) cash figures without any corresponding representation of the value of Archegos's assets. This is particularly misleading during the period when Archegos's excess cash was negative (and its assets were positive), because the chart presents an incomplete and thus false picture of Archegos's financial situation. For example, coming into Thursday, March 25, the net value of Archegos's assets was *greater* than its cash shortfall (+$16.9B NAV vs. -$15B "cash"). Viewing the cash figure in isolation thus distorts the nature of Archegos's financial situation during its final week.

Second, the chart is misleading because underlying cash reports during the final week were "*projections*" of future cash levels – not then-current statements of actual available cash. In particular, intraday cash reports reflect various adjustments seeking to account for the estimated impact of market movements and trading activity (among other things), and thus are, as the government's own witness Mr. Tomita explained, simply "projections" and "estimates." Tr. 3481-3482. This highlights at least two flaws in the chart: (a) it depicts a false timeline of Archegos's true cash situation (by relying future projections as if they were current values), and (b) it suggests a false precision in the knowable information, when in fact the testimony has revealed the extreme chaos and fluidity during this week.[1] This also renders the chart's title misleading and inaccurate; if the chart is allowed (and it should not be), it should be titled "Archegos's Cash Projections."

Third, the chart's x-axis is not scaled, and the chart thus distorts the underlying data. It charts 26 data points, and spaces them evenly across the x axis, but in fact they are not regular points in time. To illustrate, each of the first five data points are a month apart, meaning that the five points represent the entire period from October 30, 2020 through February 26, 2021 (approximately four months). In contrast, the last five data points represent points during just three days (March 22 – 25, 2021). The effect of this is to badly distort the applicable time intervals, including by minimizing the suddenness of the declining cash situation during Archegos's chaotic last week. Below, we have added red boxes to illustrate this deficiency; the box on the left represents *four months* of data, and the box on the right represents just *three days* of data:



---

[1]  By way of example, the underlying report time-stamped 8:07 PM on March 23, lists -$75M as the "BofA balance/broker excess after calls. (GX-6564B) (Exhibit A). However, the March 24 report shows that Archegos began the day with over $1.7B. (GX-6657, at 2: "Today's cash/excess") (Exhibit B).

Hon. Alvin K. Hellerstein - 3 - June 24, 2024

Fourth, the color scheme in this chart is unnecessary and inflammatory. Showing positive cash amounts in a muted green and negative amounts in a vivid red adds nothing to the information being presented, and only serves to amplify the defects discussed above. This chart should not be allowed at all, but if it is permitted, it should be mono-color.

**GX-9066** and **GX-9068** – Special Agent Penland's charts regarding Mr. Becker's activity on his Verizon phone are misleading, unhelpful to the jury, and inadmissible as well. Notably, the prosecution did not elicit any testimony from Mr. Becker regarding his phone records, much less the substance of specific calls. Mr. Becker's testimony was riddled with generalizations and the prosecutors failed to elicit specific conversations of whatever calls these phone records might reflect. Nonetheless, the prosecution argues that its summary charts "are probative of Halligan's knowledge of Becker's misstatements to counterparties and of Halligan's and Becker's joint participation in a conspiracy and racketeering enterprise," but the charts in fact would not assist the jury in making any such determinations. These charts are cherry-picked and stylized extracts of Mr. Becker's Verizon phone records, and while Mr. Halligan has no objection to the admission of the underlying phone records, the summary charts should be excluded.

GX-9066 is a bar graph tallying the number of times that Mr. Halligan and Mr. Becker's phone numbers connected on each day of Archegos's final week. This is unhelpful to the jury, which is fully capable of reviewing the underlying Verizon phone logs and assessing the frequency of phone calls between Mr. Halligan's and Mr. Becker's phone numbers over any time period the jury determines is relevant. Likewise, the prosecution can of course make whatever arguments it believes follow from number of times that two colleagues called each other during the most chaotic and dynamic week in Archegos's history.

GX-9068 is a stylized extract of Mr. Becker's phone logs from the week of March 22, 2021. Here again, the jury is equally capable of reviewing the underlying phone logs and drawing whatever inferences they credibly support. Moreover, this chart appears designed to induce the jury into speculating about Mr. Halligan's awareness of Mr. Becker's particular statements to counterparties, based solely on the proximity of certain conversations. Such sheer speculation would be wholly improper and unfairly prejudicial to Mr. Halligan, and the only effect of this chart would be to invite it. The prosecution had the opportunity to elicit Mr. Becker's testimony regarding particular conversations with Mr. Halligan during the week of March 22, 2021, and it largely chose not to do so. It should not be allowed to try to plug this hole in its case with an invitation for guesswork.

\*\*\*

For these reasons, Mr. Halligan opposes the use and admission of the prosecution's summary charts.[2] However, if the Court permits the summary charts over our

---

[2] Excluding these charts would also accord with the Court's prior rulings. The Court declined to admit into evidence demonstrative charts offered by Mr. Hwang's counsel, concluding that these charts could be used in closing but not admitted in evidence. Tr.

Hon. Alvin K. Hellerstein - 4 - June 24, 2024

objection, we request that the Court instruct the jury that the charts are not themselves evidence or proof of any facts, that the jury must not consider the charts to be independent evidence of anything, that it is the role of the jury to determine whether the charts accurately reflect the evidence in the record, and that the jury should disregard the charts if it determines that they do not accurately reflect the evidence in the record.

**The Prosecution's Proposed Exhibits Should Not Be Admitted**

The prosecution also seeks to admit thirteen documents. We object to the admission of all of them.[3] We address here the documents that include Mr. Halligan:

**GX-3745** (*March 23, 2021 Bloomberg exchange between Messrs. Halligan and Becker*) – The prosecution is now taking its third run at admitting GX-3745. The Court's prior rulings should be maintained and GX-3745 should not be admitted. Tr. 1097 (May 21, 2024); Tr. 1148 (May 22, 2024); ECF No. 200. The prosecution had the opportunity to, and did, elicit Mr. Becker's testimony regarding his communications with Mr. Halligan on March 23, 2021. Tr. 1098-1101. Therefore, consistent with the Court's prior rulings, this Bloomberg chat is cumulative and inadmissible.

**GX-3793 and GX-148** (*March 16, 2021 Bloomberg chat between Messrs. Halligan and Becker and March 16, 2021 email between Messrs. Halligan, Becker, and Mills, related to Bank of America*) – We have previously set forth our objections to admission of any evidence related to an alleged misstatement to Bank of America, and we incorporate those arguments here, but will not repeat them. The admission of GX-3793 and GX-148 would work particularly unfairness to Mr. Halligan. The appropriate time for the prosecution to elicit evidence regarding Mr. Halligan's communications with Mr. Becker related to Bank of America was during Mr. Becker's testimony. The prosecution, however, did not elicit any such testimony from Mr. Becker. It should not now be allowed to effectively circumvent cross-examination by introducing Mr. Becker's communications with Mr. Halligan only after Mr. Becker has testified.

It is of no moment that the prosecution claims not to have discovered this supposed misstatement until after Mr. Becker's testimony concluded. Mr. Halligan prepared and implemented his trial strategy, including his opening statement and his cross examination of Mr. Becker, at a point when statements to Bank of America were not at issue. Allowing the introduction of GX-3793 and GX-148 would effectively reward the prosecution for springing a new allegation involving new facts, new documents, and a new financial institution, in the middle of trial.

---

3905:4-10. In addition, the prosecution's summary charts are not at all similar to the charts that expert witnesses have prepared, and the Court has admitted, to illustrate their analyses and opinions regarding complex data sets and methodologies that the jury could not readily reproduce or undertake.

[3] As noted by the prosecution, there is no dispute as to the authenticity of these records.

Friedman Kaplan Seiler Adelman & Robbins LLP

Hon. Alvin K. Hellerstein	- 5 -	June 24, 2024

Finally, all of this unfairness is amplified by the fact the documents contain no hint of Mr. Halligan's supposed "intent with respect to, and knowledge of, Becker's misrepresentations." Gov't Ltr. at 4. There is no reference in these documents to any false statement, so it appears that the prosecution is seeking to introduce these documents so that it can then make arguments that the putative evidence does not support.

**GX-1151** (*August 7, 2017 email exchange, related to Credit Suisse*) – This email should be excluded under Rules 401 and 403, because it predates the charged conspiracy by years, is misleading and confusing, and its introduction would be unfairly prejudicial to Mr. Halligan.

To begin, the charged conspiracy involves statements allegedly made in 2020 and 2021, and an email exchange from August 2017 should be excluded consistent with Court's ruling throughout the trial to keep the evidence focused on the relevant period. *See, e.g.*, June 18, 2024 Tr. at 3656:11-22 ("*I am not going to open up the period*…I am trying to keep this very long trial focused on what is in issue and keeping out extraneous material") (emphasis added).[4]

This email exchange would also confuse the issues and mislead the jury, particularly without any percipient witness to explain it. Just from the face of the document, ambiguity and confusion abounds. It appears that former Credit Suisse employee Douglas Hughes asks two questions "?  Top single position as % of NAV?  Top 5 positions as a % of NAV?," and the response that follows is a single figure: "15-20%," with no indication of which question that answers. Nor is there any indication of the numerator or denominator in this percentage. Nor is there any indication of whether the question or the answer relates to the positions held by Archegos at Credit Suisse, or at other counterparties, or both.

In sum, this 2017 email exchange is inadmissible as direct evidence because the prosecution has failed to show that events years before the charged conspiracy "(1) []arose out of the same transaction or series of transactions as the charged offense, (2) [are] inextricably intertwined with the evidence regarding the charged offense, or (3) [are] necessary to complete the story of the crime on trial." *United States v. Carboni*, 204 F.3d 39, 44 (2d Cir. 2000) (cleaned up). Likewise, it is inadmissible under Rule 404(b) because it is naked propensity evidence. *See United States v. DeCicco*, 435 F.2d 478 (2d. Cir 1970) ("whatever probative value the prior crimes of [the defendants] added to the prosecution's case on the issue of defendants' intent to commit the conspiracy here claimed was far

---

[4] *See also* June 10, 2024 Tr. at 3035:21-3036:2 ("The experience with the Volkswagen stock [in 2008] will not be allowed.  All these things, if they have any relevance, the relevance is limited, and *the opportunities for involvement in different activities in different time periods with different people and with different things happening are just opportunities to get involved in subject matter that is not relevant to this case and will confuse the issues in this case and cause prejudice to this case.*") (emphasis added); June 17, 2024 Tr. at 3369:2-4 ("You have to lay a foundation in terms of the time period relevant to this lawsuit…I won't allow it unless you lay a foundation inside the period that's in the indictment or shortly before the indictment….You might go back to 2019.  Why don't you start in 2020.").

Hon. Alvin K. Hellerstein - 6 - June 24, 2024

outweighed by the unwarranted inference the jury was permitted to draw that the defendants … were a continuing band of art treasure thieves and 'fencers'"); *United States v. Mundle*, 15-CR-315 (NSR), 2016 WL 1071035, at *5 (S.D.N.Y. Mar. 17, 2016) (refusing to permit introduction of two prior instances of similar conduct to prove defendant's knowledge and intent, because "practical effect of admitting such evidence will prompt the jury to generalize the Defendant's earlier bad act into bad character and take that as raising the odds that he did the later bad act now charged").

**GX-2943** (*group text message among Messrs. Hwang, Halligan, Mills, Eun, and Tomita on March 25, 2021*) – The prosecution's letter offers no explanation for why it seeks admission of this text chat. In any event, it is probative of nothing and should not be admitted. Moreover, the government had Mr. Tomita on the stand for a week and elicited no testimony from him regarding this text message, so it should not be admitted for this reason as well. To the extent the prosecution later identifies specific reasons that it seeks to admit this document, we seek the opportunity to respond.

For these reasons, we request that the Court deny the admission of the summary charts and documents appended to the prosecution's June 21, 2024 letter.

We thank the Court for its attention to this matter.

Respectfully submitted,

*Mary Mulligan*

Mary E. Mulligan

Attachments (Exhibits A & B)

cc:  All Counsel (by ECF)

Friedman Kaplan Seiler Adelman & Robbins LLP