Case 1:22-cr-00240-AKH   Document 237   Filed 06/25/24   Page 1 of 3



**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Jacob K. Javits Building*
*26 Federal Plaza, 37th Floor*
*New York, New York 10278*

June 25, 2024

**VIA ECF**

The Honorable Alvin K. Hellerstein
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

      Re:    *United States v. Hwang and Halligan*,
               S1 22 Cr. 240 (AKH)

Dear Judge Hellerstein:

      The Government respectfully writes to oppose defendant Patrick Halligan's June 24, 2024 letter (Dkt. 235) seeking to preclude the Government from introducing during the direct examination of Wells Fargo employee Benjamin Maisel evidence of misrepresentations made before 2020. The Court previously rejected the defendant's *in limine* motion that sought the same relief and should do so again.

      The Government anticipates that Mr. Maisel will testify, among other things, that he participated in a meeting with Halligan and Scott Becker in 2018 in which they conveyed to Wells Fargo that Archegos's largest portfolio position sizes typically represented 20-30% of Archegos's net asset value ("NAV"). The statement was false at the time it was made because Archegos's positions, in fact, were routinely larger and were larger at the time of the meeting with Mr. Maisel.

      Evidence that Halligan was present at a meeting where that information was conveyed to a counterparty is direct evidence of Halligan's participation in the charged schemes, even though that meeting predated the period charged in the Indictment. Becker testified that, starting in around 2017, Halligan trained Becker to lie to Archegos's counterparties about aspects of Archegos's portfolio, including the concentration of Archegos's largest positions. Specifically, Becker testified that, among other things, starting in 2017, Becker began to sit in on Halligan's communications with Archegos's counterparties, and Becker began to observe Halligan lie to those counterparties about the concentration of Archegos's portfolio, among other things. (*E.g.*, Tr. 891-93).

      Evidence of a meeting from 2018, attended by both Halligan and Becker, wherein Archegos conveyed to Wells Fargo that Archegos's largest positions were no larger than 20-30% of NAV is direct evidence of the training that Becker testified about, and thus is direct evidence of the scheme. Moreover, Halligan has enthusiastically attacked Becker's credibility, and appears poised to argue that there is no record evidence that Halligan knew that Becker misled counterparties about position size. Mr. Maisel's anticipated testimony will refute that argument

and corroborate Becker by furnishing evidence, not dependent on Becker's testimony, of an example from 2018 where Halligan was present for such a misstatement.

Against the foregoing, Halligan argues that the evidence would be irrelevant and unfairly prejudicial. (Dkt. 235 at 1-2). The Court already rejected those exact arguments. During the final pretrial conference, Halligan argued that evidence of misrepresentations made to Wells Fargo before 2020 should be precluded as irrelevant and unfairly prejudicial, and the Court ruled that, so long as the Government gave Halligan notice of the misrepresentations (which the Government did and which Halligan does not dispute), "I am going to hold it relevant even though it is in a prior period because statements made in a prior period can be relevant." (Apr. 11, 2024 Tr. at 124).

Halligan's letter does not even acknowledge the Court's prior ruling, let alone offer any reason for the Court to revisit it. To be sure, as Halligan notes in his letter, the Court has policed unnecessary digressions into events predating 2020 (Dkt. 235 at 1-2), but evidence of pre-2020 misrepresentations made to Wells Fargo during a meeting attended by both Halligan and Becker is not an unnecessary digression. To the contrary, for the reasons set forth above, such evidence goes directly to the heart of a core dispute in this case—namely, whether Halligan trained Becker to mislead Archegos's counterparties about, among other things, the concentration of Archegos's portfolio, such that Halligan was an active and knowing participant in Becker's regular misleading of counterparties about that very topic in 2020 and 2021.

The single, new argument advanced by Halligan proves the Government's point. Halligan argues that evidence of the 20-30% of NAV statement from 2018 "would not in any way corroborate Mr. Becker's testimony" because, according to Halligan, Becker claimed that Halligan instructed him to say precisely 35% of NAV in all instances. (Dkt. 235 at 2). But this mischaracterizes the testimony. Becker's direct testimony was that Halligan "stated that when we have these calls . . . we shouldn't say that the largest position was any larger than 35 percent, even if it was higher." (Tr. 893-94). The proof that Halligan and Becker told Wells Fargo in 2018 that the largest position sizes were 20-30% (when they were larger) illustrates the practice he described, and the probative value does not depend upon reference to the 35% figure specifically.

* * *

For the foregoing reasons, the Court should deny Halligan's application to preclude Mr. Maisel's testimony.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

By: s/_____
   Matthew Podolsky
   Alexandra Rothman
   Samuel P. Rothschild
   Andrew Thomas
   Assistant United States Attorneys
   Tel.: (212) 637-1947/-2580/-2504/-2106

Cc: Counsel of Record (via ECF and email)