# Kramer Levin



**Barry H. Berke**
Partner
**T** 212.715.7560
**F** 212.715.7660
bberke@KRAMERLEVIN.com

1177 Avenue of the Americas
New York, NY 10036
**T** 212.715.9100
**F** 212.715.8000

**June 25, 2024**

**BY ECF**

Hon. Alvin K. Hellerstein
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

      Re: <u>United States v. Sung Kook (Bill) Hwang, et al.</u>, No. 22 Cr. 240 (AKH)

Dear Judge Hellerstein:

      On behalf of defendant Bill Hwang, we respectfully write in response to the prosecution's June 21, 2024 letter to the Court providing notice of documents and summary charts that it seeks to present through a summary witness, Special Agent DeLeassa Penland. *See* ECF no. 230 ("Govt Ltr").

      Following receipt of the prosecution's letter on Friday morning, the Court shared its preliminary views on the record. As to the summary charts, the Court expressed the point that "[t]he jury will be helped by having a chart," but informed the prosecution that "the chart must be shown to the defendants in advance, and everything in it should be explained to them so that they can understand it and raise any objections if there is anything awry in it." Trial Tr. 4015:24-4016:7 (June 21, 2024). As to the 13 documents that the prosecution seeks to introduce, the Court advised that it would "rule on each piece of evidence" individually, and that "defendants must be made aware of the particular aspects of the exhibit in which the government is interested." *Id.* at 4016:12-18. The Court also directed that "we don't need a witness" to introduce this material, but that "[t]he government attorney putting this on can do it himself or herself and read what is relevant to the jury." *Id.*

## I. The Prosecution's Should Not Be Permitted to Present Its Proposed Summary Charts to the Jury

      We join in defendant Patrick Halligan's objections to the prosecution's proposed summary charts. *See* ECF No. 234 at 1-4.

## II. The Prosecution Should Not Be Permitted to Present Its Documents in Summary Fashion

The prosecution seeks to offer 13 documents, totaling 42 pages, parts of which (though apparently not all) it intends to read aloud to the jury. *See* Govt Ltr at 5. Of these 13 documents, Mr. Hwang is either a sender or recipient of nine.[1] Five of those are text-message conversations between Mr. Hwang and the prosecution's cooperating witness, William Tomita, concerning Archegos's trading and capacity at various counterparties. *See* GX-2921, GX-2923, GX-2930, GX-2982, and GX-2983. Another is a text-message chain with Mr. Hwang and Mr. Tomita that also includes Mr. Halligan, Archegos Co-CEO Andy Mills, and another Archegos employee, David Eun. *See* GX-2943. There is also a text-message chain between Mr. Hwang and Mr. Mills, *see* GX-2960, and an email chain between Mr. Hwang and Archegos Co-President Diana Pae, *see* GX-227. Finally, there is a message from Mr. Hwang to an acquaintance who was not affiliated with Archegos, Dr. Pankaj Bhandari. *See* GX-2963.

The Court should preclude the prosecution from introducing these documents under Federal Rule of Evidence 403. For starters, six of the documents reflect text messages sent or received by Mr. Tomita, a cooperating witness whom the prosecution questioned on direct examination for nearly four days and 550 pages of trial transcript, and through whom it introduced nearly 50 exhibits. If the prosecution wanted to present these additional six documents to the jury, it could have and should have sought to introduce them through Mr. Tomita, who could have provided context for the documents, explained their meaning and relevance to this case, and been subject to cross-examination.[2] That opportunity has passed.

The prosecution argues that there is no Rule 403 problem as to any of the documents because it plans to have "only selected portions" of the documents read out loud to the jury, and thus there is no "danger of . . . undue delay [or] wasting time." Govt Ltr at 5. But Rule 403 is not limited to those risks. Here, these documents present a heightened danger of confusing and misleading the jury. For example, the text-message threads with Mr. Tomita discuss technical information about Archegos's orders, holdings, and counterparties, and are often written in shorthand or industry jargon. Messages sent by Mr. Tomita in GX-2921 and GX-2983 illustrate this point:

---

[1] Mr. Halligan is a sender or recipient of the four documents on which Mr. Hwang was not himself a sender or recipient. Mr. Hwang joins Mr. Halligan's separately filed objections to these four documents. *See* ECF No. 234 at 4-6.

[2] To the extent that the prosecution seeks to introduce GX-227, an email chain between Mr. Hwang and Ms. Pae, for the reference to a conversation that Mr. Hwang had with Mr. Tomita, that conversation also could have been raised with Mr. Tomita.

> 02/22/21 02:26:44 PM
> DB gave us $50mm each VIAC and TME. GSX they are trying to work through ownership issue still. Before they said they needed to check BNP's views so we could hold the position through the transition, but I said it is fine as we likely won't transition to BNP until summer as they have some swap book delays.

> 02/17/21 03:40:52 PM
> Hi Bill, just so you know the UBS proposal looks very good at first glance, it's around $1bln of longs. I will comb through it in more detail and finalize with them. No GSX unfortunately that one is maxed. It's rules based on a balanced book as opposed to line by line single stock. Margins are 20-30%.

It is highly unlikely that the jury—even after six weeks of testimony—would be able to fully understand the meaning of the "ownership issue" at "DB" and their need to "check BNP's views," what it means for the "UBS proposal" to be "around $1bln of longs," or that "[i]t's rules based on a balanced book as opposed to line by line single stock" without the guiding testimony of a witness with personal knowledge who can explain the terminology and the context for this communication. Without Mr. Tomita as a guide, this material, introduced through an agent or a prosecutor who has no personal knowledge of the document and cannot explain its context or meaning (or be subject to cross-examination to test that meaning) is likely to confuse or mislead the jury.

Further, these documents are also cumulative. Mr. Tomita and others have testified at length about Archegos's efforts to secure additional trading capacity and its pursuit of new trading counterparties. *See, e.g.*, Trial Tr. 3396:10-11 (June 17, 2024) ("at that point in time Bill was continuously asking me to get GSX capacity at any and every counterparty possible") (Tomita); *id.* at 849:5-7 (May 20, 2024) (Becker) ("in addition to adding additional capacity at existing counterparties, Archegos also signed up for new broker relationships to get new capacity from those brokers as well"); *id.* at 2094:8-16 (May 30, 2024) (Taveras) ("Q. … [A]s Archegos gets maxed out at different counterparties, what trend did you observe with respect to other counterparties? … THE WITNESS: I observed that the margin rates increased and more and more, and they became maxed out at more counterparties"). In this regard, the text messages between Mr. Hwang and Mr. Tomita, as well as those between Mr. Hwang and Mr. Mills, tell the jury nothing that it has not heard many times before. The discussion about trading confidentiality between Mr. Hwang and Ms. Pae, *see* GX-227, is likewise a topic that the jury has heard more than enough about. *See, e.g.*, Trial Tr. 4075:18-21 (June 24, 2024) (Tomita) ("Q. . . . [Archegos] was concerned about information leakage or its investment strategies getting out, correct? A. That is correct."); *id.* at 1197:12-25 (May 22, 2024) (Becker) (testifying that there were "general instructions from Mr. Hwang" as well guidance in "the [Archegos] compliance manual" to "protect the confidentiality of the investment strategies at the firm").

The text message chain between Mr. Hwang and Mr. Mills, GX-2960, should be excluded for the additional reason that it contains evidence of Mr. Hwang's and Mr. Mills' religious devotion that could mislead the jury and unfairly prejudice Mr. Hwang. As the parties addressed in their motions *in limine*, Mr. Hwang is a deeply religious person, and Mr. Hwang and Mr. Mills (as well as others at Archegos) regularly spoke to each other in religious terms. In this light, Mr. Mills' statement ("Pray we can get the meeting today.") and Mr. Hwang's response ("God willing!") are fully in line with the manner in which they regularly

communicated with one another. But because evidence of Mr. Hwang's religion has been, appropriately, excluded from this trial, *see* Pretrial Conf. Tr. at 81-82 (Apr. 11, 2024), there is a real risk that the jury could misinterpret Mr. Hwang's and Mr. Mills' words to be evidence of desperation. Because the only way to correct this misimpression would be to elicit evidence of Mr. Hwang's religious devotion—something the parties and the Court have agreed should not be done—this text-message chain must be excluded.

Finally, the message from Mr. Hwang to Dr. Bhandari stating that he is "one of the top shareholders of TME," GX-2963, should be excluded because, as the prosecution acknowledges, *see* Govt Ltr at 4-5, it is not an accurate statement and therefore risks confusing and misleading the jury. There has been extensive testimony in this case that owning a swap is not the equivalent of owning a share, and that shareholders have different rights and obligations compared to swap owners. *See, e.g.*, Trial Tr. 841:21-842:2 (May 20, 2024) (Becker) ("if you own more than 5 percent of a company's outstanding shares … you would trigger a public filing requirement", but "if you invest the same amount of money in the same security for the same number of shares in a swap contract, you do not trigger a filing requirement"); *id.* at 2054:13-14 (May 30, 2024) (Taveras) ("Q. When you buy a swap, do you get voting rights? A. No."); *id.* at 2055:18-20 (Q. … [W]hen you are a swap holder, you're not the controlling shareholder; right? A. That's correct."). There has also been testimony that, despite these differences, market participants (including employees at Archegos) often used "shareholder" as a non-technical shorthand for "swap owner." *See, e.g.*, *id.* at 3479:17-23 (June 17, 2024) (Tomita) ("A. He said … that we were –either the two or three largest shareholders of Viacom stock. Q. Did being a shareholder in that size include a swap position? A. Yes, it did."); *id.* at 379:11-12 (May 15, 2024) (Martz) (describing Column E of GX-475, a combo sheet combining Archegos's swap and equity positions, as "the quantity of shares that Mr. Hwang owned"); 872:22-873:1 (May 20, 2024) (Becker) ("THE COURT: When you say [ ]3.5 million shares, you're not actually buying those shares, are you? THE WITNESS: … Credit Suisse had given Archegos [] 3.5 million shares. They were eventually purchased through swap by Archegos."). And it is particularly understandable that Mr. Hwang would use the term "shareholder" when describing his TME holdings to Dr. Bhandari, an acquaintance who does not work in the financial industry and therefore likely would not understand what swaps are or the distinction between swaps and shares. To attempt to use Mr. Hwang's text-message shorthand to suggest that he had an understanding of his holdings that was contrary to law serves no function but to confuse and mislead the jury. *Cf. United States v. Litvak*, 889 F.3d 56, (2d Cir. 2018) (evidence of witness's incorrect understanding of market inadmissible under Rule 403 where it "had a high probability of confusing the jury by asking it to consider as relevant the perception of a [witness] that was entirely wrong").

\* \* \*

For the foregoing reasons, Mr. Hwang respectfully requests that the Court exclude the prosecution's proposed summary charts and deny the prosecution's request to introduce GX-148, GX-227, GX-1151, GX-2921, GX-2923, GX-2930, GX-2943, GX-2960, GX-2963, GX-2982, GX-2983, GX-3745, and GX-3793 through a summary witness.

Respectfully submitted,

*/s/ Barry H. Berke*

Barry H. Berke
Dani R. James
Jordan Estes
Michael Martinez

cc: Counsel of record