

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Jacob K. Javits Building*
*26 Federal Plaza, 37th Floor*
*New York, New York 10278*

June 28, 2024

**VIA ECF**

The Honorable Alvin K. Hellerstein
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

      Re:    *United States v. Hwang and Halligan*,
               S1 22 Cr. 240 (AKH)

Dear Judge Hellerstein:

      The Government respectfully submits this letter in advance of the charge conference in this case to note certain objections to the defendants' proposed jury charges (the "Defendants' Requests" (Dkt. No. 125)). Because the Court will distribute its own draft charge, to be followed by a charge conference, and because the Government has proposed its own jury charges (the "Government's Requests" or "Gov't Requests" (Dkt. No. 127)), the Government does not offer a line-by-line response or objection to the Defendants' Requests, but instead seeks to draw the Court's attention to the principal substantive requests of the defendants that the Government believes either are contrary to or materially misstate applicable law. The analysis below focuses on portions of the charges that are manifestly incorrect or inappropriate, but does not generally compare the merits or language of the defendants' requested instructions with the Government's, which instructions, the Government respectfully submits, are consistently clearer, more helpful to the jury, fairer to both parties, and adhere to and are supported by case law and precedent in this circuit and district.

      **I.**    **Defendants' Proposed Instruction No. 12 – Witness with a Plea Agreement**

      The Government opposes the defendants' proposed instructions with regard to cooperating witnesses. Although the defendants' purport to have adapted the proposal from this Court's jury instructions in *United States v. Claxton*, in fact the instruction proposed by the defendants here is substantially more argumentative and less balanced than the charge that this Court gave to the jury in that case. The Government proposed a standard instruction on this topic drawn from a recent securities fraud trial in this District. (*See* Gov't Requests at 76-78 (citing *United States v. Bankman-Fried*, No. 22 Cr. 673 (LAK) (S.D.N.Y. Nov. 2, 2023))). Nonetheless, the Government has no objection to the Court providing to the jury the same charge given in *Claxton*, which was as follows (with references to confidential sources omitted):

There have been [witnesses who testified pursuant to cooperation agreements]. In judging the credibility of . . . cooperating witnesses, do not concern yourself with how you personally feel about the government's investigative practices. The government may seek to prove the defendant[s'] guilt using . . . cooperating witnesses. The techniques used by the government are not your concern. Your concern is whether the government proved the guilt of the defendant beyond a reasonable doubt.

The testimony of a single cooperating witness may be enough in itself for conviction if you believe that the testimony establishes guilt beyond a reasonable doubt. However, because of the interest a cooperator may have in testifying, a cooperator's testimony should be scrutinized with special care and caution. The fact that a witness is a cooperator can be considered by you as bearing upon the witness's credibility. It does not follow, however, that simply because a person has admitted participating in one or more crimes, or is or is not cooperating with the government, that that witness is incapable of giving a truthful version of what happened. You should draw no conclusions or inferences of any kind about the guilt of the defendant on trial from the fact that a cooperating witness or other people may have pleaded guilty to similar charges.

It's the defendant[s'] guilt alone that is at issue here. The government must prove that beyond a reasonable doubt, beyond a reasonable doubt [the charges in the case]. Live testimony of other witnesses, cooperator witness testimony, should be given such weight as it deserves in light of the facts and circumstances before you, taking into account the witness's demeanor and candor, the strength and accuracy of the witness's recollections, the background of the witness, and the extent to which the testimony is or is not corroborated by other evidence in the case. You may consider whether a cooperating witness—like any other witness called in the case—has an interest in the outcome of the case, and if so, whether that interest has affected the witness's testimony.

You have heard testimony about various agreements between the government and the witnesses. It's of no concern to you why the government made such . . . agreement[s]. However, you may consider the fact of an agreement as one factor in evaluating the credibility of that witness's testimony. Again, your concern is did the witness tell the truth.

>Ask yourself whether the cooperator would benefit more by lying or by telling the truth. Was the cooperator's testimony made up in any way because they believed or hoped that they would somehow receive favorable treatment by testifying falsely? Or did they believe that their interests would be best served by testifying truthfully? If you believe that the witness was motivated by hopes of personal gain, was the motivation one that would cause him to lie, or was it one that would cause him to tell the truth? Did this motivation color his testimony? Was he candid? Was he truthful? These are the factors. Ask yourself whether the cooperator would benefit more by lying or by telling the truth. Was the cooperator's testimony made up in any way because they believed or hoped that they would somehow receive favorable treatment by testifying falsely? Or did they believe that their interests would be best served by testifying truthfully? If you believe that the witness was motivated by hopes of personal gain, was the motivation one that would cause him to lie, or was it one that would cause him to tell the truth? Did this motivation color his testimony? Was he candid? Was he truthful? These are the factors.
>
>If you find that the cooperator's testimony was false, you should freely reject it. However, if, after a cautio[us] and careful examination of a cooperating witness's testimony and demeanor on the witness stand, you are satisfied that the witness told the truth, you should accept it as credible and act upon it accordingly. Even if a witness may have testified falsely in one part, you still may accept his testimony on other parts, or disregard it entirely. You make that determination.

*United States v. Claxton*, No. 20 Cr. 631 (AKH) (S.D.N.Y. June 30, 2022) (Dkt. No. 325), at 773-75.

## II. Defendants' Proposed Instruction No. 17 – Crimes Defined by Statute Only

The Government objects to this instruction because it is unnecessary, consists of argument, and risks confusing the jury on the relevant scienter standards. Additionally, it is legally incorrect that the offenses at issue are "defined by statute only" as Title 15 securities fraud is also defined by relevant provisions within the Code of Federal Regulation.

## III. Defendants' Proposed Instruction No. 20 – Large Sums of Money

The Government objects to this instruction because it is unnecessary, consists of argument, and is wrong. Notably, the particular sums of money in this case, and size and importance to the defendants, may well be facts relevant to the jury's consideration of whether certain elements of

the crimes charged have been met. For example, the fact that small moves in stock prices at the end of the day could potentially yield vast cash rewards for Hwang is relevant to the motivation for and operation of the alleged market manipulation scheme. And the fact that Hwang spent billions of dollars on March 23, 2021, even while his cash reserves were approaching depletion, to execute market-moving trades is probative of his intention to impact market prices to keep his portfolio afloat. Moreover, the jury will be instructed in no uncertain terms that the presumption of innocence applies to the defendants in this case, and so there is no need for this instruction.

### IV. Defendants' Proposed Instruction No. 23 – Prejudice from the Word "Racketeering"

The Government objects to this proposed instruction because it is unnecessary, draws attention to a word that has not been used in any context in this trial other than in instructing the jury on the elements of the offenses charged, and is wrong. To caution the jury against a word having "certain implications in our society" is vague and unnecessary. Further, the instruction that "[u]se of that term in this statute and in this courtroom should not be regarded as having anything to do with your determination of whether the guilt of these defendants has been proved beyond a reasonable doubt" is confusing and incorrect. In fact, the Court will define the term and explain how the jury must apply that word and its definition to the evidence in this case.

### V. Defendants' Proposed Instruction No. 30 – Predicate Act One: First Element – Fraudulent Act

The Government objects to this proposed instruction generally because it is confusing, including because it does not distinguish between predicate acts of manipulation and of fraud upon the counterparties. This proposed instruction also contains a number of misstatements of law, including the following.

#### a. ". . . in connection with the sale of the At-Issue Securities . . . ." (Dkt. No. 125 at 46)

The defendants incorrectly seek to limit the fraud alleged to have committed on the counterparties to conduct "in connection with the sale of the At-Issue Securities." (Dkt. 126 at 46). In fact, Title 15 prohibits that use of "any manipulative or deceptive device or contrivance" "in connection with the purchase or sale of any security . . . or any securities-based swap agreement," 15 U.S.C. § 78j(b), and defines a security to include a security-based swap, 15 U.S.C. §§ 77b(a)(1), 77b(a)(17), 78c(a)(10), 78c(a)(68). In other words, the security-based swaps that Archegos entered into with the counterparties are themselves securities, and therefore any fraud undertaken in connection with one or more of those swaps would also satisfy the "in connection with" requirement. Accordingly, the Court should not instruct the jury that the fraud must have been "in connection with the sale of the At-issue Securities," as requested by the defendants.

> b. **"When considering whether this link has been established, you may consider only the conduct, if any, that you found was deceptive and fraudulent and was material to Archegos's counterparties." (Dkt. No. 125 at 47)**

This proposed instruction is erroneous for two reasons. First, in so far as the instruction requires that the fraudulent conduct be material to Archegos's counterparties in particular, it is wrong because materiality is judged objectively and the Government is not required to establish reliance on the defendant's misrepresentations in a criminal securities fraud case. *United States v. Litvak*, 889 F.3d 56, 64-65 (2d Cir. 2018); *United States v. Vilar*, 729 F.3d 62, 88 (2d Cir. 2013).

Second, as discussed in the following section, a defendant may be convicted of securities fraud even where the victim of the fraud was not a party to any securities trade.

> c. **"[T]he government must prove . . . that the deceptive conduct was material to the decision of one or more individuals to sell particular securities. . . . You may find the 'in connection with' requirement has been established only if the defendant's deceptive conduct concerned the value, nature, or investment characteristics of the securities that the counterparty sold." (Dkt. No. 125 at 48-49)**

These proposed instructions are incorrect as a matter of law. The "Supreme Court has repeatedly held" that the "in connection with" requirement "is easily satisfied," *United States v. Nouri*, 711 F.3d 129, 143 (2d Cir. 2013), and "must be read flexibly, not technically and restrictively so that novel and atypical as well as garden type variety frauds do not escape its prohibitive scope," *Dabit v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 395 F.3d 25, 37 (2d Cir. 2005), *vacated and remanded on other grounds*, 547 U.S. 71 (2006).

Accordingly, both the Supreme Court and Circuits across the country have rejected the proposition that Rule 10b-5 is violated only where the deceptive conduct was material to a party to the securities trade that provides the jurisdictional nexus. Thus, for example, an employee who fraudulently embezzles information from his employer and uses it to trade with a third party violates Rule 10b-5, *United States v. O'Hagan*, 521 U.S. 642, 652 (1997); as does a hacker who uses deceit to steal material non-public information from a company and then uses that information to trade, *United States v. Khalupsky*, 5 F.4th 279, 290-91 (2d Cir. 2021). It violates the Rule for a trader to lie to his broker about his intent to repay the margin loan that he uses to trade securities with third-parties, *AT Brod & Co. v. Perlow*, 375 F.2d 393, 395-98 (2d Cir. 1967); as it does for a swindler to tell investors he will use their money to buy securities but pockets the funds without doing so, *In re J.P. Jeanneret Assocs., Inc.*, 769 F. Supp. 2d 340, 362-63 (S.D.N.Y. 2011).

From these decisions, it follows *a fortiori* that the defense's contention that the misrepresentation must also concern "the value, nature, or investment characteristics of the securities" is wrong. The defense purports to find this requirement in *Chemical Bank v. Arthur Andersen*, 726 F.2d 930 (2d Cir. 1984). But that decision does not create the defense's proposed "value, nature, or investment characteristics" rule. There, the Second Circuit held that pledging securities as collateral for a loan was a "purchase or sale" under the securities laws, but that the alleged fraud in the case was not "in connection with" that pledge because "no misrepresentations were made" about the securities. *Id.* at 944-45. This does not mean that, to satisfy the "in connection with" requirement, there needed to be a misrepresentation about the value, nature, or characteristics of the securities. Such a misrepresentation would have been sufficient, but so would have been another misrepresentation, such as a lie about ownership of the securities. *See Kendrick*, 692 F.2d at 1264-66.

In fact, just two years after *Chemical Bank* was decided—more than thirty-five years ago—the Second Circuit clarified that *Chemical Bank* does not have the reach now claimed by the defendants. In *SEC v. Drysdale*, the Second Circuit explained that the failure to meet the "in connection with" requirement in *Chemical Bank* was not a result of the fact that the misrepresentations did not concern the value, nature, or investment characteristics of the securities at issue, but rather because the securities at issue in *Chemical Bank*—which were merely collateral for a transaction that the victim was fraudulently induced to enter—were too remotely connected to the conduct. 785 F.2d 38, 41-42 (2d Cir. 1986). In *Drysdale*, by contrast, "securities were transferred as a direct result of a misrepresentation," and therefore the misrepresentations were in connection with the purchase or sale of securities, even though the misrepresentations went to the financial health of a party to the transaction, not the characteristics of the securities themselves. *Id.* at 42-43. Indeed, as the court observed in *Drysdale*, the conclusion that misrepresentations need not go to the value of the securities themselves to be "in connection with the securities" was not only consistent with Supreme Court and Second Circuit precedent, *id.* at 42 (citing *AT Brod*, 375 F.2d 393, and *United States v. Naftalin*, 441 U.S. 768 (1979)), but indeed with the reasoning in *Chemical Bank* itself, which distinguished its own reasoning from a case in which misrepresentations induced a pledge of stock, *Drysdale*, 785 F.2d at 43 (discussing *Chemical Bank*, 726 F.2d at 944, and *Weaver v. Marine Bank*, 637 F.2d 157, 159-60 (3d Cir. 1980)). Consistent with this law, "judges in this District have repeatedly rejected the contention that the alleged fraud or misrepresentations must relate to the value of the securities purchased or sold," *Uni-World Capital LP v. Preferred Fragrance Inc.*, No. 13 Civ. 7204 (PAE), 2014 WL 3900565, at *9 (S.D.N.Y. Aug. 8, 2014), and the Supreme Court itself has made clear that "neither the SEC nor this Court has ever held that there must be a misrepresentation about the value of a particular security in order to run afoul of" Section 10(b), *Zandford*, 535 U.S. at 820. There is, then, no basis to conclude that *Chemical Bank* created a "value, nature, and characteristics" rule for the "in connection with" requirement.

Instead, the Court should instruct the jury on the phrase "in connection with" consistent with the instructions from the numerous Section 10(b) prosecutions that have occurred in this District. In those cases, courts routinely instruct trial juries that the requisite "connection" is simply

a "nexus" between the scheme and a security. *See, e.g., United States v. Goel*, No. 22 Cr. 396 (PKC), Trial Tr. 1180 (instructing in an insider trading case that "A scheme to defraud is 'in connection with' a security if you find the alleged conduct 'touched upon' a securities transaction."); *United States v. Buyer*, No. 22 Cr. 397 (RMB), Trial Tr. 1723 (instructing in an insider trading case that "[a] scheme to defraud is in connection with a security if you find that the alleged conduct touched upon a securities transaction."); *United States v. Neil Cole*, No. 19 Cr. 869 (ER) (accounting fraud), ECF Doc. Trial Tr. 2772-73 ("The requirement that the fraudulent conduct be in connection with a purchase or sale of securities is satisfied so long as there was some nexus or relation between the allegedly fraudulent conduct and the sale or purchase of securities."); *United States v. Milton*, No. 21 Cr. 478 (ER), Trial Tr. 3205 ("The requirement that the fraudulent conduct be 'in connection with' a purchase or sale of securities is satisfied so long as there was some nexus or relation between the allegedly fraudulent conduct and the sale or purchase of securities. Fraudulent conduct may be 'in connection with' . . . the purchase or sale of securities if you find that the alleged fraudulent conduct coincided with a securities transaction."); *United States v. Lavidas*, No. 19 Cr. 716 (DLC), Trial Tr. 1020 (instructing, with respect to 18 U.S.C. § 1348, that "[a] scheme to defraud is 'in connection with' a security if you find the alleged conduct 'touched upon' a securities transaction. It is not necessary for you to find that the defendant actually purchased or sold securities"); *United States v. Elgindy*, No. 02 Cr. 589 (RJD), Trial Tr. 8846 ("Fraudulent conduct may be 'in connection with' the purchase or sale of securities if you find that the alleged fraudulent conduct touched upon a securities transaction. Whether you are considering insider trading or market manipulation, in either event, you must find the 'in connection with' requirement to have been satisfied."). Model instructions suggest using the same type of language. 2B Fed. Jury Prac. & Instr. § 62:11 (6th ed.). Modern Federal Jury instructions includes a similar instruction. 3 Modern Federal Jury Instructions-Criminal § 57.03 (2023) ("You need not find that the defendant actually participated in any securities transaction if the defendant was engaged in fraudulent conduct that was "in connection with" a purchase or sale. The 'in connection with' aspect of this element is satisfied if you find that there was some nexus or relation between the allegedly fraudulent conduct and the sale or purchase of securities. Fraudulent conduct may be 'in connection with' the purchase or sale of securities if you find that the alleged fraudulent conduct 'touched upon' a securities transaction.").

### VI. Defendants' Proposed Instruction No. 31 – Predicate Act One: First Element – Manipulative Act or Device

The defendants' proposed instruction with respect to manipulation is erroneous in two principal respects: (1) the defendants incorrectly insert a materiality element; and (2) the defendants seek an instruction that manipulative intent must be a defendant's only or "sole" intent when purchasing or selling a security. Both claims are wrong.

#### a. Materiality

The statutory scheme that underlies the manipulation predicate of Count One and the charge contained in Count Two does not impose a free-standing materiality requirement. Section 10(b), entitled "Manipulative and deceptive devices," makes it unlawful "to use or employ" "any

manipulative or deceptive device or contrivance" in contravention of SEC regulation. 15 U.S.C. § 78j(b). Section 10(b) does not restrict the prohibition to "any *materially* manipulative" or "*materially* deceptive" device or contrivance. Rule 10b-5, in turn, prohibits three forms of conduct:

> (a) To employ any device, scheme, or artifice to defraud,
>
> (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
>
> (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person.

17 C.F.R. 240.10b-5. Notably, only the second variety of prohibited conduct—the making of untrue statements of fact or omitting facts—contains the word "material." This regime reflects that Congress and the SEC made the judgment that intentional lying should be punishable when the lie concerns a material fact; Congress and the SEC, however, separately decided that manipulative conduct is punishable when it is willfully undertaken.

As the defendants' own proposed instructions acknowledge (*see* Dkt. No. 125 at 46), each prong of Rule 10b-5 provides an independent basis for conviction. Extracting the word "material" from one subsection and applying it to terms found in the other subsections would begin to collapse the various categories of misconduct into one. And, as concerns manipulation specifically, the Second Circuit has noted that Rule 10b-5 "extends to manipulation of all kinds, whether by making false statements or otherwise." *United States v. Royer*, 549 F.3d 886, 899 (2d Cir. 2008). Manipulation through "material misstatements" is but one form of forbidden manipulation, and applying the elements of misstatement-based fraud to trading-based fraud ignores that distinction.

The defendant's proposed materiality instruction would also be inconsistent with case law. In *United States v. Elgindy*, for example, the court instructed on a manipulation theory of 10b-5 but did not include any separate "materiality" instruction with respect to the manipulation theory. *See generally Elgindy*, Trial Tr. 8786. (The judge instructed the jury on "material fact" in connection with a misappropriation theory of insider trading.). The Circuit approved the instructions. *Royer*, 549 F.3d at 899. Similarly, in *S.E.C. v. Lek Securities Corp.*, Judge Cote did not instruct on a separate "materiality" standard. *See generally S.E.C. v. Lek Securities Corp.*, No. 17 Civ. 1789 (DLC), ECF Doc. 556 (transcript containing instructions). The Circuit approved those instructions, too. *S.E.C. v. Vali Mgmt. Partners*, No. 21-453, 2022 WL 2155094, at *1-2 (2d Cir. June 15, 2022). By contrast, the case upon which the defendants rely in their proposed instructions (*see* Dkt. No. 125 at 52 n.108) did not concern market manipulation.

Furthermore, the distinction between which prong of Rule 10b-5 requires materiality is logical: manipulation schemes like the one alleged here require proof that the defendant intended to control or affect the price of a security—inherently a material aspect of any security transaction.

As Judge Dearie told the jury in *Elgindy,* "Among the primary objectives of the Exchange Act are the maintenance of fair and honest security markets and the elimination of manipulative practices that tend to distort the fair and just price of stock. Congress recognized that any deceptive or manipulative practice that influenced or related to trading activity undermined the function and purpose of a free market." *Elgindy*, Trial Tr. 8829. That is, when a manipulative scheme exists, it is, by definition, calculated to interfere with the markets, which Congress has acted to prevent. The Second Circuit in *United States v. Regan* made the point: "Failure to disclose that market prices are being artificially depressed operates as a deceit on the market place and is an omission of a material fact." 937 F.2d 823, 829 (2d Cir. 1991) (quoting *United States v. Charnay*, 537 F.2d 341, 351 (9th Cir. 1976)). In short, there is no basis to instruct the jury on materiality with respect to market manipulation under Title 15.

### b. "Sole Intent"

The defendants seek an erroneous instruction with respect to the intent required to violate Section 10(b) through market manipulation. (*See* Dkt. No. 125 at 53-54). Securities fraud under Section 10(b) of Title 15 is a specific intent crimes, meaning that the defendant must have formed an intent to deceive, manipulate, or defraud. *See United States v. Khalupsky*, 5 F.4th 279, 297 (2d Cir. 2021) (referring to securities fraud as a "specific intent crime"); *Vilar*, 729 F.3d at 93; *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 199 (1976) (Section 10(b) scienter is "intent to deceive, manipulate, or defraud").

The law is clear that a defendant has formed the requisite intent if the intent to commit the crime was *any* of his objectives. *Anderson v. United States*, 417 U.S. 211, 225-26 (1974). The forbidden "specific intent need not be the actor's sole, or even primary, purpose." *United States v. Technodyne LLC*, 753 F.3d 368, 385 (2d Cir. 2014) (collecting cases); *see also United States v. Gatto*, 986 F.3d 104, 129 n.12 (2d Cir. 2021) ("We are also unpersuaded by Defendants' dual intent argument, as it is commonplace for individuals to have more than one motive for acting."). Indeed, it would be a remarkable rule—and one inconsistent with the law—if a defendant could escape criminal liability for fraud, intentionally committed, if he could come up with another, non-criminal rationalization supporting his conduct. *See Technodyne*, 753 F.3d at 385 (noting that "[i]t is commonplace that the law recognizes that there may be multiple motives for human behavior" and that "when Congress has meant to impose a sole-intent limitation, it has done so expressly").

The defendants propose that the jury be instructed otherwise in direct contravention of the law. They suggest that, for conviction, the defendant must have acted "with the sole intent to (1) create a false impression of market activity regarding the At-Issue securities, and (2) artificially distort the prices of the At-Issue securities, rather than for investment purposes,"[1] and a defendant cannot be convicted if he or she "purchased or sold any securities, or securities-based swap, for any investment reason." (Dkt. No. 125 at 54). The Court should decline the proposed instruction,

---

[1] This definition of intent—requiring an intent both to create a false impression of market activity and artificially distort prices—also finds no basis in any authority and should be rejected.

which would be error. First, the phrase "investment reason" is vague and confuses intent and motivation. *See, e.g.*, *Rosemund v. United States*, 572 U.S. 65, 88-89 (2014) (Alito, *J.*, dissenting, and distinguishing "motives" from "intent"). In this case, Hwang may well have had an "investment reason" for manipulating the prices of securities in the sense that the manipulation would support his investments—but that reason or motive is categorically distinct from whether Hwang formed criminal intent. Second, the defendants' proposal would upend settled law that applies in all specific intent crimes and would contravene the Second Circuit's guidance that "specific intent need not be the actor's sole, or even primary, purpose." *Technodyne*, 753 F.3d at 385. There is no special mental state needed to trigger liability under any prong of Rule 10b-5 and, should this Court fashion one, it would impose an intent requirement that neither the Circuit nor the Supreme Court have held to apply to any similar statute.

In support of their proposed instruction, the defendants rely a charge given in *United States v. Tuzman*, No. 15 Cr. 536 (PGG). There, Judge Gardephe instructed the jury about sole intent:

> [T]he government must prove beyond a reasonable doubt that each defendant agreed to engage in conduct with the sole intent to (1) create a false impression of market activity regarding KITDigital stock, and (2) artificially distort the price of KITDigital stock, rather than for legitimate investment purposes. Manipulative intent must be demonstrated as to each defendant, but can be inferred from conduct that a defendant engaged in.

Doc. 706 at 189, Trial Tr. 7210. That Judge Gardephe gave such an instruction does not suffice to justify its inclusion here. The *Tuzman* instruction is mistaken in its requirement of "sole intent," as *Technodyne*, *Anderson*, *Gatto* and other cases demonstrate, and arose in the context of a multi-count, multi-scheme case under multiple types of fraud statutes and under circumstances where the "sole intent" in the instruction does not appear to have fully litigated before the district court. It is also inconsistent with the instructions in *Elgindy*, which did not include any so-called "sole intent" requirement, and were affirmed by the Court of Appeals. *Royer*, 549 F.3d at 899-900; *see also Lek Securities Corp.*, No. 17 Civ. 1789 (DLC), ECF Doc. 556, Trial Tr. 2587-88 (instructing on intent "to inject a false pricing signal into the market or to mislead investors by artificially affecting market activity" with no requirement of so-called "sole intent").

The other cases cited by the defendants do not support their position. The language upon which the defendants rely in *United States v. Mulheren* simply parrots the description of government's case; it does not purport to make any rule about the required intent at all. 938 F.2d 364, 368 (2d Cir. 1991). *Markowski v. S.E.C.*, also cited by the defendant, says nothing about a sole intent instruction and does not support the defendant's request. 274 F.3d 525, 528 (D.C. Cir. 2001). Rather, *Markowski* recognized that the SEC's interpretation of manipulation was reasonable "in light of what appears to be Congress's determination that 'manipulation' can be illegal solely because of the actor's purpose[.]" *Id.* And *S.E.C. v. Masri* does not support his proposed instruction either, as the standard adopted by *Masri* was not that an actor "solely intended" to manipulate but

rather that the actor would not have engaged in the same conduct "but for" the forbidden intent. 523 F. Supp. 2d 361, 372-73 (S.D.N.Y. 2007).

In sum, the defendants' proposed rule is not supported by the statute or decisional law, and is contrary both to basic principles of criminal law and to Congress's aims. Indeed, the facts of this case are illustrative. The defendants intend to argue that Hwang had a positive view of the stocks he is charged with manipulating. That may be true, but there is no basis in law or logic to suppose that a defendant can be guilty of manipulating only stocks he did not like. A defendant may form manipulative intent where he seeks to artificially affect the price of stock regardless of whether he also hopes the investment may turn out well.[2]

### VII. Defendants' Proposed Instruction No. 37 – Predicate Act Two: Title 18 Securities Fraud – First Element

The defendants seek an instruction "that trading capacity and the opportunity to trade at specified margin rates are not money or property." (Dkt. No. 125 at 62).[3] This proposed instruction is at a minimum confusing and should not be given.

*First*, the claim that "trading capacity [is] not money or property" is wrong or at least misleading. As the evidence at trial has demonstrated, when trading on margin, trading capacity is indeed the equivalent of money, in the sense that the capacity is the equivalent to a loan, *i.e.*, money. As the evidence at trial has also demonstrated, when trading on swap, the counterparty financial institution grants to the client—here, Archegos—the right to the economic exposure, that is, the gain or loss, associated with the underlying security, which is a property right.

*Second*, the claim that "the opportunity to trade at specified margin rates [is] not money or property" is confusing. The opportunity may not be "money or property," but a loan at a particular margin rate certainly is money or property. Accordingly, this instruction should not be given.

### VIII. Defendants' Proposed Instruction No. 43 – Predicate Act Three: Wire Fraud – Second Element

The defendants' proposal to instruct the jury that a defendant must act "willfully" to be guilty of wire fraud is incorrect. There is no reference to willfulness in the text of the wire fraud statute. Instead, the applicable *mens rea* for wire fraud is "specific intent to harm or defraud the victims of the scheme." *United Stats v. Rybicki*, 354 F.3d 124, 150 (2d Cir. 2003); *see also United*

---

[2] If the Court disagrees and is inclined to depart from *Technodyne*, the Government respectfully requests the opportunity to submit an alternate instruction in the form of a "but-for" test consistent with *S.E.C. v. Masri*, 523 F. Supp. 2d 361, 372-73 (S.D.N.Y. 2007), as the defendant's proposal lacks any useful instruction for understanding what it means to trade for both a legitimate economic purpose and for a manipulative purpose.

[3] The same instruction is contained in Proposed Instruction No. 42 (Dkt. No. 125 at 67) with respect to wire fraud, and should be rejected for the same reasons.

*States v. Gole*, 21 F. Supp. 2d 161, 167-68 (E.D.N.Y. 1997) ("'Willfully' appears nowhere in the mail fraud statute . . . ."). Multiple Circuits have, accordingly, rejected the argument that the jury must find willfulness to convict under the wire-fraud statute. *See United States v. Blagojevich*, 794 F.3d 729, 739 (7th Cir. 2015) ("The wire-fraud statute requires a specific intent to defraud but not willfulness or any other proxy for knowledge of the law."); *United States v. Dockray*, 943 F.2d 152, 156 (1st Cir. 1991) (holding that "willfulness" is "not synonymous with the intent to defraud requirement in the mail and wire fraud statutes"); *United States v. DiRoberto*, 686 F. App'x 458, 461 (9th Cir. 2017) ("The mail and wire fraud statutes to not require proof of willfulness.").

Moreover, while the Second Circuit has not yet addressed whether proof of willfulness is required to establish wire fraud, it has long held that wire fraud does not require proof that the defendant intended to break the law. *See United States v. Porcelli*, 865 F.2d 1352, 1358 (2d Cir. 1989) (rejecting due process claim that defendant "had no notice that his conduct was illegal" because "[t]he specific intent required under the mail fraud statute is . . . not the intent to violate a statute"); *United States v. Weiss*, 930 F.2d 185 (2d Cir. 1991) (in mail fraud prosecution, affirming preclusion of defendant's testimony regarding whether he "intended to commit a crime" because it was "not relevant" and "not dispositive of any element of the charges"). As a result, applying the defense's proposed willfulness instruction to the wire-fraud Count would not only be at odds with the text of the law, it would also be inconsistent with settled precedent.

### IX. Defendants' Proposed Instruction No. 51 – Counts Three through Nine

The defendants' proposed instruction for the Section 9(a)(2) market manipulation counts contains an erroneous instruction regarding "sole intent." For the reasons discussed above, the defendants' proposed "sole intent" standard is contrary to law and should be rejected.

### X. Instruction No. 55 – Good Faith

The Government objects to the defendants' proposed good faith instruction as misleading and erroneous. Most notably, the defendants seek an instruction that an honest belief that a defendant's "conduct was permissible . . . would be a complete defense to the charges against him." (Dkt. No. 125 at 87). "The general rule that ignorance of the law or a mistake of law is no defense to criminal prosecution is deeply rooted in the American legal system," *Cheek v. United States*, 498 U.S. 192, 200 (1991), and the defendants' proposed instruction violates that basic principle.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

By:  s/ _____
    Matthew Podolsky
    Alexandra Rothman
    Samuel P. Rothschild
    Andrew Thomas
    Assistant United States Attorneys
    Tel.: (212) 637-1947/-2580/-2504/-2106

Cc: Counsel of Record (via ECF)