

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

The Jacob K. Javits Building
26 Federal Plaza, 37th Floor
New York, New York 10278

July 2, 2024

**VIA ECF**

The Honorable Alvin K. Hellerstein
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

> Re:   ***United States v. Hwang and Halligan***,
>        **S1 22 Cr. 240 (AKH)**

Dear Judge Hellerstein:

The Government respectfully submits this letter regarding the jury instructions for the market manipulation charges in this case and in response to the Court's Order of earlier today (the "Court's Order" (Dkt. No. 246)) and the updated charge provided to the parties.

As the Court is aware, the Superseding Indictment contains two sets of market manipulation charges: (1) Count Two charges market manipulation in violation of Section 10(b) of the Securities Exchange Act (this charge also forms a predicate for the RICO conspiracy charged in Count One of the Superseding Indictment), and (2) Counts Three through Nine charge separate counts of market manipulation each in violation of Section 9(a)(2) of the Securities Exchange Act. As discussed further below, the Second Circuit's decision in *United States v. Mulheren*, 938 F.2d 364, 368 (2d Cir. 1991), did not purport to set out the requirements of market manipulation under Section 10(b), has been superseded by subsequent decisions, and does not speak to market manipulation under Section 9(a)(2) at all. Accordingly, and for the reasons set forth below, the Government respectfully submits that the Court should provide the instructions proposed below for Count Two and for Counts Three through Nine, respectively. For the same reasons, the Government respectfully requests that the Court not provide the proposed instructions in the Court's Order, which, for the reasons that follow, would misstate the law.

> **I.      Count Two: Section 10(b) Market Manipulation**
>
> **A.      Proposed Charge**

During the charge conference on July 1, 2024, the Court drafted the following instruction to be added to the discussion of the first element of securities fraud under Section 10(b), at page 27 of the previously circulated draft charge:

A manipulation of a security can be such a device, scheme or artificial to defraud if trading of the security was done intentionally, willfully, and with the intent to deceive or defraud other traders or counterparties by artificially affecting the price of the security. A manipulation occurs where the price of a security is determined not by the integrity of supply and demand, but by the rigged prices influenced by a manipulation. Intent, however, is crucial. A manipulation does not arise from the enterprise's trading decisions alone, even if its trades caused artificial prices for securities. Without an intent to cause a manipulation, there cannot be an unlawful manipulation. The government must prove unlawful intent beyond a reasonable doubt.

The Government submits that this charge regarding market manipulation is accurate, succinctly states the law, and should be given as part of the Section 10(b) instructions.[1]

Alternatively, the Government proposes the following instructions given by the Honorable Denise L. Cote in *S.E.C. v. Lek Securities Corporation*, which are the most recent instructions of which the Government is aware regarding market manipulation under Section 10(b) of the Securities Exchange Act, and were affirmed by the Second Circuit. *See S.E.C. v. Vali Mgmt. Partners*, No. 21-453, 2022 WL 2155094, at *1-2 (2d Cir. June 15, 2022) ("The district court's instruction was thus consistent with our articulation of market manipulation, and accurately informed the jury on the law."). The instructions are as follows:

The word "manipulation" is a term of art when used in connection with the securities markets. Manipulation occurs when a person engages in market activity aimed to deceive investors about how other market participants have valued a security. Manipulation refers to intentional or willful conduct designed to deceive or defraud investors by controlling or artificially affecting the price of securities. Because market participants ordinarily assume that the price at which they purchase or sell securities is determined by the natural interplay of supply and demand, an act is manipulative if it sends a false pricing signal to the market or creates a false impression of supply and demand. For example, trading engineered to stimulate demand for a stock can be manipulative by misleading investors into believing that the market has discovered some

---

[1]     The Government respectfully proposes to revise for clarity the sentence, "A manipulation does not arise from the enterprise's trading decisions alone, even if its trades caused artificial prices for securities," as follows: "A manipulation does not arise from trading decisions simply because they affected prices for securities."

positive news about the value of a security even though no such positive news exists.

When determining if the defendant you are considering has engaged in a manipulative act or device, it is important to remember that the Exchange Act was intended to promote transparency and to prevent practices that impair the function of the stock markets. In a properly functioning stock market, investors should be able to buy and sell securities at prices that reflect undistorted estimates of the underlying economic value of the securities traded. Any act, scheme, or device intended to artificially impact the price of a security is a manipulative act or device under the Exchange Act.

A manipulative act or device does not need to be successful in order to violate the federal securities laws. Similarly, a course of conduct can be manipulative even if it is novel. An act can be manipulative even if it is conducted on the open market or through ordinary market activity, such as by placing an order to buy or sell a security or by actually buying or selling a security. In some cases, a defendant's "scienter," that is, a defendant's intent to manipulate the securities market, is all that distinguishes legitimate trading from manipulative trading. Similarly, in some cases, the determination of whether activity is manipulative can only be made by placing the activity in context and considering whether it is part of a pattern of trading activity. What matters is whether the defendant intended to inject a false pricing signal into the market or to mislead investors by artificially affecting market activity.

*S.E.C. v. Lek Securities Corp.*, No. 17 Civ. 1789 (DLC), Dkt. No. 556, at Tr. 2586-88.[2]

**B.    Discussion**

As an initial matter, Count Two charges market manipulation under Section 10(b) (*see* S1 Indictment ¶ 76), and market manipulation under Section 10(b) is one of the predicate acts under the conspiracy charged in Count One (*see, e.g.*, S1 Indictment ¶ 68(a)). Although Section 10(b) and Section 9(a)(2)'s prohibitions on market manipulation are similar, the two provisions are distinct and have distinct elements. Accordingly, to instruct the jury on market manipulation under

---

[2]    The instructions regarding Section 10(b) market manipulation given by the Honorable Raymond J. Dearie in *United States v. Elgindy* were substantively consistent with, though longer than, Judge Cote's instructions in *Lek Securities*. *See Elgindy*, No. 02 Cr. 589 (RJD), at Tr. 8844-8849. The Second Circuit affirmed Judge Dearie's instructions as well. *See United States v. Royer*, 549 F.3d 886, 899-900 (2d Cir. 2008).

Section 10(b), the Court should add one or the other of the above instructions to its instructions on "Predicate Act One: Title 15 Securities Fraud - First Element (Fraudulent Act)."

Further, both the Court's drafted instruction, set forth above, and Judge Cote's instruction accurately state the law and correctly instruct the jury on the requirements for finding that the Government has sustained its burden of proof as to the first element of securities fraud under Section 10(b) on a market manipulation theory. Importantly, as the Court noted during the charge conference, these instructions correctly permit the Government to argue that, whatever other motivations the defendant may have had, if he intended to artificially affect the price of securities through his trading, he is guilty of market manipulation, and permit the defendant to argue that if he engaged in his trades to accumulate stock rather than to affect market prices, then he is not guilty of market manipulation. (*See* Tr. 5064-65). Thus, under these instructions, if the Government sustains its burden of proving beyond a reasonable that the defendant possessed an intent to manipulate (and the other elements are met), the jury will be obliged to convict; by contrast, if the Government fails to sustain its burden—including if the evidence shows that the defendant's intent was to accumulate stock and not to trade manipulatively—the jury will be obliged to acquit.

In the Court's Order, it referred to *Mulheren* as the leading case in this area. The Government respectfully submits that, even at the time it was issued, the *Mulheren* decision did occupy that role. As an initial matter, and as the Court has observed, *Mulheren* does not purport to set the law for market manipulation; rather in that decision, the Second Circuit simply concluded that, accepting the government's theory of liability in that case, the government had failed to prove that the defendant intended to affect market prices. 938 F.2d at 368-72 & n.2. In contrast, just twelve days before the *Mulheren* decision was issued, a panel of the Second Circuit that, like the *Mulheren* panel, included Judge Van Graafeiland, issued an opinion that affirmed a conviction under Section 10(b) and explicitly endorsed a theory of open market manipulation without the requirement of any separate deceit or chicanery under that statute, noting that "[f]ailure to disclose that market prices are being artificially depressed operates as a deceit on the market place and is an omission of a material fact." 937 F.2d 823, 829 (2d Cir. 1991). Although one of the *Regan* defendants sought certiorari to challenge the Circuit's holding that engaging in a "scheme to deceive an issuer and public investors about the market value off the issuer's securities by engaging in securities transactions for the purpose of depressing the market price constitutes unlawful manipulation" under Rule 10b-5, the Supreme Court denied review. *See* Brief of the United States in Opposition to Certiorari, *Zarzecki v. United States*, No. 91-1233 (May 4, 1992).[3]

Some seventeen years after *Mulheren* and *Regan* were decided, the Second Circuit addressed similar market manipulation charges under Section 10(b) in *United States v. Royer*, 549 F.3d 886 (2d Cir. 2008). There, the Second Circuit affirmed convictions for market manipulation under Section 10(b), observing that "the defendants sought to artificially affect the prices of

---

[3]     The Brief of the United States in Opposition to Certiorari, which addresses certain of these issues, is attached to this letter for ease of reference.

various securities by directing the AP site subscribers to trade and to disclose the negative information at times and in manners orchestrated by the defendants that were dictated not by market forces, but by defendants' desire to manipulate the market for their own benefit." 549 F.3d at 900. In other words, because the trades at issue were executed "at times and in manners" set to accomplish a manipulative purpose, the Second Circuit found it "hard to imagine conduct that more squarely meets the ordinary meaning of 'manipulation.'" *Id.* Notably, the Second Circuit in *Royer* did not rely on *Mulheren*—which is not cited once in the opinion—but instead pointed to *Regan*. *See Royer*, 549 F.3d at 900. In *Regan*, in turn, the Second Circuit observed that "[i]n enacting section 10(b), 'Congress meant to prohibit the full range of ingenious devices that might be used to manipulate securities prices,'" and that "[f]ailure to disclose that market prices are being artificially depressed operates as a deceit on the market place and is an omission of a material fact." 937 F.2d at 829 (quoting *Santa Fe Indus. v. Green*, 430 U.S. 462, 477 (1977), and *United States v. Charnay*, 537 F.2d 341, 351 (9th Cr. 1976)).

The Second Circuit has more recently and repeatedly reaffirmed the principle that it is the intention to cause an artificial price—and not any additional chicanery—that supplies the required manipulative intent. Thus, the Second Circuit has made clear that, in order to sustain a charge of market manipulation under Section 10(b), "case law in this circuit and elsewhere has required a showing that an alleged manipulator engaged in market activity aimed at deceiving investors as to how other market participants have valued a security.'" *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 100 (2d Cir. 2007). "The deception arises from the fact that investors are misled to believe 'that prices at which they purchase and sell securities are determined by the natural interplay of supply and demand, not rigged by manipulators.'" *Id.* (quoting *Gurary*, 190 F.3d at 45); *see also Set Capital LLC v. Credit Suisse Group AG*, 996 F.3d 64, 76 (2d Cir. 2021) ("For market activity to artificially affect a security's price, we generally ask whether the transaction or series of transactions sends a false pricing signal to the market." (quotation marks and citations omitted)); *Royer*, 549 F.3d at 899 (approving jury instruction that "[t]he essential element of manipulation is the deception of investors into believing that prices at which they purchase and sell securities are determined by the natural interplay of supply and demand"); *Regan*, 937 F.2d at 829 ("Failure to disclose that market prices are being artificially depressed operates as a deceit on the market place and is an omission of a material fact." (quotation marks and citation omitted)).

Further, to the extent that the defendants seek to rely on *Mulheren* to support the notion that an innocent purpose—such as accumulating stock—provides a defense even where the evidence proves that the defendant also had a manipulative intent, *Mulheren* does not support that principle, and even if it did, it has clearly been abrogated. *First*, the language in *Mulheren* upon which the defendants have relied simply parrots the description of government's case; it does not purport to make any rule about the required intent at all. 938 F.2d at 368.

*Second*, and perhaps more importantly, in the time since *Mulheren* was decided, the Second Circuit has made clear that proof of a manipulative intent is sufficient, even if the defendant also had other, lawful purposes. Indeed, the Second Circuit has twice affirmed jury instructions—first in *Royer* and second in *Lek Securities*—that did not include any requirement that the defendant's

intent be his or her only or sole intent. *See Vali Mgmt. Partners*, No. 21-453, 2022 WL 2155094, at *1-2 (affirming instructions in *Lek Securities Corp.*, No. 17 Civ. 1789 (DLC), Dkt. No. 556, at Tr. 2586-88); *Royer*, 549 F.3d at 899-900 (affirming instructions in *United States v. Elgindy*, No. 02 Cr. 589 (RJD), at Tr. 8844-8849). As the Second Circuit observed with respect to the jury instructions in *Lek Securities*, "[t]he district court's instruction was . . . consistent with our articulation of market manipulation, and accurately informed the jury on the law." *Vali Mgmt. Partners*, No. 21-453, 2022 WL 2155094, at *1.

And importantly, in 2014, the Second Circuit stated clearly that, "when Congress has meant to impose a sole-intent limitation, it has done so expressly," and that when a statute "does not contain a sole-intent limitation," the court will not "engraft one." *United States v. Technodyne LLC*, 753 F.3d 368, 385 (2d Cir. 2014). "It is commonplace that the law recognizes that there may be multiple motives for human behavior; thus, a specific intent need not be the actor's sole, or even primary, purpose." *Technodyne*, 753 F.3d at 385 (collecting cases); *see also United States v. Gatto*, 986 F.3d 104, 129 n.12 (2d Cir. 2021) ("We are also unpersuaded by Defendants' dual intent argument, as it is commonplace for individuals to have more than one motive for acting."). Section 10(b) has no sole intent limitation. Accordingly, the law is clear that, if the Government sustains its burden of proving that the defendant acted with a manipulative purpose, it has met its burden, even if the defendant had other goals or purposes as well.

In short, and consistent with the discussion among the parties and the Court at the charge conference, either of the proposed instructions set forth above accurately states the controlling law as to market manipulation under Section 10(b). One or the other should be given with respect to Count Two (as well as the first predicate act of Count One), and the Court should not include the language regarding an exception or exception to the exception contained in the Court's Order and updated charge concerning Counts Three through Nine, which is not supported by the statute or caselaw for Section 10(b), and is discussed further below with respect to Section 9(a)(2).

## II.    Counts Three Through Nine: Section 9(a)(2) Market Manipulation

### A.    Proposed Charged

With respect to Counts Three through Nine, which charged market manipulation under the separate provision of Section 9(a)(2) of the Securities Exchange Act, the Government proposes that the Court use the Court's previous draft instructions as revised during the charge conference, or the following instructions given by the Honorable Denise L. Cote in *S.E.C. v. Lek Securities Corporation*, which are the most recent instructions of which the Government is aware regarding market manipulation under Section 9(a)(2), and were affirmed by the Second Circuit. *See Vali Mgmt. Partners*, No. 21-453, 2022 WL 2155094, at *1-2.

> To prevail on a claim under Section 9(a)(2) of the Exchange Act, the [Government] must establish, [beyond a reasonable doubt], each of the following elements against the defendant that you are considering:

(1) That the defendant, directly or indirectly, alone or with others, effected a series of transactions in a security;

(2) That the series of transactions created actual or apparent active trading in the security, or raised or depressed the price of the security;

(3) That in effecting the series of transactions, the defendant acted for the purpose of inducing the purchase or sale of such security by another; and

(4) That in doing so, the defendant used or caused to be used, the mails, any means or instrumentality of interstate commerce, or any facility of any national securities exchange.

I have already instructed you, ladies and gentlemen, on the meaning of the terms that appear in element (4). You must use that same definition here. . . .

To effect a transaction in a security means to place a bid to buy or an offer to sell a security on a securities exchange. It does not require that a purchase or sale actually be executed. The phrase "series of transactions" means three or more transactions. Placing the order on an exchange may be done directly or indirectly and either alone or with others.

Like the other securities law at issue in this case, Section 9(a)(2) of the Exchange Act is designed to create the securities market where prices are based on the free and honest balancing of supply and demand. Section 9(a)(2) does not prohibit all transactions that tend to raise or lower the price of a security or that cause other investors to trade in a security. Rather, it outlaws any series of transactions used to deceive the public into believing that activity in a security is the reflection of a genuine supply or demand when, instead, it is a mirage. The essence of a violation of Rule 9(a)(2) is the creation of a false impression of supply and demand. You should use the definition of manipulation that I have already given you.

To find . . . that a defendant violated Section 9(a)(2) you must find that the series of transactions that the defendant directly or indirectly effected, whether alone or with others, either created actual or apparent active trading in the security, or raised or

depressed the price of the security. If you find that the defendant directly or indirectly effected a series of transactions, you must be unanimous as to whether the series of transactions (1) created actual or apparent trading in a security, or (2) raised or depressed the prize of the security, or (3), did both.

A defendant's purpose in effecting a series of transactions may be inferred from the circumstances of the case. You may infer the requisite purpose from, among other things, the nature of the orders placed.

*Lek Securities Corp.*, No. 17 Civ. 1789 (DLC), Dkt. No. 556, at Tr. 2595-98.

**B.    Discussion**

The Government respectfully submits that the Court should deliver the above instructions, or the instructions circulated by the Court on July 1, 2024, as amended during the charge conference, and that the Court should not deliver the instructions contained in the Court's Order of July 2, 2024 (and in the updated charge provided to the parties). Most importantly, nothing in the statute or elsewhere creates an exception to liability under Section 9(a)(2) where the defendant has some purpose for his trading in addition to a manipulative one. Further, Section 9(a)(2) does not require any deceptive act or chicanery. And, as noted below, *Mulheren* does not address charges under Section 9(a)(2) at all. There is therefore no basis for the exception or exception to the exception contained in the Court's Order, which would incorrectly raise the Government's burden.

In relevant part, Section 9(a)(2) of the Securities Exchange Act provides:

It shall be unlawful for any person, directly or indirectly, by the use of the mails or any means or instrumentality of interstate commerce, or of any facility of any national securities exchange, or for any member of a national securities exchange . . . [t]o effect, alone or with 1 or more other persons, a series of transactions in any security registered on a national securities exchange, any security not so registered, or in connection with any security-based swap or security-based swap agreement with respect to such security creating actual or apparent active trading in such security, or raising or depressing the price of such security, for the purpose of inducing the purchase or sale of such security by others.

15 U.S.C. § 78i(a)(2).

"The central purpose of [S]ection 9(a) is not to prohibit market transactions which may raise or lower the price of securities, but to keep an open and free market where the natural forces

of supply and demand determine a security's price." *S.E.C. v. Malenfant,* 784 F. Supp. 141, 144 (S.D.N.Y. 1992) (citations omitted); *see also, e.g.*, *United States v. Stein*, 456 F.2d 844, 850 (2d Cir. 1972) ("The purpose of the statute is to prevent rigging of the market and to permit operation of the natural law of supply and demand."). "Section 9(a)(2) was considered to be 'the very heart of the act' and its purpose was to outlaw every device 'used to persuade the public that activity in a security is the reflection of a genuine demand instead of a mirage.'" *Crane Co. v. Westinghouse Air Brake Co.*, 419 F.2d 787, 794 (2d Cir. 1969) (quoting 3 Loss, Securities Regulation 1549-55 (2d ed. 1961)).

Accordingly, to establish a violation of Section 9(a)(2), first, the Government must prove that the defendant, through a series of transactions, either created actual or apparent active trading in a stock or raised or depressed the price of a stock. *See Stein*, 456 F.2d at 850; *Malenfant*, 784 F. Supp. at 144. Second, the Government must prove that the defendant acted for the purpose of inducing the purchase or sale of the security by others. *See Malenfant*, 784 F. Supp. at 144. Third, the Government must prove second that the defendant acted willfully and with a manipulative purpose. *See Crane Co.*, 419 F.2d at 794; *SEC v. Lek Sec. Corp.*, 276 F. Supp. 3d 49, 62 (S.D.N.Y. 2017).

The statute does not contain any form of sole intent requirement, and therefore, for much the same reasons as discussed above, there is no basis to create an exception where the defendant might, in addition to a manipulative purpose, have some other lawful purpose for his trading as well. *See Lek Securities Corp.*, No. 17 Civ. 1789 (DLC), Dkt. No. 556, at Tr. 2595-98; *see also Technodyne*, 753 F.3d at 385. Rather, both the instructions proposed above and the instructions discussed with the Court during the charge conference correctly permit the defendant to argue that his purpose was not manipulative, and, if his purpose in trading in the manner that he did was, for example, to accumulate stock, then the jury should find him not guilty under Section 9(a)(2). By contrast, the above instructions correctly permit the Government to argue that the defendant did indeed have a purpose of affecting the price of the security to induce others to buy and sell, and therefore that he is guilty of the charged offense, even if he had other aims as well.

Section 9(a)(2) also does not have any additional element of deceptive conduct beyond the scheme to create apparent or active trading with a manipulative purpose. Indeed, Section 9(a)(2) is not a fraud provision at all. *Cf. C.F.T.C. v. Amaranth Advisors, L.L.C.*, 554 F. Supp. 2d 523, 534 (S.D.N.Y. 2008) (concluding, regarding the anti-manipulation provision in the Commodity Exchange Act that, "[w]hen the statute distinguishes fraud and manipulation by addressing them in different provisions, it would be redundant to construe manipulation to require a fraud element"). The question with respect to market manipulation under Section 9(a)(2) is therefore whether the defendant traded with a manipulative purpose, not whether he engaged in other forms of deception or chicanery. Thus, there is neither an exception to liability under Section 9(a)(2) where the Government has sustained its burden as to the intent element, nor an exception to the exception.

In the Court's Order, the Court relied on *Mulheren* with respect to the charge for Counts Three through Nine. However, Counts Three through Nine charged market manipulation under

Section 9(a)(2), and *Mulheren* does not concern Section 9(a)(2). As the Second Circuit noted in *Mulheren*, the defendant "was not charged with violating § 9(a)(2)," and the elements of a violation of Section 9(a)(2) are distinct. 938 F.2d at 368. Accordingly, nothing in *Mulheren* affects the correct interpretation of Section 9(a)(2) (and even if it did, *Mulheren* does not describe the law of the Circuit, as discussed above).

There is therefore no basis in the statute or otherwise to add exceptions or elements to Section 9(a)(2). Perhaps most importantly, the charge from *Lek Securities* set forth above (as well as the Court's prior charge, as amended during the charge conference) permits both parties to make their respective arguments to the jury, consistent with the law. By contrast, the charge contained in the Court's Order would incorrectly and unfairly instruct the jury that, even if the Government were to sustain its burden of proving beyond a reasonable doubt that the defendant traded with manipulative intent, there might still be an exception if the defendant could show that he was happy to possess the stock for other reasons as well, and that, in order to avoid the application of this exception, the Government must also prove another fraud. These concepts are not found in the statute or any decisional law and incorrectly raise the Government's burden of proof.

\* \* \*

For the reasons set forth above, the Government respectfully requests that the Court provide the above proposed instructions with respect to Count Two and to Counts Three through Nine, and not the proposed instruction contained in the Court's Order and the updated charge provided to the parties.[4] In light of the importance of these issues for this case and other future cases, and the law of this Circuit described above, if the Court has reservations about instructing

---

[4]     The Government also notes that, in what appears to be an oversight, Page 50 of the updated charge provided to the parties on July 7, 2024, contains a reference to "primary purpose." As discussed during the charge conference, the word "primary" should be omitted.

the jury substantially in the manner proposed by the Government, the Government respectfully requests an opportunity to address the Court in a supplemental charge conference prior to closing.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

By: _s/_____
    Matthew Podolsky
    Alexandra Rothman
    Samuel P. Rothschild
    Andrew Thomas
    Assistant United States Attorneys
    Tel.: (212) 637-1947/-2580/-2504/-2106

Cc: Counsel of Record (via ECF)

Attachment