# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
                                       :

UNITED STATES OF AMERICA,      :

                                       :

        v.                     :      22 Cr. 240 (AKH)

                                       :

SUNG KOOK (BILL) HWANG,     :

                                       :

        Defendants.       :

                                       :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

## DEFENDANT BILL HWANG'S MOTION FOR BAIL PENDING APPEAL

Barry H. Berke
Dani R. James
Jordan Estes
Michael Martinez

GIBSON DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York 10166-0193
(212) 315-4000 (Phone)
bberke@gibsondunn.com

*Counsel for Defendant Bill Hwang*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................... 1

BACKGROUND ........................................................................................................................ 3

ARGUMENT .............................................................................................................................. 4

   I.    Mr. Hwang is Neither a Flight Risk nor a Danger to the Community.................................. 4

   II.   Mr. Hwang Raises Substantial Questions, and Reversal or a New Trial is Likely if He Were to Prevail ....................................................................................................... 5

    A.   Legal Standard........................................................................................................... 5

    B.   There is a Substantial Question Whether the Court Incorrectly Instructed the Jury as to the Intent Requirement for Market Manipulation .......................................... 6

    C.   There is a Substantial Question Whether the Court Incorrectly Declined to Instruct the Jury as to a Materiality Requirement for Market Manipulation...................................... 10

    D.   There is a Substantial Question Whether the Court Incorrectly Admitted Stock-Price-Movement Evidence Without Expert Testimony Excluding Confounding Factors....... 13

    E.   In Light of These Errors, There is a Substantial Question Whether Mr. Hwang's Convictions on the Racketeering and Misrepresentation Counts Should be Vacated.... 15

CONCLUSION.......................................................................................................................... 17

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Markowski v. SEC*,
  274 F.3d 525 (D.C. Cir. 2001)................................................................................................9

*McDonnell v. United States*,
  579 U.S. 550 (2016)...............................................................................................................15

*Neder v. United States*,
  527 U.S. 1 (1999)..........................................................................................................2, 11, 12, 13

*SEC v. Masri*,
  523 F. Supp. 2d 361 (S.D.N.Y. 2007).................................................................................8, 9

*TSC Indus., Inc. v. Northway, Inc.*,
  426 U.S. 438 (1976).............................................................................................................13

*United States v. Abuhamra*,
  389 F.3d 309 (2d Cir. 2004)..................................................................................................4

*United States v. Aiello*,
  No. 18-3710 (2d Cir. Mar. 7, 2019), ECF No. 86.................................................................5

*United States v. Bankman-Fried*,
  No. 22 Cr. 673 (LAK) (S.D.N.Y. Aug. 21, 2023), ECF No. 214 .........................................12

*United States v. Ferguson*,
  676 F.3d 260 (2d Cir. 2011).............................................................................................2, 14

*United States v. Johnson*,
  No. 18-1503 (2d Cir. June 19, 2018), ECF No. 47 ..............................................................5

*United States v. Miller*,
  753 F.2d 19 (3d Cir. 1985)....................................................................................................5

*United States v. Milton*,
  No. 21 Cr. 478 (ER) (S.D.N.Y. Jan. 2, 2024) ECF No. 322 ..................................................5

*United States v. Mulheren*,
  938 F.2d 364 (2d Cir. 1991).................................................................................1, 6, 7, 8, 9

*United States v. Newman*,
  No. 13-1837 (2d Cir. June 21, 2013), ECF No. 97 ..............................................................5

*United States v. Randell,*
   761 F.2d 122 (2d Cir. 1985)................................................................1, 5, 6, 10

*United States v. Schiff,*
   538 F. Supp. 2d 818 (D.N.J. 2008) ...............................................................14

*United States v. Skelos,*
   No. 15 Cr. 317 (KMW) (S.D.N.Y. Aug. 4, 2016) ECF No. 221 ............................5

*United States v. Tuzman,*
   No. 15 Cr. 536 (PGG) (S.D.N.Y. Dec. 20, 2017), ECF No. 702.........................10

*United States v. Tuzman,*
   No. 15 Cr. 536 (PGG) (S.D.N.Y. Dec. 22, 2017), ECF No. 706..........................9

*Yates v. United States,*
   354 U.S. 298 (1957)......................................................................................15

**Statutes & Rules**

15 U.S.C. § 78i(a)(2)...........................................................................................3

15 U.S.C. § 78j(b) ...........................................................................................3, 4

18 U.S.C. § 1341...............................................................................................11

18 U.S.C. § 1343...........................................................................................4, 11

18 U.S.C. § 1344...............................................................................................11

18 U.S.C. § 1348.................................................................................................4

18 U.S.C. § 1962(d) ............................................................................................3

18 U.S.C. § 3143(b) ............................................................................................4

**Other Authorities**

17 C.F.R. § 240.10b-5...........................................................3, 4, 8, 10, 11, 12

We submit this motion for bail pending appeal on behalf of Bill Hwang, who is scheduled to be sentenced by this Court on November 20, 2024.  Mr. Hwang intends to appeal his conviction and, to the extent the Court imposes a custodial sentence, asks that the Court permit him to remain on bail during the pendency of his appeal.

## PRELIMINARY STATEMENT

The natural consequence of the prosecution's unprecedented open-market-manipulation case is that it leaves substantial questions for appeal in its wake.  Those questions, to be clear, do not require the Court to conclude that it erred.  Rather, the Court need only decide that a question is "fairly debatable" or "novel," *i.e.*, "which has not been decided by controlling precedent." *United States v. Randell*, 761 F.2d 122, 125 (2d Cir. 1985) (internal quotations omitted).  Here, the Court went through three different versions of the market-manipulation charge over the course of eight days, settling on the final charge on the morning of summations.  In doing so, the Court reviewed five letter briefs from the parties (not to mention the two initial requests to charge) and conducted two charge conferences on this complex issue.  That history alone proves that the question is "fairly debatable" and "novel."

But there is more.  For more than three decades, the Second Circuit has openly questioned the intent necessary for criminal open market-manipulation.  Even the strict "sole intent" standard that the defense requested, and that this Court ultimately rejected, causes "doubt[s] and "misgivings" in the Second Circuit.  *United States v. Mulheren*, 938 F.2d 364, 366, 368 (2d Cir. 1991).  And as charged to the jury at trial, the intent element squarely contradicted *Mulheren*'s guidance, logic, and reasoning by permitting the jury to find Mr. Hwang guilty of market manipulation while also finding that he had a legitimate investment purpose for the charged trades.  In any event, the Second Circuit's expressly articulated doubts and misgivings

confirm that the question of the legally proper market-manipulation charge is "fairly debatable" and "novel."[1]

      As a preliminary matter, the standard for bail pending appeal requires clear and convincing evidence that the defendant is not likely to flee or pose a danger to the community. But there is no serious dispute that Mr. Hwang is neither a flight risk nor a danger to the community. He has been on bail without incident since his April 2022 arrest, he has no close family outside the United States, and he has never engaged in any type of violence. Indeed, the prosecution does not seek remand at the time of sentencing, which further illustrates that Mr. Hwang is not a flight risk or a danger to the community. *See* Gov't Sentencing Submission at 56, ECF No. 340.

      The next substantial question for appeal stems from the absence of a materiality instruction in the market-manipulation charge. This absence is wholly at odds with the Supreme Court's opinion in *Neder v. United* States, 527 U.S. 1 (1999). It impermissibly allowed the jury to find Mr. Hwang guilty without a finding that any of his trades sent a false pricing signal that an objective reasonable investor would have found significant. And it is not remedied by language in the charge addressing subjective reliance as opposed to objective materiality.

      The third substantial question arises from the admission, without the legally required foundation, of highly prejudicial stock-price-movement evidence. The Second Circuit prohibits the admission of such evidence without expert testimony excluding factors other than the alleged misconduct that contributed to the stock-price movements. *See United States v. Ferguson*, 676 F.3d 260, 274-75 (2d Cir. 2011). The Second Circuit's binding caselaw notwithstanding, the

---

[1] Mr. Hwang may raise other substantial claims on appeal and in no way intends for this motion for bail appeal pending appeal to limit the arguments he may later raise on appeal.

Court admitted charts reflecting the rise and fall of the prices of the at-issue securities and the testimony of Dr. Carmen Taveras that Archegos's trades caused those stock price movements. None of that evidence was admissible without expert testimony excluding confounding factors that could have affected the prices of the at-issue securities, and it impermissibly allowed the jury to conclude that the entirety of the stock price changes was the result of Mr. Hwang's trading.

And the fourth substantial question addresses whether Mr. Hwang's convictions on the racketeering-conspiracy and misrepresentation counts can survive if the Second Circuit agrees with Mr. Hwang on any of the three prior questions. They cannot. As charged to the jury, Mr. Hwang's racketeering-conspiracy conviction may rest only on the jury's finding of market manipulation. Accordingly, if the Second Circuit were to hold that the jury was incorrectly instructed on the elements of market manipulation or that the stock-price-movement evidence was improperly admitted without the required foundation, Mr. Hwang's racketeering conspiracy conviction would fall. And Mr. Hwang's convictions on the misrepresentation counts would also be vacated because the prosecution inextricably tied guilt with respect to market manipulation counts with guilt with respect to the misrepresentation counts. As a result, if the Second Circuit vacates Mr. Hwang's market manipulation convictions, the misrepresentation convictions fall, too.

## BACKGROUND

On July 10, 2024, the jury returned a verdict of guilty against Mr. Hwang on ten of eleven counts: racketeering-conspiracy pursuant to 18 U.S.C. § 1962(d) (Count One); securities fraud through market manipulation pursuant to 15 U.S.C. § 78j(b) and 17 C.F.R. § 240.10b-5 (Count Two); market manipulation of certain enumerated at-issue securities pursuant to 15 U.S.C. § 78i(a)(2) (Counts Three through Six, Eight and Nine); securities fraud through false and

3

misleading statements pursuant to 15 U.S.C. § 78j(b) and 17 C.F.R. § 240.10b-5 (Count Ten);

and wire fraud pursuant to 18 U.S.C. § 1343 (Count Eleven).  The charged predicate acts for the

racketeering-conspiracy charge were securities fraud pursuant to 15 U.S.C. § 78j(b) and 17

C.F.R. § 240.10b-5, securities fraud pursuant to 18 U.S.C. § 1348, and wire fraud pursuant to 18

U.S.C. § 1343.  Mr. Hwang is scheduled to be sentenced on November 20, 2024, and he intends

to file a timely appeal of his conviction.

## ARGUMENT

Under 18 U.S.C. § 3143(b), a court "shall order" bail pending appeal if it finds (1) "clear

and convincing evidence that the person is not likely to flee or pose a danger to the safety of any

other person or the community," and (2) "that the appeal is not for the purpose of delay and

raises a substantial question of law or fact likely to result in . . . reversal [or] an order for a new

trial."  When a defendant meets that standard, "the statute establishes a right to liberty that is not

simply discretionary but mandatory."  *United States v. Abuhamra*, 389 F.3d 309, 319 (2d Cir.

2004).  Mr. Hwang easily meets this standard.

## I.    Mr. Hwang is Neither a Flight Risk nor a Danger to the Community

Mr. Hwang satisfies § 3143(b)'s first prong, because he is neither a flight risk nor a

danger to the community.  To start, Mr. Hwang has been out on bail since April 27, 2022 without

any incident.  He has been a model supervisee.  Moreover, Mr. Hwang has no close familial ties

outside the United States: his wife and two daughters all live here.  In any event, Mr. Hwang

does not have a valid passport.  It is long expired, and even his wife turned over her passport to

Probation.  And Mr. Hwang, who is 60 years old, has no history of violence and poses absolutely

no danger to the safety of anyone in the community.  Finally, the prosecution has consented to

bail pending his voluntary surrender, which further reflects that there is no serious dispute that

Mr. Hwang is not a flight risk or danger to the community.  *See* Gov't Sentencing Submission at

56, ECF No. 340.

## II.  Mr. Hwang Raises Substantial Questions, and Reversal or a New Trial is Likely if He Were to Prevail

### A.  Legal Standard

A "substantial question of law or fact" need only be "one of more substance than would be necessary to a finding that it was not frivolous"—in other words, "a 'close' question or one that very well could be decided the other way." *United States v. Randell*, 761 F.2d 122, 125 (2d Cir. 1985) (emphasis added) (internal quotations omitted).  For example, a question that is "fairly debatable" or "novel, which has not been decided by controlling precedent," is a "substantial question." *Id.* (internal quotations omitted).  And a defendant need not prove he is likely to prevail, but only that if he does, reversal or a new trial is likely. *Id.* at 124-125.  To be sure, a district court need not conclude that it erred to find a substantial question. *United States v. Miller*, 753 F.2d 19, 23 (3d Cir. 1985).  The Second Circuit, and district courts within the circuit, routinely grant bail pending appeal in cases with substantial questions. *See*, *e.g.*, Order, *United States v. Aiello*, No. 18-3710 (2d Cir. Mar. 7, 2019), ECF No. 86 (raising question of scope of "honest services" fraud statute); Order, *United States v. Johnson*, No. 18-1503 (2d Cir. June 19, 2018), ECF No. 47 (raising question involving novel application of misappropriation theory of fraud); Order, *United States v. Newman*, No. 13-1837 (2d Cir. June 21, 2013), ECF No. 97 (raising question whether tippee knowledge of personal benefit is required for insider trading fraud); Sent'g Tr. at 100:4-18, *United States v. Milton*, No. 21 Cr. 478 (ER) (S.D.N.Y. Jan. 2, 2024), ECF No. 322 (finding "substantial issues that were raised throughout th[e] case, both on the facts and on the law"); Order, *United States v. Skelos*, No. 15 Cr. 317 (KMW) (S.D.N.Y. Aug. 4, 2016), ECF No. 221 (substantial question of law regarding what constitutes an official act under the federal bribery statute).

**B.      There is a Substantial Question Whether the Court Incorrectly Instructed the Jury as to the Intent Requirement for Market Manipulation**

The Second Circuit has long harbored doubts about whether even sole intent to affect the price of a stock is sufficient to sustain a criminal open-market-manipulation conviction.  As long as investors purchased stock with an intent to invest, they were immune from criminal liability for market manipulation.  And for good reason:  our system of justice does not criminally punish state of mind alone.  To be sure, no federal court of appeals has held that a defendant is guilty of market manipulation where he or she purchased (or sold) a stock for an investment purpose.  Against this legal backdrop, the market-manipulation jury charge in this case is nothing short of groundbreaking.  It authorized the jury to convict Mr. Hwang even if he purchased (or sold) stock with an investment purpose.  As a result, the jury charge raises a legal question that is, at the very least, "novel," "fairly debatable," and "close," and "that very well could be decided the other way."  *Randell*, 761 F.2d at 124-25.

Indeed, the very lead-up to the jury charge confirms this point.  The parties and the Court dedicated significant time and energy to developing the charge for market manipulation, a charge for which there is no standard pattern jury instruction.  The lead-up included three draft charges and an order from the Court, *see* ECF No. 246, multiple letters from the prosecution and from both defendants, *see* ECF Nos. 243-245, 247-248, and two charge conferences.  This history alone is proof of a "substantial question" worthy of granting bail pending appeal.  *See Randell*, 761 F.2d at 125.

The core of the parties' debate focused on the intent required to find a criminal defendant guilty of open market manipulation, a question the Second Circuit has not addressed since 1991, in *United States v. Mulheren*, 938 F.2d 364, 368 (2d Cir. 1991).  Relying on *Mulheren*, the defendants argued that an investor can only be found guilty of market manipulation where he

6

engages in open-market transactions "with the sole intent to affect the price of the security."
*Mulheren*, 938 F.2d at 368; *see also, e.g.,* July 3, 2024 Hwang Letter at 2-3, ECF No. 248.  The
prosecution, conversely, argued that "whatever other motivations the defendant may have had, if
he intended to artificially affect the price of securities through his trading, he is guilty of market
manipulation."  July 2, 2024 USAO Letter at 4, ECF No. 247.  In other words, "that a defendant
has formed the requisite intent if the intent to commit the crime was *any* of his objectives."  June
28, 2024 USAO Letter at 9, ECF No. 243.

The Court sided with the prosecution, instructing the jury that, even if it found that Mr.
Hwang's trading strategy was consistent with the lawful purpose of "accumulating large
positions in undervalued securities or, in the case of short positions, in overvalued securities,"
the jury could find Mr. Hwang guilty if it found that he also "employed strategies to willfully and
intentionally create artificial markets for [the at-issue securities]."  Trial Tr. 5386:2-21.  The
prosecution leaned into this reading of the law in its summation, asserting that Mr. Hwang's
position that he engaged in the charged trades for a legitimate investment purpose was "largely
irrelevant" and arguing that "[i]f Hwang was engaging in a series of transactions designed to
artificially move the price and he had manipulative intent, then the fact that he also liked the
stock is no defense at all."  Trial Tr. 5169:24-5170:8.

There is—at the very least—a substantial question whether the Court correctly instructed
the jury as to the intent requirement for market manipulation.  In *Mulheren*, this same U.S.
Attorney's Office advanced the legal theory (which it now abandons) that an investor could be
found guilty of market manipulation where he engaged in open-market transactions "with the
sole intent to affect the price of the security."  938 F.2d at 368.  On appeal, the Second Circuit
expressly "harbor[ed] doubt about the government's theory of prosecution" and had "misgivings

about the government's view of the law." *Id.* at 366, 368.  That the Second Circuit harbored such doubts and misgivings is hardly surprising.  As another court in this district observed: "This reluctance may be explained by the fact that it is unusual in American law to impose liability based solely only on the intent of the actor."  *SEC v. Masri,* 523 F. Supp. 2d 361, 367 (S.D.N.Y. 2007).  The court elaborated: "it is hornbook criminal law that one is not punished solely for a criminal state of mind (mens rea), but only where one's action is prohibited as well (actus rea)." *Id.* n.11.

In light of these understandable doubts and misgivings, the Second Circuit in *Mulheren* declined to hold that the prosecution's market-manipulation theory was legally valid, but only "assume[d], without deciding . . . that an investor may lawfully be convicted under Rule 10b-5 where the purpose of his transaction is solely to affect the price of a security," *id.* at 368, and reversed the defendant's convictions because the prosecution failed to prove that the defendant's sole intent was to raise the stock's price rather than to invest.  *Id.* at 368-369.  Critically, the Second Circuit emphasized that "[t]he government was obligated to prove beyond a reasonable doubt that . . . he did it with the intent to raise its price, rather than with the intent to invest.").

Since then, the Second Circuit has not revisited the question whether a defendant's "sole intent" to affect the price of a stock is sufficient to support criminal liability for market manipulation.  However, given the Second Circuit's historical reluctance to endorse a theory of market manipulation based on the defendant's sole intent, it stands to reason that the circuit would be even more reluctant to endorse a theory of market manipulation where only one of the defendant's intents was to affect the price of a stock.  As the *Masri* Court explained: "Because the Second Circuit accepted the government's theory only with 'misgivings,' then *a fortiori,* it would find problematic a theory under which an investor could be found liable for market

manipulation when only one of the investor's purposes was to alter the price." 523 F. Supp. 2d at

373. The Court's instruction, which permitted the jury to find that Mr. Hwang was guilty of

market manipulation even if it also found that he had engaged in the charged trades for an

investment purpose, is therefore contrary to *Mulheren*'s guidance, logic, and reasoning. *See id.*

("[I]f a transaction would have been conducted for investment purposes or other economic

reasons, and regardless of the manipulative purpose, then it can no longer be said that it is

'artificially' affecting the price of the security or injecting inaccurate information into the

market, which is the principal concern about manipulative conduct.").

To be clear, *Mulheren* is not an outlier. The D.C. Circuit also held that liability for

market manipulation depends "entirely on whether the investor's intent was 'an investment

purpose' or 'solely to affect the price of a security.'" *Markowski v. SEC,* 274 F.3d 525, 528

(D.C. Cir. 2001) (quoting *Mulheren,* 938 F.2d at 368); *see also Masri,* 523 F. Supp. 2d at 372

("[I]n order to impose liability for an open market transaction, the SEC must prove that *but for*

the manipulative intent, the defendant would not have conducted the transaction.") (emphasis in

original). And as recently as December 2017, this same U.S. Attorney's Office agreed to

substantially identical "sole intent" language as requested by the defendants here. In that case,

Judge Gardephe instructed the jury, in relevant part, as follows:

> [T]he government must prove beyond a reasonable doubt that each
> defendant agreed to engage in conduct with the sole intent to (1) create a
> false impression of market activity regarding [the financial instrument],
> and (2) artificially distort the price of [the financial instrument], rather
> than for legitimate investment purposes.

Jury Charge at 7210:3-9, *United States v. Tuzman,* No. 15 Cr. 536 (PGG) (S.D.N.Y. Dec. 22,

2017), ECF No. 706 (attached hereto as Exhibit A). After Judge Gardephe observed that there

was "substantial support in the case law" to apply a "sole intent" standard, the prosecutor in that

case—none other than the current U.S. Attorney himself—agreed to the "sole intent" instruction.

Transcript of Charge Conference at 6751:12-13, 6753:12, *United States v. Tuzman,* No. 15 Cr. 536 (PGG) (S.D.N.Y. Dec. 20, 2017), ECF No. 702 (attached hereto as Exhibit B).

Given that the Second Circuit raised serious doubts and misgivings about whether even "the sole intent" standard supported a criminal market-manipulation conviction and that the only other circuit court opinion on point is consistent with the Second Circuit's view, there is a substantial question whether the jury was incorrectly instructed to convict Mr. Hwang even if he purchased (or sold) stock with an investment purpose.

### C.    There is a Substantial Question Whether the Court Incorrectly Declined to Instruct the Jury as to a Materiality Requirement for Market Manipulation

There is no immaterial fraud at common law. And when Congress uses the term "fraud" to define a crime, it necessarily incorporates that term's long-established meaning. Here, the term "fraud" is used to define the crime of market manipulation under Rule 10b-5(a) and (c). By operation of law, it necessarily includes the element of materiality. The absence of a materiality instruction in the market-manipulation jury charge is therefore incorrect as a matter of law. It unlawfully permitted the jury to find Mr. Hwang guilty without finding a substantial likelihood that an objective reasonable investor would have considered the charged trading conduct significant in deciding whether to buy, sell, or hold securities. At a minimum, its absence raises a legal question that "very well could be decided the other way." *Randell*, 761 F.2d at 124-25.

By letter on June 30, 2024, and then again before the Court on July 8, 2024, Mr. Hwang requested that the Court instruct the jury with respect to market manipulation that it must find that Mr. Hwang's manipulative conduct was material. *See* June 30, 2024 Hwang Letter at 3-4, ECF No. 244; Trial Tr. 5090:19-5091:19. The prosecution opposed, arguing that Title 15 securities fraud "does not impose a free-standing materiality requirement" for market manipulation. *See* June 28, 2024 USAO Letter at 7, ECF No. 243; *see also* Trial Tr. 5092:4-5.

The Court declined to give a materiality charge, stating that it "ha[d] not found any case that uses the word materiality in connection with the manipulative conduct other than misrepresentations of a material fact." Trial Tr. 5091:25-5092:6.

The Court's decision not to instruct the jury on the element of materiality is squarely contradicted by the Supreme Court's decision in *Neder v. United States*, 527 U.S. 1 (1999). Rule 10b-5 prohibits three forms of conduct:

> (a)    To employ any device, scheme, or artifice to defraud,
>
> (b)    To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
>
> (c)    To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person.

*See* 17 C.F.R. § 240.10b-5. The prosecution argued, and the Court at the charge conference agreed, that because only subsection (b) of the rule contains an express materiality requirement, subsections (a) and (c) must *not* require materiality, and therefore the jury here should not be instructed to find materiality in order to convict Mr. Hwang of market manipulation. *See* Trial Tr. 5090:19-5092:6; June 28, 2024 USAO Letter at 7-8, ECF No. 243.

*Neder* dictates otherwise. There, the Supreme Court held that materiality is an element of a "scheme or artifice to defraud" under the federal mail fraud (18 U.S.C. § 1341), wire fraud (18 U.S.C. § 1343), and bank fraud statutes (18 U.S.C. § 1344), despite the fact that none of those statutes contains an express written materiality requirement. 527 U.S. at 25. That is so, the Court explained, because "[i]t is a well-established rule of construction that where Congress uses terms that have accumulated settled meaning under the common law, a court must infer, unless the statute otherwise dictates, that Congress means to incorporate the established meaning of these terms." *Id.* at 21 (cleaned up, citations omitted). To be sure, the Court found, "the

common law could not have conceived of 'fraud' without proof of materiality." *Id.* at 22.

The same rules of construction apply here to find that Rule 10b-5's use of "device, scheme, or artifice to defraud" (in subsection (a)) and "fraud" (in subsection (c)) require a finding of materiality just as they do in the mail fraud, wire fraud, and bank fraud statutes. Contrary to the prosecution's argument at the charge conference and the conclusion reached by the Court, the structure of Rule 10b-5 is consistent with the common law meaning of fraud. That is, subsections (a) and (c), which include the term "fraud" and thereby incorporate its common law meaning, do not require an express mention of "materiality," whereas subsection (b), which does not include the term "fraud," does require an express mention of materiality. Furthermore, there is no principled reason why the language "scheme or artifice to defraud" should exclude a materiality requirement in Title 15 securities fraud, but include it in Title 18 mail fraud, wire fraud, or bank fraud. Indeed, even the prosecution, in its requested Title 15 securities fraud charge in a case tried last year, agreed that "[a] 'scheme to defraud' is a pattern or course of conduct concerning a *material* matter designed to deceive a person." Government Request to Charge, Request No. 19, *United States v. Bankman-Fried*, No. 22 Cr. 673 (LAK) (S.D.N.Y. Aug. 21, 2023), ECF No. 214 (emphasis added).

Nor is this omission of the materiality element salvaged—as suggested during the charge conference, *see* Trial Tr. 5091:20-25—by relying on language elsewhere in the manipulation charge that if "Mr. Hwang employed strategies to willfully and intentionally create artificial markets for such securities, and *if those strategies induced others to buy and sell at such artificial prices*, you may find that an unlawful manipulation occurred." Jury Charge, Trial Tr. 5386:16-21 (emphasis added). The italicized language reflects subjective reliance, not objective materiality, which requires the jury to find a "substantial likelihood" that the information at issue

"would have been viewed by the reasonable investor as having significantly altered the total mix of information available." *See TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 449 (1976). As the Court itself recognized at the Rule 29 argument on July 1, 2024, materiality is "an objective term," and "[y]ou can't define it by subjective reliance." Trial Tr. 4991:4-18. When defense counsel argued that the fact that a particular counterparty had not relied on an alleged misstatement by Mr. Hwang was evidence that the statement was not material, the Court corrected defense counsel, stating, "[t]hat's reliance, not materiality" and directed counsel to move on to its next argument. Trial Tr. 4993:25-4994:6. For the same reason, the *subjective* reliance language in the manipulation charge cannot make up for the absence of an *objective* materiality instruction.

In light of the Supreme Court's opinion in *Neder* and the absence of an objective materiality instruction in the Court's market-manipulation charge, there is a substantial question whether the jury was incorrectly instructed to convict Mr. Hwang of market manipulation.

> **D.    There is a Substantial Question Whether the Court Incorrectly Admitted Stock-Price-Movement Evidence Without Expert Testimony Excluding Confounding Factors**

Over defense objections at trial, the Court permitted the prosecution to present charts reflecting the rise and fall of the at-issue securities, as well as expert testimony from Dr. Carmen Taveras that the conduct of Mr. Hwang and Archegos caused those price changes. Trial Tr. 2152:15-24, 2185:18-2186:8, 2205:20-2209:8. There is a substantial question that admitting such evidence and testimony was improper and highly prejudicial because the prosecution failed to present expert evidence excluding other factors—unrelated to Mr. Hwang's conduct—that could have affected the prices of the at-issue securities.

Contrary to the Court's ruling, Second Circuit precedent prohibits the admission of stock-price-movement evidence in the absence of expert testimony excluding confounding factors that

may have contributed to stock-price movement. *See United States v. Ferguson,* 676 F.3d 260, 274-75 (2d Cir. 2011). *Ferguson* held that the district court abused its discretion by admitting stock-price-decline evidence to prove materiality because it prejudicially suggested to the jury that the alleged fraud caused the entire stock price decline without an expert accounting for any confounding factors. *Id.* at 274-75. "This is without foundation," *Ferguson* announced, and explained that the prosecution could have avoided the reversible error if it had "offered expert testimony about [the fraudulent transaction's] effect on the stock price." *Id.* at 274-75. *See also United States v. Schiff*, 538 F. Supp. 2d 818, 836 (D.N.J. 2008) (finding that the "observed stock price drop [wa]s probative of materiality of the alleged misstatements and omissions . . . only with an analysis of whether the stock price drop is attributable to the public disclosures that relate to the charged conduct").

This error is compounded by the fact that, as discussed above, the prosecution argued, and the Court accepted, that no showing of materiality was necessary for the jury to find Mr. Hwang guilty of the market-manipulation charges. Although Mr. Hwang believes that ruling was wrong, it makes the prosecution's inclusion of the stock-price-movement evidence even more inexplicable. The only element of the charged crimes that such evidence could go to is materiality—namely, that the "false pricing signal" sent by Mr. Hwang's allegedly manipulative conduct was material to the reasonable investor, as evidenced by the fact that Mr. Hwang's trading conduct did, in fact, affect prices. Without that hook, such stock-price-movement evidence is not only without foundation, it is irrelevant. At the same time, it is highly prejudicial. It impermissibly allowed the jury to conclude that the entirety of large stock-price movements was caused by Mr. Hwang's orders. There is therefore a substantial question regarding whether the Court erred in permitting the prosecution to introduce the stock-price-

14

movement evidence.

     **E.**    **In Light of These Errors, There is a Substantial Question Whether Mr. Hwang's Convictions on the Racketeering and Misrepresentation Counts Should be Vacated**

Finally, there is a substantial question whether Mr. Hwang's conviction on the racketeering conspiracy and misrepresentation counts (Counts One, Ten and Eleven) can stand if the Second Circuit rules in Mr. Hwang's favor with respect to any of the three questions identified above. First, because market manipulation was one of the predicate acts charged as part of the racketeering conspiracy count, *see* Superseding Indictment ¶ 68, and because the verdict form did not distinguish between the various predicate acts, *see* ECF No. 249, Mr. Hwang's racketeering conspiracy conviction may rest entirely on a finding of market manipulation. Therefore, if the Second Circuit finds that the jury was incorrectly instructed on the law of market manipulation, or if it finds that the Court improperly admitted stock-price-movement evidence without the requisite foundation, Mr. Hwang's racketeering conspiracy conviction would also have to be vacated. *See McDonnell v. United States*, 579 U.S. 550, 579-80 (2016) (vacating convictions because it was "possible" jury convicted on invalid legal theory even though also presented with valid legal theory); *Yates v. United States*, 354 U.S. 298, 312 (1957) (verdict must "be set aside in cases where the verdict is supportable on one ground, but not on another, and it is impossible to tell which ground the jury selected"), *overruled on other grounds by Burks v. United States*, 437 U.S. 1 (1978).

Similarly, Mr. Hwang's conviction on the misrepresentation counts would necessarily fall if the Second Circuit vacated Mr. Hwang's manipulation convictions because the prosecution expressly linked the proof for the market manipulation and misrepresentation schemes at trial. At closing, the prosecution pointed to a video conference call on March 25, 2021 between Archegos personnel and representatives of several counterparty banks, in which Mr. Hwang

represented to the counterparties that Archegos could make them whole in two to three weeks through unwinding certain positions. *See* Trial Tr. 5156:21-5158:17; GX-2504. This was purportedly a lie, according to the prosecution, because Mr. Hwang knew that prices were inflated such that "even modest selling" would cause prices to fall and "they would be destroying the portfolio if they kept selling." Trial Tr. 5158:1-11. In other words, because Mr. Hwang had manipulated the market to prices that were beyond what other market participants would pay for the at-issue securities, "[t]here were no buyers at prices that would enable Hwang to pay back the banks." Trial Tr. 5158:12-17; *see also* Trial Tr. 5009:3-7 (prosecution, at Rule 29 argument, asserting that Mr. Hwang knew his March 25 unwind estimate to the counterparties was a lie because "[h]e knew that [Archegos] w[as] the only buyer[] at these prices for these names").

Because the prosecution expressly tied guilt with respect to market manipulation to guilt with respect to the misrepresentation scheme, if the Court of Appeals vacates Mr. Hwang's market manipulation convictions, it will have undermined the basis for his misrepresentation convictions and therefore must vacate those convictions as well. There is therefore a substantial question as to whether any of Mr. Hwang's convictions will survive appellate review.

**CONCLUSION**

For the foregoing reasons, Mr. Hwang respectfully requests that the Court grant him bail pending resolution of his appeal.

Dated:      New York, New York          Respectfully submitted,
            November 18, 2024
                                        GIBSON DUNN & CRUTCHER LLP

                                        By:  /s/ *Michael Martinez*
                                        Barry H. Berke
                                        Dani R. James
                                        Jordan Estes
                                        Michael Martinez

                                        200 Park Avenue
                                        New York, New York 10166-0193
                                        (212) 315-4000 (Phone)
                                        bberke@gibsondunn.com

                                        *Counsel for Defendant Bill Hwang*

17