## Davis Polk

Tatiana R. Martins
+1 212 450 4085
tatiana.martins@davispolk.com

Davis Polk & Wardwell LLP
450 Lexington Avenue
New York, NY 10017
davispolk.com

**FOIA CONFIDENTIAL TREATMENT REQUESTED**
**REQUEST TO FILE UNDER SEAL**

November 14, 2024

Re: *United States v. Hwang, et al.*, Case No. 22-CR-240 (AKH)

Matthew Podolsky
Assistant United States Attorney
United States Attorney's Office
Southern District of New York
26 Federal Plaza
New York, New York 10278

Dear Mr. Podolsky:

On behalf of our clients, Morgan Stanley & Co. LLC ("MSCO"), Morgan Stanley Capital Services LLC ("MSCS"), and Morgan Stanley & Co. International plc ("MSIP")[1] (collectively, "Morgan Stanley"), we are submitting this Victim Impact Statement in the above-captioned case.  As detailed below, Morgan Stanley suffered a total loss of $911 million as a result of a massive fraud scheme perpetrated by Defendants Sung Kook ("Bill") Hwang and Patrick A. Halligan, for which both defendants were found guilty in *United States v. Hwang, et al.*, Case No. 22-CR-240 (AKH).  Morgan Stanley has received distributions from Archegos totaling $48.47 million since suffering the $911 million loss, and thus is entitled to restitution of up to $862.53 million pursuant to the Mandatory Victims Restitution Act, 18 U.S.C. § 3663A, and the Victim and Witness Protection Act, 18 U.S.C. § 3663.

### Background

On July 10, 2024, the Defendants were found guilty by a unanimous jury of RICO conspiracy, securities fraud, wire fraud, and market manipulation. As the evidence at trial demonstrated, Defendants made false assurances and lied to Morgan Stanley (and Archegos's other prime brokers and swap counterparties) about the risk profile of its portfolio in order to induce Morgan Stanley and others to extend margin to Archegos, which Defendants then used to inflate the stock prices of certain publicly traded companies.  As a result of Defendants' misrepresentations, Morgan Stanley suffered $911 million in losses when Defendants' scheme unraveled and Morgan Stanley was forced to issue a notice of default and close-out its Archegos-related positions.  Because Morgan Stanley was a victim of Defendants' far-reaching corrupt scheme and fraud, it is entitled to restitution for the losses it suffered as a result.

As a prime broker to Archegos, Morgan Stanley extended margin to Archegos and acted as a swap counterparty to Archegos.  Like the other financial institutions with which Archegos had a relationship, Morgan Stanley's willingness to serve as prime broker to Archegos, to extend margin, and to enter into transactions as a counterparty to Archegos was based on Morgan Stanley's understanding of Archegos's risk profile, including the concentration, liquidity, and composition of its overall portfolio.

---

[1] As relevant here, MSCS, a U.S. registered swap dealer, and MSIP, a U.K. broker-dealer, were swap counterparties to Archegos Fund LP.

**Davis Polk**                                                                                    CONFIDENTIAL

As demonstrated at trial, Morgan Stanley's understanding of Archegos's risk profile, and its efforts to actively monitor and appropriately manage that risk, were frustrated by Archegos's misrepresentations. Archegos representatives lied to its prime brokers, including Morgan Stanley, at the instruction of Defendants.  For example,  trial testimony revealed that in or around November 2020, Morgan Stanley requested that Archegos transfer some of its positions to other counterparties and replace the positions with more diversified and liquid stocks, or provide additional cash.[2]  Mr. Hwang directed an Archegos representative "to give a misleading answer" to Morgan Stanley in response to its request.[3]  Specifically, Mr. Hwang instructed the Archegos employee to "tell Morgan Stanley that [Archegos] need[ed] to wait to get through [its] year end" before it could move positions and misleadingly imply that Archegos could not "move positions in or out" of its portfolio or "pay more cash" at the time because of tax reasons.[4]  In truth, and unbeknownst to Morgan Stanley, "the real reason [Archegos] couldn't give more cash to Morgan Stanley or move the positions was because [Archegos] . . . didn't have a whole lot of excess cash at that point in time . . . [and] didn't have any counterparties that [it] could move the illiquid position out of Morgan Stanley to."[5]

As further demonstrated at trial, at Defendant Halligan's instruction, an Archegos representative lied to Archegos' prime brokers, which included Morgan Stanley, by understating the "concentration of the largest position in the portfolio and in regards to the leverage or total amount borrowed by Archegos."[6]  In fact, Archegos did not reveal to Morgan Stanley the concentration of its entire portfolio, across all of its prime brokers, until the evening of March 25, 2021.  Only then did Defendant Hwang reveal to Morgan Stanley and Archegos's other prime brokers that its overall portfolio mostly consisted of only approximately 12 positions in total and that more than half its portfolio was held in five stocks.[7]  Even then, Defendant Hwang continued to make misrepresentations to Morgan Stanley and its other prime brokers, misstating the trading volume in Archegos's top positions during the same March 25 call.[8]

**Losses as a Result of Liquidation of Archegos's Positions**

On Friday, March 26, 2021, at approximately 10:20 a.m., Morgan Stanley issued a notice of default to Archegos.  The notice of default resulted in the designation of March 26 as the Early Termination Date in respect of all transactions under the ISDA Master Agreements between Archegos and Morgan Stanley.

Upon issuing the default notice on March 26, Morgan Stanley began liquidating its hedge positions[9] in order to determine the final amount due from Archegos pursuant to Section 6(e) of the ISDA Master Agreements.[10]  Over the period of March 26 through 29, Morgan Stanley closed its swap transactions facing Archegos and adopted the following approaches to determining its loss (or gain) in respect of each swap transaction: (1) selling its underlying hedge positions, either through block trades (in the case of large concentrated positions) or sales into the market (in the case of less concentrated positions), and using the price realized on such sales; and (2) for any hedge positions that were not sold as of the open of trading on March 29, 2021, applying the market close price as of the prior Friday, March 26.

---

[2] Trial Transcript, *United States v. Hwang, et al.*, Case No. 22-CR-240 (AKH) ("*Hwang* Trial Tr."), Jun. 14, 2024 at 3346:17-3347:24.

[3] *Id.*

[4] *Id.* at 3348:2-3349:1.

[5] *Id.* at 3349:2-6.

[6] *Hwang* Trial Tr., May 20, 2024 at 897:6-22.

[7] Trial Exhibit, *United States v. Hwang, et al.*, Case No. 22-CR-240 (AKH), GX-2504-T at 16.

[8] *Hwang* Trial Tr., Jun. 18, 2024 at 3570:13-3571:9.

[9] In an equity return swap, the dealer typically holds the underlying reference securities for its own proprietary account as a hedge.

[10] The ISDA Master Agreements elected "Second Method" and "Loss" as the basis for the termination payment calculations.

---

**Davis Polk**                                                                    CONFIDENTIAL

This process resulted in Archegos owing, as of the open of trading on March 29, 2021, approximately $645.7 million to MSCS under the swaps with MSCS (after applying collateral), and MSIP owing approximately $2.3 million to Archegos under the swaps with MSIP (after taking into account collateral). Pursuant to the setoff provisions in paragraph (g) of Part 5 of the Schedule to the ISDA Master Agreements, these amounts were set off against one another, resulting in a net claim by MSCS to Archegos under the ISDA Master Agreement of $643,427,642.96. The underlying transactions giving rise to this loss are detailed in Exhibit 1 to the Declaration of Paul Kouch ("Kouch Decl.").

Over the next several days during the week of March 29, 2021, Morgan Stanley liquidated its remaining Archegos-related positions (including certain swap-related hedge positions) and incurred an incremental loss of $267 million. The underlying transactions giving rise to this loss are detailed in Kouch Decl. Exhibit 2.

In total, Morgan Stanley's suffered a loss of $911 million as a result of Defendants' fraud.

**Resolution Process Resulted in Morgan Stanley Receiving Distributions from Archegos**

In September 2021, Archegos, Morgan Stanley, and certain other of Archegos's counterparties engaged in a resolution process led by former United States Bankruptcy Judge James M. Peck that was designed to facilitate the commercial negotiation and resolution, of, among other things, the counterparties' claims against Archegos, and to ensure the orderly collection and distribution of Archegos's assets (the "Resolution Process"). In connection with the Resolution Process, Morgan Stanley has received to date distributions in the amount of $48.47 million. Morgan Stanley has preserved claims against Bill Hwang, certain Archegos principals, and the Grace & Mercy Foundation.

In light of the foregoing, Morgan Stanley is seeking from Defendants restitution of up to $862.53 million, which reflects the loss Morgan Stanley sustained as a result of Defendants' fraud, less amounts already recovered, or expected to be recovered, in connection with the Resolution Process. Although Morgan Stanley has suffered and will suffer additional losses that may be directly or indirectly attributable to Defendants' fraud (including, but not limited to, attorneys' fees as a result of responding to various regulators' inquiries in connection with Defendants' actions), Morgan Stanley is not asserting a restitution claim for those additional losses. Other than the matters described above, Morgan Stanley has not been compensated by insurance or another source with respect to any of its losses.

*      *      *

This submission was prepared to the best of our knowledge, information, and belief at the time of the submission. We reserve the right to supplement or amend it if additional information becomes available to us.

We request that this letter be treated as confidential and not be disclosed in response to any request made pursuant to the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"), or otherwise. Although not to the exclusion of other grounds, Morgan Stanley requests confidential treatment of this letter and the accompanying materials because these materials: (1) contain business confidential, commercial and/or financial information exempt from disclosure in accordance with 5 U.S.C. § 552(b)(4) and 28 C.F.R. § 16.7; and (2) are exempt from disclosure pursuant to 5 U.S.C. § 552(b)(7), as the information was compiled for law enforcement purposes.

The foregoing requests also apply to any transcripts, notes, memoranda or other materials of any sort that are made by any employee of the Department of Justice (the "DOJ") or any other government agency and

**Davis Polk**                                                                              CONFIDENTIAL

that incorporate, refer, or relate to any of the matters (1) contained in any material furnished by Morgan Stanley to the DOJ or any other federal or state government agency, or (2) referred to in any conference, meeting, telephone conversation or interview between (a) employees, former employees, representatives, agents, or counsel of Morgan Stanley and (b) employees of the DOJ or any other federal or state government agency.

In accordance with 28 C.F.R. § 16.7(c)–(e), please provide us with notice, and an opportunity to contest disclosure, if any document described above or any document produced in this matter by or on behalf of Morgan Stanley is or becomes the subject of a request for disclosure under FOIA.  The address and telephone number for any such notification to be made is:

Tatiana R. Martins
Davis Polk & Wardwell LLP
450 Lexington Avenue
New York, NY 10017
(212) 450-4085

If the DOJ decides to disclose any portion of any documents produced by Morgan Stanley to any third party, it is our expectation that, in accordance with normal practice, we will be given ten business days' advance notice of any such decision to enable us to pursue any remedies that may be available.  *See, e.g.*, *Chrysler Corp. v. Brawn*, 441 U.S. 281 (1979).  In such event, we request that you telephone me at the number above rather than rely upon the United States mail for such notice.  Should the DOJ receive a subpoena from private litigants for documents produced by Morgan Stanley, we request that the DOJ promptly notify us so that we may raise appropriate objections.

This submission contains sensitive and confidential victim information and, as a result, Morgan Stanley respectfully requests that any filing of this Victim Impact Statement and enclosures be done so under seal.

This submission was prepared to the best of our knowledge, information, and belief at the time of the submission.  We reserve the right to supplement or amend it if additional information becomes available to us.

Please do not hesitate to contact me if you have any questions with respect to the foregoing.

Very truly yours,

Tatiana R. Martins

Enclosures

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) ) ) ) | |
| vs. | ) ) | Case No. 22-CR-240 (AKH) |
| SUNG KOOK (BILL) HWANG and PATRICK HALLIGAN, | ) ) ) ) | |
| Defendants. | ) ) ) | |

**DECLARATION OF PAUL KOUCH IN SUPPORT OF**
**MORGAN STANLEY'S VICTIM IMPACT STATEMENT**

I, Paul Kouch, declare as follows:

1.      I submit this Declaration in support of the Victim Impact Statement of Morgan Stanley & Co. LLC, Morgan Stanley Capital Services LLC, and Morgan Stanley & Co. International plc (together with related entities, "Morgan Stanley") in connection with the case captioned *United States v. Hwang, et al.*, Case No. 22-CR-240 (AKH) (S.D.N.Y.).

2.      I am a Managing Director in Morgan Stanley's Institutional Equity Division. In connection with my responsibilities, I am familiar with Morgan Stanley's systems that record trading activity, including the systems Libra and Poseidon. Libra and Poseidon maintain records of trades conducted by Morgan Stanley on behalf of itself and its clients in the ordinary course.

3.      Attached hereto as **Exhibit 1** is a true and correct copy of a spreadsheet that was collected from the systems Libra and Poseidon and reflects positions liquidated in connection with Morgan Stanley's notice of default for Archegos Fund LP and related entities (collectively, "Archegos") during the period from March 26 to March 29, 2021.

2

4.      Attached hereto as **Exhibit 2** is a true and correct copy of a spreadsheet that was collected from the system Libra and reflects positions liquidated in connection with Morgan Stanley's notice of default for Archegos after March 29, 2021.

5.      Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.


Executed on:  _11/14/2024_

_____
Paul Kouch