William O. Reckler
Direct Dial: 212.906.1803
william.reckler@lw.com

1271 Avenue of the Americas
New York, New York 10020-1401
Tel: +1.212.906.1200  Fax: +1.212.751.4864
www.lw.com

LATHAM & WATKINS LLP

FIRM / AFFILIATE OFFICES

| | |
|---|---|
| Austin | Milan |
| Beijing | Munich |
| Boston | New York |
| Brussels | Orange County |
| Century City | Paris |
| Chicago | Riyadh |
| Dubai | San Diego |
| Düsseldorf | San Francisco |
| Frankfurt | Seoul |
| Hamburg | Silicon Valley |
| Hong Kong | Singapore |
| Houston | Tel Aviv |
| London | Tokyo |
| Los Angeles | Washington, D.C. |
| Madrid | |

September 16, 2024

**VIA EMAIL**

Samuel Rothschild
United States Attorney's Office
Southern District of New York
26 Federal Plaza
New York, NY 10278

Re:   **USA v. Hwang, et al., 1:22-cr-00240**

Dear Mr. Rothschild:

I write on behalf of MUFG Securities EMEA plc ("MUSE"), a victim of Defendants Sung Kook ("Bill") Hwang's and Patrick Halligan's criminal conduct.

You have asked that MUSE provide you with additional information about the harm that it suffered as a result of Defendants' criminal conduct. As set forth below and in my letter of December 13, 2021 (attached as Exhibit A), MUSE believes that it is entitled to $243,192,502.68 in restitution from Defendants.

## I.   BACKGROUND

MUSE is a broker-dealer that traded total return swaps ("TRS") with Archegos Capital Management ("Archegos") for approximately one year, from April 2020 through March 2021. It entered into those TRS in reliance on Defendants' fraudulent statements. MUSE incurred substantial losses when, after the price of the reference securities for certain of those TRS fell suddenly, Archegos was unable to return the cash collateral posted by MUSE on the TRS.

On July 10, 2024, a jury found Mr. Hwang and Patrick Halligan guilty of RICO conspiracy, securities fraud, and wire fraud. The jury also found Mr. Hwang guilty of six counts of market manipulation and an additional count of securities fraud. As you know, pursuant to the Mandatory Victims Restitution Act of 1996 (the "MVRA"), 18 U.S.C. §3663A, restitution is mandatory where, as here, the defendants stand convicted of a Title 18 offense "committed by fraud or deceit." MVRA, 18 U.S.C. § 3663A(c)(1)(A)(ii).

## II.   SUMMARY OF LOSSES

MUSE has suffered financial harm as a result of Defendants' conduct. As explained in my December 13, 2021 letter, MUSE's direct, out-of-pocket losses (not including any outside counsel legal fees) totaled $263,632,638. These losses generally consist of: (i) the return of the outstanding

LATHAM&WATKINS LLP

collateral posted by MUSE to Archegos; (ii) an "Interest Amount" that Archegos owed MUSE for the month of March 2021; and (iii) the amount owed to MUSE as a result of the early termination of the TRS on March 29, 2021, and March 30, 2021. The excel file produced to you at MUFG-Archegos0006309, as well as communications MUSE previously sent to Archegos (MUFG-Archegos0006302-6308; MUFG-Archegos0008530; MUFG-Archegos0008524) and additional documents referenced in my December 13, 2021 letter, detail those losses.

MUSE has already received $20,440,135.32 from Archegos. Accordingly, its current out-of-pocket losses for which it is entitled to mandatory restitution under the MVRA is $243,192,502.68. *See* 18 U.S.C. § 3664(f)(1)(A) ("the court shall order restitution to each victim in the full amount of each victim's losses . . .").[1]

If you have additional questions about MUSE's losses and the restitution to which it is entitled, please let us know.

Sincerely yours,

*/s/ William O. Reckler*
William O. Reckler

cc:   Andrew Thomas
      Matthew Podolsky
      Alexandra Rothman

---

[1] The loss figures in this letter do not include the fees that MUSE paid to outside counsel in connection with its own investigation of this matter or in connection with your investigation and prosecution of Defendants. While MUSE is not seeking restitution for those costs at this time, it reserves the right to do so in the future. *See* 18 U.S.C. § 3663A(b)(4) (providing for restitution for "expenses incurred during participation in the investigation or prosecution of the offense or attendance at proceedings related to the offense").

# EXHIBIT A

**William O. Reckler**
Direct Dial: 212-906-1803
william.reckler@lw.com

1271 Avenue of the Americas
New York, New York 10020-1401
Tel: +1.212.906.1200  Fax: +1.212.751.4864
www.lw.com

# LATHAM&WATKINS LLP

FIRM / AFFILIATE OFFICES

| | |
|---|---|
| Austin | Moscow |
| Beijing | Munich |
| Boston | New York |
| Brussels | Orange County |
| Century City | Paris |
| Chicago | Riyadh |
| Dubai | San Diego |
| Düsseldorf | San Francisco |
| Frankfurt | Seoul |
| Hamburg | Shanghai |
| Hong Kong | Silicon Valley |
| Houston | Singapore |
| London | Tel Aviv |
| Los Angeles | Tokyo |
| Madrid | Washington, D.C. |
| Milan | |

December 13, 2021

**CONFIDENTIAL RULE 6(e) GRAND JURY MATERIAL**

**VIA EMAIL**

Andrew Thomas
Alexander Rossmiller
Matthew Podolsky
United States Attorney's Office
Southern District of New York
One St. Andrew's Plaza
New York, NY 10007

Re: **MUFG Securities Americas Inc. ("MUSA") / Loss Calculation**

Dear Messrs. Thomas, Rossmiller and Podolsky:

At our recent meeting, you requested further explanation of the loss suffered by MUFG Securities EMEA plc ("MUSE") due to the collapse of Archegos Capital Management ("Archegos"). We have previously produced to you a spreadsheet (MUFG-Archegos0006309) showing two different loss calculations. The first calculation, which is also documented in an April 1, 2021 letter to Archegos (the "MUSE April 1 Notice," MUFG-Archegos0006302-6308), represents MUSE's claim against Archegos and uses the determination method set forth in the agreements entered into between MUSE and Archegos. The second calculation is based on the actual price at which MUSE liquidated its hedges. In other words, the methodology for the first calculation is based upon the contractual provisions of the swap agreements while the second methodology is based upon, more or less, out–of–pocket losses. The differences between those two calculations are set forth below.

To the extent that the explanation below references documents not previously produced, we are producing them concurrently with this letter. We respectfully request that this letter and the produced documents be afforded confidential treatment and protection, and be used solely for the purposes of this investigation.

LATHAM&WATKINS LLP

I. **Calculation of MUSE's Contractual Claim Against Archegos**

MUSE has made a $271,686,917 breach of contract claim against Archegos under the parties' ISDA Master Agreement and the TRS trade confirmations entered into thereunder, resulting from MUSE's Optional Early Termination of certain TRS contracts on March 29, 2021 and designation of an Early Termination Date of March 30, 2021 with respect to the remaining TRS contracts. As explained in the MUSE April 1 Notice, another notice sent on April 9 (MUFG-Archegos0008530), and letter sent by MUSE's outside counsel on May 17 (MUFG-Archegos0008524), the total amount owed consists of the following:

- a Counterparty Payable CSA Amount of $187,047,706 ($280,350,000 in Posted Collateral owed by Archegos, plus $15,711 in Interest accrued through the Early Termination Date, minus a set-off of $93,318,005 for an unwind payment owed to Archegos)[1]; plus

- the Early Termination Amount of $84,431,136, which includes the Optional Termination Amount of $33,942,054 from the TRS terminated as of March 29, 2021 and the Close-Out Amount of $50,489,082 from the TRS terminated as of March 30, 2021[2]; plus

- outside counsel legal fees in the amount of $204,082 incurred by MUSE through the Event of Default declared on April 9, 2021.

   A. **Counterparty Payable CSA Amount (Return of Collateral)**

   1. Collateral Amount

The first component of the amount owed by Archegos relates to the return of the outstanding collateral posted by MUSE to Archegos. At the time of termination on March 30, 2021, Archegos held $280,350,000 in cash collateral posted by MUSE. Under Paragraph 8(b)(iii) of the CSA, once an "Early Termination Date" has occurred or been designated, as occurred here on March 30, 2021, then the "Secured Party" – here, Archegos – is "obligated immediately to Transfer all Posted Collateral and the Interest Amount to Pledgor," i.e., MUSE. Thus, Archegos was obligated to return all $280,350,000 in Posted Collateral to MUSE.[3]

---

[1] Capitalized terms not otherwise defined herein have the meanings ascribed to them in the ISDA Master Agreement, Credit Support Annex, and trade confirmations entered into between MUSE and Archegos. Pursuant to Paragraph 11(a) of the Credit Support Annex ("CSA"), interest continues to accrue on the Counterparty Payable CSA Amount at the Default Rate.

[2] Pursuant to Section 9(h)(ii)(2) of the Master Agreement, interest continues to accrue on the Early Termination Amount at the Default Rate as set forth in clause (b)(ii)(2) of the definition of "Applicable Close-out Rate."

[3] Even putting aside the occurrence of the Early Termination Date, by March 30, 2021, the value of the TRS had significantly declined, such that the trades were now in the money for MUSE. Indeed,

2

LATHAM&WATKINS LLP

### 2. Interest Amount on Posted Collateral

In addition, Archegos owed MUSE an "Interest Amount" for the month of March. Under Paragraphs 6(d)(ii) and 13(h) of the CSA, the Secured Party is required to pay the Pledgor interest on the amount of outstanding Posted Collateral on a monthly basis. Archegos last paid MUSE such interest on March 1, 2021 for the period ending February 28, 2021. Accordingly, Archegos owed MUSE the Interest Amount on the Posted Collateral of $230,350,000 on March 1 and $280,350,000 for the period March 2 through the Early Termination Date of March 30, 2021. Under Paragraph 12 of the CSA, the "Interest Amount" is calculated as, for any given day, the "principal amount of Posted Collateral in the form of Cash held by the Secured Party on that day . . . multiplied by the Interest Rate in effect for that day … divided by 360." In turn, the "Interest Rate" is specified in Paragraph 13(h)(i) of the CSA as "the Effective Rate for Federal Funds in U.S. Dollars published on the Reuters page FEDFUNDS1 for the relevant day as of the close of business in New York."

In accordance with this provision, the Interest Amount of $15,711 was calculated as the sum of:

(a) $448, being the product of (i) the "Interest Rate" set forth in Paragraph 13(h)(i) of the Credit Support Annex (being the Effective Rate for Federal Funds in U.S. Dollars published on Reuters page FEDFUNDS1 for the relevant day at the close of business in New York) <u>multiplied</u> by (ii) the Posted Collateral Transferred by MUSE and held by Counterparty on the Early Termination Date in the amount of $230,350,000 which was required to be (but was not) Transferred by Counterparty to MUSE, for the one day period commencing on and including the date following the date on which interest on such Posted Collateral was most recently paid to MUSE under the Credit Support Annex (being March 1) up to but excluding March 2, <u>plus</u>

(b) $15,254, being the product of (i) the "Interest Rate" set forth in Paragraph 13(h)(i) of the Credit Support Annex (being the Effective Rate for Federal Funds in U.S. Dollars published on Reuters page FEDFUNDS1 for the relevant day at the close of business in New York) <u>multiplied</u> by (ii) the Posted Collateral Transferred by MUSE and held by Counterparty on the Early Termination Date in the amount of $280,350,000 which was required to be (but was not) Transferred by Counterparty to MUSE, for the 28-day period commencing on and including March 2 up to but excluding the Early Termination Date.

### 3. Set-off

MUSE exercised its right under Paragraph 8(b)(iv)(A) of the CSA to "Set-Off any Amounts payable by the Pledgor with respect to any Obligations against any Posted Collateral or the cash equivalent of any Posted Collateral held by the Secured Party." Specifically, MUSE set-off the

---

MUSE issued valid margin call notices on March 25, 26 and 29 that independently required Archegos to return all of the outstanding $280,350,000 in Posted Collateral.

LATHAM&WATKINS LLP

$93,318,005 that MUSE owed as a result of Archegos' consensual unwinding of four TRS on March 23, 2021.

### B. Early Termination Amount

The second component of the amount owed is the Early Termination Amount, *i.e.*, the amount owed to MUSE as a result of the early termination of the TRS on March 29, 2021 and March 30, 2021.

Section 6(e) of the Master Agreement provides that "[i]f an Early Termination Date occurs, the amount, if any, payable in respect of that Early Termination Date (the "Early Termination Amount") will be determined pursuant to this Section 6(e) and will be subject to Section 6(f)."[4] Section 6(e)(i) of the Master Agreement then defines the Early Termination Amount as the "amount equal to (1) the sum of (A) the Termination Currency Equivalent of the Close-Out Amount or Close-Out Amounts (whether positive or negative) determined by the Non-defaulting Party for each Terminated Transaction or group of Terminated Transactions, as the case may be, and (B) the Termination Currency Equivalent of the Unpaid Amounts owing to the Non-defaulting Party, less (2) the Termination Currency Equivalent of the Unpaid Amounts owing to the Defaulting Party".

Here, the Early Termination Amount consists of both (A) an Optional Termination Amount (which could also be characterized as Unpaid Amounts) owed with respect to the TRS that were terminated on March 29, 2021 when MUSE exercised its Optional Early Termination rights; and (B) a Close-Out Amount owed with respect to the TRS terminated on March 30, 2021 as a result of the designation of an Early Termination Date by MUSE. MUSE has calculated the Early Termination Amount as $84,431,136, which includes the Optional Termination Amount of $33,942,054 resulting from the TRS terminated as of March 29, 2021 and the Close-Out Amount of $50,489,082 resulting from the TRS terminated as of March 30, 2021.

The calculation of the Early Termination Amount is set forth in detail in the spreadsheet previously produced as MUFG-Archegos0006309 and attached to the April 1 Notice to Archegos (MUFG-Archegos0006302-6308).

---

[4] Although MUSE chose to set-off the Counterparty Payable CSA Amount under Paragraph 8(b)(iv)(A) of the CSA, MUSE had multiple set-off rights on which it could have relied to set-off this $93 million payment.

LATHAM&WATKINS LLP

1. <u>Optional Termination Amount (or Unpaid Amounts) Relating to March 29 Terminations</u>

Each of the TRS between MUSE and Archegos was governed by a Confirmation. Each Confirmation provided each of MUSE and Archegos with the right to elect an "Optional Early Termination."

MUSE calculated the applicable Optional Termination Amounts for the 21 TRS terminated in whole or in part on March 29, 2021 pursuant to the "Optional Early Termination" provisions under the relevant Confirmation for each such TRS by fixing the Final Price at the market closing price for the referenced securities as of the close of the relevant exchange on March 29, 2021, in accordance with the "Optional Early Termination" provisions set forth in each Confirmation applicable to such terminated TRS.

The Confirmations (which were substantively identical) provided that, upon "Optional Early Termination," the "Optional Termination Valuation Date shall be deemed the final Valuation Date for the Terminated Number of Shares," and that "Calculation Agent shall (i) determine the net amount (the "Optional Termination Amount") payable in connection with the Optional Termination in accordance with the Confirmation…" In turn, each Confirmation further provided that the "Final Price" for purposes of calculating net amounts payable is the "Closing Price," which is defined as the "last official price per Share quoted or traded on the Exchange" for that Valuation Date.

In other words, the Confirmation provided that the calculation of net amount payable upon Optional Early Termination should be based upon the securities' closing price on the relevant exchange (not, for example, the actual price at which MUSE liquidated its hedges). Accordingly, MUSE fixed the Final Price for these TRS as the market closing price for the reference securities at the end of trading on March 29, 2021. Attached as (MUFG-Archegos0008515, -8517, -8519, -8521, -8523, -8537, and -8539) are screenshots from Bloomberg (or, in the case of GSX, a public website) showing those closing prices.

The net amount payable for each TRS was then calculated by taking the difference between the Initial Price (or Initial Fix) and the Final Price (or Final Fix), multiplying that by the number of shares, and then deducting any dividends payable by MUSE to Archegos and adding the accrued Floating Amounts owing by Archegos to MUSE.

2. <u>Close-Out Amount Related to TRS Terminated As of March 30</u>

MUSE determined the Close-Out Amount for the 19 TRS terminated on March 30, 2021 by fixing the Final Price as the volume weighted average share price at which MUSE (or MUSA as its agent) actually sold its underlying hedge positions to the market on the relevant exchange on March 30.

5

Section 14 of the Master Agreement provides that the "Close-Out Amount will be determined by the Determining Party (or its agent)" – here, MUSE – "which will act in good faith and use commercially reasonable procedures in order to produce a commercially reasonable result." Section 14 further provides that, in determining a Close-out Amount, the Determining Party may consider any relevant information, including, without limitation, one or more of the following types of information:

(i) quotations (either firm or indicative) for replacement transactions supplied by one or more third parties that may take into account the creditworthiness of the Determining Party at the time the quotation is provided and the terms of any relevant documentation, including credit support documentation, between the Determining Party and the third party providing the quotation;

(ii) information consisting of relevant market data in the relevant market supplied by one or more third parties including, without limitation, relevant rates, prices, yields, yield curves, volatilities, spreads, correlations or other relevant market data in the relevant market; or

(iii) information of the types described in clause (i) or (ii) above from internal sources (including any of the Determining Party's Affiliates) if that information is of the same type used by the Determining Party in the regular course of its business for the valuation of similar transactions.

Here, MUSE determined the Close-Out Amount for the TRS with an Early Termination Date of March 30, 2021 using the most straightforward data possible – the actual prices at which it liquidated the very securities referenced in the TRS (adjusted to account for share volume). These trades were standard, ordinary-course sales to the market on the relevant exchange using third-party execution brokers that filled the orders with undisclosed counterparties.

Enclosed are screenshots from MUSA's internal system showing the number of shares of each hedge security that MUSA sold on MUSE's behalf on March 30 (which matches the number of shares referenced in the TRS) and the weighted average price at which those shares were sold (MUFG-Archegos0008514, -8516, -8518, -8520, -8522, -8536, and -8538).

The net amount payable for each TRS was then calculated by taking the difference between the Initial Price (or Initial Fix) and the Final Price (or Final Fix), multiplying that by the number of shares, and then deducting any dividends payable by MUSE to Archegos and adding the accrued Floating Amounts owing by Archegos to MUSE.

### C. Legal Fees

The third component of MUSE's claim against Archegos is for reimbursement of the outside counsel expenses incurred by MUSE in connection with the enforcement of its rights, as required under Section 11 of the Master Agreement. As set forth in the MUSE's April 9 letter to Archegos (MUFG-Archegos0008530), MUSE incurred legal fees in the amount of $204,082 through April 9, 2021. MUSE has incurred and will continue to incur additional legal fees since April 9, 2021.

## II. Alternate Loss Calculation

As discussed above, under the agreements between MUSE and Archegos, the amount Archegos owes MUSE for the trades liquidated on March 29, 2021 is calculated using the end-of-day prices for the relevant securities. However, if the actual prices at which MUSE liquidated its hedges are used for the calculation, the amount Archegos owes decreases by $7,850,226. This change results from the fact the market price of some of the hedge positions decreased between the time that MUSE sold its positions and the time the market closed. That reduces MUSE's total loss from $271,482,865 to $263,632,638, as reflected in the first tab of MUFG-Archegos0006309.

\*   \*   \*

Please feel free to contact us if you have any questions.

Sincerely yours,

*/s/ William O. Reckler*
William O. Reckler

cc: Jack Murphy
Steven Ringer
Alejandra de Urioste
*Commodity Futures Trading Commission*

David Zetlin-Jones
Andrew Dean
Osman Nawaz
Joshua Brodsky
Brian Fitzpatrick
*Securities and Exchange Commission*