# MORVILLO ABRAMOWITZ GRAND IASON & ANELLO P.C.

ELKAN ABRAMOWITZ
RICHARD F. ALBERT
ROBERT J. ANELLO*
KATHLEEN E. CASSIDY
BENJAMIN S. FISCHER
CATHERINE M. FOTI
CHRISTOPHER B. HARWOOD
LAWRENCE IASON
BRIAN A. JACOBS
TELEMACHUS P. KASULIS
KAREN R. KING
THOMAS A. McKAY
ROBERT M. RADICK*
JONATHAN S. SACK**
EDWARD M. SPIRO
JEREMY H. TEMKIN
RICHARD D. WEINBERG

565 FIFTH AVENUE
NEW YORK, NEW YORK 10017
(212) 856-9600
FAX: (212) 856-9494

www.maglaw.com

bjacobs@maglaw.com
212-856-9600

December 10, 2024

COUNSEL
JOSHUA BUSSEN
PIPPA HYDE***

RETIRED/PARTNER EMERITUS
PAUL R. GRAND

ROBERT G. MORVILLO
1938-2011
MICHAEL C. SILBERBERG
1940-2002
JOHN J. TIGUE, JR.
1939-2009

*ALSO ADMITTED IN WASHINGTON, D.C.
**ALSO ADMITTED IN CONNECTICUT
***ALSO ADMITTED IN ENGLAND AND WALES

**BY ECF AND EMAIL**

The Honorable Alvin K. Hellerstein
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

     Re:    *United States v. Sung Kook (Bill) Hwang et al.*, No. 22 Cr. 240 (AKH)

Dear Judge Hellerstein:

On behalf of defendant Bill Hwang, I write to address certain issues the Court raised during Mr. Hwang's sentencing proceedings on November 20-21, 2024.[1] ▉

▉[2] Second, after initially denying a forfeiture money judgment, the Court requested submissions regarding whether to impose such a money judgment. For the reasons below, the Court ▉ ▉ should deny forfeiture. The Court should also stay any restitution or forfeiture order pending appeal.

### I. Relevant Background

    **A.** ▉

---

[1] Additional issues will be addressed in a subsequent submission due December 16, 2024, as well as in a separate submission from co-counsel.

[2] All references to information that this Court has deemed confidential are redacted. An unredacted version of the submission will be furnished to the Court and counsel of record.



### B. The Propriety of a Forfeiture Money Judgment

Prior to sentencing, the government requested that the Court impose a forfeiture money judgment of $12,352,849,075.16. (Dkt. 340-1.) Mr. Hwang objected to the proposed money judgment based on *Honeycutt v. United States*, 581 U.S. 443 (2017), in which the Supreme Court held that forfeiture "is limited to property the defendant himself actually acquired as the result of the crime," *id.* at 454, because there is no evidence that Mr. Hwang ever took possession of any of the proceeds of any offense. (Dkt. 343 at 32-33.)

On November 20, 2024, the Court agreed that any funds Mr. Hwang withdrew went back "into Archegos, and they were deployed by buying more stock," which the government conceded was "true." (11/20/24 Tr. 95.) The Court then stated that "since Archegos borrowed the money to put into more investments that constituted the manipulation that was illegal and the security frauds that were illegal, it's inconsistent to have a theory that there was some fund that could be forfeited." (11/20/24 Tr. 96-97.) On this basis, the Court stated, "I deny forfeiture." (11/20/24 Tr. 97.) Notwithstanding the Court's denial of forfeiture, the government requested the opportunity to address forfeiture in a subsequent filing, which the Court authorized. (11/20/94 Tr. 99.)







4



### III. The Court Should Deny the Government's Request for a Forfeiture Money Judgment

On November 20, 2024, addressing the government's request that the Court impose a forfeiture money judgment of $12,352,849,075.16, the Court stated, "I deny forfeiture," explaining that "[t]here is no proof that any of this money was interspersed with Mr. Hwang's personal fortune." (11/20/24 Tr. 96-97.) The government objected, and the Court authorized submissions, but the Court's initial ruling denying a money judgment remains correct.

To start, there is no evidence that the offense conduct produced any "proceeds" for Mr. Hwang in the first place. The evidence showed that Archegos reinvested the variation margin and excess collateral it obtained from banks to finance additional trades. (*See, e.g.*, Trial Tr. 805:3-1; Dkt. 340 at 53 (citing Trial Tr. 3449-51); PSR ¶ 41.) All of that money was lost when Archegos defaulted on the counterparties' margin calls and the fund collapsed. (*See, e.g.*, PSR ¶¶ 95-96, 99.)

To the extent Archegos did obtain proceeds from the offense conduct, Supreme Court and Second Circuit precedent preclude the Court from ordering Mr. Hwang to forfeit funds that he never actually possessed. In *Honeycutt*, the Supreme Court held that under 21 U.S.C. § 853(a)(1), the criminal forfeiture statute governing certain drug offenses, forfeiture "is limited to property the defendant himself actually acquired as a result of the crime." 581 U.S. at 454. The Second Circuit has since extended the Supreme Court's reasoning to other forfeiture statutes, including 18 U.S.C. § 981(a)(1)(C)—one of the statutes under which the government seeks forfeiture of Mr. Hwang's assets. *See United States v. McIntosh*, 2023 WL 382945, at *2 (2d Cir. Jan. 25, 2023) (amended summary order); *see also United States v. Gjeli*, 867 F.3d 418, 427-28 (3d Cir. 2017) (extending *Honeycutt* to orders of forfeiture under 18 U.S.C. §§ 1963 and 981(a)(1)(c)).

The evidence at trial did not show that Mr. Hwang ever took personal possession of any proceeds of the fraud, including as salary. The government concedes that, after withdrawing funds from the banks, Mr. Hwang never transferred those funds to his personal bank account. (*See* Dkt. 340 at 53 ("after withdrawing funds from the banks he *did not transfer them to his personal bank account*" (emphasis added)).) That Mr. Hwang never received any proceeds from the charged scheme by possessing any ill-gotten gains, whether transiently or in the long term, precludes imposition of a money judgment in this case. *See United States v. Hameedi*, 2021 WL 1553999 (S.D.N.Y. Apr. 20, 2021) (denying forfeiture because the government failed to prove by a preponderance of the evidence that the defendant, who had a majority interest in company engaged in fraud, directly or indirectly obtained the proceeds of the fraud); *cf. United States v. Tanner*, 942 F.3d 60, 64, 68 (2d Cir. 2019) (holding that forfeiture was appropriate for defendant

who personally laundered $9.7 million by transferring that amount to a co-defendant using shell companies they owned). Even if there were evidence that Mr. Hwang extracted some amount of money from the funds that Archegos obtained from the banks that were ill gotten,[4] the amount of forfeiture that the government seeks—over $12 billion—vastly exceeds any amount of proceeds Mr. Hwang potentially possessed by orders of magnitude.

In its sentencing submission, the government cites several cases in support of its argument that Mr. Hwang should be responsible for funds that *Archegos* obtained and subsequently lost. Those cases establish nothing more than the principle—which does not apply here—that a defendant who once personally held the proceeds of a crime cannot escape forfeiture because those proceeds were transferred or otherwise dissipated before the defendant was sentenced. *See United States v. Robilotto*, 828 F.2d 940, 948-49 (2d Cir. 1987) (rejecting defendant's argument that forfeiture was improper because he "no longer retain[ed] those ill-gotten funds"); *United States v. Awad*, 598 F.3d 76, 78 (2d Cir. 2010) (holding that assets subject to forfeiture orders need not be in the possession of the defendant *at the time of sentencing*). In another case the government cites, *United States v. Contorinis*, 692 F.3d 136, 147 (2d Cir. 2012), the Second Circuit held that a defendant is liable for the reasonably foreseeable acts of his co-conspirators, but the Supreme Court expressly rejected that argument as a basis for joint and severable liability in *Honeycutt*, 581 U.S. at 453.[5] *Accord United States v. Papas*, 71 Fed. Appx. 88, 91 (2d Cir. 2018) (summary order) (recognizing that *Honeycutt* abrogated *Contorinis* to the extent it held that a defendant who participates in a narcotics conspiracy is subject to forfeiture not only of his own proceeds from the offense, but also the reasonably foreseeable proceeds obtained by co-conspirators).

The government also failed to articulate any legal theory that would bring this case within *Honeycutt* during sentencing on November 20, 2024, and did not identify any funds that Mr. Hwang possessed at any point. In fact, the government admitted it was seeking a preliminary order of forfeiture not to obtain Mr. Hwang's proceeds, as required, but rather to "confer on the government an ability to issue subpoenas to identify substitute assets that could be used to satisfy the order." (11/20/24 Tr. 98.) But the government is only authorized to seek substitute assets when the defendant acquired proceeds in the first instance, *see Honeycutt*, 581 U.S. at 451-52, so the government's desire to pursue "substitute assets" does not justify the entry of a money judgment here, where Mr. Hwang did not possess proceeds.

---

[4] The PSR notes that "[i]n defense counsel's letter, dated October 10, 2024, . . . Mr. Hwang indicated that he 'withdrew a total of $500,000 from Archegos during the purported offense conduct period, with the last withdrawal taking place in September 2020." (PSR ¶ 204.) There is no indication, however, that the $500,000 sum is derived from proceeds traceable to the fraud.

[5] To the extent any courts have continued relying on pre-*Honeycutt* caselaw like *Contorinis* in decisions relating to the acquisition of proceeds, those decisions are either distinguishable from the instant case or wrongly decided. *See, e.g., United States v. Bergstein*, 788 Fed. Appx. 742, 748 (2d Cir. 2019) (summary order) (citing *Contorinis* and affirming order of forfeiture on ground that defendant "effectively controlled the proceeds . . . as he was able to transfer the funds to shell companies and use the funds for personal expenses").

In sum, there is no evidence showing that Mr. Hwang ever took possession of any portion of the funds that Archegos obtained from the banks. In the absence of such evidence, the Court should deny the government's request for a forfeiture money judgment.

## IV.     The Court Should Stay Restitution and Forfeiture Pending Appeal

To the extent the Court imposes restitution and forfeiture, the Court should stay such orders pending Mr. Hwang's appeal of his conviction. *See, e.g., United States v. Huberfeld*, No. 16 Cr. 467-02 (AKH), Dkt. 296 (staying payment of $7 million pending appeal of restitution order). The Court has already found that Mr. Hwang is not a flight risk and that his case presents several substantial issues for appeal, and on that basis granted his motion for bail pending appeal. (*See* 11/21/24 Tr. 109-10.) The Court should also stay restitution and forfeiture because, in addition to the presence of substantial issues for appeal, there is a substantial risk of irreparable harm if Mr. Hwang is ordered to liquidate all his assets while the appeal is being resolved.

### A.     Restitution

Fed. R. Crim. P. 38(e) states that a district court "may stay—on any terms considered appropriate—any sentence providing for restitution under 18 U.S.C. § 3556 or notice under 18 U.S.C. § 3555." Fed. R. Crim. P. 38(e)(1). Courts "examine[] four factors when considering a motion to stay restitution payments: 1) the likelihood of success on appeal; 2) whether the applicant will be irreparably injured absent a stay; 3) whether issuance of the stay will substantially injure other parties interested in the proceeding; and 4) where the public interest lies." *United States v. Cosme*, 2024 WL 4202495, at *1 (S.D.N.Y. Sept. 16, 2024) (citation omitted). Where courts have granted bail pending appeal based on the presence of substantial questions for appeal, they have also granted a stay of financial penalties. *See, e.g., United States v. Silver*, 203 F. Supp. 3d 370, 385 (S.D.N.Y. 2016) (staying payment of fine under Rule 38 after granting bail pending appeal); *United States v. Milton*, 2024 WL 779210, at *9 (S.D.N.Y. Feb. 26, 2024) (granting stay of forfeiture order where the court previously granted bail pending appeal on the ground that there were "substantial issues" raised throughout the case). "Courts give the most weight to the first two factors," *Cosme*, 2024 WL 4202495, at *1, both of which weigh in favor of Mr. Hwang.

First, as to likelihood of success, this Court previously observed that Mr. Hwang's case presents "legitimate issues for an appeal" and "there are certainly very good arguments to make" before the Second Circuit. (11/21/24 Tr. 109; *see also* 11/20/24 Tr. 43 (stating that there are "a lot of appealable issues").) There are at least four "substantial questions" stemming from (1) the Court's instruction as to the intent requirement for market manipulation, (2) the absence of a materiality instruction in the market-manipulation charge, (3) the admission of highly prejudicial stock-price-movement evidence, and (4) whether Mr. Hwang's conviction on the RICO and misrepresentation counts can survive if the Second Circuit agrees with Mr. Hwang on any of the three prior questions. This factor therefore favors granting a stay. *See Silver*, 203 F. Supp. 3d at 385; *Milton*, 2024 WL 779210, at *9.

Second, Mr. Hwang will suffer irreparable harm if the Court denies a stay. Mr. Hwang's net worth is a small fraction of the restitution the government seeks. (PSR ¶ 177; Dkt. 340-1.) As the Court observed during sentencing, Mr. Hwang may need to liquidate most of his assets, including by selling his vehicles and artwork, in addition to downsizing his residence— particularly if he is to pay any amount of restitution in a lump sum. (11/21/24 Tr. 104.) Other courts have granted stays in comparable circumstances. *See, e.g., Silver*, 203 F. Supp. 3d at 385

(finding irreparable harm "because to pay the fine he would be forced to sell his two residences and to incur substantial tax liability associated with liquidating his retirement account"). In addition, a substantial portion of Mr. Hwang's net worth consists of joint assets that predate the charged offense conduct, including the home he shares with his wife and other property previously mentioned, which also justifies a stay. (PSR ¶ 177.) *See United States v. Corbett*, 357 F.3d 194, 196 (2d Cir. 2004) (noting that requiring a spouse to pay any portion of the restitution owed by a defendant would be "improper[]"). Further, Mr. Hwang's only sources of income from which to pay a monthly rate of restitution are the rental properties that he jointly owns with his wife and interest (at least some of which derives from jointly owned accounts). If Mr. Hwang ultimately prevails on appeal, it will be difficult for him to recoup payments made to multiple parties, ███████████████████████████████████.

The third and fourth factors regarding whether a stay will substantially injure other parties and where the public interest lies, which are less important than the first two factors, do not alter the conclusion that the Court should stay restitution. Because of the enormous discrepancy between Mr. Hwang's assets and the sums owed, the victims will never come close to recouping the full amount of their losses through restitution. The banks—all large institutions with assets in the billions and trillions—will not feel the impact of a short delay in payments while Mr. Hwang's appeal is resolved, nor will the public. ███████████████████████████████████████████████████████████████████████████████████████ Further, if the Court deems it necessary, any assets in which Mr. Hwang has an interest may be secured through an order providing that he cannot transfer, encumber, or dissipate his interest in such assets, except to pay regular expenses, including legal fees, and preexisting liabilities. *Silver*, 203 F. Supp. 3d at 386 (in connection with partial stay of fine and forfeiture pending appeal, imposing condition that "Silver also may not transfer or encumber his assets (such as by taking out loans) and must refrain from dissipating his assets").

Because the balance of the four factors favors Mr. Hwang, the Court should stay restitution pending appeal.

### B.   Forfeiture

Rule 32.2(d) authorizes a district court to stay an order of forfeiture "on terms appropriate to ensure that the property remains available pending appellate review." Fed. R. Crim. P. 32.2(d). "[T]he law governing when a district court should exercise its discretion to stay a forfeiture order has not been extensively developed." *Silver*, 203 F. Supp. 3d at 385 (quoting *United States v. Davis*, 2009 WL 2475340, at *2 (D. Conn. June 15, 2009)). Nonetheless, "[d]istrict courts in this Circuit typically consider four factors when considering a motion to stay a forfeiture order: 1) the likelihood of success on appeal; 2) whether the forfeited asset is likely to depreciate over time; 3) the forfeited asset's intrinsic value to defendant (i.e., the availability of substitutes); and 4) the expense of maintaining the forfeited property." *Id.* (citing cases).

As discussed above, and as the Court recognized in granting bail pending appeal, Mr. Hwang's appeal presents a host of substantial issues that may well be decided in his favor. For the same reason those issues warrant bail pending appeal, they also warrant a stay of any forfeiture. *See id.* The Court could also impose the order described above to secure Mr. Hwang's assets.

9

\*   \*   \*

    For the foregoing reasons, the Court should decline ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ to enter a money judgment. In addition, the Court should stay restitution and forfeiture pending appeal.

Respectfully submitted,

/s/ *Brian A. Jacobs*
Brian A. Jacobs

cc: Counsel of Record (via ECF)