**GIBSON DUNN**

Jordan Estes
Partner
T: +1 212.351.3906
jestes@gibsondunn.com

December 10, 2024

**BY ECF and Email**

Hon. Alvin K. Hellerstein
United States District Judge
Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007

Re: *United States v. Sung Kook (Bill) Hwang et al.*, No. 22 Cr. 240 (AKH)

Dear Judge Hellerstein,

As discussed at Bill Hwang's sentencing on November 21, 2024, we respectfully submit this letter, and accompanying declarations, in support of Mr. Hwang's request to structure his 18-year sentence as a sentence of 11.5 years' incarceration in a Bureau of Prisons ("BOP") facility and 6.5 years' home confinement.

The Court has authority to impose such a sentence under 18 U.S.C. §§ 3553(a) and 3583(e)(4), and many courts have done so. *See, e.g., United States v. Garry and Yvonne Souffrant*, No. 09 Cr. 20407 (PCH) (S.D. Fla., July 6, 2010); *United States v. Frank Bianco*, No. 20 Cr. 60120 (PCH) (S.D. Fla., Sept. 22, 2021); *United States v. Michael Pembroke*, No. 09 Cr. 118, 2011 WL 6122399 (E.D. Wis., Dec. 8, 2011). The Court should impose this sentence because of Mr. Hwang's ▮▮▮▮▮. Mr. Hwang suffers from ▮▮▮▮▮▮▮▮▮. That risk is aggravated by the stressful conditions found in a prison environment. An 11.5-year term in prison will allow the BOP to designate Mr. Hwang to the type of prison facility—*i.e.*, a Federal Prison Camp ("BOP Camp") as opposed to a Federal Correctional Institution ("BOP Institution")—where Mr. Hwang will have greater access to the frequent, specialized medical care he needs and will be subject to relatively less stressful conditions. In addition, as Mr. Hwang ages over the course of his sentence and his health condition deteriorates, the BOP will not be able to meet his increasing needs for timely medical care. (Unfortunately, the BOP's inability to provide prompt, necessary treatment by outside ▮▮▮▮▮▮ is well documented.) By placing Mr. Hwang in home confinement after 11.5 years rather than 18 years, he stands a much better chance of receiving the medical care required to treat his ▮▮▮▮▮.

**GIBSON DUNN**

December 10, 2024<br>Page 2

At sentencing, the Court emphasized that it did not intend to give Mr. Hwang a life sentence. In light of Mr. Hwang's ███████████████ and age, an 18-year sentence in a BOP Institution could do just that. Accordingly, we respectfully request that the Court structure his 18-year sentence as a sentence of 11.5 years' incarceration and 6.5 years' home confinement.

**I.    District Courts' Authority to Impose Home Confinement**

The Court has authority to structure an 18-year sentence so that it includes a term of incarceration and a term of supervised release with the special condition of home confinement. *See* 18 U.S.C. § 3583(e)(4). When such a sentence is imposed, home confinement is considered a place of custody. *See United States v. Lopez-Pastrana*, 889 F.3d 13, 18–19 (1st Cir. 2018) ("Home confinement is treated as a form of 'custody' under federal law . . . . [and] the Guidelines and federal statutes allow home confinement only as a substitute for incarceration."); *United States v. Saunders*, 986 F.3d 1076, 1078 (7th Cir. 2021) ("An inmate in home confinement remains in custody of the Bureau.").

Many courts have structured sentences in this manner. For example, in *United States v. Garry and Yvonne Souffrant*, the court sentenced Garry Souffrant to 240 months' imprisonment and five years of supervised release with a special condition of home confinement, for a total of 300 months in custody. Sent. Tr. at 103. Yvonne Souffrant received a sentence of 54 months' imprisonment and three years of supervised release with home confinement, for a total of 80 months in custody. Sent Tr. at 98. *Accord United States v. Frank Bianco*, No. 20 Cr. 60120 (PCH) (S.D. Fla., Sept. 22, 2021) (sentencing defendant to 24 months' imprisonment and 24 months' supervised release with a special condition of home detention for a total of 48 months in custody); *United States v. Michael Pembroke*, No. 09 Cr. 118, 2011 WL 6122399 (E.D. Wis., Dec. 8, 2011) (sentencing defendant to six months' imprisonment followed by six months' supervised release with a special condition of home confinement, despite an advisory Guidelines range of 63 to 78 months' imprisonment).

These examples illustrate that structuring a sentence to include incarceration and home confinement is not only permissible under § 3553 but serves as a trusted tool courts readily employ where, as here, the circumstances call for it.[1]

---

[1] Just last week, Chief Judge Swain sentenced an executive at Allianz to three years' probation, with a special condition of 18 months' home confinement, in a case where the government had claimed a $7 billion loss to investors based on false information provided by the defendant and others. The sentence was driven in part by the Court's view that the BOP could not adequately care for the defendant's health problems.

**GIBSON DUNN**

December 10, 2024
Page 3

II. Mr. Hwang's ████████████████████████████ and Age Warrant a Custodial Sentence That Includes 11.5 Years of Incarceration and 6.5 Years of Home Confinement

It has been a "uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual." *Rita v. United States*, 551 U.S. 338, 364 (2007) (Stevens, J., concurring) (quoting *Koon v. United States*, 518 U.S. 81, 113 (1996)). And, accordingly, the district court may consider an individual's "age . . . [and] ████████████" when determining an appropriate sentence. *See id*. Additionally, 18 U.S.C. § 3553(a) requires that a sentencing court "impose a sentence sufficient, but not greater than necessary" to not only "provide just punishment" but also "provide the defendant with needed . . . medical care . . . in the most effective manner." *Id*. at § 3553(a)(2). In this case, Mr. Hwang is unlikely to receive the necessary medical care—including ████████████████████████████████████████████████ required to control his ████████████████. *See* Exhibit 1, Declaration of Dr. Mun Hong, ¶¶ 12, 16–17. And to make matters worse, a designation to a BOP Institution, rather than a BOP Camp, will increase his stress levels and correspondingly ████████████████████████████ ████████████.

In light of Mr. Hwang's ████████████████████████, the medical care necessary to treat it, and the exacerbating effects that a BOP Institution would have on Mr. Hwang's health, we ask the Court to impose a sentence of 11.5 years of incarceration and 6.5 years of home confinement. By imposing such a sentence, the Court will keep Mr. Hwang in custody for the entirety of the 18 years this Court has determined is a proper reflection of "the seriousness of [his] offense." *See* 18 U.S.C. § 3553(a)(2)(A). But at the same time, this sentence will ensure the punishment is "*just*" by considering "the history and characteristics of the defendant." *See id*. § 3553(a)(1) (emphasis added).

This proposed sentence will provide Mr. Hwang with necessary medical care "in the most effective manner," *id*. § 3553(a)(2)(D)—first, in a BOP Camp where visitation and observation by external medical providers is more readily available, *see* Exhibit 3, Declaration of Joel A. Sickler, ¶¶ 20–21, and second in home confinement a *decade* afterwards, around the time that Mr. Hwang's medical risks may require even more significant medical interventions.

A.  Mr. Hwang has ████████████████████████████

Mr. Hwang has ████████████████, the development of which was ████████ ████████████████████████. *See* Exhibit 1, Declaration of Dr. Mun Hong, ¶ 17. The disease is driven by ████████████████████████████████████████████. *Id*. ¶ 14. The ████████████████████████████████████████████████████████████████████████ *Id*. While Mr. Hwang's condition is ████████████████████████████████████████████ ████████████████████████████████████████████. *See* Exhibit 1, Declaration of Dr. Mun Hong, ¶ 18; Exhibit 2, Declaration of Dr. Hee Yang, ¶ 12. Because his condition is ████████████████████████████████████████████████████████

# GIBSON DUNN

December 10, 2024
Page 4

*See* Exhibit 1, Declaration of Dr. Mun Hong, ¶¶ 13–17. The tendency for ██████████ ██████████ Exhibit 2, Declaration of Dr. Hee Yang, ¶ 12.

The state of Mr. Hwang's ██████████ Exhibit 1, Declaration of Dr. Mun Hong, ¶¶ 13–19. He is also at risk of ██████████ ██████████. *Id.* ¶ 18. While doctors are hesitant to give specific numerical predictions ██████████, doctors familiar with Mr. Hwang's condition opine that he has a high risk of a ██████████. *See* Exhibit 1, Declaration of Dr. Mun Hong, ¶ 25; Exhibit 2, Declaration of Dr. Hee Yang, ¶¶ 16, 19.

Mr. Hwang's doctors recommended ██████████ in 2022. Exhibit 2, Declaration of Dr. Hee Yang, ¶¶ 7, 10. The ██████████ ██████████ *Id.* ¶ 12. Accordingly, he was instead ultimately recommended for ██████████ ██████████ *See* Exhibit 1, Declaration of Dr. Mun Hong, ¶ 22. Mr. Hwang's ██████████ *Id.*

Notwithstanding this raft of medical treatments, Mr. Hwang requires ██████████ ██████████ *See* Exhibit 1, Declaration of Dr. Mun Hong, ¶ 26; Exhibit 2, Declaration of Dr. Hee Yang, ¶¶ 12, 16.

    **B.**    *Mr. Hwang Requires Specialized and Frequent Medical Care that is More Readily Available in a BOP Camp*

The Court is urged to weigh Mr. Hwang's significant health challenges and fashion a sentence structure that will still place him in federal custody—but ensure that his medical needs will be reasonably met as his ██████████. Specifically, if Mr. Hwang is designated to a BOP Institution, as opposed to a BOP Camp, it is likely that he will not receive the ██████████ attention that he requires, thereby putting his life at risk.

A term of 11.5 years' incarceration would allow the BOP to classify Mr. Hwang as suitable for a BOP Camp. This is because the BOP calculates a prisoner's security designation based on the time remaining to serve in a BOP facility, adjusted downward by 15% to account for the application for Good Time Credits. For an 11.5-year term of imprisonment, the 15% downward calculation would result in a term of approximately 9.8 years (117 months) for security-designation

purposes. *See* Exhibit 3, Declaration of Joel Sickler, ¶¶ 7–12. By contrast, an inmate with *more* than ten years to serve will automatically be classified for a BOP Institution.

There are material differences between a BOP Camp and a BOP Institution, particularly regarding the implications for Mr. Hwang's access to necessary medical care. *See id*. ¶ 13. The most significant differences are twofold: (1) BOP Institutions are five to ten times larger than BOP Camps and (2) BOP Institutions have highly restricted access and controlled movement relative to BOP Camps. *See id*. ¶¶ 14–16, 18.

The sheer size of the prison population at a BOP Institution (numbering from 1,000 to 4,000+ inmates) versus a BOP Camp (around 100 inmates), means that the wait times for medical checkups and appointments are much longer at a BOP Institution than a BOP Camp. *See id*. ¶ 18. Delays in treatment for Mr. Hwang, as discussed above, ▓▓▓▓. Additionally, lines for access to the prison phone are also much longer—likely delaying an individual like Mr. Hwang were he to require ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. *See id*.

In addition, the environmental stresses are greatly reduced at a BOP Camp for many reasons, including access and visitation. At a BOP Camp, outside visitors may park next to the visiting hall, enter the hall unescorted, show ID, and the incarcerated individual will be able to meet with their visitor. At a BOP Institution, however, access is much more controlled and delayed. Visitors must pass through guarded gates to access a separate parking area, then be escorted through multiple checkpoints, and then they must wait for significant periods of time for the incarcerated individual to be brought to the visiting room. *See id*. ¶ 20.

The potential for ensuring life-saving medical contact and treatment, and a less stressful environment, at a BOP Camp versus a BOP Institution cannot be overstated. At a BOP Camp, Mr. Hwang will be one inmate among one hundred and be more likely to receive necessary ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ At a much larger BOP Institution, those chances are dangerously lower.

C. *A Sentence of 11.5 Years of Incarceration and 6.5 Years of Home Confinement Will Increase Mr. Hwang's Odds of Surviving the BOP's Notoriously Inadequate Medical Care for Aging Inmates*

A sentence of 11.5 years of incarceration will limit the time that Mr. Hwang is subject to the BOP's notoriously inadequate medical care for aging inmates and increase his odds of survival. The Department of Justice's Office of the Inspector General has found that the "limited availability of Correctional Officers restricts aging inmates' access to medical care outside [BOP] institutions," with the result being long "waitlists to send inmates to outside medical specialists"—such as the ▓▓▓▓▓▓▓ necessary to Mr. Hwang's medical care. *The Impact of an Aging Inmate Population on the Federal Bureau of Prisons*, U.S. Department of Justice, Office of the Inspector General, February 2016 ("OIG Aging Report") at 1, https://oig.justice.gov/reports/2015/e1505.pdf. Indeed,

**GIBSON DUNN**

December 10, 2024
Page 6

the Inspector General highlighted data from a BOP Institution where inmates waited 114 days on average to be seen for *necessary* treatment by outside ███████████. *Id*. Inmates waited an average of 256 days, or nearly nine months, for additional appointments with those outside specialists. *Id*.

Such long lead times for specialist medical care, such as ███████████, have a high chance of leading to ███████ for someone with Mr. Hwang's medical condition. Mr. Hwang requires a ███████████████████████████. See Exhibit 1, Declaration of Dr. Mun Hong, ¶¶ 19–20. The BOP's typical lead times of nine months for specialist follow-ups means that Mr. Hwang would have far fewer *regular* medical examinations than his condition requires, much less the prompt ███████████ needed were he to suffer from ███████████. *See id.* ¶ 26. The nature of Mr. Hwang's ███████████████████████████████████████████████ notably difficult to ensure in a higher-security BOP Institution—is one of the few ways to adequately respond and head off such risks.

The Inspector General further emphasized that not only were "inmate appointments not being rescheduled when canceled," they were also "not being scheduled at all." OIG Aging Report at 16–17. A BOP Health Services Administrator reported inmates can simply "fall through the cracks." *Id*. at 17. Constant rescheduling or a complete failure to schedule Mr. Hwang for the ███████████████████████ at the regular intervals needed to ███████████████.

Mr. Hwang's health condition will surely worsen as he ages in prison, due not only to his ███████████████████, *see* Exhibit 1, Declaration of Dr. Mun Hong, ¶¶ 13–17, but also due to the environmental stresses of the prison environment and the well-documented lack of regular access to medical care.

Studies show that "[i]ncarcerated adults experience accelerated aging, the process in which exposure to incarceration speeds up biological aging." Farah Acher Kaiksow et al., *Caring for the Rapidly Aging Incarcerated Population: The Role of Policy*, J. Gerontological Nurs. (March 2023) at 1; *see also United States v. Jenkins*, 854 F.3d 181, 186 n.2 (2d Cir. 2017) ("[A]s a statistical matter, the life expectancy of an incarcerated person drops significantly for each year of incarceration.") (citing Evelyn J. Patterson, *The Dose-Response of Time Served in Prison on Mortality: New York State*, 1989-2003, 103 Am. J. of Pub. Health 523, 526 (2013)); OIG Aging Report at 1–2 ("an inmate's physiological age averages 10-15 years older than his or her chronological age," in part due to the "stress associated with incarceration"). We respectfully submit that the Court should therefore consider Mr. Hwang's significant ███████ and health deterioration in prison when structuring his sentence and limiting his incarceration in a BOP Camp to 11.5 years.

# GIBSON DUNN

December 10, 2024
Page 7

\*\*\*

In light of Mr. Hwang's advanced ███████████ and age, the improved health care access and reduced stress conditions in a BOP Camp, and the BOP's well-documented inadequate medical care for aging inmates, we respectfully ask that you structure Mr. Hwang's sentence of 18 years as 11.5 years of incarceration and 6.5 years of home confinement.[2]

Respectfully submitted,

Jordan Estes

cc:   Counsel of Record (via ECF and email)

---

[2] The Court inquired at sentencing about the cost to Probation of administering home confinement. Courts regularly impose lengthy periods of home confinement, *see United States v. Garry and Yvonne Souffrant*, No. 09 Cr. 20407 (PCH) (S.D. Fla., July 6, 2010), and compliance is often enforced through an ankle monitor. But in any event, the potential burden on Probation in administering home confinement is not a relevant consideration under § 3553(a). *See United States v. Deppert*, 850 F. App'x 63, 67 (2d Cir. 2021).