# MORVILLO ABRAMOWITZ GRAND IASON & ANELLO P.C.

ELKAN ABRAMOWITZ
RICHARD F. ALBERT
ROBERT J. ANELLO*
KATHLEEN E. CASSIDY
BENJAMIN S. FISCHER
CATHERINE M. FOTI
CHRISTOPHER B. HARWOOD
LAWRENCE IASON
BRIAN A. JACOBS
TELEMACHUS P. KASULIS
KAREN R. KING
THOMAS A. McKAY
ROBERT M. RADICK*
JONATHAN S. SACK**
EDWARD M. SPIRO
JEREMY H. TEMKIN
RICHARD D. WEINBERG
LISA ZORNBERG

565 FIFTH AVENUE
NEW YORK, NEW YORK 10017
(212) 856-9600
FAX: (212) 856-9494

www.maglaw.com

WRITER'S CONTACT INFORMATION

bjacobs@maglaw.com
(212) 880-9600

March 3, 2025

COUNSEL
JOSHUA BUSSEN
PIPPA HYDE***

RETIRED/PARTNER EMERITUS
PAUL R. GRAND

ROBERT G. MORVILLO
1938-2011
MICHAEL C. SILBERBERG
940-2002
JOHN J. TIGUE, JR
939-2009

*ALSO ADMITTED IN WASHINGTON D.C.
**ALSO ADMITTED IN CONNECTICUT
***ALSO ADMITTED IN ENGLAND AND WALES

**BY ECF AND EMAIL**
The Honorable Alvin K. Hellerstein
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

Re:   *United States v. Sung Kook (Bill) Hwang et al.*, No. 22 Cr. 240 (AKH)

Dear Judge Hellerstein:

Defendant Bill Hwang respectfully submits this letter in advance of the restitution hearing scheduled for March 17, 2025, to outline the key factual issues that must be resolved before this Court can make the necessary determinations and enter an order of restitution. This letter also discusses further objections to the proposed restitution order (Dkt. 385-1) and the need for a stay of restitution pending appeal (or alternatively a stay of the government's distribution of restitution payments).[1]

## I.   Background

As set forth in more detail in previous submissions (*see, e.g.*, Dkt. 388 at 1-3), on January 8, 2025, the government filed a letter indicating that "multiple former Archegos employees ha[d] contacted the government to request that they be included in the final restitution order for Mr. Hwang." (Dkt. 378 at 1.) The government proposed, and this Court adopted, a revised schedule to facilitate the review and adjudication of additional employee claims. (Dkt. 379.)

Pursuant to that schedule, the government provided defense counsel and the Court with a new proposed restitution order that accounted for 36 new employee claims totaling an additional $23,732,907.38. (*See* Dkt. 585 Ex. B.) The revised schedule of victims thus included "all former employees except those employees ineligible to receive restitution or who ha[d] specifically declined to request it." (Dkt. 383 at 3.) [REDACTED]

---

[1] Mr. Hwang renews and preserves all prior objections to the imposition of restitution.

MORVILLO ABRAMOWITZ GRAND IASON & ANELLO P. C.

[2]

Most of the new employees listed in the government's revised schedule of victims participated only in Archegos's primary, and mandatory, deferred compensation program. For the 15 participants who began contributing to the plans in 2016, submissions indicate that at least some of those 2016 contributions were eligible to be withdrawn in January 2021, prior to Archegos's collapse. It is not clear from the submissions whether any eligible employees did withdraw any amount of their 2016 bonus from Archegos. Nine of the new employees are also seeking compensation for amounts they contributed to the elective plans.

This Court briefly addressed the new employee restitution claims during Patrick Halligan's sentencing on January 27, 2025. The Court acknowledged Mr. Hwang's argument "that some of the people who are victims don't deserve victim status, and all in all respect, a victim has to show why . . . it is just for that person to be treated as a victim rather than as a willing participant to what looked to be a very lucrative deferred compensation arrangement," and added, "I suspect that there's a large voluntary element that's involved here." (1/27/25 Tr. 55:11-16, 57:16-17.) Given the questions of voluntariness, the Court asked the parties to recommend a method for determining which employees are entitled to compensation. The parties requested, and this Court scheduled, a hearing on March 17, 2025, to resolve any remaining factual disputes. (Dkt. 397.)

After Mr. Halligan's sentencing, the parties met to discuss a possible resolution.



The parties have continued their discussion to narrow the factual disputes relevant to restitution, but have not been able to reach an agreement concerning the form and amount of restitution that obviates the need for a hearing to resolve, at minimum, the following disputes:

1. Whether the nine new employees currently included in the proposed order whose claims for restitution include contributions to Archegos's elective deferred compensation plan made those contributions voluntarily.

2. Whether the 15 new employees currently included in the proposed order whose claims for restitution include amounts that had vested under the terms of the 2016 deferred compensation plan but who did not withdraw those amounts acted voluntarily in declining to withdraw those amounts.

---

[2] As in past submissions, references to information that this Court has deemed confidential are redacted. An unredacted version of this submission with be furnished to the Court and counsel of record.

3. Whether the 15 new employees included in the proposed order who contributed to the 2016 deferred compensation plan withdrew any portion of their bonuses that were eligible to be withdrawn, and whether the government's schedule of victims accounts for any withdrawals.

4. The reason(s) for each employee's delay in asking to be included in the restitution order.

5. Whether the methodology used to create the schedule of victims submitted by the government on January 24, 2025, is sufficiently sound for the Court to reach a reasonable approximation of loss.

## II. March 17, 2025 Hearing

Although this Court need only reach a reasonable approximation of loss, here, the government is asking the Court to make a determination about two entire broad categories of loss—contributions to Archegos's elective deferred compensation plan and 2016 contributions that had vested but were not withdrawn—based on supporting documents that contain incomplete and inconsistent information. A hearing, with testimony from individuals who are subject to cross-examination, is necessary for the Court to make a reasonable approximation.

### A. Applicable Law

The government must prove the amount of loss caused by a defendant's offense conduct by a preponderance of the evidence. *See United States v. Zangari*, 677 F.3d 86, 92 (2d Cir. 2012); 18 U.S.C. § 3664(e) ("The burden of demonstrating the amount of loss sustained by a victim as a result of the offense shall be on the attorney for the government."). Courts are empowered to "require additional documentation or hear testimony" to determine whether the government has satisfied that burden and to ascertain the correct amount of actual loss. 18 U.S.C. § 3664(d)(4). Although courts cannot compel victims to testify, *see* 18 U.S.C. § 3664(g)(1), courts can and do decline to order restitution if the government's existing evidence is not sufficient to satisfy the government's burden: "Neither the failure of a victim to respond to a request for evidence of actual loss nor the government's unexplained failure to obtain the necessary proof suffices to justify a restitution award. There is no public interest served by requiring that restitution be paid to an alleged victim who declines to cooperate in providing the evidence necessary to establish its loss." *United States v. Howard*, 784 F.3d 745, 752 (10th Cir. 2015) (remanding for further factfinding); *see also United States v. Brown*, 2016 WL 11263165, at *9 (E.D.N.Y. Dec. 2, 2016) ("[A]ny failures of production will reflect in the Government's ability to satisfy its evidentiary burden.").

Courts in this District and others regularly hear testimony from witnesses when deciding issues of restitution. Often, that testimony comes from the victims themselves. *See, e.g., United States v. Kahn*, 2024 WL 3159220, at *1 (2d Cir. 2024) (district court held a restitution hearing during which it considered documentary evidence submitted by the government and heard testimony from one of the victims); *United States v. Murdock*, 542 F. App'x 57, 59 (2d Cir. 2013) (district court held a hearing at which the victim testified about his losses); *United States v. Hild*, 2024 WL 2059012, at *2 (S.D.N.Y. Feb. 20, 2024) (court heard testimony from a witness for each victim subject to direct examination, cross-examination, and questioning by the

MORVILLO ABRAMOWITZ GRAND IASON & ANELLO P.C.

court), *report and recommendation adopted*, 2024 WL 4263143 (S.D.N.Y. Sep. 23, 2024)[3]; *Brown*, 2016 WL 11263165, at *2 (court held a hearing on restitution during which the government called representatives for purported victims, successor lenders, as witnesses), *report and recommendation adopted*, 2018 WL 418900 (E.D.N.Y. Jan. 16, 2018); *United States v. Qurashi*, 2009 WL 10677000, at *9 (E.D.N.Y. Sep. 1, 2009) (court heard testimony from representative witnesses from insurance company-victims regarding restitution).

Courts also hear testimony concerning the methodology behind the government's loss calculations, *see, e.g., United States v. Hernandez*, 2009 WL 113267, at *1 (D. Conn. Jan. 15, 2009) (court held a hearing on restitution during which the government called two witnesses to support exhibits showing its loss calculation method and results), and from federal agents involved in the process, *see, e.g., United States v. Snyder*, 2008 WL 5236027, at *1 (D. Md. Dec. 12, 2008) (government met its burden with respect to restitution based on the testimony of an FBI agent who "spoke personally to all the additional victims and obtained documents showing that their losses fall squarely within the fraud scheme alleged").

### B. Additional Evidence Is Necessary to Resolve Outstanding Factual Disputes

Here, there is a particular need for additional evidence, including live testimony, given the surge of new victims who are asking to be included in the restitution order.[4]



---

[3] *See also United States v. Hild*, No. 19 Cr. 602 (RA) (S.D.N.Y.), Dkt. 209 ("The Government shall bring witnesses who can provide testimony and additional exhibits to explain and support its proposed restitution amounts. At the hearing, Hild will be permitted to ask clarifying questions about the calculations and evidence supporting the proposed restitution amounts.").



MORVILLO ABRAMOWITZ GRAND IASON & ANELLO P.C.



MORVILLO ABRAMOWITZ GRAND IASON & ANELLO P.C.



MORVILLO ABRAMOWITZ GRAND IASON & ANELLO P.C.



\* \* \*

There are also unresolved factual questions concerning the reason for the belated requests,[7] notwithstanding the government's apparent delay in notifying employees that they might be entitled to compensation. Mr. Hwang's trial, at which multiple former Archegos employees testified, and his numerous sentencing proceedings were highly publicized. Although references to employees were redacted in public filings, there was substantial coverage of the existing claims from certain employees and the government's recommendation that they be compensated,[8] including in the DOJ's press release.[9] Testimony is needed to determine whether the new employees were truly unaware of their rights or waited for this Court's ruling that the original five claimants should be included in the restitution order and are only seeking restitution due to their (mistaken) impression that the reliability of their claims will not be scrutinized.

Finally, and at minimum, the government should be required to produce evidence demonstrating how it reached the numbers set forth in the January 24, 2025, revised schedule of victims, including by putting on a witness who can testify about the methodology. The government's restitution requests have been based on ever-shifting source documents and have repeatedly contained errors (including errors that required correction during proceedings before



---

[8] See, e.g., *Archegos Fraud Mastermind Bill Hwang Caused Investors to Lose Billions of Dollars and Should Pay Restitution*, Better Markets (Dec. 18, 2024), https://bettermarkets.org/newsroom/archegos-fraud-mastermind-bill-hwang-caused-investors-to-lose-billions-of-dollars-and-should-pay-restitution/; *Bill Hwang's Bid to Reduce 18-Year Prison Term Is Rejected*, BNN Bloomberg (Dec. 19, 2024), http://bnnbloomberg.ca/business/2024/12/19/bill-hwang-returning-to-court-to-fight-for-less-prison-time/.

[9] United States Attorney's Office Southern District of New York, *Founder And Head Of Archegos Capital Management Bill Hwang Sentenced To 18 Years In Prison For Orchestrating Massive Market Manipulation And Fraud Schemes*, (Dec. 19, 2024), https://www.justice.gov/usao-sdny/pr/founder-and-head-archegos-capital-management-bill-hwang-sentenced-18-years-prison.

**MORVILLO ABRAMOWITZ GRAND IASON & ANELLO P. C.**

this Court). ▮

### C. Factual Questions Concerning Accretion

In addition to the factual disputes described above, there are issues related to the employees' requests for "accretion," or the annual gains for amounts awarded under the deferred compensation program for bonus years 2016 – 2019. Although the government did not include accretion in its most recent proposal, it may seek to do so in the future. This Court has already stated that restitution should account only for out-of-pocket losses and thus be "limited to the salary and bonuses [employees] deferred" (12/19/24 Tr. 9:23-25) and there is no basis for revisiting that ruling.

The current record does not establish how ACM reached the accretion figures, which, in many cases, far exceed the employees' base contributions. Although ACM's January 14 and January 16, 2025, productions include accretion values for each employee, its production letters do not explain the source of those figures or how they were calculated.[10] If the Court ultimately considers whether to include accretion in the final restitution order, additional factfinding will be needed to verify the methodology behind those calculations.

### III. A Jury Should Find Facts Supporting Restitution

The Court should decline to order restitution to all victims on the existing record for the additional reason that basing restitution on judicial factfinding without the aid of a jury violates the Sixth Amendment. The Supreme Court has held that "[o]nly a jury may find 'facts that increase the prescribed range of penalties to which a criminal defendant is exposed,'" *Erlinger v. United States*, 602 U.S. 821, 833, (2024) (quoting *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000)), including monetary fines, *Southern Union Co. v. United States*, 567 U.S. 343 (2012). Thus, a jury should find all the facts needed to justify the government's proposed restitution order. *See Rimlawi v. United States*, 604 U.S. ---, 2025 WL 581567 (Mem), at *1 (Feb. 24, 2025) (Gorsuch J., dissenting from denial of certiorari); *Hester v. United States*, 586 U.S. 1104, 1105-06 (2019) (Gorsuch, J., dissenting from denial of certiorari).[11] The jury was not asked to make any findings about the extent to which the defendants' conduct caused any specific losses, especially concerning the way in which the banks disposed of Archegos's portfolio and their own hedged positions. On the contrary, as the government pointed out in its summation, whether the defendants succeeded in their alleged schemes was not an element of any count. (Trial Tr. 5165, 5167); *see also United States v. D'Amato*, 39 F.3d 1249, 1257 (2d Cir. 1994) (a "scheme to defraud need not have been successful or complete" in order to impose criminal liability); *Sec. &*

---

[11] Although the Second Circuit held in *United States v. Reifler*, 446 F.3d 65, 118 (2d Cir. 2006), that restitution under the MVRA does not evoke Sixth Amendment protection, that aspect of that case was wrongly decided.

MORVILLO ABRAMOWITZ GRAND IASON & ANELLO P.C.

*Exch. Comm'n v. Lek Sec. Corp.*, 276 F. Supp. 3d 49, 60 (S.D.N.Y. 2017) ("manipulative conduct need [not] be successful in order to violate the securities laws").

### IV. Schedule of Restitution

As noted in Mr. Hwang's January 24, 2025, submission to the Court, the proposed restitution order, as currently drafted, orders Mr. Hwang to pay some $9.4 billion in two lump sums and thus fails to consider "the financial resources and other assets of the defendant." *See* 18 U.S.C. § 3664(f)(2). (Dkt. 388 at 3-4.) The order should provide instead that the balance of restitution will be payable at a rate that is based on a percentage of Mr. Hwang's net monthly income following his release from custody, due on the 30th day of each month and to begin on the first day of supervised release. *See United States v. Silver*, No. 20 Cr. 360 (AKH) (S.D.N.Y.), Dkt. 100 (ordering defendant to pay restitution at a rate of 10% of his monthly net income following release from custody).

To the extent the government has any concern with its ability to attempt to monetize any newly discovered sources of restitution funds, that concern provides no basis to insert language into the restitution order because the restitution statute provides the proper remedy: Pursuant to 18 U.S.C. § 3664(k), the government retains the ability to request that the Court modify the restitution order upon notice of a material change in the defendant's economic circumstances. *See United States v. Silver*, No. 20 Cr. 360 (AKH), 2024 WL 5154075, at *2 (S.D.N.Y. Dec. 18, 2024) (Hellerstein, J.) (amending restitution order pursuant to Section 3664(k) and ordering defendant to make immediate lump sum payment consisting of appreciation in value of investment accounts); *see also United States v. Grant*, 235 F.3d 95, 100-01 (2d Cir. 2000) (affirming amended restitution order due to material change in defendant's economic circumstances stemming from unfreezing of inmate account).

For these reasons, and as set forth in further detail in Mr. Hwang's January 24, 2025, letter, the Court should strike the language from the proposed restitution order requiring Mr. Hwang to pay the balance of restitution in two lump sums and instead should set a payment schedule that takes into account his ability to pay. (*See* Dkt. 388 at 3-4.)

### V. A Stay Pending Appeal Is Necessary

The new claims from employees, which raise the employee restitution total to approximately $32 million, support this Court staying all restitution payments pending appeal, or alternatively staying the government's distribution of any funds that are collected to victims. Once distributed among more than 40 individuals, it will be all but impossible to get the money back in the event Mr. Hwang's appeal is successful. (*See* 12/19/24 Tr. 48-49 (noting it will be exceedingly difficult for Mr. Hwang to recoup money paid to individuals).) Mr. Hwang respectfully submits that this Court should order that amounts payable under paragraphs 2(a) through 2(f) of the proposed restitution order be stayed or else subject to a lien or held in escrow during appeal.

MORVILLO ABRAMOWITZ GRAND IASON & ANELLO P. C.

## VI. Summary

- The current record does not prove by a preponderance the amount of restitution (if any) that the new employees are entitled to receive. Additional evidence, including live testimony from the new employees, is needed to determine, among other issues, (1) whether eligible employees' participation in the elective deferred compensation program was voluntary, (2) whether eligible employees' decisions not to withdraw bonuses that vested in January 2021 were voluntary, and (3) the reason for the employees' delay in seeking restitution. Additional evidence is also needed to establish the methodology behind the numbers in the government's schedule of victims.

- Under the Sixth Amendment's jury-trial guarantee, restitution should be proven to a jury.

- The proposed restitution order fails to consider "the financial resources and other assets of the defendant." *See* 18 U.S.C. § 3664(f)(2). Instead of providing for lump sum payments of 50% of the outstanding restitution balance, the order should provide instead that the balance of restitution will be payable at a rate that is based on a percentage of Mr. Hwang's net monthly income following his release from custody, due on the 30th day of each month and to begin on the first day of supervised release.

- This Court should stay restitution pending appeal in light of the new employee claims, which will make it impossible for Mr. Hwang to recover the payments if his appeal is successful.

Respectfully submitted,

/s/ Brian A. Jacobs
Brian A. Jacobs
Chloe Lewis

cc: Counsel of Record