### MORVILLO ABRAMOWITZ GRAND IASON & ANELLO P.C.

ELKAN ABRAMOWITZ
RICHARD F. ALBERT
ROBERT J. ANELLO*
KATHLEEN E. CASSIDY
BENJAMIN S. FISCHER
CATHERINE M. FOTI
CHRISTOPHER B. HARWOOD
LAWRENCE IASON
BRIAN A. JACOBS
TELEMACHUS P. KASULIS
KAREN R. KING
THOMAS A. McKAY
ROBERT M. RADICK*
JONATHAN S. SACK**
EDWARD M. SPIRO
JEREMY H. TEMKIN
RICHARD D. WEINBERG
LISA ZORNBERG

565 FIFTH AVENUE
NEW YORK, NEW YORK 10017
(212) 856-9600
FAX: (212) 856-9494

www.maglaw.com
———
WRITER'S CONTACT INFORMATION

bjacobs@maglaw.com
212-880-9536

COUNSEL
JOSHUA BUSSEN
PIPPA HYDE***
KEFIRA WILDERMAN
———
RETIRED/PARTNER EMERITUS
PAUL R. GRAND
———
ROBERT G. MORVILLO
1938-2011
MICHAEL C. SILBERBERG
1940-2002
JOHN J. TIGUE, JR.
1939-2009

*ALSO ADMITTED IN WASHINGTON, D.C.
**ALSO ADMITTED IN CONNECTICUT
***ALSO ADMITTED IN ENGLAND AND WALES

December 2, 2025

**BY ECF**
Hon. Alvin K. Hellerstein
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

   Re:  *United States v. Sung Kook (Bill) Hwang*, No. 22 Cr. 240 (AKH)

Dear Judge Hellerstein:

  Bill Hwang respectfully moves for his restitution order to be vacated and reconsidered by a different District Judge, in the interest of justice. This motion is based on newly discovered evidence establishing that the Court's law clerk who assisted in determining Mr. Hwang's restitution order had accepted an employment offer with Davis Polk & Wardwell LLP ("Davis Polk"), the law firm that represents Morgan Stanley, one of the victim-banks in Mr. Hwang's case, prior to the clerkship. (*See* Ex. A & B). As the Court is aware, Morgan Stanley was awarded more than $740 million in restitution in connection with Mr. Hwang's case. (Dkt. 371-1). Mr. Hwang learned about the law clerk's employment only after restitution and sentencing were complete.[1] The clerk's commitment to employment with Davis Polk is an apparent conflict of interest that creates, at a minimum, an appearance of impropriety and undermines confidence in the fairness of the proceedings. Mr. Hwang's restitution order should be vacated and reconsidered without this apparent bias. Although there is a pending appeal, Federal Rule of Appellate Procedure 12.1 provides that this Court may issue an indicative ruling on this important question.

  **A. The Clerk's Involvement Violated Due Process And The Federal Recusal Statute**
  "[T]he Due Process Clause clearly requires a fair trial in a fair tribunal, before a judge with no actual bias against the defendant or interest in the outcome of his particular case." *Bracy v. Gramley*, 520 U.S. 899, 904-05 (1997) (cleaned up). In addition to the Due Process Clause,

---

[1] Mr. Hwang understands that the Court's only other law clerk at the time had also accepted employment with Davis Polk prior to the clerkship. *See United States v. Javice*, No. 23-cr-251 (AKH), Dkt. 463.

MORVILLO ABRAMOWITZ GRAND IASON & ANELLO P. C.

The Honorable Alvin K. Hellerstein
December 2, 2025

federal judges must abide by the federal recusal statute, 28 U.S.C. §455.  Under Section 455(a), a judge must recuse himself from "any proceeding in which his impartiality might reasonably be questioned." The statute is aimed at preventing even the *appearance* of bias, whether or not there was any such bias in reality.  Thus, "recusal is not limited to cases of actual bias; rather, the statute requires that a judge recuse himself whenever an objective, informed observer could reasonably question the judge's impartiality, regardless of whether he is actually partial or biased." *United States v. Bayless*, 201 F.3d 116, 126 (2d Cir. 2000).  Recent cases demonstrate how strictly these principles are applied.  Last year, the Second Circuit held that Judge Liman should have recused himself in a case in which his wife had an investment that created a potential conflict, even though the Circuit "fully credit[ed] [Judge Liman's] representation" that the investment had no impact on his decision. *Litovich v. Bank of Am. Corp.*, 106 F.4th 218, 227 (2d Cir. 2024).  The mere appearance of partiality, and the risk of similar conflicts in the future, was enough to merit disqualification.  *Id.* at 227-28.  Similarly, in *United States v. Hernandez*, Judge Vyskocil recently recused herself from a case in which she discovered and promptly divested herself from a conflicting investment, holding that such recusal was necessary to ensure that "confidence in the fair administration of justice not be undermined."  2025 WL 2461062, at *4 (S.D.N.Y. Aug. 26, 2025).

Due to their important role in chambers, a judge's clerks also must be, and appear to be, impartial.  The Code of Conduct for Judicial Employees § 320, Canon 3(F)(1) expressly imposes an obligation on judicial employees, including clerks, to "avoid conflicts of interest in the performance of official duties," and provides that a conflict arises "when a judicial employee knows that he or she…might be so personally or financially affected by a matter that a reasonable person with knowledge of the relevant facts would question the judicial employee's ability properly to perform official duties in an impartial manner."

Courts recognize that circumstances like the present one, "where a clerk works on matters in which a future employer is serving as counsel" present such a conflict. *United States v. Persico*, 2006 WL 8449558, at *2 (E.D.N.Y. May 18, 2006).  Consequently, "[i]t is well settled that a law clerk should not participate in litigation in which his future employer appears as counsel for one of the parties." *McCulloch v. Hartford Life & Accident Ins. Co.*, 2005 WL 3144656, at *5 (D. Conn. Nov. 23, 2005) (collecting cases); *accord Hunt v. Am. Bank & Tr. Co. of Baton Rouge*, 783 F.2d 1011, 1015 (11th Cir. 1986) ("Clerks should not work on such cases."); *First Interstate Bank of Arizona, N.A. v. Murphy, Weir & Butler*, 210 F.3d 983, 988-89 (9th Cir. 2000) (clerks should not be permitted to work on cases involving a future employer unless that conflict has been disclosed to the parties and expressly waived).  And where, as here, "a law clerk continues to work on a case in which his or her impartiality might reasonably be questioned, the clerk's actual or potential conflict may be imputed to the judge." *Xyngular Corp. v. Schenkel*, 160 F. Supp. 3d 1290, 1300 (D. Utah 2016).

In sum, under prevailing case law and ethical rules, there can be no question that the Court's clerk should not have been permitted to work on Mr. Hwang's sentencing, to the major benefit of his future employer's major client.  Nor can there be any dispute that the Court unfortunately created, at the very least, an impermissible appearance of bias by permitting him to do so without disclosure to any party.

Morvillo Abramowitz Grand Iason & Anello P. C.

The Honorable Alvin K. Hellerstein
December 2, 2025

### B. Mr. Hwang's Restitution Order Must Reconsidered By A Tribunal Without The Appearance Of Bias

To remedy this prejudicial error and preserve the integrity of the judicial process, Mr. Hwang is entitled to have his restitution order vacated and reconsidered by a judge and clerks untainted by any conflict.  Although the Federal Rules of Criminal Procedure do not expressly provide for "motions for reconsideration," the Second Circuit has recognized that such motions can be considered under the Court's inherent authority to correct clear errors and prevent manifest injustice, or by analogy to Rules 59(e) and 60(b) of the Federal Civil Rules.  *See*, *e.g.*, *United States v. Clark*, 984 F.2d 31, 34-35 (1993) (permitting a motion to vacate a sentence filed more than ten days after judgment to be treated as the equivalent of a motion under Fed. R. Civ. P. 60(b)).  Relying on that authority, Judge Vyskocil recently permitted a defendant to reopen a criminal restitution order to challenge errors resulting from the ineffective assistance of prior counsel.  *Hernandez*, 2025 WL 2461062, at *1 (S.D.N.Y. Aug. 26, 2025); *see also id.*, No. 1:23-cr-110, Dkt. 489 at 9.  In the alternative, Mr. Hwang agrees with Mr. Halligan that this motion can be considered under Federal Rule of Criminal Procedure 33, as described in Mr. Halligan's separate letter.

Vacatur and reconsideration is also the appropriate remedy on the merits.  In *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847 (1988), the Supreme Court laid out three factors to determine whether a judge's failure to recuse requires the resulting judgment to be vacated: (1) the risk of injustice to the parties in this case, (2) the risk that denying relief could result in injustice to parties in future cases, and (3) the risk of undermining public confidence in the judicial process.  *Id.* at 864.  Each of those factors weighs in favor of reconsideration here.

The risk of injustice to Mr. Hwang is considerable.  His staggering $9.4 billion restitution order was determined on a limited record, without the benefit of any bank witness testimony.  Davis Polk's written submissions on Morgan Stanley's behalf therefore had an outsized impact on the proceedings and the amount of restitution Morgan Stanley received.  And because the Mandatory Victim Restitution Act requires that any disputes over the proper restitution amount be "resolved by the court by the preponderance of the evidence," 18 U.S.C. §3664(e), the Court had enormous leeway to determine the amount Morgan Stanley received.  As the Seventh Circuit observed in *United States v. Atwood*, 941 F.3d 883 (7th Cir. 2019), when considering the analogous circumstance of whether to vacate a penal sentence tainted by the appearance of bias, where the relevant statutory regime "leaves ample room for the court's discretion…that discretion invites the risk that a judge's personal biases will influence or appear to influence the sentence he imposes." *Id.* at 885.

Moreover, just as in *Atwood*, "there is little risk of unfairness to the government," or indeed, to Morgan Stanley, if Mr. Hwang's restitution order is reopened.  *Id.*  Distribution of restitution payments is currently stayed pending appeal, *see* Dkt. 454, so it is hard to imagine how anyone would be prejudiced by a further proceeding to ensure that the more-than-$740-million payment Morgan Stanley is slated to receive was actually fair.

The second *Liljeberg* factor, which considers the risks to future litigants, also weighs in favor of reconsideration.  Judges and clerks are already bound by ethical rules to ensure clerks do

3

MORVILLO ABRAMOWITZ GRAND IASON & ANELLO P.C.

The Honorable Alvin K. Hellerstein
December 2, 2025

not work on cases involving their future employers.  Reconsideration here would provide a clear signal that these restrictions must be meaningfully enforced, thereby providing all future litigants with a valuable protection against bias.

 Finally, and most importantly, leaving Mr. Hwang's tainted restitution order creates a substantial risk of undermining public confidence in the judicial process.  As Judge Ho on the Fifth Circuit has aptly observed:

> Nothing is more corrosive to public confidence in our legal system than the perception that there are two different legal standards—one for the powerful, the popular, and the well-connected, and another for everyone else.

*Env't Texas Citizen Lobby, Inc. v. ExxonMobil Corp.*, 123 F.4th 309, 352 (5th Cir. 2024) (Ho, J., concurring), *cert. denied*, 145 S. Ct. 2845 (2025) (cleaned up).  An outsider might well see this case as a textbook example of what Judge Ho warned about:  Morgan Stanley—one of the wealthiest institutions in the world—secured more than $740 million in restitution by hiring Davis Polk—one of the most powerful law firms in the world—which, unbeknownst to Hwang or his co-defendant, dangled the opportunity of lucrative employment in front of the clerk who helped decide the restitution amounts.  The minimal costs associated with reconsideration are a small price to pay to assure the public that justice cannot be bought.

 For the foregoing reasons and those set out in Mr. Halligan's contemporaneously filed letter, Mr. Hwang therefore respectfully submits that his restitution order should be vacated and reconsidered by a district court untainted by the appearance of bias.

             Respectfully submitted,

             *Brian A. Jacobs*

cc: All counsel of record (by ECF)