# MORVILLO ABRAMOWITZ GRAND IASON & ANELLO P.C.

ELKAN ABRAMOWITZ
RICHARD F. ALBERT
ROBERT J. ANELLO*
KATHLEEN E. CASSIDY
BENJAMIN S. FISCHER
CATHERINE M. FOTI
CHRISTOPHER B. HARWOOD
LAWRENCE IASON
BRIAN A. JACOBS
TELEMACHUS P. KASULIS
KAREN R. KING
THOMAS A. MCKAY
ROBERT M. RADICK*
JONATHAN S. SACK**
EDWARD M. SPIRO
JEREMY H. TEMKIN
RICHARD D. WEINBERG
LISA ZORNBERG

565 FIFTH AVENUE
NEW YORK, NEW YORK 10017
(212) 856-9600
FAX: (212) 856-9494

www.maglaw.com
———
WRITER'S CONTACT INFORMATION

bjacobs@maglaw.com
212-880-9536

COUNSEL
JOSHUA BUSSEN
PIPPA HYDE***
KEFIRA WILDERMAN
———
RETIRED/PARTNER EMERITUS
PAUL R. GRAND
———
ROBERT G. MORVILLO
1938-2011
MICHAEL C. SILBERBERG
1940-2002
JOHN J. TIGUE, JR.
1939-2009

*ALSO ADMITTED IN WASHINGTON, D.C.
**ALSO ADMITTED IN CONNECTICUT
***ALSO ADMITTED IN ENGLAND AND WALES

January 23, 2026

**BY ECF**
Hon. Alvin K. Hellerstein
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

    Re:    *United States v. Sung Kook (Bill) Hwang*, No. 22 Cr. 240 (AKH)

Dear Judge Hellerstein:

    Defendants Hwang and Halligan write jointly in response to the government's opposition to their recusal motions.

    Preliminarily, nothing prevents this Court from considering Defendants' motions. Although the government argues this Court lacks jurisdiction to vacate the restitution orders, it correctly acknowledges that the Court may issue an indicative ruling stating either that it would grant the motion on remand or that "the motion raises a substantial issue." Fed. R. Crim. P. 37. Once the Court states that it would grant the motion or seriously consider it, the Court of Appeals can remand for further proceedings, as set out in Federal Rule of Appellate Procedure 12.1. This is exactly the procedure that the Defendants' motions invoke,[1] and it is a standard procedure when an issue arises while a case is on appeal. *See, e.g.*, *United States v. Schor*, No. 19-3936, Dkt. 163 (2d Cir. Dec. 27, 2021) (granting limited remand to allow district court to rule on motion for new trial). A conflict of interest affecting a $740 million restitution award discovered only after the Defendants were sentenced, at the very minimum, raises a substantial issue that must be appropriately addressed.

    The government's analysis is wrong on the merits as well. It asserts Defendants' motions should be denied because they cannot point to dispositive evidence that "the Law Clerk was meaningfully involved in decision-making on any substantive issue." Opp. at 5. But proof of

---

[1] Hwang Mot. (Dkt. 468) at 1 ("Although there is a pending appeal, Federal Rule of Appellate Procedure 12.1 provides that this Court may issue an indicative ruling on this important question."); Halligan Mot. (Dkt. 467) at 9 n.12 & 10 ("the appropriate mechanism for this relief at this posture is an indicative ruling from this Court pursuant to FED. R. APP. P. 12.1").

MORVILLO ABRAMOWITZ GRAND IASON & ANELLO P. C.

The Honorable Alvin K. Hellerstein
January 23, 2026

*actual* bias is not required, not least because Defendants, just like the government, have no insight into what actually occurs in the privacy of chambers. Instead, a court must recuse when there is even the *appearance* of bias, regardless of whether any bias in fact occurred. *United States v. Bayless*, 201 F.3d 116, 126 (2d Cir. 2000). Under the correct standard, recusal is required here.

      The relevant facts are undisputed: the clerk worked at Davis Polk before the clerkship; had accepted a job offer to return to Davis Polk full time; and did, in fact, return to Davis Polk afterward. *See* Hwang Mot. Ex. B. Despite the government's attempts to muddy the water, there is also no dispute that the clerk worked on the relevant proceedings during the clerkship because the clerk's new employer has already stated as much. *See* Hwang Mot. Ex. A ("[Law Clerk] participated in [Judge Hellerstein's] chambers' work on the Screened Matter."). In other words, the Court made a discretionary decision to award a major client of its clerk's past and future employer $740 million based on just a few filings.

      Would a reasonable person, knowing those facts, conclude that the Court's impartiality could reasonably be questioned? *See* 28 U.S.C. § 455. The answer must be yes. Indeed, several circuit courts have observed that "a reasonable person might be concerned whether a law clerk's advice to a judge would be biased in favor of the position taken by a firm, if the law clerk had worked there before his clerkship . . . and planned to work there after his clerkship." *See, e.g.*, *Hamid v. Price Waterhouse*, 51 F.3d 1411, 1416-17 (9th Cir. 1995); *Hunt v. Am. Bank & Tr. Co. of Baton Rouge, La.*, 783 F.2d 1011, 1015 (11th Cir. 1986) ("a reasonable person might wonder about a law clerk's impartiality in cases in which his future employer is serving as counsel"); *Hall v. Small Bus. Admin.*, 695 F.2d 175, 179 (5th Cir. 1983) ("Whether or not the law clerk actually affected the magistrate's decision, her continuing participation with the magistrate in a case in which her future employers were counsel gave rise to an appearance of partiality.").

      It is entirely irrelevant that the clerk's term began after the trial because the key issue here is the recovery Davis Polk obtained for Morgan Stanley through the restitution orders, which was briefed and decided entirely during the clerk's term. It is similarly irrelevant that unrelated aspects of the restitution dispute were referred to a magistrate judge. *See* Dkt. 401 (referring issues concerning Archegos employees).

      Nor is it credible to minimize the conflict by arguing, as the government does, that Davis Polk merely represented a victim and not a "party." Opp. at 7. An appearance of partiality should be disqualifying regardless of its beneficiary. Moreover, Davis Polk sought and obtained *hundreds of millions of dollars* for its client in this matter, an immensely successful outcome that dwarfs the recovery most parties ever dream of achieving in litigation. Any responsible clerk would carefully scrutinize the filings submitted in support of such a massive request. The government's suggestion that the clerk might have simply overlooked which law firm submitted them, or might not have "read the letters at all," Opp. at 6, is absurd. It is also contravened by the clerk's own efforts to alert Davis Polk to the conflict prior to returning to the firm. Opp. Ex. A ("Shortly before [Law Clerk] joined Davis Polk, [the Clerk] disclosed to Davis Polk's compliance staff that we represented one of the non-party victims seeking restitution in U.S. v. Hwang.").

Morvillo Abramowitz Grand Iason & Anello P.C.

The Honorable Alvin K. Hellerstein
January 23, 2026

  The government's claim that recusal isn't warranted because the law clerk might not have had a "meaningful[]" role in "decision-making on substantive issues" (Opp. at 5-6) can be similarly discarded.  As the guiding authorities cited in Defendants' opening papers explain, a law clerk must not have *any* role in matters handled by the future employer.  *See Committee on Codes of Conduct Advisory Opinion No. 74: Pursuit of Future Employment by Law Clerks and Staff Attorneys* ("The law clerk, however, should have **no involvement whatsoever** in pending matters handled by the prospective employer.") (emphasis added); Federal Judicial Center, *Maintaining the Public Trust: Ethics for Federal Judicial Law Clerks* (Rev. 4th Ed. 2019) ("You may not **work on** any pending or future cases involving your future employer.") (emphasis added).  The law clerk's undisputed involvement alone demonstrates the violation.

  There are good reasons that the government's "substantive decision-making" standard isn't the rule.  For one thing, it is unworkable.  The line between "substantive" and "ministerial" is subjective and subject to different interpretations in every chambers.  The Fifth Circuit addressed this in *Hall*, where it rejected the trial court's characterization of the law clerk as an "amanuensis": "Law clerks are not merely the judge's errand runners. They are sounding boards for tentative opinions and legal researchers who seek the authorities that affect decision. Clerks are privy to the judge's thoughts in a way that neither parties to the lawsuit nor his most intimate family members may be." 695 F.2d at 179 (citation omitted).  Thus, the Fifth Circuit highlighted that the objective standard is not measured by "what happens in the judge's chambers or to his actual virtue because, were that so, the test would be not the appearance of impartiality but the absence of actual prejudice." *Id.*

  Furthermore, if the government were correct that purely "procedural, administrative, or ministerial" work does not require disqualification, then Defendants would be entitled to discovery into what, exactly, the clerk did.  Defendants do not believe that such an intrusion into the inner workings of chambers is appropriate or necessary.  But if facts concerning the clerk's role are relevant to the adjudication, those facts should be adduced in open court, with the parties' participation.

  The government's own authorities confirm that recusal or screening is the better course where courts' law clerks present potential conflicts.  *See Marcus v. W2007 Grace Acquisition I, Inc.*, 2017 WL 6398619, at *1 (S.D.N.Y. Sept. 13, 2017), *aff'd sub nom. Marcus as Tr. of Grace Preferred Litig. Tr. v. Smith*, 755 F. App'x 47 (2d Cir. 2018) ("it would have been better not to have had [law clerk] work on the case"); *Mathis v. Huff & Puff Trucking, Inc.*, 787 F.3d 1297, 1313 (10th Cir. 2015) ("it would have been better for everyone involved if the judge had promptly disclosed the law clerk and her husband's relationship to the parties and if the clerk had stopped attending the trial").

  To be sure, in those cases, the courts did not ultimately mandate recusal, but the circumstances are quite distinguishable.  In particular, the Second Circuit's summary affirmance in *Marcus* is hardly an endorsement of Judge Daniels's handling of the recusal issues in the first instance, or of Judge Forrest's order denying the defendants' motion to vacate.  The Second Circuit *did not* find that Judge Daniels had complied with Section 455(a).  Rather, the Circuit concluded that any risk of unfairness was mitigated by its own *de novo* review of the district

3

MORVILLO ABRAMOWITZ GRAND IASON & ANELLO P.C.

The Honorable Alvin K. Hellerstein
January 23, 2026

court's substantive ruling, which concerned a routine Rule 12(b)(6) motion to dismiss. Appellate review provides no comparable assurance here. The apparent conflict affected a restitution decision—an area where judicial discretion is at its peak because the court is charged with determining facts as well as applicable law, and its decision will be reviewed only for abuse of discretion. *United States v. Thompson*, 792 F.3d 273, 276 (2d Cir. 2015).

The government's remaining authorities are not on point either. *Dekom v. Nassau County*, is not—as the government claims—anything "like" the present case. There, although the *pro se* plaintiffs' argument in support of recusal was largely incoherent, it appears to have been based on dissatisfaction with the judge's rulings combined with the judge's political affiliations before taking the bench. *See* Dkt. 21 in No. 12-cv-3473 (E.D.N.Y.) at 8, 10 & Dkt. 48 in No. 13-4080 (2d Cir.) at 3.

In each of the remaining cases the government cites, the parties were granted protections against any potential conflict Defendants did not receive here. For instance, in *United States v. Martinez*, 446 F.3d 878 (8th Cir. 2006), the Eighth Circuit held there was no appearance of bias because the clerk, a former prosecutor, had been "immediately screened" from the criminal docket and the judge stated that the clerk had no "involvement whatsoever with the undersigned's decisions"—she simply served as a courtroom deputy for two days during a staffing shortage. *Id.* at 883. In *Mathis*, too, the clerk was screened from any substantive participation in a case after her husband became tangentially involved. 787 F.3d at 1304-05, 1313. No such screening occurred here.

*In re Allied-Signal Inc.*, 891 F.2d 967 (1st Cir. 1989), another case on which the government relies, was expressly framed as an outlier. There, the court declined to mandate recusal where two clerks' brothers represented plaintiffs due to the "special circumstances of this litigation," a sprawling case involving "hundreds of lawyers, thousands of parties, and hundreds of millions of dollars" in a jurisdiction with an extremely small federal bar. *Id.* at 971-72. Even so, the court recognized that "were this an ordinary case…the legal question of whether a judge must disqualify himself would at least be a close one," *id.* at 970, and it took comfort in the fact that the potential conflict had been disclosed without objection, *id.* at 972. Defendants, by contrast, were given no warning of the clerk's potential conflict, and no opportunity to object.

It is indisputable that there was at the very least the appearance of bias. The question is how to determine an appropriate remedy. The government agrees that question is determined based on the factors set out in *Liljeberg*, Opp. at 4, but does not address any of them. It apparently has no response to Defendants' arguments that leaving this appearance of bias unaddressed creates a substantial risk of injustice in this case and in others, and undermines public confidence in the judicial process. Hwang Mot. at 3-4; Halligan Mot. at 9-10. Indeed, as this Court is well-aware, the same issue has arisen in other cases involving this Court, Davis Polk, and another big bank. *See United States v. Javice*, 1:23-cr-251 (AKH) (S.D.N.Y.), Dkts. 463, 465. The public cannot be permitted to believe that wealthy, powerful parties can curry favor with the courts by hiring insider law firms, especially in criminal cases.

Defendants' right to fair proceedings, free from bias *or* the appearance of bias, is fundamental. That right is not diminished because the proceedings concerned a restitution order,

Morvillo Abramowitz Grand Iason & Anello P. C.

The Honorable Alvin K. Hellerstein
January 23, 2026

rather than some other type of litigation.  It is not diminished because the Court's clerks happen to work for prestigious firms.  To ensure that Defendants get the due process to which they are entitled, Defendants' restitution orders must be vacated and reconsidered by a neutral judge.

        Respectfully submitted,

        *Brian A. Jacobs*

        MORVILLO ABRAMOWITZ GRAND
            IASON & ANELLO P.C.
        Brian A. Jacobs
        565 Fifth Avenue
        New York, NY 10017
        (212) 856-9600 (telephone)
        (212) 856-9494 (facsimile)
        *Attorneys for Defendant Bill Hwang*

        FRIEDMAN KAPLAN SEILER
            ADELMAN & ROBBINS LLP
        Mary E. Mulligan
        Timothy M. Haggerty
        7 Times Square
        New York, New York 10036-6516
        (212) 833-1100
        mmulligan@fklaw.com
        thaggerty@fklaw.com
        *Attorneys for Defendant Patrick Halligan*

cc:    All counsel of record (by ECF)