UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------- x

UNITED STATES OF AMERICA,

            -against-

SUNG KOOK (BILL) HWANG and PATRICK
HALLIGAN,

                        Defendants.

-------------------------------------------------------------- x

**OPINION AND ORDER
DENYING MOTION TO
VACATE RESTITUTION
ORDER**

22 Cr. 240 (AKH)

ALVIN K. HELLERSTEIN, U.S.D.J.:

       Following a nine-week trial, a jury found Defendants Sung Kook (Bill) Hwang and

Patrick Halligan guilty of securities fraud, wire fraud, conspiracy, racketeering, and market

manipulation. Hwang was the founder and head of Archegos Capital Management ("Archegos")

and Halligan served as Chief Financial Officer. The jury returned the verdict on July 10, 2024,

and a judgment was entered on August 7, 2025 for Hwang and August 26, 2025 for Halligan.

       As part of sentencing, the Government sought restitution for victims, divided into

two classes: Archegos employees whose deferred compensation amounts were lost as part of the

scheme carried out by Hwang, and Archegos counterparties who suffered losses in their dealings

with Archegos. Hwang and Halligan's sentences included a restitution order totaling $9.4 billion.

Magistrate Judge Barbara Moses, after evidentiary hearings and review of the trial record, found

that 39 former employees were entitled to restitution in various amounts, totaling $32,996,491.58,

and so recommended to me. I adopted her recommendation.

       The second category was composed of eight major banks that had lent on margin

to Archegos, and were the counterparties on derivative transactions intended to secure the margin

loans. Their losses, in the amounts of their margin loans less liquidation recoveries, entitled them to restitution in the amounts shown below for each bank:

### Government Tabulation of Losses in U.S. v. Hwang
Updated 12/19/2024

*Compensable Bank Losses*

| Category | BMO | CS | Jefferies | Macquarie | Morgan Stanley | MUSE | Nomura | UBS |
|---|---|---|---|---|---|---|---|---|
| Losses from Unrecovered Loans | $0.00 | $39,010,507.43 | $8,065,436.12 | $0.00 | $0.00 | $0.00 | $475,775,728.32 | $0.00 |
| Losses From Variation Margin & Payments | $0.00 | $4,745,586,060.00 | $19,471,336.11 | $0.00 | $14,464,464.00 | $187,031,995.00 | $137,158,818.00 | $0.00 |
| Losses Incurred By Facilitating Swaps | $30,465,614.91 | $540,399,650.00 | $6,981,519.56 | $228,831,613.68 | $2,884,711,647.00 | $76,584,932.00 | $2,236,033,666.52 | $1,574,335,331.00 |
| Credits Against Loss | $25,425,486.20 | $419,327,281.65 | $3,065,822.10 | $196,808,086.20 | $2,158,739,165.00 | $20,440,135.32 | $224,298,217.00 | $780,279,104.00 |
| Total | $5,040,128.71 | $4,905,668,935.78 | $31,452,469.69 | $32,023,527.48 | $740,436,946.00 | $243,176,791.68 | $2,624,669,995.84 | $794,056,227.00 |

ECF No. 373-1.

The restitution awarded Bank of Montreal $5,040,128.71, $4,905,668,935.78 to Credit Suisse, $31,452,469.69 to Jefferies, $32,023,527.48 to Macquarie, $740,436,946.00 to Morgan Stanley, $243,176,791.68 to MUFG, $2,624,669,995.84 to Nomura, and $794,056,227.00 to UBS. Morgan Stanley was represented by Davis Polk & Wardwell LLP ("Davis Polk") for purposes of restitution. Davis Polk did not enter a notice of appearance and submitted victim impact information on Morgan Stanley's behalf to the Government to aggregate with the other banks.

Hwang and Halligan filed notices of appeal on August 7 and August 28, 2025, respectively. Those appeals are pending.

Hwang and Halligan now each move to vacate their orders of restitution and for me to recuse myself due to an alleged conflict of interest of my law clerks when the restitution orders were imposed. ECF Nos. 467, 468. For the following reasons, I deny the motions.

## BACKGROUND

Hwang and Halligan used their private investment firm, Archegos Capital Management, to engage in manipulative trading and deception. On April 25, 2022, a grand jury

2

returned an indictment charging Hwang with eleven counts and Halligan with three counts of conspiracy, wire fraud, securities fraud, racketeering, and market manipulation. At the conclusion of trial, the jury returned a verdict finding Hwang guilty of ten of the eleven counts and Halligan guilty on all three counts.

Following the trial, the Government sought restitution for two groups of victims: Archegos employees who lost deferred compensation because of the scheme, and Archegos lenders and counterparties, shown above, who lost their margin loans because of Archegos' defaults.

The Government provided restitution submissions supported by evidence from the trial record and materials supplied by the victims reflecting out-of-pocket losses. *See* ECF Nos. 365, 373. The Court held a series of sentencing proceedings: for Hwang on November 20, 2024, November 21, 2024, and December 19, 2024. I held a sentencing hearing for Halligan on January 27, 2025. ECF No. 394.

The former employee restitution and counterparty restitution proceeded largely on separate tracks. For the former employees, I referred the matter of who was a victim and how much each lost and was entitled to restitution to Magistrate Judge Barbara Moses for report and recommendation. ECF No. 401. Judge Moses held evidentiary hearings on May 9, 2025 and May 21, 2025, and issued a report and recommendation, which I adopted on July 2, 2025. ECF No. 445.

By comparison, the procedure for the counterparty restitution was simpler. I directed the counterparties to submit to the Government their victim impact statements and calculations based on guidelines I set out at Hwang's initial sentencing proceeding. 11/20/24 Tr. 83-88. The counterparties did so. The Government aggregated this information, submitting to me

3

the victim impact statements and a chart showing the counterparty losses. ECF Nos. 365, 373. The restitution amounts claimed by the counterparties were based on factually established losses that followed the format I directed on the balances on the margin loans they extended to Archegos, less the liquidations of the collateral supporting Archegos' borrowing.

On July 22, 2025, I held the final sentencing hearing for Hwang and Halligan, and on July 29, 2025 I entered restitution orders against Hwang and Halligan, ordering restitution to the eight Archegos margin lenders and the former employees, as shown above: $9,376,525,022.18 to the eight banks, and $32,996,491.58 to the former employees, or total restitution of $9,409,521,514.76, with the employees having priority. ECF Nos. 453, 454.

On October 16, 2025, Davis Polk submitted a letter to the Court, copying the parties, providing notice that Davis Polk was screening one of my former law clerks (the "Law Clerk") from participating in Davis Polk's work for Morgan Stanley in connection with this matter. ECF No. 468-1. The Law Clerk began working at Davis Polk as an associate on October 20, 2025 and had previously worked as a summer associate in 2023. The Law Clerk accepted employment with Davis Polk at the end of the summer and deferred that acceptance to clerk for me from October 2024 until October 2025. My second law clerk, who Defendants do not directly object to, also began working at Davis Polk as an associate in September 2025 and had previously worked as a summer associate in 2023.

On December 2, 2025, Hwang and Halligan filed motions to vacate the restitution orders and restitution components of the judgments against them, arguing that I should have recused myself.

## LEGAL STANDARD

Under 28 U.S.C. § 455(a), a federal judge must "disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). The "substantive standard for recusal is whether a reasonable person, knowing all the facts, would conclude that the court's impartiality might reasonably be questioned." *Apple v. Jewish Hosp. & Med. Ctr.*, 829 F.2d 326, 333 (2d Cir. 1987). There is a "substantial burden" on parties moving for recusal to overcome the presumption of judicial impartiality. *See McCann v. Commc'ns Design Corp.*, 775 F. Supp. 1506, 1522 (D. Conn. 1991) (citing cases).

Vacatur of judgment does not automatically follow a violation of Section 455(a). Rather, courts consider three factors to determine how best to address a violation: "(i) the risk of injustice to the parties in the particular case; (ii) the risk that the denial of relief will produce injustice in other cases, and (iii) the risk of undermining the public's confidence in the judicial process." *United States v. Amico*, 486 F.3d 764, 777 (2d Cir. 2007) (citing *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 864 (1988)). "While not a traditional harmless-error analysis, this test looks to the relative harm to the parties, the public, and the judicial process." *Id.*

## DISCUSSION

### I. The Law Clerk's future employment did not create an appearance of bias.

Hwang and Halligan argue that 28 U.S.C. § 455(a) and case law requires that a judge recuse himself where a law clerk works on a matter where his future employer serves as counsel. *See* ECF No. 468 at 2. They contend that where a law clerk works on a matter involving his future employer, that conflict "*may* be imputed to the judge." *Xyngular Corp. v. Schenkel*, 160 F. Supp. 3d 1290, 1300 (D. Utah 2016) (emphasis added). Here, they argue, the Law Clerk's acceptance of future employment at Davis Polk creates an appearance of bias that requires recusal and vacatur.

5

However, Defendants can cite to no binding authority requiring recusal and vacatur under these circumstances. The cases cited by Defendants, while noting that the future employment of a law clerk *may* create a conflict for the judge, each decline to find a conflict or decline to require recusal or vacatur. *See e.g.*, *McCulloch v. Hartford Life & Acc. Ins. Co.*, No. 3:01CV1115(AHN), 2005 WL 3144656, at *5 (D. Conn. Nov. 23, 2005) (finding no conflict); *United States v. Persico*, 2006 WL 8449558, at *2 (E.D.N.Y. May 18, 2006) (finding no conflict). Instead, Defendants cite cases involving direct financial conflicts of judges that resulted in recusal. *See e.g.*, *Litovich v. Bank of Am. Corp.*, 106 F.4th 218, 224 (2d Cir. 2024); *United States v. Hernandez*, No. 1:23-CR-110 (MKV), 2025 WL 2461062 (S.D.N.Y. Aug. 26, 2025).

Here, as in the law clerk cases noted above, the facts do not give rise to an appearance of bias that requires recusal. The asserted conflict involved the Law Clerk's later employment with a law firm representing a third-party victim, not a party to the case. *See Hamid v. Price Waterhouse*, 51 F.3d 1411, 1417 (9th Cir. 1995) (merely drawing "a line ... connecting a person within chambers to a person or firm related, no matter how remotely, to a party in the case" does not create a conflict). Morgan Stanley was one of eight counterparties that filed victim impact statements and sought restitution. There is no evidence that it was treated differently in any way. There is no evidence that it did not follow objective rules applicable to the other banks. There is no evidence that the law clerk worked on the matter before, or after, his one-year term. Whatever the argument of conflict or bias, or appearance of such, the Law Clerk interest was "not direct, but is remote, contingent, or speculative" and therefore "it is not the kind of interest which reasonably brings into question a judge's impartiality." *In re Drexel Burnham Lambert Inc.*, 861 F.2d 1307, 1313 (2d Cir. 1988).

6

Defendants argue that the restitution proceedings and calculations were "particularly complex" so that a higher degree of discretion or involvement from a law clerk was required such that the conflict should require recusal. However, any such complexities noted by Defendants refer primarily, if not exclusively, to the determinations of the over 40 former Archegos employees who claimed losses, not the losses from the counterparties. This complexity was captured by my referral to Magistrate Judge Moses for a report and recommendation following evidentiary hearings on the former employee component of restitution.

By comparison, the submissions from the Government and counterparty victims were straightforward. The Government prepared submissions regarding restitution, including an accounting of losses by each of the counterparties and a victim impact statement for Morgan Stanley authored by Davis Polk.[1] This accounting and the eventual restitution order involved calculations of the balances on the margin loans they extended to Archegos, less the liquidations of the collateral posted by Archegos to support its margin borrowing. *See* ECF No. 444. This calculation was consistent with the Mandatory Victims Restitution Act, which "requires only a reasonable approximation of losses supported by a sound methodology," as opposed to a "mathematically precise" calculation. *United States v. Gushlak*, 728 F.3d 184, 195-96 (2d Cir. 2013).

Neither the fairness of this procedure nor the outcome of it were questioned by Defendants nor any party or nonparty. Recusal was not required under Section 455(a). *In re Allied-Signal Inc.*, 891 F.2d 967, 971 (1st Cir. 1989) ("judges, not law clerks, make the decisions … [a]nd judges are fully capable (and believed by reasonable members of the public to be fully

---

[1] Further, Davis Polk did not actually appear in the matter or directly submit materials to the Court. Rather, it provided its victim impact statement to the Government for submission and for the Government's proposed calculations of restitution. *See* ECF No. 365.

7

capable) of taking account of whatever bias clerks may have"). No reasonable person who had seen the entirety of proceedings and "knowing all the facts, would conclude that the court's impartiality might reasonably be questioned" given the remote nature of the alleged conflict. *Apple*, 829 F.2d at 333.

## II.    Even if there was a violation of Section 455(a), vacatur is not warranted here.

Having found no violation of Section 455(a), I also find that even if such a violation occurred, vacatur of the restitution orders is not warranted as a remedy for such a violation. Three factors are used to determine the proper remedy for Section 455(a) violations: "(i) the risk of injustice to the parties in the particular case; (ii) the risk that the denial of relief will produce injustice in other cases, and (iii) the risk of undermining the public's confidence in the judicial process." *Amico*, 486 F.3d at 777 (citing *Liljeberg*, 486 U.S. at 864). Applied here, the factors do not support vacatur of restitution.

First, the risk of injustice to the parties is low. The amount of restitution owed to Morgan Stanley must be viewed in the context of the entire restitution order. While ordinarily, a $740 million restitution order would be a major imposition on a defendant, here that sum is a fraction of a much larger $9.4 billion restitution order. Additionally, the restitution order is such that Defendants must pay the amount due to the former Archegos employees prior to paying the banks. The risk of injustice or favoritism is low (if, at all).

Second, the risk that denial of relief will produce injustice in other cases is also limited. For the reasons discussed above, a law clerk's future employment with a third party in a case, whose involvement is limited to a victim impact statement does not represent a major risk of conflict that would cause injustice to future parties. Since here a party "knowing all the facts" would not reasonably question the Court's impartiality, the risk of injustice to future litigants is low. *Apple*, 829 F.2d at 333.

8

Third, the risk of undermining public confidence in the judicial process is also minimal. Unlike the cases Defendants point to involving a judge's personal financial interest, here the asserted conflict does not create an appearance of impropriety, as discussed above, that would undermine the public's confidence in the judiciary. A law clerk's future employment with a law firm representing a third-party victim in a case would not cause "an objective disinterested person [to] question the partiality of a judge." *United States v. Hernandez*, No. 1:23-CR-110 (MKV), 2025 WL 2461062, at *4 (S.D.N.Y. Aug. 26, 2025). Therefore, recusal and vacatur are not warranted.

## CONCLUSION

For the aforementioned reasons, Defendants' motions are denied. The Law Clerk's future employment did not violate Section 455(a) and vacatur of the restitution order is not warranted.

The Clerk of Court shall terminate ECF Nos. 467 and 468.

SO ORDERED.

Dated:      March 2 , 2026
            New York, New York

ALVIN K. HELLERSTEIN
United States District Judge

9